# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | MDL Case No. 8:19-MD-02879-PWG |
| | JUDGE PAUL W. GRIMM |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**MOTION FOR APPOINTMENT OF JASON LICHTMAN, EVE-LYNN RAPP, MARTIN WOLF, DIANDRA ZIMMERMAN, JOHN RODDY, AND RICHARD GORDON**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

LEGAL STANDARD ........................................................................................... 4

I. PROPOSED LEADERSHIP APPOINTMENTS ..................................... 4

II. EXPERIENCE OF PROPOSED COUNSEL ........................................... 4

    A. Jason Lichtman ............................................................................. 4

    B. Eve-Lynn Rapp ............................................................................. 7

    C. Martin E. Wolf ............................................................................. 9

    D. Diandra S. Debrosse Zimmermann ............................................ 11

    E. John Roddy ................................................................................. 12

    F. Richard S. Gordon .................................................................... 14

III. FUNDING AND ATTORNEY FEE PROPOSALS ............................... 15

    A. Proposed Leadership will fund the litigation without third-party interference. ................................................................................. 15

    B. Any fee request will be tied closely to the outcome. ................... 15

IV. AGREEMENTS WITH OTHER ATTORNEYS ..................................... 16

V. PROPOSALS FOR MONITORING BILLING AND WORK ................. 16

VI. OTHER FACTORS SUPPORTING THIS APPLICATION .................... 17

    A. The undersigned will focus on the most important legal issues. ................... 18

        1. The parties should agree to apply Maryland law at the outset. .......... 19

        2. Maryland law applies to most claims even absent stipulation. .......... 19

        3. Maryland would be an ideal bellwether even if its law did not apply nationwide. .................................................................. 20

    B. Proposed Leadership will work with the Court and defense counsel to streamline discovery. ................................................................ 21

        1. The parties should use Technology-Assisted Review. ..................... 23

        2. Discovery should begin immediately .............................................. 23

        3. The Court should not permit the parties to exceed presumptive discovery limits without good cause. .............................................. 24

    C. The case should proceed to class certification and trial expediently. ............ 24

**TABLE OF CONTENTS**
**(continued)**

D.       The Court should appoint a streamlined leadership team............................. 24

CONCLUSION................................................................................................................. 25

## INTRODUCTION

Plaintiffs Matthew Crabtree, Donna Hiteshew, Betty Robinson-Harris, Justin Sisbarro, and Michael Thomson respectively request that the Court appoint: (1) Jason Lichtman of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and Eve-Lynn Rapp of Edelson PC ("EPC") as interim co-lead class counsel; (2) Martin Wolf of Gordon Wolf & Carney Chtd. ("GWC"), Diandra S. Debrosse Zimmermann of Grant & Eisenhofer P.A. ("G&E"), and John Roddy of Bailey & Glasser LLP ("B&G") as the Plaintiffs' Executive Committee; and (3) Martin Wolf and Richard Gordon of GWC as Liaison Counsel.

Proposed Leadership is headed by two co-leads who individually and with their firms have extensive experience successfully litigating data breach class actions in addition to significant experience litigating privacy issues in multidistrict litigation. They are anchored by a proposed three-member PEC, each of whom are seasoned litigators with extensive experience representing consumers in complex class actions, and two attorneys from a leading Baltimore consumer protection firm who will serve as liaison counsel. As outlined herein, the Proposed Leadership have a distinct litigation plan that will best advance the class's interests and ensure the "just, speedy, and inexpensive" resolution of this action. Fed. R. Civ. P. 1.

**First**, Mr. Lichtman drew upon his deep experience litigating complex data privacy cases and class actions to create a proposed approach to this litigation in which Plaintiffs will work constructively with the Court and Defendants to avoid the pitfalls of many other large data privacy litigations. *See* Ex. G ("Proposed CMO3"). As explained more fully in Section VI, Proposed CMO3 focuses on the most important legal and factual issues and the use of streamlined discovery to move the case expeditiously and fairly to class certification, potential trial, and resolution.

**Second**, Ms. Rapp has already demonstrated her deep understanding of the technical issues in this litigation and the importance of constructively engaging with opposing counsel in order to secure concrete benefits to the class. Prior to filing her complaint, she and her in-house computer forensic investigators actively investigated Marriott's data security issues and identified an additional, unreported security vulnerability in its systems and then engaged directly with counsel for Marriott to identify, address, and remediate the vulnerability. The parties managed to avoid motion practice because in the days that followed, Ms. Rapp, along with her staff of in-house digital forensic experts, engaged directly and collaboratively with Marriott's counsel, which ultimately led to Marriott taking the subject web portal offline, thereby mitigating the risk posed to the class and others by the additional vulnerability.[1]

**Third**, Mr. Wolf, Ms. Zimmerman, and Mr. Gordon demonstrated their commitment to protecting the rights of all proposed class members and knowledge of data privacy litigation by filing their complaint in Maryland state court before the Honorable Ronald Rubin, which Defendants subsequently removed. Only Mr. Wolf, Ms. Zimmerman, and Mr. Gordon have protected *all* proposed class members by ensuring that the statute of limitations is tolled even if some part of this case is dismissed for lack of standing. Because Maryland does not recognize cross-jurisdictional tolling, *see Adedje v. Westat, Inc.*, their complaint alone fully protects the class. 75 A.3d 401, 403 (Md. Ct. Spec. App. 2013).

---

[1] Ms. Rapp has committed her firm's staff of digital forensic analysts to perform whatever ongoing work will assist in the prosecution of this case. As shown with their initial investigation of the case, her staff of technical experts will assist Plaintiffs in identifying and analyzing critical issues of liability and analyzing technical discovery issues. The availability of this technical team has proven critical in other privacy-related cases. As just one example, the director of EPC's digital forensics team (Shawn Davis) recently (i) analyzed and coordinated the firm's analysis of the defendant's business records in *Wakefield* and (ii) provided three days of critical testimony at the resulting jury trial, which resulted in a record-setting $925 million verdict.

