**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: MARRIOTT INTERNATIONAL, INC. CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 8:19-MD-02879-PWG** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | **JUDGE GRIMM** |

**APPLICATION OF THE SIEGEL-TADLER-MURPHY SLATE AS CO-LEAD
COUNSEL AND FOR APPOINTMENT OF PLAINTIFFS' STEERING COMMITTEE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      THE SIEGEL-TADLER-MURPHY SLATE CONSISTS OF A DIVERSE
        GROUP OF LAWYERS WITH UNMATCHED EXPERIENCE IN DATA
        BREACH AND PRIVACY LITIGATION. .........................................................1

II.     MEMBERS OF THE PROPOSED SLATE. .......................................................4

III.    FUNDING OF THE LITIGATION. ..................................................................20

IV.     AGREEMENTS WITH OTHER COUNSEL. ...................................................20

V.      MANAGEMENT OF THE LITIGATION. ........................................................20

VI.     OTHER FACTORS RELEVANT TO THE SELECTION OF LEAD COUNSEL. .........22

        A.      23(g)(A)(i) – The Slate has Spent Substantial Time Investigating Potential
                Claims in the Action and Retained the Key Experts for the Case. ........................22

        B.      23(g)(A)(ii) and (g)(A)(iii) – The Siegel-Tadler-Murphy Slate's
                Experience in Data Breach Litigation and Knowledge of Applicable Law
                is Unsurpassed. ......................................................................................24

        C.      Rule 23(g)(A)(iv) – The Slate Brings Substantial Resources to the Case. ............25

VII.    CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Beck v. McDonald*, 848 F.3d 269 (4th Cir. 2017).......................................................................... 24

*Garcia v. Tyson Foods, Inc.*, No. 06-cv-2198 (D. Kan.), *aff'd* 770 F.3d 1300 (10th Cir. 2014).... 6

*In re: The Home Depot, Inc. Consumer Data Security Data Breach Litig.*, No. 14-md-02583, 2016 WL 11299474 (N.D. Ga. Aug. 23, 2016) .......................................................................... 5

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*, 892 F.3d 613 (4th Cir. 2018).......................... 2

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 243 F. Supp. 3d 609 (D. Md. 2017) ............ 24

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 23(g) ................................................................................................................. 22, 25

**Other Authorities**

Manual on Complex Litigation 10.22 ............................................................................................. 22

## INDEX OF EXHIBITS

Exhibit A - Siegel-Tadler-Murphy Group Data Breach Case Chart

Exhibit B - Norman Siegel Firm Biography

Exhibit C - Ariana Tadler Firm Biography

Exhibit D - William H. Murphy III Firm Biography

Exhibit E - John Yanchunis Firm Biography

Exhibit F - Karen Hanson Riebel Firm Biography

Exhibit G - Joseph Guglielmo Firm Biography

Exhibit H - Melissa S. Weiner Firm Biography

Exhibit I - Siegel-Tadler-Murphy Group Proposed Consumer Counsel Organization

I.  **THE SIEGEL-TADLER-MURPHY SLATE CONSISTS OF A DIVERSE GROUP OF LAWYERS WITH UNMATCHED EXPERIENCE IN DATA BREACH AND PRIVACY LITIGATION.**

The Siegel-Tadler-Murphy slate respectfully moves for an order appointing the following leadership for the consumer class plaintiffs:

➢ Plaintiffs' Co-Lead Counsel:

- ▪ Norman E. Siegel, Stueve Siegel Hanson LLP
- ▪ Ariana Tadler, Milberg Tadler Phillips Grossman LLP
- ▪ William H. Murphy III ("Hassan"), Murphy, Falcon & Murphy PA

➢ Plaintiffs' Steering Committee:

- ▪ John Yanchunis, Morgan & Morgan
- ▪ Karen Hanson Riebel, Lockridge Grindal Nauen P.L.L.P.
- ▪ Joseph P. Guglielmo, Scott+Scott Attorneys at Law LLP
- ▪ Melissa S. Weiner, Pearson, Simon & Warshaw, LLP

The Siegel-Tadler-Murphy slate brings together unmatched experience in major data breach and class action litigation and provides Plaintiffs and the Court a diversified team collectively dedicated to zealously representing data breach victims. Members of the Siegel-Tadler-Murphy slate have been appointed to leadership in the following MDL data breach cases:

- *In re: Equifax, Inc. Customer Data Security Breach Litigation (Consumer Cases)*, No. 17-md-02800 (N.D. Ga., Hon. Thomas W. Thrash) (Norman Siegel, Co-Lead Counsel; Ariana Tadler, Hassan Murphy and John Yanchunis, PSC members) ("*Equifax*") (motion to dismiss claims on behalf of 148 million Americans denied in most respects; discovery underway);

- *In re: The Home Depot, Inc. Consumer Data Security Data Breach Litigation*, No. 1:14-md-02583 (N.D. Ga., Hon. Thomas W. Thrash) (Norman Siegel and John Yanchunis, Co-Lead Counsel) ("*Home Depot*") (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000);

- *Schmidt et al. v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal., Hon. William Alsup) (Ariana Tadler and John Yanchunis, Interim Class Counsel) ("*Facebook*") (consolidated complaint filed in February 2019; motion to dismiss fully briefed; discovery underway);

- *In re: Yahoo! Inc. Customer Data Security Breach Litigation*, 16-md-02752 (N.D. Cal., Hon. Lucy H. Koh) (John Yanchunis, Lead Counsel; Ariana Tadler and Karen Riebel,

Executive Committee) ("*Yahoo!*") (motion seeking approval of $117,500,000 common fund settlement, on behalf of approximately 194 million users, is pending and set for hearing on June 27, 2019);

- *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.D.C., Hon. Amy Berman Jackson) ("*OPM*") (John Yanchunis, Executive Committee) ("*OPM*") (on appeal to the D.C. Circuit following dismissal on standing grounds);

- *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522 (D. Minn., Hon. Paul Magnusson) (Norman Siegel, John Yanchunis and Ariana Tadler, Executive Committee) ("*Target*") (final judgment approving a settlement on behalf of a class of approximately 100 million consumers upheld by the 8th Circuit).

In addition to these significant MDL consumer data breach cases,[1] members of the slate have led *dozens* of other data breach and privacy cases large and small in state and federal courts from coast-to-coast. Those cases are compiled in Exhibit A, which includes contact information for every judge overseeing each case. Together, the slate has successfully represented hundreds of millions of data breach victims before scores of judges across the country.

