**CARLSON LYNCH**

1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412.322.9243
Fax: 412.231.0246
www.carlsonlynch.com

Hon. Paul W. GrimmApril 19, 2019
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD 20770

      Re:    Application of Gary F. Lynch for a Leadership Role in the Consumer Track
              (*In Re: Marriott International, Inc.*, No. 8:19-md-2879-PWG)

Dear Judge Grimm:

Pursuant to this Court's April 11, 2019 Order requesting leadership applications from plaintiffs' counsel for the consumer track, please accept my application for appointment as Co-Lead Counsel or, alternatively, as a member of the Steering Committee. This letter addresses each of the questions posed by the Court in its April 11 Order, as follows:

**I.**    **Nature of Application, Breadth of Experience, Diversity of Background and Role Sought**

I am submitting an individual application, rather than applying as part of a slate. For the last several years, the primary focus of my practice has been data breach and privacy litigation on behalf of individuals and financial institutions. As explained in more detail herein and in the attached materials, I have been appointed to serve as Co-Lead Counsel in two data breach cases consolidated by the Judicial Panel on Multi-District Litigation (*Equifax* and *Home Depot*), was appointed as Co-Lead Counsel in the *Wendy's* consolidated data breach litigation, which resulted in a $50 million settlement for the financial institutions, and am lead counsel for plaintiffs in the *UPMC* state court class action regarding a data breach by the regional healthcare system, in which I have argued successfully before the Pennsylvania Supreme Court.[1] In addition to my

---

[1] A full citation for each of the cases referred to in this letter is set forth in my Representative Case Summaries, attached hereto as Exhibit "B," and/or the tables of cases attached as Exhibits "C" and "D."

1

role as lead counsel in foregoing data breach and privacy MDL and class litigation, I have served on the steering committees for numerous other data breach and privacy cases.  A complete listing of my data breach and privacy litigation experience is set forth in my Table of Data Breach and Privacy Cases, attached hereto as Exhibit "C."  I have a demonstrated history of working collaboratively and successfully with nearly all of the attorneys seeking appointment to leadership roles in this case and believe there is a "dream team" slate which can be created by combining the best and most experienced of the applicants.  For this reason, I have chosen to submit my application individually and respectfully ask to be included on this Court's hand-selected "dream team."

My experience with data breach and privacy litigation is direct, broad and substantive.  As explained in more detail herein and in the attached materials, I have been involved in all aspects of data breach litigation -- I have met and counseled clients in the wake of a breach, drafted consolidated complaints, negotiated ESI and discovery protocols (including search terms and custodians), drafted and responded to written discovery, taken and defended numerous depositions, selected and worked with liability and damage experts, drafted response briefs to motions to dismiss, managed discovery of plaintiffs, negotiated settlements (with and without the use of third-party mediators). I have briefed and argued appeals, including an appeal to the Pennsylvania Supreme Court which resulted in a landmark ruling recognizing a common law duty of care for holders of electronically stored personally-identifiable information, and an appeal to the United States Court of Appeals for the Third Circuit addressing Article III standing for consumer plaintiffs in data breach litigation.  Having served as both lead counsel and as a steering committee member in data breach litigation, I have direct experience in providing high-level leadership, as well as taking direction from leadership for particular litigation tasks.

I bring something of a diversity of background to this case. Unlike many of the other applicants, I never have been employed by an established plaintiffs' class action firm. Instead, I began my career at Reed Smith and, after a few years in the defense bar, left to establish my own plaintiffs' firm, which has grown into a twenty-attorney boutique class action firm with offices in Pittsburgh and San Diego. (*See* Biography of Gary F. Lynch, attached hereto as Exhibit "A"). The management and entrepreneurial skills needed to establish and build a law firm are very similar to the skills needed to oversee an MDL proceeding. I have such skills. Further, my law firm, while well-established, does not have any ongoing, reciprocal relationships with, or obligations to, any other plaintiffs' class action firms.[2]

## II.   Prior and Current MDL and Class Action Leadership in Data Breach and Non-Data Breach Litigation

The focus of my practice for the majority of my career has been in representing plaintiffs in class action and complex litigation. For the last several years, the primary substantive focus of the cases I have litigated has been data breach and privacy. My Table of Data Breach and Privacy Cases, attached hereto as Exhibit "C," lists the data breach and privacy cases in which I have participated. As indicated in this table, my experience in data breach litigation has ranged from serving as lead counsel in MDL proceedings and overseeing all aspects of the litigation, to working on specific litigation tasks assigned by lead counsel in cases where I was not appointed to a leadership role. I have been the team manager, the cleanup hitter and the utility infielder, and am comfortable in each of these roles. Respectfully, put me in, coach!