**Fourth**, effectively managing an MDL calls upon skills beyond litigation competency. Leadership must effectively delegate, manage diverse personalities and issues, and keep the appropriate balance between developing the case and looking for ways to resolve it on a fair and reasonable basis. To that end, few experienced attorneys can match Mr. Roddy's long history of productive cooperation with co-counsel and opposing counsel alike: he and his firm have collaborated with other attorneys for more than twenty years in order to resolve class actions that have provided more than $1 billion in benefits to consumers. And Mr. Roddy has co-counseled in numerous public interest-oriented class actions with the National Consumer Law Center, including a current case seeking to hold a phone services company accountable for gouging literal captive customers: Massachusetts prisoners and their families. *See Pearson et al. v. Securus Techs., et al.*, No. 1:18-cv-11130 (D. Mass).

One final point. Proposed Leadership will further benefit the class because it includes two highly qualified, but historically marginalized, attorneys: both Proposed Co-Lead Counsel and the Executive Committee include female lawyers, one of whom is a woman of color. These attorneys will enhance every aspect of counsel's representation of the class and further support this application.

## BACKGROUND

On November 30, 2018, Marriott announced that it had experienced what is now being recognized as the second largest data breach in history. The JPML transferred pending actions to this Court, which entered a case management order setting forth the criteria governing this motion. Dkt. 171.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(g), a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g). *See also Hodges v. Bon Secours Health Sys., Inc.*, No. CV RDB-16-1079, 2016 WL 4447047, at *1 (D. Md. Aug. 24, 2016).

## I. PROPOSED LEADERSHIP APPOINTMENTS

The undersigned recommend that the Court appoint a small, focused team. Such a team, which can seek assistance from additional firms or attorneys should the need arise, and with the Court's approval, will be more efficient than a larger structure. The undersigned propose:

- *Interim Co-Lead Counsel*: Jason Lichtman of LCHB & Eve-Lynn Rapp of EPC

- *Plaintiffs' Executive Committee*: Martin Wolf of GWC, Diandra S. Debrosse Zimmermann of G&E, and John Roddy of B&G

- *Plaintiffs' Liaison Counsel*: A joint appointment of Martin Wolf and Richard S. Gordon of GWC

*See* Proposed Order; *see also* MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 10.221 and 40.22 (2004).

## II. EXPERIENCE OF PROPOSED COUNSEL

Proposed Leadership offer a unique combination of resources and experience in privacy and technology class actions. *See* Ex. A (attaching a comprehensive list of contact information for the judges before whom Proposed Leadership has appeared). They also bring an important measure of diversity, both in terms of background, areas of expertise, and firm resources. Together, they are the best candidates to represent and lead these centralized actions.

### A. Jason Lichtman

Jason Lichtman and his colleagues at Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") have extensive experience leading multidistrict litigation and large class litigation,

including data privacy litigation.  Here, LCHB's team includes Michael W. Sobol, the head of the firm's Consumer Protection and Data Privacy Protection Group.

Mr. Lichtman is experienced in litigating large, complex data breach cases.  He played a key role in *In re Anthem Data Breach Litig.*, No. 15-cv-2617 (MDL 2617), Hon. Lucy H. Koh (N.D. Cal.), in which Mr. Sobol was appointed to the two-member PSC.  In *Anthem*, Mr. Lichtman led the work with damages experts, including the development of highly technical, comprehensive expert reports, defending depositions of Plaintiffs' experts, and taking Defendants' experts' depositions.  Plaintiffs earned a ground-breaking $115 million settlement and injunctive relief targeting Anthem's cybersecurity practices.  (Mr. Sobol's work on behalf of the class earned him the 2019 California Lawyer of the Year Award from the California Daily Journal.)  On the strength of his experience in *Anthem*, Mr. Lichtman was asked to join Lead Counsel's complaint in the pending *In re Premera Blue Cross Customer Data Security Breach Litigation*, No. 3:15-md-2633 (D. Or.) in order to direct expert damages work in that case.

Numerous courts have appointed Mr. Lichtman to leadership positions in large consumer protection litigations.  Only one of these cases, which has settled, is currently pending:

- ***In re Samsung Top-Load Washing Machine Mkt'g, Sales Practices & Prod. Liab. Litig.***, 17-ml-2792, Hon. Timothy D. DeGiusti (W.D. Okla.).  Mr. Lichtman is Co-Lead Counsel in an action involving a defective consumer product.  Achieved settlement providing for refund for class members plus reimbursement of expenses up to $400 per consumer.

- ***Dover, et al. v. British Airways***, No. 12-cv-5567, Hon. Raymond J. Dearie (E.D.N.Y.).  Mr. Lichtman was appointed Class Counsel in nationwide action alleging that an airline overcharged consumers.  He litigated the case through *Daubert*, class certification, and summary judgment.  Achieved settlement offering class members the choice between $27 million or frequent flyer miles with a total value of $63 million.

- ***In re VTech Data Breach Litig.***, No. 15-cv-10889, Hon. Manish S. Shah (N.D. Ill.).  Mr. Lichtman was Co-Lead Counsel in a class action related to allegedly insecure children's toys.

- ***In re Whirlpool Prods. Liab. Litig.***, MDL No. 2001, Hon. Christopher A. Boyko (N.D. Ohio).  Mr. Lichtman was Co-Chair of the Law and Motion Committee, one of the trial counsel, and Lead Settlement Counsel in an action involving a defective consumer product.  Nationwide settlement achieved following a bellwether trial, multiple appeals to the Sixth and Seventh Circuits (all won by Plaintiffs), and multiple petitions for certiorari (all defeated by Plaintiffs).

In addition to his successes in court-appointed leadership positions, Mr. Lichtman was one of the LCHB partners who handled damages and class certification in *In re: Chrysler-Dodge-Jeep "Ecodiesel,"* No. 17-MD-2777 (MDL 2777), Hon. Edward M. Chen (N.D. Cal.).  Mr. Lichtman's partner, Elizabeth Cabraser, was Lead Counsel in the lawsuit, which settled for approximately $307 million.

Mr. Sobol, moreover, currently plays or played leadership roles in the following privacy cases in addition to *Anthem*:

- ***Corona v. Sony Pictures Entm't, Inc.***, No. 14-cv-09600-RGK, Hon. R. Gary Klausner (C.D. Cal.).  Nationwide class action alleging that inadequate security measures by Sony enabled cyber theft of employee data.  As Co-Lead Class Counsel, LCHB secured an $8 million settlement, injunctive relief targeting Sony's security practices, and credit monitoring for affected employees.