The Siegel-Tadler-Murphy slate also presents unique attributes that go to the very heart of Rule 23(g)(2)'s guidance that "the court must appoint the applicant best able to represent the interests of the class." For example, the slate has already secured the key experts in the field for this case; litigated and argued the key standing case in the Fourth Circuit—*Hutton v. National Board of Examiners in Optometry*, 892 F.3d 613 (4th Cir. 2018); includes a leading authority among plaintiffs' counsel in ESI with extensive experience navigating the revised Rules of Civil Procedure; and has a record of resolving complex class actions through settlement and trial.

The slate also reflects the diversity of the Bar and the plaintiff class—from the standpoint of gender, race, age, geography, experience and background—following guidance from the Duke

---

[1] Proposed PSC member Joseph Guglielmo was appointed Co-Lead Counsel for the financial institution plaintiffs in both *Equifax* and *Home Depot*, and a member of the Plaintiffs' Executive Committee for the financial institution plaintiffs in *Target*. These financial institution cases were companion actions to the consumer complaints brought in each respective case.

Law Center for Judicial Studies *Standards and Best Practices for Large and Mass-Tort MDLs* ("Duke Standards").[2] The class members victimized by Marriott's conduct are necessarily diverse as to race, ethnicity, socio-economic status, and gender. A similar level of diversity in their legal counsel is appropriate and, pursuant to Duke Best Practice 4E, serves to "enhance public trust in the courts." By ensuring that more than half of its members are women or persons of color, and that all members hail from unique and varied backgrounds, the Siegel-Tadler-Murphy slate provides an important diversity of perspective that appropriately reflects the uniqueness of the individuals whom they seek to represent.

Although the Siegel-Tadler-Murphy slate was assembled with the depth of knowledge and resources to lead this case on their own, the slate recognizes that the Court has appointed interim counsel that are not members of this slate. Recognizing that those lawyers have performed admirably in their interim role, the undersigned propose that the Court consider adding additional PSC members or a fourth Co-Lead Counsel to this slate from those interim appointments. The Siegel-Tadler-Murphy slate has worked closely with both Mr. Friedman and Mr. Pizzirusso[3] in other data breach litigation, including in *Facebook, Equifax* and *In re Anthem, Inc. Data Breach*, No. 5:15-MD-02617-LHK (N.D. Cal) ("*Anthem*"), and would welcome the appointment of either as a member of the PSC or as a fourth Co-Lead Counsel. Four co-leads with mutual respect and experience working together would not impinge upon efficiency or manageability, and would maximize the depth and breadth of experience representing Plaintiffs' interests in this MDL. This is essentially the structure appointed by Judge Thrash in *Equifax*,

---

[2] Duke Law Center for Judicial Studies, *Standards and Best Practices for Large and Mass Tort MDLS* (Dec. 14, 2014), available at: https://judicialstudies.duke.edu/sites/default/files/centers/judicialstudies/standards_and_best_practices_for_large_and_mass-tort_mdls.pdf.

[3] Although the slate has not had the opportunity to work with Ms. Jones in data breach litigation, she is a highly regarded, talented lawyer and would likewise be a welcome addition.

where three Co-Lead Counsel (including Mr. Siegel), and one Liaison Counsel with lead counsel responsibilities, have led all aspects of the case without conflict or inefficiencies.

## II.     **MEMBERS OF THE PROPOSED SLATE.**

The three Co-Lead Counsel proposed by this application include Norman Siegel, Ariana Tadler and Hassan Murphy; the Plaintiffs Steering Committee includes John Yanchunis, Karen Hanson Riebel, Joseph Guglielmo and Melissa Weiner. This diverse group has wide-ranging MDL and class action experience, including extensive data breach experience. Each of the lawyers identified in the slate has made a personal pledge to commit the time and resources necessary to effectively pursue this litigation.

**Norman E. Siegel** is a founding partner of Stueve Siegel Hanson LLP, a 21-lawyer firm based in Kansas City, Missouri. Mr. Siegel was born and raised in Baltimore, Maryland and brings over 25 years' experience in high stakes individual and class litigation and trials. For the last six years, Mr. Siegel has devoted much of his practice to leading the largest data breach cases in the country, including representing consumers as Co-Lead Counsel in *Equifax*, as Co-Lead Counsel in *Home Depot*, and as a member of the 5-lawyer PEC in *Target*. Mr. Siegel is a founding Co-Chair of the American Association for Justice Data Breach and Privacy Litigation Group and has worked alongside leadership in several other large data breach MDLs, including *Anthem* and *OPM*, where his firm represented most of the named plaintiffs, and has led several other non-MDL data breach class actions as detailed in Exhibit B.

As Co-Lead Counsel in *Equifax* and *Home Depot*, Mr. Siegel is and was responsible for all aspects of the litigation, including coordinating scores of plaintiffs' counsel to consolidate claims into a single consolidated complaint, negotiating with defendants on various matters related to the efficient prosecution of the cases, drafting and arguing key substantive issues, managing the time and expenses expended prosecuting the claims, and leading the settlement

committees for each matter. In *Target*, *Home Depot*, and *Anthem*, Mr. Siegel's firm took the lead in creating a proprietary database and handling intake and vetting of thousands of plaintiffs from all 50 states for consideration as class representatives in the consolidated proceedings. Mr. Siegel and his firm briefed and argued against the motion to dismiss in *Home Depot*, and Mr. Siegel was the lead negotiator of the settlement that the court called an "exceptional result" and "the most comprehensive settlement achieved in large-scale data breach litigation." *Home Depot*, 2016 WL 11299474, at *1 (N.D. Ga. Aug. 23, 2016). Following Mr. Siegel's work in *Home Depot*, Judge Thrash appointed Mr. Siegel as Co-Lead Counsel for the consumer plaintiffs in *Equifax*.

Perhaps most relevant to the Court's consideration of threshold issues in this case, Mr. Siegel is currently sole Class Counsel appointed under Rule 23(g) in *Hutton*, a data breach class action where Mr. Siegel successfully argued in the Fourth Circuit that plaintiffs had alleged Article III standing, reversing the District Court's order to the contrary. On remand, the case was resolved and the settlement preliminarily approved by Chief Judge Bredar. Because *Hutton* is likely to be a focal point of early motion practice, it is discussed in further detail in Section VI.B.

Mr. Siegel has a consistent track record of working cooperatively and collaboratively with others, including most of the lawyers seeking leadership positions in this litigation. Mr. Siegel also has a proven track record of working cooperatively across the aisle—the ability to disagree without being disagreeable—and efficiently working with opposing counsel to limit disputes requiring court intervention.