---

[2] My firm has been directly retained by the following plaintiffs in this litigation: Robert Dorfman, Greg Leeb, Natalene Guana, Gregory Smith, Karen Stivaletta, Lori Trent, Kerri Shapiro, Kathryn Costa, Scott Farkas, Deneen Delnay, Eric Mitchell, Leon Meyer, Robert Baker, Raven Hall, Michael Rubin, Tom Abogabal, Jacquelyn Cauble, Joseph Tobin, and Teresa Tobin. I have agreed to share the representation of these clients with Scott+Scott, Attorneys at Law LLP; Lockridge Grindal Nauen P.L.L.P.; and Chestnut Cambronne PA. I have been included as plaintiffs' co-counsel on the following complaints: *Allen v. Marriott Int'l*, 3:18-cv-02050 (D. Conn.); *Costa v. Marriott Int'l*, 3:19-cv-0145 (D. Conn.); *Dorfman v. Marriott Int'l*, 3:18-cv-01982 (D. Conn.); *Skinner v. Marriott Int'l*, 3:18-cv-2131 (D. Conn.); and *Abogabal* v. *Marriott Int'l*, 8:19-cv-1026 (D. Md.).

3

My experience in data breach and privacy litigation is extensive, and encompasses nearly every aspect of the litigation process, as can be demonstrated by a short description of my work in some of the major data breach cases in which I have participated. In *Target,* I was appointed by the court to serve on the five person overall Executive Committee which oversaw all tracks in the consolidated litigation. I coordinated the deposition preparation for each of the financial institution plaintiffs and defended their depositions, and worked with each financial institution plaintiff to gather their discovery responses and damages information. I took the corporate designee deposition of Target's HVAC contractor which was identified as the source of the data thieves' intrusion, and I took the deposition of a member of Target's IT security management staff, addressing the inadequacy of Target's IT security policies and their implementation. I worked closely with the liability expert in developing plaintiffs' theory of liability and assisted in gathering information for the damages expert for the financial institutions.

In *Home Depot*, I was appointed by the court to serve as co-lead counsel for the financial institution plaintiffs. In this role, I oversaw all aspects of the litigation, and worked collaboratively with the steering committee members to assign work and manage each committee member's participation in the case. I was directly involved in counseling and recruiting financial institution plaintiffs for the consolidated amended complaint. I took two of the three depositions of Home Depot's employees and corporate designees. Most significantly, I selected the expert witnesses and worked closely with the damages expert to develop a working damage model. When the case was mediated, I prepared the damage paradigm which drove the settlement discussions, worked directly with the plaintiffs to identify their damages, and served as the point of contact with defense counsel, Kristine M. Brown (404-881-7584), for purposes of direct negotiation between the parties during the protracted mediation process.

In *UPMC*, I am currently serving as lead counsel in this Pennsylvania state court putative class action, involving the breach of the personally-identifiable information of 62,000 employees. The defendant initially succeeded in having the case dismissed on the theory that it owed no common law duty to act reasonably to protect its electronically-stored employee data. The intermediate appellate court affirmed and I appealed and argued the case to the Pennsylvania Supreme Court. On November 21, 2018, the Court issued its landmark decision recognizing that holders of personally-identifiable information have a common law duty to reasonably safeguard such information from cyber-attack. Additionally, the Court clarified Pennsylvania's economic loss doctrine and held that such doctrine does not apply in instances where the source of the duty alleged arises independently from any contractual relationship.