- ***Campbell v. Facebook***, No. 13-cv-5996, Hon. Phyllis J. Hamilton (N.D. Cal.).  LCHB was appointed Co-Lead Counsel and Plaintiffs' Liaison Counsel in a nationwide class action lawsuit alleging that Facebook unlawfully intercepted data in users' personal and private email messages on the social network and profits by sharing that information with third parties.  Achieved settlement for injunctive relief to improve Facebook's consumer-facing disclosures, and cessation of the challenged practices.

- ***Ebarle et al. v. LifeLock Inc.***, No. 15-cv-258, Hon. Haywood Gilliam Jr. (N.D. Cal.).  LCHB was Co-Lead Class Counsel in nationwide class action alleging that, contrary to representations, LifeLock failed to protect the personal information of its subscribers.  Achieved $68 million settlement.

- ***Shurtleff v. Health Net of Cal., Inc.***, No. 34-2012-00121600-CU-CL, Hon. David I. Brown (Sacramento Cty. Sup. Ct.).  LCHB, along with co-counsel, represented plaintiffs in a patient privacy class action in which the defendant had lost service drives containing highly sensitive personal information of its patients and employees.  A class settlement resulted in significant monetary relief and important data security improvements.

- ***Matera v. Google LLC***, No. 15-4062, Hon. Lucy H. Koh (N.D. Cal.). Co-lead class counsel in nationwide class action alleging that Google improperly intercepted contents of email messages belonging to non-Gmail users. Achieved settlement for injunctive relief requiring cessation of the challenged practices.

These and other cases have allowed Mr. Lichtman and the LCHB team to develop a thorough knowledge of applicable law and the unique factual, legal, and discovery issues involved in litigating privacy and data breach cases. *See* Ex. B. It also demonstrates their facility working cooperatively and collaboratively in MDLs.

### B.     Eve-Lynn Rapp

Eve-Lynn Rapp's work as a partner at EPC focuses almost exclusively on the prosecution of privacy-related class actions and has resulted in some of—if not the—largest class settlements and jury verdicts in this space. Further, Ms. Rapp brings a truly unique approach to the cases she leads and litigates, thanks in large part to EPC's in-house computer forensic investigators, who assisted with the investigation leading to the filing of this case and will remain actively involved in ongoing information gathering and discovery analysis. As evidenced by EPC's complaint, the on-going collaboration between lawyers and in-house technical experts at EPC is critical to Ms. Rapp's unique approach to her cases: one that identifies (rather than chases) problems, creates solutions to technical and complex privacy issues, and invites engagement from other attorneys and experts, both amongst co-counsel and across the aisle.

Ms. Rapp has been appointed—whether individually or by leading cases where EPC has been appointed—as class counsel in numerous consumer privacy cases:

- ***Birchmeier et al. v. Caribbean Cruise Line, Inc.***, No. 12-cv-0469, Hon. **Matthew Kennelly (N.D. Ill.)**. EPC was appointed as Co-Lead Counsel over three consolidated class action cases. Ms. Rapp directed the plaintiffs' efforts to (i) win certification of the largest-ever adversarial class certified under the Telephone Consumer Protection Act ("TCPA"), (ii) win partial summary judgment, and (iii) negotiate and secure a record-setting TCPA settlement, which resulted in a $76 million common fund.

- ***Wakefield v. Visalus, Inc.*, No. 15-cv-01857, Hon. Michael H. Simon (D. Or.).** Ms. Rapp was appointed as Class Counsel in this TCPA litigation, where she led and coordinated her firm's efforts in the case, achieved certification of an adversarial TCPA class, and paved the way to a $925 million jury verdict.

- ***N.P. and P.S. v. Standard Innovation Corp.*, No. 16-cv-8655, Hon. Virginia M. Kendall (N.D. Ill.).** Ms. Rapp was appointed as Class Counsel in this case brought under the federal Wiretap Act. Like the complaint filed in this matter, Ms. Rapp's prosecution of *Standard Innovation* relied heavily on collaboration with EPC's forensic investigators, who analyzed the technology at issue, mapped that technology onto legal theories, and then worked closely with defense counsel to address—and end—the disputed conduct at the center of the case. The litigation ended in settlement, with class members receiving significant monetary payments ($100+) from a $5 million common fund.

- ***In re 24 Hour Fitness Prepaid Memberships Litig.*, No. 16-cv-01668, Hon. Jeffrey S. White (N.D. Cal.).** Ms. Rapp was appointed as Class Counsel over two consolidated cases asserting consumer fraud claims. The case was litigated to a successful resolution, with class members receiving full refunds of the amounts that they were overcharged, totaling over $25 million in refunds to the class.

Further, working with EPC's Managing Partner, Rafey Balabanian on this matter, Ms. Rapp would draw upon Mr. Balabanian's and the firm's substantial legal and technical expertise. EPC devotes approximately 80% to its practice on privacy-related issues (including data breach cases), and has achieved landmark decisions in this space. Specifically:

- ***Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).** EPC brought a case where, for the first time in the privacy context, the Supreme Court held that intangible harm can be sufficient to satisfy Article III's injury-in-fact requirement. ("Although tangible injuries are [ ] easier to recognize . . . intangible injuries can nevertheless be concrete").

- ***In re Facebook Privacy Litig.*, No. 10-cv-02389, Dkt. 69 at 5, Hon. James Ware (N.D. Cal. Dec. 10, 2010).** Court recognized EPC's attorneys as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country."

- ***Dunstan v. comScore*, No. 11-cv-5807, Hon. James F. Holderman (N.D. Ill.).** EPC secured adversarial certification of largest-ever privacy class certified under federal privacy statutes and secured $14 million settlement, where claimants received nearly $600 each.

- ***Resnick v. AvMed***, **10-cv-24513, Hon. James Lawrence King (S.D. Fla.).** EPC secured key appellate win and first-ever data breach class settlement where *all* claimants received cash payments.

- ***In re Netflix Privacy Litig.***, **11-cv-00379, Hon. Edward J. Davila (N.D. Cal.).** Court appointed EPC sole lead counsel over consolidated class actions due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions."