Mr. Siegel is also an experienced trial lawyer, and has tried several cases to verdict including a recent class action. Thus, although early settlements in data breach litigation are common, Mr. Siegel is also uniquely qualified as Co-Lead Counsel to take this case through trial,

a skillset that also encourages settlement. Mr. Siegel's firm is one of the few in the country that have successfully tried to verdict multiple class actions against Fortune 100 companies and multinationals, having secured multi-million dollar jury verdicts for class plaintiffs three times in the past five years. Last year Mr. Siegel secured a $34.3 million jury verdict as lead trial counsel on behalf of a class of State Farm policyholders in *Vogt v. State Farm Life Ins. Co.*, No. 16-cv-4170 (W.D. Mo. 2018), before The Honorable Nanette Laughrey. Other recent jury verdicts in class actions secured by his firm include a $217.7 million verdict on behalf of a class of Kansas farmers in *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591 (D. Kan. 2017) before The Hon. John Lungstrum (leading to a recently approved $1.51 billion nationwide settlement), and *Garcia v. Tyson Foods, Inc.*, No. 06-cv-2198 (D. Kan.), *aff'd* 770 F.3d 1300 (10th Cir. 2014) before The Hon. J. Thomas Marten.

Further contact information for judges and special masters overseeing Mr. Siegel's recent cases who can speak to Mr. Siegel's leadership qualities, along with biographies of Stueve Siegel Hanson attorneys in the firm's Data Breach and Privacy Group, are included in Exhibit B. Mr. Siegel estimates that time committed on other matters for the next year will average 50-75 hours per month, leaving the balance of his time to dedicate to this litigation.

**Ariana Tadler** has prosecuted class actions for 25+ years and is one of the few women litigators in the plaintiffs' class action bar to be a named partner.[4] She has litigated numerous high-profile, fast-paced cases, requiring unique legal and technological acumen and case management skills as well as endurance and agility. She is widely recognized for her litigation prowess with her experience spanning across a variety of distinct practice areas, including consumer, data breach and securities litigation, as well as complex litigation. *See* Exhibit C.

---

[4] *See, e.g.,* Amanda Bronstad, "In Mass Torts - Move Over, Mister," National Law Journal, Feb. 16, 2015 (recognizing the need for women lawyers in leadership).

In 2017, Ms. Tadler was appointed by U.S. Supreme Court Chief Justice Roberts to serve on the Federal Civil Rules Advisory Committee ("Rules Committee"), and was appointed by Committee Chair Judge John D. Bates to the subcommittee tasked with assessing potential civil rules for MDL cases. Prior to this appointment, Ms. Tadler was an active observer of the Rules Committee, providing written and oral testimony regarding the 2015 amendments. She has published articles and educated law students, lawyers, and judges regarding the amendments and applicable best practices.

Ms. Tadler is recognized as one of the nation's leading authorities on electronic discovery, and pioneered the establishment of an E-Discovery Practice group within a plaintiffs' firm 15+ years ago. She is the *only* plaintiffs' lawyer to be ranked repeatedly as a Band 1 E-Discovery Practitioner by Chambers and Partners in the Global-USA and USA-Nationwide categories.[5] Her exceptional skills and knowledge in the field of E-Discovery, and her collaborative spirit and creative, problem solving skills, have distinguished her among her litigation peers, uniquely positioning her in some of the most significant litigations of the decade.

Ms. Tadler has held leadership positions in dozens of the nation's largest and most complex class actions. She served as court-appointed Liaison Counsel and a member of the Plaintiffs' Executive Committee in *In re Initial Public Offering Securities Litigation*, No. 21-MC-92 SAS (S.D.N.Y.) ("IPO") (300+ securities fraud class actions coordinated before Judge Scheindlin involving 309 corporate issuers and 55 investment banks; creative techniques used to

---

[5] According to Chambers USA, market commentators described Ms. Tadler as "an absolutely first-rate practitioner, as well as being a remarkable consensus-builder under difficult circumstances;" she "stands out as a practitioner with excellent knowledge and skilled application as a litigator with specific expertise in that combination of e-discovery, data privacy and security, and information governance."

efficiently manage discovery).[6] Ms. Tadler serves on the Plaintiffs' Executive Committee in *In re: Apple Device Performance Litigation*, No. 5:18-md-02827-EJD (Co-Chair of Offensive Discovery and ESI Coordination Committee). Ms. Tadler is Co-Lead and Settlement Class Counsel in *In re: Conagra Foods, Inc*., No. CV 11-05379-CJC, MDL No. 2291 (C.D. Cal.) (April 2019 Order Directing [Settlement] Notice to Class Members, achieved after class certification granted by district court, affirmed by Ninth Circuit setting precedent favorable to consumers, and writ for certiorari petition denied).

Ms. Tadler has served in leadership roles in many of the largest, and most complex data breach and privacy cases. *E.g.*, *Facebook* (Interim Co-Lead Counsel; active in all aspects of litigation; leads discovery); *Yahoo!* (Plaintiffs' Executive Committee; active in all aspects of litigation; leads discovery); *Equifax* (PSC; charged with leading discovery); *Target* (PSC; active in all aspects of litigation; led discovery); *In re Intuit Data Litigation*, No. 15-cv-1778-EJD (N.D. Cal.) (PSC) (settlement pending final approval); *Fero v. Excellus Health Plan,* No. 6:16-cv-06569-EAW (W.D.N.Y.) ("*Excellus*") (special discovery counsel).

Several of Ms. Tadler's class and MDL cases are in various stages of discovery, *e.g.*, *Facebook, Apple*, and *Equifax*. In those cases, Ms. Tadler estimates spending approximately 60-70 hours per month in these matters over the next year.[7] To ensure her cases are efficiently and effectively managed, Ms. Tadler is supported by an experienced team, including partners Henry Kelston, Melissa Clark and A.J. de Bartolomeo, who have extensive class action, data breach,

---

[6] "The Jumpstart Outline: *Questions to Ask Your Client & Your Adversary to Prepare for Preservation, Rule 26 Obligations, Court Conferences & Requests for Production*," initially authored by Ms. Tadler and published by The Sedona Conference® (now in its Third Edition, with additional authors), was originally derived from Ms. Tadler's experience in *IPO* and desire to establish ESI best practices.

[7] Many of Ms. Tadler's open cases have reached resolution (*e.g.*, *Target, Intuit, ConAgra, Wendy's, Yahoo!*); investment of future time in these matters is expected to be limited. The Court has extended a stay in *In re General Mills, Inc. Kix Cereal Litigation*, No. 12-249 (KM).

complex litigation and sophisticated discovery experience. Depending on demand, at least one of these partners is assigned to work alongside Ms. Tadler in each matter Ms. Tadler leads to optimize efficiency and results and avoid unnecessary redundancy of time and effort.