In *Equifax*, I am currently serving as co-lead counsel for the financial institution plaintiffs. On January 28, 2019, the district court dismissed the portion of the financial institution plaintiffs' claims related to the breach of consumers' personally identifiable information, concluding that the financial institution plaintiffs had not adequately alleged a basis for Article III standing. The court denied defendant's motion to dismiss with regard to the financial institution plaintiffs' claims related to the breach of payment card data. The financial institution plaintiffs have now filed a motion to amend their complaint to address the court's concerns regarding standing, and briefing is underway on that motion. My work on this case so far has focused on contributing to the preparation of the consolidated amended complaint, the briefing and arguing of the motion to dismiss, communication with the plaintiff financial institutions regarding their damages, and the preparation of the proposed amended complaint. As co-lead counsel, I have worked to define the roles of each steering committee member and to coordinate the efforts of such counsel.

In *Wendy's*, I was appointed as co-lead counsel on behalf of the class of financial institutions. The case settled for $50 million and is currently pending final approval. As co-lead counsel, my significant contribution in this case was the strategic decision to propose to the court that the choice of law issue, which is not normally decided until the class certification or summary judgment stage of the proceedings, could be addressed early, pursuant to Fed. R. Civ. P. 16(c)(2)(L) and consistent with Fed. R. Civ. P. 1's mandate that the rules be interpreted to "secure the just, speedy and inexpensive determination of every action and proceeding." The court accepted this novel procedural approach, a decision which ultimately led to a timely settlement of the case. When the parties presented the settlement for preliminary approval, the court commended the parties for the collaborative and creative manner in which the case had been managed, and for the spirit of cooperation and professional civility exhibited between counsel for the parties.

In *Arby's* and *Eddie Bauer*, I handled the preparation and defense of each plaintiff deposition and selected and managed the liability and damages experts. In *Eddie Bauer*, I took the deposition of the forensic investigator who reported on the breach, and took several depositions of defendant's IT management staff, for the purpose of addressing the inadequacy of defendant's IT security policies and their implementation.

In *Premera*, while not included in the court-appointed leadership, I was asked by lead counsel to assist with the selection and vetting of both the liability and damages experts. And finally, in *Yahoo* and *Anthem*, while again not appointed to a leadership position, I was asked by lead counsel to assist in the document review process.

My experience with MDL/class action proceedings extends beyond data breach and privacy litigation. Attached hereto as Exhibit "D" is my Table of Other MDL/Class Action

Litigation, which lists my other MDL proceedings and a representative sample of other class actions in which I have participated. In *Edward Jones*, for example, I served as Chair of the Lead Counsel Committee representing the plaintiffs in a wage and hour misclassification case involving stockbrokers, which resulted in a $19 million class-wide settlement. In *Genesis Healthcare*, I served as Counsel of Record before the United States Supreme Court in an appeal addressing the application of mootness principles in a putative collective action filed under Section 216(b) of the Fair Labor Standards Act. When defendant served my client with a Rule 68 offer of judgment for "make whole" relief, the district court dismissed the case as moot. I successfully argued the appeal in the United States Court of Appeals for the Third Circuit, which held that the FLSA collective action did not become moot upon the plaintiff's receipt of a Rule 68 offer of judgment for full satisfaction of her individual claim. The Supreme Court reversed in a 5-4 opinion, with Justice Kagan writing a strong dissent on behalf of my client—a position which was subsequently adopted by the majority of the Court in *Campbell-Ewald Co. v. Gomez*, ___, U.S. ___, 136 S.Ct. 663 (2016). My client's position before the Supreme Court was supported by the United States as Amicus Curiae.

Attached hereto as Exhibit "E" is a list of the MDL/class actions I am currently ligating and which may require a material amount of my time in the next year. For any remaining cases in which I am currently involved, my direct involvement and time commitment in the next year will fluctuate at my discretion, based upon my work-sharing with other attorneys in my law firm. Accordingly, I have the ability to set aside and devote a significant amount of time to this case, if appointed to a leadership role.

While I invite the Court to contact the judges in any of the cases in which I have been involved, I respectfully suggest that the following judges from the Western District of

Pennsylvania are the most familiar with me, personally and professionally: Judge Nora Barry Fischer (412-208-7480), Magistrate Judge Maureen P. Kelly (412-208-7450), Judge Mark R. Hornak (412-208-7433) and Judge Arthur J. Schwab (412-208-7423).