- ***In re Facebook Biometric Info. Privacy Litig.***, **15-cv-3747, Hon. James Donato (N.D. Cal.).** EPC secured landmark ruling under Illinois Biometric Information Privacy Act, defeating Rule 12 and 56 motions and certifying the class under Rule 23.

Through her experience and that of EPC[2] and its team of digital forensic analysts, and the knowledge and know-how of her firm, Ms. Rapp would bring significant value as Co-Lead Counsel. *See* Ex. C. In terms of availability, Ms. Rapp is returning to work after several months of maternity leave. Should she be appointed, this matter would be Ms. Rapp's only active court appointment, allowing her to devote a significant amount of time to the case.

C.     <u>Martin E. Wolf</u>

After graduating from law school, Mr. Wolf worked as an associate attorney at Piper & Marbury LLP (now DLA Piper USA) in Baltimore, Maryland, until starting his own practice which ultimately became part of GWC at its founding in 2000. Mr. Wolf has always focused on complex litigation and has spent the last 19 years doing so on behalf of consumers. He has obtained multimillion-dollar verdicts and millions in settlements on behalf of his clients.

---

[2] EPC has also been recognized by courts for its uniquely zealous and efficient approach to litigation, which led the then-Chief Judge of the United States Court for the Northern District of Illinois to praise the firm's work as "consistent with the highest standards of the profession" and "a model of what the profession should be. . . ." *In re Kentucky Fried Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670, MDL 2103 (N.D. Ill. Nov. 30, 2011). Likewise, in appointing EPC interim co-lead in one of the most high profile banking cases in the country, a federal court pointed to EPC's ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In re JP Morgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010).

Selected examples include:

- ***Stillmock v. Weis Markets, Inc.*, No. 07-cv-01342, Hon. Marvin J. Garbis (D. Md.).**  Certified contested class of consumers for claims under the Fair Credit Reporting Act, after reversing denial of certification by interlocutory appeal under Rule 23(f).

- ***Balthrop v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. 211345, Hon. Louise G. Scrivener (Cir. Ct. for Montgomery Cty.).**  Certified a contested class of HMO members who made subrogation payments to their HMO in violation of the governing Maryland statute.  Defeated assertion of a uniform voluntary payment doctrine defense, which led to a change in Maryland law, contested certification and ultimately settlement in this and 4 other cases.  Received Trial Lawyer of the Year for results in these cases.

- ***Crowder v. Americredit Fin. Servs., Inc.*, No. 06-cv-00707, Hon. J. Frederick Motz/Magistrate Judge Paul W. Grimm (D. Md.).**  Defeated dispositive motion is a case involving violations of Maryland's consumer credit laws.  Negotiated settlement in mediation that established a protocol for resolving more than 10 identical cases against subprime auto lenders.  Settlements included repayment of interest collected, wiped out nearly $100 million in deficiencies, and included complete credit repair with the three major credit reporting agencies.

- ***Bourgeois v. Mayor & City Council of Baltimore*, No. 24-C-14-04560, Hon. Althea Handy (Cir. Ct. for Balt. City)**.  Certified settlement class of ticket purchasers who paid fees and service charges in violation of a city ticket scalping ordinance.  Case was based on a prior successful appeal in which Mr. Wolf established that the Ticketmaster system violated the scalping ordinance.

Mr. Wolf is known best for simplifying complex legal issues and presenting them in a straightforward persuasive way.  Because of this, he has been able to (1) certify contested classes and reach settlements against five Maryland HMOs (ultimately earning Trial Lawyer of the Year honors from the Maryland Association for Justice) and (2) preserve a consumer's right to proceed in court in a series of appellate opinions limiting appellate jurisdiction to review motions to compel arbitration.

In addition, Mr. Wolf has significant experience with discovery and admissibility of ESI, important areas in this case.  In 2018, Mr. Wolf drafted a document for the National Institute of Justice in which he evaluated WARDEN™, an open source forensic software product, and

opined as to the admissibility of ESI obtained through use of the software.  Additionally, Mr. Wolf was selected to be a member of The Sedona Conference® Working Group 1 drafting team tasked with rewriting/updating the *Commentary on ESI Evidence and Admissibility*, *Second Edition*.  The draft is completed and will be presented to the membership at the midyear meeting in May 2019.  Mr. Wolf will be a member of the panel presenting the draft.

### D.     <u>Diandra S. Debrosse Zimmermann</u>

Ms. Debrosse Zimmermann is a leading consumer protection litigator with a long track record of successfully prosecuting and resolving complex class and mass action litigation.  As a director at G&E, Ms. Debrosse Zimmermann's broad and extensive experience in these areas is amplified by the firm's staff of 140+ employees and deep commitment to defending the interests of injured consumers, reflected in its willingness to make all necessary resources—including financial, technological, and personnel resources—available to advance their cause.  Selected examples of her experience representing consumers include:

- ***In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.***, **MDL No. 2775, Hon. Catherine C. Blake (D. Md.)**. Ms. Debrosse Zimmermann is currently a member of the Plaintiffs' Steering Committee that concerns injuries resulting from Smith & Nephew, Inc.'s allegedly defectively designed "metal-on-metal" BHR system.

- ***Innovak Int'l, Bohannan v. Innovak Int'l, Inc.***, **No. 1:16-cv-272-WKW, Hon. Chief Judge William Keith Watkins (M.D. Ala.).**  Ms. Debrosse Zimmermann successfully represented consumers in a data breach class action, resolved in bankruptcy following rejection of the defendant's motion to dismiss.

- ***Family Med. Pharm., LLC v. Perfumania Holdings***, **No. 15-cv-563-WSC, Hon. William H. Steele (S.D. Ala.) and *Family Med. Pharm., LLC v. Impax*, No. 1:17-cv-00053, Hon. William H. Steele (S.D. Ala.)**. Ms. Debrosse Zimmermann secured a significant recovery for consumers and merchants in statutory privacy class actions.

- ***In re Higher One OneAccount Mkt'g & Sales Practices Litig.***, **MDL No. 2407, Hon. Vanessa L. Bryant (D. Conn.).**  Ms. Debrosse Zimmermann was the principal attorney for her prior firm, which was one of three appointed to

the plaintiffs' steering committee. The case resulted in a $15 million recovery on behalf of consumers charged allegedly improper fees by the defendants.