Ms. Tadler is committed to the mentoring and advancement of new lawyers and supporting diverse leadership structures, recognizing the representative purpose of class actions.

**Hassan Murphy** has been the Managing Partner of Baltimore-based Murphy, Falcon & Murphy, P.A. ("The Murphy Firm") since 1999. He has extensive experience successfully litigating and resolving numerous complex matters as both defense and plaintiffs' lead and coordinating counsel and, under his leadership, The Murphy Firm has achieved over $800 million in verdicts and settlements in courts around the country.

Mr. Murphy is currently a member of the PSC in *Equifax*. There, he leads the PSC's factual investigation and—due to the case's high-profile, high-stakes nature—spearheads coordination and communication between the PSC and various legislative, regulatory, and private stakeholders. In selecting Mr. Murphy from a robust pool of applicants, Judge Thrash recognized his unique experience in navigating intensely fought cases on a national scale, including cases that require delicate and deft handling of nuanced legal and political issues. Mr. Murphy has investigated, litigated, and resolved numerous consumer class actions, and The Murphy Firm has represented both plaintiffs and defendants in contested cases involving a broad spectrum of legal theories, including fraud, negligence, gross negligence, False Claims Act, fraudulent marketing and advertising, and civil rights. Selected class actions are as follows:

- Mr. Murphy represented putative class members in *Boler, et al. v. Earley, et al.,* Case No. 5:16-cv-10323 (E.D. Mich., Levy, J.), the first class action case filed on behalf of the citizens of Flint, Michigan for their contaminated and valueless water.

- *M.S. v. Hamilton County Dept. of Education, et al.,* Case No. 1:16-cv-00501 (E.D. Tenn., Greer, J.), a putative class action case that Mr. Murphy brought, pursuant to 42 U.S.C. §

1983, on behalf of dozens of schoolchildren injured and killed in a tragic bus crash.  This case was recently remanded after a successful appeal and discovery will soon commence.

- *Fallows, et al. v. St. Joseph Medical Center, Inc.,* Case No. 24-C-10000817 (Cir. Ct. Balt. City, Md., Cox, J.), was a certified class action case in which Mr. Murphy represented more than 500 patients who received medically unnecessary cardiac stents from Dr. Mark Midei.  Mr. Murphy settled this matter for $50 million.

- As lead plaintiffs' counsel in *Queen v. Constellation Power Source Generation, Inc.,* Mr. Murphy reached a $55 million pre-suit class action settlement with Constellation Energy on behalf of homeowners whose groundwater was contaminated with coal ash.

- In *Billieson, et al. v. Scottsdale Ins. and Hous. Auth. of New Orleans*, Case No. 94-19231 (Civil Dist. Ct., Parish of Orleans, La.) Mr. Murphy defended a $5 billion class case brought by 2,400 children injured by lead paint, successfully settling for $55 million.

- Mr. Murphy was national coordinating counsel for H&R Block in its nationwide Refund Anticipation Loan litigation, which included two national class actions and four state-class actions comprised of millions of class members.  Mr. Murphy successfully litigated and resolved each of these matters.

*See* Exhibit D. In each of these cases, Mr. Murphy's creative legal theories; aggressive, proactive, and tenacious approach; and unique ability to compel diverse parties to the negotiating table delivered his clients the best possible value for their cases.

Mr. Murphy's background and expertise are both wide and deep. After obtaining his B.A. from Williams College in 1990 and his J.D. from the Georgetown University Law Center in 1994, Mr. Murphy worked as an associate attorney at New York-based Curtis, Mallet-Prevost, Colt & Mosle, one of the nation's oldest law firms.  While there, Mr. Murphy specialized in international corporate transactions, representing clients in complex business transactions, including mergers, acquisitions, finance, and bankruptcy arbitrage. In that capacity, he represented a $4.7 billion takeover target, a $65 million seller of its assets, and an international oil and gas producer in a $500 million asset securitization.

Mr. Murphy returned to Baltimore and joined his father, William H. Murphy, Jr., in 1997, becoming The Murphy Firm's managing partner in 1999. As managing partner, Mr. Murphy

broadened the firm's capabilities and was soon hired to defend Microsoft in two national employment class actions. In those cases, The Murphy Firm worked cooperatively with multiple national law firms, and their efforts resulted in a denial of class certification in both cases. Thereafter, Mr. Murphy was hired to either lead or take on a significant role in the defense of multiple complex national class actions and mass tort cases around the country.

Mr. Murphy and The Murphy Firm have represented such corporate giants as H&R Block, Johnson & Johnson, Microsoft, Sony, Qualcomm, Coca-Cola Enterprises, Inc., the Baltimore Orioles, the Washington Redskins, the Maryland Stadium Authority, Don King Productions, Honeywell Corporation, Allied Signal, Inc. and the University of Maryland Medical System. Mr. Murphy's experience in this regard is unique among the pool of applicants. Because he has defended nationwide class actions on behalf of corporate entities and counseled C-suite executives, Mr. Murphy is intimately familiar with the interests, motivations, and operations of large international corporations, particularly in the context of large-scale litigation. That insight significantly informs his representation of plaintiffs and his ability to effectively communicate and negotiate with corporate defendants. Mr. Murphy maintains a robust plaintiffs' practice in both state and federal courts, primarily focusing on class actions, mass torts, and individual cases regarding consumer protection, catastrophic injury, and civil rights violations.

The Murphy Firm—a 100% minority owned firm in operation for more than 70 years— has built its reputation on fighting for the rights of the underrepresented and underprivileged. The Firm's attorneys are diverse both personally and professionally and work collaboratively in order to ensure that each differing perspective is considered and marshaled for the client's benefit. Mr. Murphy anticipates spending approximately 10 hours per month on other pending

MDL and class action cases. He will be supported in his leadership role by his law partner, Jessica Meeder, who has extensive experience in complex, aggregate, and class action litigation.

**John Yanchunis** leads Morgan & Morgan's class action group. *See* Resume, Exhibit E. Morgan & Morgan is the largest contingency-only plaintiffs' law firm in the country, with over 470 lawyers in more than 50 offices throughout the United States. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases in the country. Mr. Yanchunis—whose career as a trial lawyer began 36 years ago following the completion of a two-year clerkship with United States District Judge Carl O. Bue, Southern District of Texas, (retired)—has efficiently and expeditiously led many privacy MDL and non-MDL class action cases, including as Lead or Co-Lead Counsel, as detailed below with each case's current status denoted in parentheses (if not previously addressed).