**III.    Case Funding**

If appointed to a leadership position, my approach to case funding would be to require the attorneys appointed to leadership positions to contribute to a common litigation fund via assessments on a regular or as-needed basis. This fund would be used for large common expenses such as document discovery-related costs—including the costs of vendors hired to assist with production, ESI issues, and document review platforms— expert witnesses, court reporters/videographers for depositions, and voluminous copying and shipping projects. Less significant expenses would be paid directly by the individual attorneys or firms. In the other data breach MDL cases in which I have held a leadership role, the litigation has been funded as outlined above, with great success.

I contemplate that only attorneys appointed to leadership positions will contribute to the litigation fund. If needed, however, I will consider the addition of non-leadership attorneys who receive subcommittee assignments and are tasked with substantial work (with the Court's permission).

I believe third-party litigation funding raises risks of conflicts of interests and other concerns, and my understanding is that several state ethics boards and commentators have found certain types of these arrangements to be in violation of Rules 1.2, 1.7, 2.1, or 5.4 of the Model Rules of Professional Conduct and state-specific versions of those rules, or others. For this reason, I would prohibit the use of any third-party financing if it is conditioned on giving the funder *any* form of control over how the case is litigated or settled.

**IV.     Agreements with Other Counsel**

I do not have any agreements with any other counsel in this case, for any purpose, other than my agreement with certain co-counsel to share the representation of clients that have retained my law firm, as set forth in footnote 2.

**V.      Billing/Cost Management & Communication/Collaboration**

Through my experience managing and participating in MDLs, I know what protocols are best for controlling costs, avoiding duplicative work, and ensuring that attorney time is spent wisely. I believe one of the first tasks for the appointed leadership team should be drafting a comprehensive policy for time and expense reporting, which should be submitted to the Court for approval. The most essential controls are: 1) all work must be pre-approved by Co-Lead Counsel; 2) all time and expenses must be recorded contemporaneously and reported to lead counsel on at least a quarterly basis, and then forwarded to the Court in summary form for *in camera* review; 3) all billed time must be in 1/10th hour increments; 4) all time and expense records must be detailed enough so that any reader would understand the work that was performed; and 5) reasonably capped hourly rates for document review and other forms of less critical work. There are numerous more detailed rules that I would enforce as well, as I have in every other case in which I have held a leadership role. The consequence for failure to follow these rules would be a disallowance or reduction of the hours or expenses at issue, and serial violators may be denied future assignments by Co-Lead Counsel.

Often, the greatest challenge in appointing a leadership structure in an MDL is appointing counsel who will work cooperatively and collaboratively with other plaintiffs' counsel in the prosecution of the case. I have a proven track record of successfully managing MDL and class litigation, and a documented history of working collaboratively with co-counsel in a variety of

roles. I have familiarity and positive experiences with many of those submitting competing applications, as illustrated in the case summaries provided at Exhibit B, which include lists of the co-counsel on each case. Additionally, I routinely try to maintain amicable relationships with opposing counsel, something I pride myself on because I believe it facilitates more productive litigation. I have specific familiarity with Marriott's defense counsel, Attorneys Warren and Ghannoum, from a series of discrimination cases they defended several years ago, as well as my work in the *Community Health* data breach litigation.

### VI.   Other Factors Under Fed. R. Civ. P. 23(g)

The questions posed by this Court in its April 11 Order address most of the factors set forth in Fed. R. Civ. P. 23(g) to be considered by the Court in appointing leadership.  To the extent not addressed already, I respectfully ask this Court to consider, in addition to my experience in data breach cases and the resources I will contribute to this action, my work performed in this action to date and my ability to serve the interests of the class. *See* Fed. R. Civ. P. 23(g)(1) and (4).

I have been directly retained by 19 plaintiffs. As part of that representation, I have spent time researching the facts surrounding this data breach, screening potential clients and retaining those with claims, and drafting and filing complaints on their behalf.  Finally, I am positioned to fairly and adequately represent the Plaintiffs and putative class members. I have no conflicts of interest to interfere with such representation.

Thank you for your consideration of this application.

Sincerely,

*s/Gary F. Lynch*

Gary F. Lynch