Additionally, Ms. Debrosse Zimmermann's service as a neutral in other complex litigation provides her with a unique perspective. As an example, she supported her former law partner, Special Master Edgar C. Gentle, in the negotiation and settlement of claims in *In re Total Body Formula Prods. Liab. Litig.*, MDL No. 1985 (N.D. Ala.), before the Honorable David Proctor. Also in support of the Special Master, Ms. Debrosse Zimmermann assisted in developing the plan for the organization of leadership in *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406 (N.D. Ala.), which is also before Judge Proctor. She has spoken extensively about ethnic and gender diversity, and particularly the necessity of diversity in enhancing the representation of those impacted by wrongful conduct.

Ms. Debrosse Zimmermann's firm, G&E, is one of the most successful plaintiffs' firms in the country and has recovered over $27 billion on behalf of consumers, investors, public entities, and others over the past decade alone. *See* Ex. E.

### E. John Roddy

John Roddy has represented consumers in class actions challenging unfair and deceptive business practices for three decades. For most of the 1980s, he was an Assistant Attorney General in the Consumer Protection Division of the Massachusetts Attorney General's Office. His stature as a leader of the consumer class action bar is exemplified by his position for the past 24 years as co-chair of the Practising Law Institute's Consumer Financial Services Litigation Institute, held annually in New York, Chicago and San Francisco. Of note his co-chairs, Julia Strickland of Stroock & Stroock and Alan Kaplinsky of Ballard Spahr, are two of the leading lights of the defense bar, underscoring Mr. Roddy's ability to maintain long-standing professional relationships and credibility with the defense bar. Mr. Roddy has more than 20

years' experience serving as lead or co-lead counsel in national cases. Selected examples include:

- ***In re: Columbia Gas Cases***, **No. 1877CV01343G, Judge James Lang (Essex County, Mass.).** One of three Co-Lead Counsel in a consolidated proceeding involving approximately a dozen class actions and mass actions regarding a catastrophic natural gas leak that caused explosions and ten-alarm fires which devastated three Massachusetts communities in the fall of 2018.

- ***Henderson v. Bank of New York Mellon, N.A.***, **332 F. Supp. 3d 419, 422 (D. Mass. 2018), Judge Patti B. Saris,** *leave to appeal* **denied, No. 18-8018, 2019 WL 1466931 (1st Cir. Feb. 15, 2019).** Mr. Roddy was Co-Lead in this case involving a certified class of trust beneficiaries whom BNY Mellon allegedly charged inflated tax preparation fees. The case settled on the eve of trial. Judge Saris also oversaw ***In re Sears, Roebuck and Co. Bankruptcy Debtor Reaffirmation Litig.***, **MDL 1185, Judge Patti B. Saris (D. Mass.),** Mr. Roddy's first stint as MDL Co-Lead Counsel. This 1998 case resulted in a settlement that returned $177 million in refunds to bankruptcy debtors nationwide and waived more than $100 million more in outstanding debts.

- ***Cullinane v. Uber Techs., Inc.***, **No. 1:14-cv-14750, Judge Douglas P. Woodlock (D. Mass.).** Mr. Roddy was lead counsel in this case, which established new law on arbitration clause enforceability, *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018), leading to a pending settlement on behalf of Uber riders charged inflated airport fees). Judge Woodlock also handled ***Curry v. Fairbanks Capital Corp. et al.***, **Case No. 03-12219 (D. Mass. 2004),** where Mr. Roddy served as Co-Lead Counsel in a consolidated proceeding involving more than 30 class actions nationwide against a notorious mortgage servicer, resulting in a settlement that returned $47 million to borrowers in a case where the defendant was at risk of failing.

Mr. Roddy also has MDL experience as lead or co-lead counsel in more than half a dozen additional cases. *See* Ex. A. Mr. Roddy's firm, moreover, has had significant success bringing class actions to trial. In the past three years, B&G has brought two certified class actions to trial and won substantial verdicts. The willingness to try a class action, much less achieve victory for the class, is a rarity in this sphere, and substantially enhances both the likelihood and value of settlements in subsequent cases.

## F. <u>Richard S. Gordon</u>

Richard Gordon is a founding partner of GWC.  Since the beginning of his legal career in 1989, courts have appointed Mr. Gordon to serve as Lead Counsel in dozens of complex and mostly consumer class action cases, in which he has obtained substantial relief on behalf of his clients and, in all, has recovered and returned several hundred million dollars to those in society who have been wronged, harmed or taken advantage of.  Selected examples include:

- ***Yang v. G&C Gulf, Inc. dba G&G Towing*, No. 403885V, Hon. Ronald B. Rubin (Cir. Ct. for Montgomery Cty.).**  Successfully certified contested plaintiff class and defendant class, believed to be the first bilateral class action in Maryland.  Obtained $22 million judgment for illegal predatory towing.  Settled with towing company, one subgroup of the defendant class, and has reached settlement terms with remaining members of defendant class.

- ***Edwards v. First Am. Title*, No. CV 07-03796 SJO, Hon. James Otero (C. D. Cal.).**  Reached class settlement in case alleging illegal kickback scheme under RESPA.  Defeated motion to dismiss for lack of standing under Article III, which was upheld in the Ninth Circuit *sub nom, First Am. Fin. v. Edwards*.  Case was argued in the Supreme Court; the writ of certiorari was dismissed as improvidently granted on the last day of the term.  The issue would ultimately be resolved in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

Mr. Gordon is known particularly for his creativity in applying legal principles and litigation techniques to solve complex problems.  For example, in *Yang v. G&C Gulf, Inc.* (see above) he currently is lead counsel in what is believed to be the first ever bilateral class action (i.e., plaintiff class vs. defendant class) in Maryland, in which he has successfully certified both classes and has recovered millions of dollars in damages for illegal predatory towing practices from parking lot owners.  He also was lead counsel in a case against a fraudulent car dealer and its finance company in which he certified a class of consumers, the first certified class in the 200+ year history of the Norfolk Division of the Eastern District of Virginia, recovering millions of dollars for the class.