Mr. Yanchunis's MDL data breach experience in leadership includes *Yahoo!* (Lead Counsel); *Home Depot* (Co-Lead Counsel); *Equifax* (PSC member); *OPM* (Executive Committee); *Target* (Executive Committee). He has also participated in various aspects as counsel in *Anthem* and *Excellus*.[8] Mr. Yanchunis's court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, including: *Facebook* (Co-Lead Counsel); *Walters v. Kimpton Hotel & Restaurant*, No. 3:16-cv-05387 (N.D. Cal.) (Lead Counsel) (final approval hearing set for June 20, 2019); *Torres v. Wendy's International, LLC*, No. 6:16-cv-210 (M.D. Fla.) (Lead Counsel) (final approval entered Feb. 26, 2019); *Ortiz v. UCLA Health System*, No. BC589327 (Cal. Sup. Ct. Los Angeles Cnty.) (Executive Committee) (final approval hearing set for June 18, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation*

---

[8] Outside of the privacy arena, Mr. Yanchunis is also currently a member of the Plaintiffs' Steering Committee in the MDL case *In re Monat Hair Care Products Marketing, Sales Practices, and Products Liability Litigation*, 1:18-md-2841 (S.D. Fla.), a deceptive trade practices matter involving defective hair care products.  This case is in active litigation with Mr. Yanchunis's primary responsibilities relating to Plaintiffs' expert reports and related discovery.

("*Arby's*"), Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval hearing set for on June 4, 2019).

Mr. Yanchunis also served as Lead or Co-Lead Counsel in the following privacy class cases: *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800 (S.D. Fla.) (final approval, Oct. 7, 2013); *Carsten v. Univ. of Miami*, No. 1:14-cv-20497-KMW (S.D. Fla.) (final approval, Dec. 17, 2014); *Ramirez v. ChenMed, LLC*, No. 14-12319-CA-04 (Fla. 11th Cir. Ct.) (final approval, Feb. 2, 2015); *Bishop v. Shorter University*, No. 4:15-cv-00033-HLM (N.D. Ga) (final approval, Oct. 17, 2017); *Linnis v. TIMCO Aviation Services, Inc.*, 16-cv-486 (M.D.N.C.) (final approval, May 31, 2018); *Brady v. Scotty's Holdings*, LLC, 1:17-cv-01313 (S.D. Ind.) (final approval, Oct. 16, 2018); *Albert v. School Board of Manatee County, Florida*, No. 17-CA-004113, (Fla. 12th. Cir. Ct.) (final approval, Nov. 19, 2018); *Fulton-Green v. Accolade, Inc.*, 2:18-cv-00274-GEKP (E.D. Pa.) (preliminary approval granted Jan. 24, 2019); and *Foreman v. Solera Holdings, Inc.*, 6:17-cv-2002, (M.D. Fla.) (final approval, April 10, 2019).

Mr. Yanchunis began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of Internet users. Beginning in 2003, he served as co-Lead Counsel in the successful prosecution and settlement of cases involving the privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act (DPPA), against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). *See Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, he also served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank of*

*America*, No. 05-cv-80806 (S.D. Fla.) (class settlement of $10 million), and *Kehoe v. Fidelity Fed. Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) (class settlement of $50 million).

Mr. Yanchunis's chief time commitments over the upcoming year will relate to *Yahoo!*, in which a motion to notice the class of a $117.5 million Settlement Fund is currently pending, and *Facebook*, in which a motion to dismiss is pending, and discovery recently commenced and is actively underway. Mr. Yanchunis leads a deep bench of talented lawyers who have clerked for federal judges at the district and circuit level. Based upon the lawyers available to him, his commitment to his other cases is estimated to take 40 to 65 hours per month.

Mr. Yanchunis is a member of the Sedona Conference, participating in Working Group 11 ("WG-11"), which focuses on data security and privacy liability. He is also a member of WG-11's Proactive Privacy and Data Security Governance subcommittee. He was recognized by the National Law Journal as its 2016 Trailblazer in the Area of Cybersecurity & Data Privacy.

**Karen Hanson Riebel**, a partner with Lockridge Grindal Nauen, P.L.L.P. ("LGN"), has focused her practice on complex class action litigation for more than 20 years, and has extensive trial experience. For example, she was a member of the team of lawyers that tried the *In re ICN/Viratek Securities Litigation* in the Southern District of New York before the Honorable Kimba Wood. The case was settled for $14.5 million after the jury returned a partial verdict. In 1994, she spent seven months in Anchorage, Alaska, as a member of the trial team that secured a jury verdict for punitive damages in the amount of $5 billion for a mandatory punitive damages class in *In re The Exxon Valdez*, Case No. A89-0095-CV (D. Alaska). For these efforts, she, along with the other members of the trial team, was awarded the Trial Lawyers' For Public Justice Trial Lawyers of the Year award in 1994. In addition, she was extensively involved in the administration and evaluation of the more than 50,000 claims submitted in that litigation.

Ms. Riebel has been at the forefront of prosecuting data breach and data privacy across the United States. She has or is currently serving as Co-Lead Counsel in *In re: Community Health Systems, Inc., Customer Security Data Breach Litigation (MDL 2595)*, No. 15-cv-222-KOB (N.D. Ala.); Co-Lead Counsel for Financial Institution Plaintiffs in *Arby's* and *Greater Chautauqua Federal Credit Union, et al. v. Kmart Corporation, et al.,* No. 15-02228 (N.D. Ill.); Liaison Counsel for the Financial Institution Plaintiffs and as a member of the Plaintiffs' Leadership Committee in *Target*; as a member of the Plaintiffs' Steering Committee for the Financial Institutions in *Home Depot*; as a member of the Consumer Plaintiffs' Executive Committees in *Yahoo!*, *Shores et al. v. Premera Blue Cross*, No. 15-01268 (D. Or.), and *In re: FedLoan Student Loan Servicing Litigation,* No. 18-02833 (E.D. Pa.); and as a member of the Plaintiffs' Executive Committees in *Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, 17-01102 (D. Co.); *Veridian Credit Union v. Eddie Bauer LLC*, No. 17-00356 (W.D. Wa.); *First Choice Federal Credit Union et al. v. The Wendy's Co. et al.,* No. 16-00506 (W.D. Pa); and the financial institution track of the *Equifax* litigation. Ms. Riebel is also serving as Class Counsel in *Facebook*, *In re Supervalu, Inc. Customer Data Security Breach Litigation*, MDL No. 2586 (D. Minn.), *In re Ashley Madison Customer Data Breach Security Litigation*, MDL No. 2669 (E.D. Mo.), *Storm et al. v. Paytime, Inc.*, No. 14-01138-JEJ (M.D. Pa.), and *Dittman et al. v. UPMC et al.*, No. GD-14-003285 (Allegheny Cty., Pa.). Additional information regarding Ms. Riebel's qualification is attached as Exhibit F.