### III. FUNDING AND ATTORNEY FEE PROPOSALS.

#### A. Proposed Leadership will fund the litigation without third-party interference.

Proposed Leadership are from law firms that possess and consistently devote the resources and personnel necessary to vigorously pursue complex cases. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv) (requiring consideration of "the resources that counsel will commit to representing the class"). Among other things, LCHB, EPC, and G&E have all *independently* litigated (and self-funded) cases of this size and complexity. Proposed Leadership understands the considerable resources and personnel appointments—including junior attorneys, support staff, in-house experts, and outside experts—necessary to pursue complex, multidistrict class cases like this one. *Proposed Leadership have committed all necessary resources to this case and will not seek third-party litigation funding.* They also do not anticipate any reason to seek financial contribution from law firms in non-leadership positions.

#### B. Any fee request will be tied closely to the outcome.

Any fee award in this case must be tied directly to counsel's ability to secure a strong, meaningful result for the class. Thus, Proposed Leadership will submit a fee application that is keyed-off the results obtained for the class and supported by a detailed submission of the time and expenses, as discussed more fully in Section V of this application. And Proposed Leadership will not agree to any fee agreement in which unawarded attorneys' fees revert to defendant, rather than the class.

Proposed Leadership expect that they may be compensated as a percentage of any common fund obtained for the class, which they will limit to 20%. Alternatively, the Court could award a fee based on the reasonable lodestar of counsel and have within its discretion the ability to apply a positive or negative multipler tied to the results that they achieve for the class.

The undersigned observe that a multiplier of approximately 2.5 is frequently appropriate in this Circuit when counsel secure a positive result after assuming the risks inherent in accepting representation of a class's interests on a contingency basis. Proposed Leadership would not expect to request a higher multiplier absent extraordinary circumstances.

## IV.    AGREEMENTS WITH OTHER ATTORNEYS

Proposal Leadership have no agreements or commitments with other attorneys related to funding, fee-splitting, cost-sharing, or pooling clients, whether formal or informal.

## V.    PROPOSALS FOR MONITORING BILLING AND WORK

Attorneys performing work on behalf of the classes must avoid wasted or duplicated efforts, which can be accomplished only through careful monitoring. Proposed Leadership respectfully observe that the local rules regarding billing format and time records applicable to all fee shifting litigation reflects best practices for any litigation and will assiduously adhere to them in this case. *See* U.S. Dist. Ct. Rules Md. Appx. B 1a & b ("Guidelines").[3] Thus, and consistent with the Guidelines and accompanying Proposed Order granting this application, Proposed Leadership recommends the following monitoring protocols:

- Lead Counsel must ensure that all attorneys comply fully with the reporting requirements set forth in the Guidelines.

- Only court-appointed counsel may bill time to the case without the Court's prior approval. Any motion seeking such approval must identify: the additional plaintiffs' counsel and their background, specific proposed tasks, and why additional counsel is necessary and efficient.

---

[3] The undersigned respectfully note that other aspects of the Guidelines are not always appropriate in larger, complex multidistrict ligation against a sophisticated, well-funded defendant. For example, Proposed Leadership anticipates that it will frequently be appropriate to have more than one attorney at a hearing or important deposition and thus anticipate asking the Court to find that there are good grounds to depart from the local rules for particular tasks. That said, the Guidelines serve as important direction to counsel to avoid waste, duplication and inefficiencies. The undersigned have suggested a leadership team consistent with the guidelines that will litigate this matter as efficiently as possible.

- Attorneys' fees will not be paid to counsel who do not keep time consistent with the Guidelines or for any work conducted without prior approval from interim lead counsel absent good cause shown.

- A senior partner in each firm must submit, and certify the accuracy of, time and expenses to interim Co-Lead Counsel on a monthly basis.

- Each quarter, interim Co-Lead Counsel will submit, for *in camera* review, a summary of all time performed on the case consistent with the Guidelines.

- On no less than a quarterly basis, interim Co-Lead Counsel shall email all plaintiffs' counsel: (i) updating them on the status of the case and a summary of the work performed in the preceding quarter; (ii) identifying any anticipated opportunities to contribute work to the case by non-leadership firms (subject to the Court's prior approval); and (iii) soliciting input regarding work, case strategy, and efficient direction of the litigation.

Proposed Leadership all have a long, productive history working cooperatively with opposing counsel.[4] Proposed Leadership respectfully suggests monthly, in-person meetings with counsel for Defendants in advance of the Court's status conferences to address outstanding issues obstructing early dispute resolution. *See* Ex. G. Such meetings will help counsel build a constructive working relationship while they work together to attempt to move the case to resolution fairly and efficiently.

## VI.    OTHER FACTORS SUPPORTING THIS APPLICATION

Proposed Leadership have demonstrated above that they have the appropriate expertise in data privacy litigation, technology, class actions, and MDLs to litigate this case effectively, as well as a history of working constructively with courts and opposing counsel to achieve these goals. They respectfully submit that they also have the appropriate plan to litigate this case in the most "just, speedy, and efficient" manner. Fed. R. Civ. P. 1; *see* Ex. G. They detail three

---

[4] With respect to Proposed Co-Lead Counsel, Ms. Rapp referenced her productive relationship with opposing counsel in this case. Mr. Lichtman refers the Court to opposing counsel in his most recent MDL (*In re Samsung*): Arthur Brown of Arnold & Porter (212.836.8592) and opposing counsel in his longest-running MDL (*In re Whirlpool*): Michael Williams of Wheeler Trigg O'Donnell (303.244.1867).

aspects of this plan below—focusing exclusively on Maryland state law, adopting a streamlined discovery plan, adopting an expedited litigation schedule—and conclude by noting the advantage of a streamlined leadership team.

A. __The undersigned will focus on the most important legal issues.__

The MDL includes more than 110 causes of action from 51 jurisdictions. Litigating the law of multiple jurisdictions simultaneously will delay resolution, increase costs, and require the Court to ultimately produce a treatise on, for example, the fine distinctions between Alaska and Rhode Island negligence law, without offering countervailing benefits. The parties and Court should instead focus on this litigation's core factual issues: what Marriott did or did not do to safeguard class members' personal information and what Marriott did or did not know about its security.