Ms. Riebel estimates that time committed on other matters will average 75 hours per month, leaving the balance of her time to dedicate to this litigation.

**Joseph P. Guglielmo** has been appointed to numerous MDL leadership positions, including lead counsel in several prominent data breach MDL actions. Mr. Guglielmo currently

serves as Co-Lead Counsel for the financial institution plaintiffs in *Equifax*, where he argued the motion to dismiss that recently was denied in part and granted in part. Mr. Guglielmo also serves as Co-Lead Counsel on behalf of financial institution plaintiffs in *Home Depot*, where he was one of the lead attorneys who negotiated a $27.25 million settlement on behalf of financial institutions nationwide. Mr. Guglielmo was previously appointed to the Plaintiffs' Steering Committee on behalf of financial institution plaintiffs in *Target*, where he helped achieve certification of a nationwide class and a settlement of approximately $59 million. In *Target*, Mr. Guglielmo led plaintiffs' third-party discovery efforts and deposed several key party and third-party witnesses, including the Chief Information Security Officer and forensic investigator responsible for investigating the cause of the data breach.

Mr. Guglielmo has been extensively involved in complex class action, MDL, and data breach litigation. Mr. Guglielmo has a variety of complementary talents needed to handle this type of litigation, such as experience briefing and arguing discovery and substantive motions; taking and defending depositions; working with liability and damages experts to develop the unique damages theories associated with data breach actions; negotiating and managing large ESI productions; managing legal research and briefing related to novel legal issues; detailed knowledge of data breach case law stemming from his direct participation in many precedent-setting data breach actions; and a well-honed acumen for meaningful settlements. For example, as Lead Counsel in *Winsouth Credit Union v. Mapco Express Inc*., No. 3:14-cv-01573 (M.D. Tenn.), Mr. Guglielmo negotiated the largest dollar-per-payment-card recovery in a data breach action brought on behalf of a class of financial institutions.  In *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wa.), Mr. Guglielmo led the plaintiff's discovery efforts and deposed numerous party and non-party witnesses, including the Chief Financial Officer and

Corporate Technology and Information Security officers, and was part of the settlement negotiation team. And in *First Choice Federal Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506 (W.D. Pa.), Mr. Guglielmo defended the named plaintiffs' depositions and was one of the principle negotiators of a $50 million settlement on behalf of financial institutions involving the breach of personal and financial information of millions of credit and debit cards.

Mr. Guglielmo also has demonstrated his ability to work well with others given his long standing relationships with both plaintiffs' and defense counsel. For example, although not formally appointed to a leadership position, Mr. Guglielmo was tasked by lead counsel in *In re Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693 (C.D. Cal.), to negotiate an electronic discovery protocol, draft discovery requests, and assist with negotiations regarding the search terms for the defendant's production. Mr. Guglielmo also was asked by lead counsel in the financial institution track of the *Arby's* litigation to argue substantive discovery motions concerning proportionality and to depose the Chief Information Officer and forensic investigator.

In addition to data breaches, Mr. Guglielmo also has been appointed to leadership positions in other MDLs, including currently serving as Co-Lead Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626 (M.D. Fla.), where the court recently certified several horizontal and vertical classes with respect to federal and state (California and Maryland) antitrust violations, as well as violation of the California Unfair Competition Law and Maryland Consumer Protection Act. Mr. Guglielmo's previous MDL appointments also include: *In re WellPoint, Inc. Out of Network "UCR" Rates Litigation*, No. 2:09-ml-02074 (C.D. Cal.); *In re: Aetna, Inc., Out-Of-Network "UCR" Rates Litigation*, No. 2:07-cv-03541 (D.N.J.); and *In re Nutella Marketing and Sales Practices Litig.*, No. 3:11-cv-01086 (D.N.J.).

Finally, Mr. Guglielmo possesses great experience and acumen in electronic discovery issues. He was a member of the Steering Committee of Working Group 1 of the Sedona Conference® from 2014 to 2018 and a member of the drafting team responsible for the Sedona Principles, Third Edition. Presently, Mr. Guglielmo serves on the board of the Advanced eDiscovery Institute at Georgetown University Law Center. In sum, Mr. Guglielmo brings invaluable experience steering the developing area of data breach law, as well as a practical understanding of the information technology systems at issue in data breach litigation. His appointment to the PSC would serve the best interests of the Class. More information regarding Mr. Guglielmo and his firm are attached as Exhibit G.

Mr. Guglielmo estimates that time committed on other matters will average 50-60 hours per month, leaving the balance of his time to dedicate to this litigation.

**Melissa Weiner**, a partner at Pearson, Simon & Warshaw, LLP ("PSW"), has experience litigating a diverse body of class actions—including consumer protection, product defect, intellectual property, automotive, false advertising and Fair Credit Reporting Act—providing her a framework to successfully litigate any subject matter. She understands the significance of an appointment here and commits to personally deliver high quality work and the time and resources necessary to effectively litigate this action.

Ms. Weiner is a leader in her legal community, specifically in her role as Co-Chair for the Mass Tort and Class Action Practice Group for the Minnesota Chapter of the Federal Bar Association. The Practice Group turned its focus in the last year to cultivation of diverse leadership in MDLs and class actions as research revealed that the number of trials and in-court speaking opportunities have continued to steeply decline, and that the decline impacts women,

diverse attorneys and other underrepresented groups disproportionately and negatively.[9] Ms. Weiner and her colleagues concluded that providing newer lawyers with more frequent in-court speaking opportunities and litigation experience will begin to reverse these trends. Ms. Weiner and her co-chairs are actively collaborating with the Minnesota Federal District Bench to address and remedy these issues through discussion of best practices and/or guidelines for the district.

PSW brings significant resources to this MDL. PSW's partners have held leadership roles in numerous significant cases. *See* PSW Firm Resume, Exhibit H. Key members of PSW's litigation team for this matter are partner Daniel Warshaw, who brings both data privacy and MDL leadership experience to the table; along with Joseph Bourne, who has more than nine years of experience, including a focus on data privacy and data breach litigation. *See id*.

Ms. Weiner chairs the Plaintiffs' Executive Committee (PEC) in *In Re Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation*, 1:16-md-02695-JB-LF (D.N.M.). In that role, she is solely responsible for leading and directing pretrial matters, including the delegation of common benefit work responsibilities to PEC members. She had a substantial role in strategizing and preparing the opposition to the motion to dismiss and was lead in arguing that motion, resulting in a 249-page order favorable to plaintiffs. Additionally, Ms. Weiner leads all strategy related to class certification.