Nearly every major class action MDL has resolved prior to or shortly after the first trial, and it is inefficient to devote significant resources to small differences in state law that do not ultimately factor in to the case's ultimate disposition. *See, e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014) (adjudicating motion to dismiss brought with 114 named plaintiffs under consumer protection laws of 49 states, data breach statutes of 38 states, and various torts before applying one state's law later in case). This is particularly true in data breach cases, which often settle while a class certification motion is pending. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) (settlement moved for while class certification motion was pending); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, Case No. 16-MD-02752-LHK, 2019 WL 387322, at *3 (N.D. Cal. Jan. 30, 2019) (same).

### 1. The parties should agree to apply Maryland law at the outset.

The most efficient path forward is for the parties to agree to apply Maryland law to all common law claims. This type of agreement "substantially limited" the necessary work in other recent data breach litigation. *See In re Yahoo!*, 2019 WL 387322, at *8. And it is well established that "the parties [can] agree to use the master complaint in this manner—in essence, it effectively becomes a contractual choice of law clause." Newberg on Class Actions § 10.31 ("Courts have accepted this approach if all of the parties agree to use the master complaint in this manner—in essence, it effectively becomes a contractual choice of law clause.").

### 2. Maryland law applies to most claims even absent stipulation.

Even if Marriott does not agree to apply Maryland law nationwide, Maryland law applies under a traditional choice-of-law analysis. First, Maryland law governs claims that Marriott breached the terms of its privacy policy because Maryland applies the principle of *lex loci contractus*; i.e., it applies the law of the jurisdiction where the contract was made. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (Md. 1992). Where, as here, the "last act necessary for the formation of a binding contract is performed" in Maryland—Marriott disseminating its Global Privacy Statement—Maryland law applies. *See Baker v. Sun Co., Inc. (R & M)*, 985 F. Supp. 609, 611 (D. Md. 1997). It is for this reason that, under *lex loci contractus*, only a single state's law applies to the claim that a company breached the terms of its privacy policy. *See Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *19 (N.D. Ga. Feb. 5, 2013).

Second, Maryland law applies to claims that Marriott negligently allowed the release of their information because Maryland applies *lex loci delicti*—i.e., it applies "the law of the State where the injury—the last event required to constitute the tort occurred." *Erie Ins. Exchange v. Heffernan*, 399 Md. 598, 620 (Md. 2007). The injury occurred in Maryland, where Marriott

allowed the data breach to occur.  *Accord In re Target*, 309 F.R.D. at 486-87 (applying a single state's negligence law to all data breach claims).

### 3. Maryland would be an ideal bellwether even if its law did not apply nationwide.

It bears emphasis that it would be most efficient to focus solely on Maryland at the outset of the litigation even if the proposed class truly did possess 110 different causes of action.  The most efficient MDLs select a set of bellwether actions to "educat[e] the parties and court about the strengths and weaknesses of the many underlying cases."  4 Newberg on Class Actions § 11.13.  Privacy claims under Maryland law are highly representative of those in other states.

First, it is well established that the law of breach of contract does not vary significantly between jurisdictions.  *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995); *see also, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013).  Second, Maryland's common law tort claim—negligence—is representative.  If Maryland law does not apply nationwide, plaintiffs in every state will assert a claim for negligence.  *See, e.g.*, *In re Target*, 66 F. Supp. 3d at 1170 n.7 (noting that elements of negligence are "substantially identical in every jurisdiction in which Plaintiffs raise a negligence claim").[5]  Finally, the

---

[5]  In all of these jurisdictions, negligence has the same basic elements: (1) duty; (2) breach; (3) causation; and (4) resulting injury.  *Compare, e.g.*, *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010) (stating elements of negligence under Maryland law), *with Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1321 (S.D. Cal. 2014) (same in California).

Of course, different states do interpret negligence law somewhat differently from each other, particularly with respect to the doctrine of comparative fault.  *See, e.g.*, *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995) (Posner, J.).  Such differences would not prevent Maryland law from being highly instructive nationwide because comparative fault does not play any role in this case.  And while a number of courts have found that differences in the economic loss rule—which bars certain damages when plaintiffs bring claims for negligence— implicates data privacy litigation, this impacts only a minority of states.  *See, e.g.*, *In re Target*, 66 F. Supp. 3d at 1176.

Maryland Consumer Protection Act is similar to other state's consumer protection statutes.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015) (holding same).

**B.**     <u>**Proposed Leadership will work with the Court and defense counsel to streamline discovery.**</u>

Proposed Leadership's proposed CMO3 provides a plan to streamline discovery that emphasizes immediate identification of relevant document custodians and deployment of Technology Assisted Review ("TAR").  They will ask that Marriott's counsel immediately produce—or this Court to immediately require—Marriott's forensic report concerning the data breach, as was ordered *sua sponte* during the initial status conference in the *Anthem Data Breach* litigation.  Transcript of Case Mgmt. Conf. at 21, *In re Anthem, Inc. Data Breach Litig.*, 5:15-md-02617-LHK, Dkt. 294 ("I will order the production of the Mandiant forensic report 14 days after appointment of lead counsel, subject to any privileges.").  Together, these measures will permit the expeditious discovery of information "most important to resolving the case," in a manner that significantly economizes the resources of the Court and the parties.

While this action has national significance, the underlying claims are straightforward. Marriott did or did not have an obligation to provide strong data security, Marriott did or did not provide such security, and Marriott does or does not owe damages as a result.  Accordingly, the parties should cooperate to focus on the most important issues during phased discovery and employ TAR to further expedite the discovery process.  This is particularly so because, as explained above, the parties should focus solely on a very limited number of substantive claims at the outset of the case.  Discovery should proceed in the same efficient, phased manner that this Court has adopted in other litigation:

- Defendants provide very limited, initial discovery, including the identity of key custodians and the location of relevant files fourteen (14) days after the

Court appoints Lead Counsel.[6]

- The parties conduct discovery in phases, beginning with "Phase One"— discovery narrower than Rule 26(b)(1)'s "relevancy" standard, seeking information only about facts that are "most important to resolving the case."

- If necessary and upon good cause shown, the parties then engage in "Phase Two" discovery, for materials proportional to the needs of the case that are relevant under Rule 26(b)(1).