Ms. Weiner was appointed to the Plaintiffs' Steering Committee in *In re Samsung Top-Load Washing Machine Marketing, Sales Practices & Product Liability Litigation*, 5:17-md-02792 (W.D. Okla.), a nationwide class action regarding a design defect in 2.8 million top loading washing machines, which resulted in a nationwide settlement. Ms. Weiner was also

---

[9] While men and women have been enrolling in law schools at roughly the same rate for decades and the percentage of women associates at larger firms is comparable to the number of men associates, the percentage of partners who are women remains below 25 percent. The percentage of diverse attorneys who are associates at larger firms has increased to almost 25 percent, yet the percentage of diverse attorneys who are partners remains below ten percent.

appointed to leadership in *In re Windsor Wood Clad Window Product Liability Litigation*, 16-MD-02688 (E.D. Wis.), a nationwide class action regarding allegedly defective windows. Ms. Weiner assisted lead counsel in successfully resolving this action.

Ms. Weiner has also played an active role in data breach litigation. Ms. Weiner conducted extensive pre-suit investigation and crafted a detailed complaint in *Intel Corp. CPU Marketing, Sales Practices and Products Liability Litigation*, 3:18-MD-02828 (D. Or.), a significant portion of which made its way into the consolidated amended complaint. Additionally, Ms. Weiner represents the plaintiffs in *Ford, et al., v. [24]7.ai, Inc.*, 18-cv-02770-BLF (N.D. Cal.), which alleges that the defendant software and services company failed to secure and safeguard consumers' payment card data and other personally identifiable information. More information regarding Ms. Weiner's experience is attached as Exhibit H. Ms. Weiner estimates that after accounting for time committed on other matters she will have a minimum of 100 hours per month to dedicate to this litigation.

## III.    FUNDING OF THE LITIGATION.

The Siegel-Tadler-Murphy slate will self-fund the litigation and will not seek contributions from litigation funders or those not named in the Court's appointment order.

## IV.    AGREEMENTS WITH OTHER COUNSEL.

No agreements have been made among members of the slate, and no member of the slate has solicited support from other lawyers.

## V.    MANAGEMENT OF THE LITIGATION.

As detailed in the biographies above, the Siegel-Tadler-Murphy slate has extensive involvement as Lead or Co-Lead counsel in complex litigation including data breach class actions. Grounded in that experience is an understanding of the importance of directing the litigation in a lean and efficient manner to ensure that it is prosecuted without unnecessary effort,

duplication and cost, while implementing billing and expense protocols with checks and balances to protect the class. The slate will use established protocols to ensure the litigation is pursued in a manner that can be best managed and supervised by the Court. These protocols govern authorization of work tasks, rules for timekeeping, monthly submission of time records, pre-approval of expenses incurred, and other administrative tasks. The protocols are based on previous procedures developed by the slate (and which have continued to evolve) in other data breach cases including *Target, Yahoo!, Home Depot, Equifax*, and *Facebook*.

For example, all work performed in the litigation will require prior written approval by a Co-Lead Counsel; we will maintain a uniform system of rules, formats and guidelines for time-keeping and expense recordation that is fair and efficient; we will require that time be accurately and contemporaneously maintained in segments of 1/10th of an hour and submitted on a set date each month, and require that it be certified by a senior partner from the submitting firm attesting to the accuracy, correctness and compliance with the protocols of the monthly submission. At the Court's request, the slate will make the time and expense records available quarterly to the Court *in camera* to aid the Court in its obligation to the class to manage the MDL litigation.

Proposed Lead Counsel intend to organize the Plaintiffs' Steering Committee into Litigation Subcommittees and Committee Chairs to facilitate the efficient allocation and monitoring of common benefit work. *See* Exhibit I. The proposed Subcommittee assignments are based on the particular skill sets and case experience of each lawyer and include: Administration, Briefing, Offensive Discovery & ESI, Defensive Discovery, Experts, Fact Development, and Settlement. Under the proposed Subcommittee structure, each proposed Subcommittee will have at least one Co-Lead Counsel or PSC member serving as Chair. Proposed Lead Counsel plan to provide status communications to all counsel by email on an as needed basis. The frequency of

the reports will depend on case activity. Co-Lead Counsel will provide a "Leadership Contact Sheet" to non-lead counsel and encourage non-lead counsel to communicate with Lead Counsel, Liaison Counsel or Committee Chairs on any issue relevant to the case.

## VI.     OTHER FACTORS RELEVANT TO THE SELECTION OF LEAD COUNSEL.

Rule 23(g)(A) provides that in appointing lead counsel the Court should consider (i) work counsel has performed identifying or investigating potential claims in the action; (ii) counsel's experience with claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv); *see also* Manual on Complex Litigation 10.22. Although much of the forgoing discussion overlaps the Rule 23(g) factors, the following additional considerations weigh in strong support of the Siegel-Tadler-Murphy slate.

### A.     23(g)(A)(i) – The Slate has Spent Substantial Time Investigating Potential Claims in the Action and Retained the Key Experts for the Case.

Like many applicants in this MDL, the Siegel-Tadler-Murphy slate has spent substantial time and effort investigating the potential claims in this case and bring with them experience from similar cases presenting common law and statutory claims from every State in the Union. For example, members of the slate developed the "50-state" complaint model in *Home Depot* and *Equifax*, and briefed and argued the motion to dismiss related to those claims. This experience will guide the selection of appropriate bellwether claims as the Court contemplated at the initial case management conference. Other applicants have similar experience.

But the expression and pleading of those bellwether claims will depend on more than good lawyering—navigating these claims is contingent on having the right experts to guide both the factual allegations and the resulting harm to the class. In this regard, the Siegel-Tadler-

Murphy slate has retained the following key experts in the field,[10] who have assisted the slate in investigating the potential claims and resulting damages in this action:

- **Mary Frantz** is the Founder and Managing Partner of Enterprise Knowledge Partners (EKP), a premier provider of cyber security, forensics, compliance and technology strategy services. Ms. Frantz is regarded as the premier technical expert in data breach litigation, providing expert opinion and guidance in cybersecurity, data breach forensics, and breach remediation. She has been engaged in many of the largest data breach cases including *Equifax*, *Anthem*, *Yahoo!*, and *Facebook*. She has been engaged by the Siegel-Tadler-Murphy slate since revelation of the Marriott data breach, has assisted the slate in understanding the mechanics and scope of the breach, and will be called upon to provide her expertise throughout the litigation.