*See, e.g.*, United States District Court, District of Maryland, Discovery Order,

http://www.lfcj.com/uploads/3/8/0/5/38050985/grimm_discovery_order.pdf.

Cooperation between the parties is also of paramount importance. It is for this reason that proposed CMO3 orders the parties to seek only discovery that is appropriate to the stakes of the litigation, fairly and quickly bring any disputes to each other, and cautions the parties to exhibit "cooperation rather than contrariety, communication rather than confrontation." *Mancia v. Mayflower Textile Servs., Co.*, 253 F.R.D. 354, 358 (D. Md. 2008). Importantly, CMO3 also orders the parties to engage in a "substantive conference" early in the case to "provide[] an opportunity to comply with [Rule 34] and avoid disputes about requests for production or

---

[6] Initial discovery and early communication with Defendants can and should define the scope of custodians and relevant records. This is particularly so because Defendants have presumably identified those key documents already in response to various investigatory bodies seeking information from them about the data breach. As the *Anthem* case demonstrated by requiring that Defendants produce a forensic report about the data breach, early discovery of any such report is appropriate and efficient. CMO3 mandates, in particular, that Marriott make an immediate disclosure of:

- Any forensic report(s) related to the Data Breach.
- The identity of individuals with permission to access the information in the Reservation System.
- The means to identify Marriott guests whose personal information was accessed.
- The identity of all third parties who consulted with Marriott in response to the Data Breach.
- Materials provided to any governmental investigatory body.
- All non-privileged reports of investigations or audits.

responses to those requests." *The Sedona Conference Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, Vol. 19 No. 2 at 456 (2018).

1.      **The parties should use Technology-Assisted Review.**

CMO3 encourages the parties to use TAR to minimize the time and expense of reviewing relevant documents and cautions that the Court will not accept arguments about burden or expense that could have been avoided by appropriate use of TAR, including in support of any request for attorneys' fees. *See, e.g.*, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Vol. 19 No. 1, at 156 (2018) (discussing the advantages of TAR for defendants); *The Sedona Conference TAR Case Law Primer*, Vol. 18 No. 1, at 47 (2017) (same for plaintiffs). CMO3 incentivizes both parties to take advantage of TAR's "potential for significant savings in time and cost, without sacrificing quality[.]" *Technology Assisted Review (TAR) Guidelines*, Jan. 2019, Bolch Judicial Institute, Duke Law; *see also, e.g.*, *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) ("Computer-assisted review appears to be better than the available alternatives, and thus should be used in appropriate cases.").

2.      **Discovery should begin immediately.**

There is no reason to delay or bifurcate discovery. The parties are already aware of the case's most important issues, particularly because Defendants have likely already identified the key documents relating to the data breach as part of the various governmental investigations and are aware of the likely custodians and time ranges to review. And while Marriott may file Rule 12 motions, at least some of the claims will move forward. Given the general overlap of "class" and "merits" issues, the undersigned also stress that bifurcation is neither necessary nor expedient. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298 (S.D.N.Y. 2012) (Francis, J.) (denying motion to bifurcate and explaining that Supreme Court precedent mandates

that parties "develop the record fully before a class motion is considered").

> **3.** **The Court should not permit the parties to exceed presumptive discovery limits without good cause.**

Discovery should be focused on the relevant elements under Maryland law to prove plaintiffs' case. There is no need for either party to deviate from the presumptive limit of ten (10) fact depositions per side: that this case involves issues of great national significance does not justify inefficient, overly burdensome discovery. And proposed CMO3 orders Lead Counsel to be cognizant of their responsibilities to propound narrow and clear interrogatories and document requests. Under proposed CMO3, the parties may only seek discovery that is most critical to their case during the initial phase of discovery, which will significantly reduce the number of document requests and interrogatories.

> **C.** **The case should proceed to class certification and trial expediently.**

The great significance of this case only underscores the parties' obligations to litigate in a "just, speedy, and inexpensive manner." Fed. R. Civ. P. 1. CMO3 contemplates an amended complaint almost immediately and a motion for class certification less than a year after the Court appoints Lead Counsel. It is an aggressive schedule, but an appropriate one that proposed leadership is well-equipped to meet.

> **D.** **The Court should appoint a streamlined leadership team.**

The undersigned respectfully disagree with other counsels' suggestion that many firms should hold leadership positions. Large structures ensure consensus among attorneys, but that consensus can come at the expense of the class: proposed leadership believes that the Court should appoint only the number of attorneys necessary to litigate this case effectively. To this end, Judge Lucy Koh's rulings in *Anthem* and *Yahoo!* are instructive. In *Anthem*, Judge Koh appointed a flat leadership structure of two lead and two PSC firms, very similar to the one

proposed here.  In *Yahoo!*, the Court appointed one firm as Lead Plaintiffs' Counsel and four firms as members of Plaintiffs' Executive Committee.  *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752 (N.D. Cal.), Dkt. 58.

Here, only a limited number of firms are needed to prosecute this case, and a larger organizational structure leads to needless duplication and redundancies.  Among other things, appropriate use of TAR and targeted initial discovery will obviate the need for a bloated document review process.

## CONCLUSION

For the above reasons, Plaintiffs respectfully submit that the undersigned are the attorneys who will best litigate this action in a "just, speedy, and efficient" manner.

Dated:  April 19, 2019

Respectfully submitted,

*/s/ Martin E. Wolf*
Martin E. Wolf (Bar No. 0945)
mwolf@GWCfirm.com

Richard S. Gordon (Bar No. 06882)
**GORDON, WOLF & CARNEY CHTD.**
100 W. Pennsylvania Avenue, Suite 100
Towson, MD 21204
410.825.2300

Jason L. Lichtman
**LIEFF CABRASER HEIMANN**
   **& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
212.355.9500

Eve-Lynn Rapp
**EDELSON PC**
123 Townsend Street, Suite 100
San Francisco, CA 94107
415.212.9300

John Roddy
**BAILEY & GLASSER LLP**
99 High Street, Suite 304
Boston, MA 02110
617.439.6730

Diandra Debrosse Zimmermann
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
302.622.7000

*Proposed Interim Leadership*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2019, I electronically filed the foregoing document with the Clerk of the Court, using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Martin E. Wolf*
Martin E. Wolf (Bar No. 0945)