- **James Van Dyke** has 32 years' experience in financial services and digital commerce. His expert witness experience includes providing assessment of damages caused by identity theft and fraud and the quantifiable risk stemming from data breaches. Mr. Van Dyke brings a data-driven approach, building on his experience as CEO at Javelin Strategy & Research. He served on the Consumer Advisory Board of the Consumer Financial Protection Bureau and has advised counsel on several key data breach cases including *Equifax*, *Anthem*, *Yahoo!*, and *Facebook*.

- **Ian Ratner**, a CPA and founding partner of GlassRatner, brings 30 years of experience in public accounting, forensic accounting, and business valuations. In 2018, GlassRatner was recognized by The National Law Journal as one of the country's top Forensic and Litigation Support providers. Mr. Ratner has testified at trials, arbitrations, and depositions on approximately 140 occasions and has worked on matters throughout the United States for law

---

[10] The slate believes it is in the best interests of the class to publicly disclose these experts early in the litigation; other undisclosed experts will be retained as the case proceeds.

firms, governmental agencies and Fortune 500 companies. He has advised on damages issues related to data breach cases in *Equifax*, *Yahoo!*, *Home Depot*, and *Facebook*.

**B.   23(g)(A)(ii) and (g)(A)(iii) – The Siegel-Tadler-Murphy Slate's Experience in Data Breach Litigation and Knowledge of Applicable Law is Unsurpassed.**

As discussed above and reflected in the attached biographies and compilation of Data Breach Experience, the Siegel-Tadler-Murphy slate has led nearly all of the major consumer data breach cases litigated to date. There is no doubt that several other applicants will bring knowledge of the applicable law to this litigation, but the Siegel-Tadler-Murphy slate has the added benefit of having the most experience successfully litigating data breach class actions *in this District*, and briefed and argued the key Article III standing case before the Fourth Circuit. *See Hutton, et al. v. National Board of Exam'rs in Optometry, Inc*., Case No. 1:16-cv-03025-JKB (D. Md.) (Bredar, J.).

Mr. Siegel and his colleagues at Stueve Siegel Hanson filed *Hutton* against the National Board of Examiners in Optometry, Inc. ("NBEO"), the primary testing organization in the field of optometry in the United States, after optometrists from across the country began experiencing various types of identity theft and fraud. Citing the Fourth Circuit's 2017 opinion on data breach standing in *Beck v. McDonald*, 848 F.3d 269 (4th Cir.), the district court dismissed the case for lack of Article III standing because injuries were speculative and the breach was not plausibly "traceable" to NBEO. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., 243 F. Supp. 3d 609 (D. Md. 2017). Mr. Siegel argued the appeal before the Fourth Circuit, and on June 12, 2018, the Fourth Circuit issued a published opinion reversing the district court's dismissal. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., 892 F.3d 613 (4th Cir. 2018).

Following the appeal, Mr. Siegel and his team secured an additional victory when the district court denied NBEO's motion to dismiss the superseding complaint, sustaining claims for

negligence, breach of contract, breach of implied contract, unjust enrichment, and violations of sixteen state consumer protection and data breach notification statutes. *See Liang*, No. 17-1964, Dkt. 40 (D. Md. Sept. 28, 2018). Thereafter, Mr. Siegel negotiated a classwide settlement that could serve as a future benchmark in this litigation. Specifically, the parties agreed to a non-revisionary cash fund of $3.25 million on behalf of 61,000 optometrists that will be used to pay for: (1) reimbursement of class members' claimed time spent remedying issues related to the data breach for up to 40 hours at $25 per hour; (2) reimbursement of class members' documented out-of-pocket losses fairly traceable to the data breach, up to $7,500 per individual; (3) three years of high-level, three-bureau credit monitoring; and (4) access to identity restoration services for all class members, even those who do not submit a claim. Particularly relevant here, the time component of the settlement, whereby class members can receive up to $1,000 for time spent remedying issues related to the breach *without documentation*, is by far more than any other data breach settlement in history and recognizes the importance of compensating individuals for the time involved in responding to a breach. Thousands of class members have made claims under the settlement and a final approval hearing is set for July 12, 2019. *See id*.

## C.   Rule 23(g)(A)(iv) – The Slate Brings Substantial Resources to the Case.

As discussed in the introduction, the Siegel-Tadler-Murphy slate brings substantial human and economic resources to this case. All the attorneys in this slate are committed to the prosecution of this litigation, and have the full support and resources of their respective firms.

## VII.   CONCLUSION

The Court will have before it several applications from exceptional counsel seeking to lead this litigation. Based on the objective criteria set forth in Rule 23(g), the Siegel-Tadler-Murphy slate believes it is the "best able to represent the interests of the class" and looks forward to addressing the Court on April 29.

Dated:    April 19, 2019                          Respectfully submitted,

By:  /s/ Norman E. Siegel
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Fax: (816) 714 7101
siegel@stuevesiegel.com

*Attorney for Plaintiff Nicholas Walker*

Ariana J. Tadler
**MILBERG TADLER PHILLIPS
GROSSMAN LLP**
One Penn Plaza
New York, New York  10119
Phone: (212) 594-5300
Fax: (212) 868-1229
atadler@milberg.com

*Attorney for Plaintiff Bari Vapnek*

William H. Murphy III
**MURPHY, FALCON & MURPHY
PA**
1 South Street, 23rd Floor
Baltimore, Maryland  21202
Phone: (410) 951-8744
Fax: (410) 539-6599
hassan.murphy@murphyfalcon.com

*Attorney for Plaintiffs Harry Bell and
Edward Claffy*

John A. Yanchunis
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida  33602
(813) 223-5505 Telephone
(813) 223-5402 Facsimile
jyanchunis@forthepeople.com

*Attorney for Plaintiffs Harry Bell and
Edward Claffy*

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

*Attorney for Plaintiffs David J. Kimmel,
Michael C. Christner, Thomas Stabile,
Gary Meter and Ronald Bowers*

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile: 612-339-0981
khriebel@locklaw.com

*Attorney for Plaintiffs Robert Dorfman,
Eric Mitchell, Greg Leeb, Raven Hall,
Natalene Gauna, W. Gregory Smith,
John Turgeon-Schramm, Karen
Stivaletta, Tom Abogabal, Jacquelyn
Cauble, Michael Rubin, Kerri Shapiro,
Denee Delnayh, Leon Meyer, Robert
Baker, Joseph Tobin, Teresa Tobin,
Kathryn Costa, Scott Farkas. Kirk
Skinner, and Lori Trent*

Melissa S. Weiner
**PEARSON, SIMON &
WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: 612-389-0600
Facsimile: 612-389-0610
mweiner@pswlaw.com

*Attorney for Plaintiff Dianne King*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2019, I electronically filed the foregoing document with the Clerk of the Court, using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Norman E. Siegel
Norman E. Siegel