

April 26, 2019

The Honorable Paul W. Grimm
District Judge
United States District Court for the District of Maryland
6500 Cherrywood Lane
Suite 465A
Greenbelt, MD 20770

      Re:    *In re Marriott International Customer Data Security Breach Litig.*,
              MDL No. 19-md-2879 (D. Md.)

Dear Judge Grimm:

       The ICC Slate recognizes the numerous experienced and outstanding leadership applicants in this litigation, many of whom appear to be capable of running this case on plaintiffs' behalf. The Court now has the important responsibility of selecting the most appropriate team. As noted in the *Manual for Complex Litigation* ("*Manual*") § 21.271 (4th ed. 2004), "[i]f there are multiple applicants [for lead counsel], the court's task is to select the applicant[s] *best able* to represent the interests of the class." (Emphasis added). *See also* Fed. R. Civ. P. 23(g)(2); *In re Parking Heaters Memo. Antitrust Litig.*, 310 F.R.D. 54, 56-57 (E.D.N.Y. 2015) ("[I]n the absence of agreement, I must necessarily try to discern, at this early stage of the litigation, which of several very good choices will be the best for the putative classes."); *Four In One Co., Inc. v. SK Foods, L.P.*, 2:08-CV-03017, 2009 WL 747160, at *2-3 (E.D. Cal. Mar. 20, 2009) (finding that two firms "stand out from the rest with regard to qualifications particularly applicable to this case"). The Court's charge in appointing leadership is "to protect the interests of the plaintiffs, not their lawyers." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 05-1720, 2006 WL 2038650, at *4 (E.D.N.Y. Feb. 24, 2006). Here, the proposed class is best served by selecting an experienced and diverse leadership group capable of expertly handling this complex case in an efficient and cooperative manner, while overseeing and incorporating input from the various stakeholders. *See* Bolch Judicial Inst., Duke Law Sch., *Guidelines and Best Practices for Large and Mass-Tort MDLs* ("*MDL Guidelines*") 37 (2nd ed. 2018) (noting that "a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought").

While nearly every applicant has relevant experience handling important data breach or other complex litigation, after carefully reviewing each of the other leadership applications, the ICC Slate remains resolute in its belief that it is the group "best able" to represent the interests of the class given, among other things, its: (a) strong and recognized local presence; (b) previous and ongoing success in organizing this case in a cooperative manner with Marriott and other plaintiffs' counsel; (c) filing of the *only* complaint in this MDL with detailed allegations on behalf of plaintiffs residing in *all* 50 states and various territories; (d) broad-based and unmatched ability to handle all stages of this litigation, including complex e-discovery, technical depositions, regulatory liaising, trial, and appeal; and (e) care and attention to forming a sound litigation team who can work well with each other, including a diverse and independent group of lawyers who filed multiple, separate actions in this matter and who otherwise would have moved for individual leadership appointments.[1]

The ICC Slate is fully available to commit all necessary time and resources to this case and is prepared to hit the ground running to advance this litigation beyond the solid groundwork it has already laid. Moreover, while this process is not a "popularity contest" and the ICC Slate deliberately chose not to solicit support from any individuals or groups, several of the other applications (including two of the competing slates) expressed support for working with members of the ICC team, further demonstrating and confirming the ICC Slate's ability to lead and work cooperatively with the various plaintiffs' counsel.[2] *Cf. In re Lenovo Adware Litig.*, 15-MD-02624, 2015 WL 10890657, at *1–2 (N.D. Cal. July 27, 2015) ("The fact that these movants have consistently enjoyed the support of a substantial majority of the plaintiffs and their counsel throughout this litigation is indicative of their ability to work cooperatively on behalf of the

---

[1] While this and the other groups undertook a "private ordering" process, whereby independent applicants came together because of their desire to assemble the team best suited to represent the class, *see* Manual §§ 14.211, 21.272, the ICC Slate fully recognizes that "the transferee judge should treat the lawyers' self-selection as [just] one of many considerations in selecting the best leadership team possible," *MDL Guidelines* at 37. There has been a general recognition in MDLs that "the ability to communicate and cooperate with others in the leadership structure, and with non-appointed attorneys" is vitally important. Bolch Judicial Inst., Duke Law Sch., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions* 45 (2018). Thus, the ability of self-selected teams to work together is an important consideration. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2008 WL 1883447, at *2–3 (D.D.C. Apr. 28, 2008) ("[T]he Court's function is not simply to 'rubber stamp' the proposal for leadership offered by any one group," but the Court may give due consideration to the judgment of counsel, "to whom it has delegated the task of coordinating the efforts of all counsel in these cases . . . when they recommend firms for an Executive Committee and give strong and justifiable reasons for their recommendation."); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (giving "some weight to plaintiffs' 'self selection' of class counsel").

[2] *E.g.*, JGL Application at 1 n.1 (ECF No. 178) ("The JGL Group believes Interim Coordinating Counsel . . . have done an excellent job in their roles to date. . . . The JGL Group would welcome the opportunity to work with them . . . ."); Siegel-Tadler-Murphy ("STM") Application at 3 n.1 (ECF No. 202) ("The Siegel-Tadler-Murphy Slate has worked closely with Mr. Friedman and Mr. Pizzirusso in other data breach litigation" and is open to working with them and Ms. Jones, "a highly regarded, talented lawyer."); Nussbaum Application at 1 (ECF No. 196) ("I also endorse the applications of Andrew Friedman, Megan Jones, and/or James Pizzirusso for Plaintiffs' Interim Lead Counsel. I developed strong working relationships with all of them during the years in which we were colleagues at the firm then known as Cohen Milstein Hausfeld & Toll . . . . Each of them is more than capable of continuing to ably serve Plaintiffs' interests.").

many plaintiffs in this case, and to work in their best interests."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (That a "large number[ ] of experienced counsel are satisfied" by a leadership group "is some measure of the respect they command and the confidence of their peers that they will serve well in the role.").

While the ICC Slate is fully capable of litigating this case on its own, we recognize that any group could benefit from the deep talent pool and suggestions that the dozens of other qualified leadership applicants have presented here. Thus, to the extent the Court believes that the ICC's proposed PSC should be expanded to include other skilled leadership applicants while remaining in the "single digits," the ICC Slate supports the addition of up to four more people to its proposed PSC, as well as a formal Liaison Counsel. *Cf. Air Cargo*, 240 F.R.D. at 58–59 (adding individuals to the proposed lead counsel group that had "clearly been able to accomplish the most thus far in investigating the claims in this action"). In particular, the ICC Slate believes that adding representatives to its PSC from the JGL, the STM, and the Lichtman-Rapp ("LR") Slates, as well as another individual applicant, could further enhance the diverse and well-rounded group that the ICC has already proposed while taking advantage of the suggestions and experience from those applicants.[3] The ICC Slate also supports the addition of Timothy Maloney, from Joseph Greenwald & Laake, P.A., as Liaison Counsel.[4] With the inclusion of additional PSC members from the other applicant groups, the ICC Slate would be able to incorporate their input and build upon the important foundation the ICC Slate has already accomplished, while ensuring that the litigation does not start from scratch. *Cf. Air Cargo*, 240 F.R.D. at 58 (adding individuals to applicant group who had "been able to accomplish the most thus far" instead of appointing a competing group because "the fruit of those efforts would be largely lost if [the competing group] were chosen.").

Several of the competing applications also made excellent suggestions consistent with issues that the ICC Slate members already raised with Marriott during their extensive CMO2 negotiations and that track the proposals the ICC Slate made in its leadership application. For example, the LR Slate suggests a CMO3 with various deadlines, including the immediate production of discovery from Marriott, and asserts that "the parties should agree to apply Maryland law at the outset" or that "Maryland would be an ideal bellwether." (*See* ECF 199 at 19–20). Indeed, Plaintiffs' Interim Coordinating Counsel raised and discussed those *precise* issues with Marriott's counsel in extensive meet and confers about CMO2, including: (1) whether Marriott was prepared to concede that Maryland law applied (it was not); (2) raising

---

[3] ICC Slate members have worked with nearly all of the applicants from the various slates and individuals and leave to the Court as to who might be the most appropriate additions from those groups, as many have relevant experience and skills that could complement our team. For example, one of the members of the STM team served as lead counsel in *Hutton v. Nat'l. Bd. Of Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018), an important standing case that the ICC mentioned at the April 5th hearing, while another has served on the Rules Committee. An applicant from the LR Slate has litigated significant privacy matters, and lawyers from the JGL team have relevant data breach experience, as did many of the individual applicants.

[4] The JGL group proposed having two attorneys from Joseph Greenwald & Laake serving as co-liaisons. (ECF No. 178 at 1). The ICC Slate, respectfully, believes that only one official liaison is necessary, but is amenable to working with either of those counsel.

several bellwether approaches (which Marriott is considering); and (3) requests for immediate discovery. While no agreements were reached with Marriott about these and other issues at the time of the proposed CMO2 submission, the parties agreed to further discuss them after Lead Counsel selection. Similarly, the STM and JGL Slates suggest billing and expense protocols consistent with those attached to the ICC Slate's leadership application, and the ICC team is certainly open to exploring additional ideas and suggestions from those groups and others, as well. Several applicants also discussed, consistent with the ICC Slate's proposed approach, that attorneys' fees from any common fund be limited to the presumptive Fourth Circuit limits.

With six attorneys admitted to practice in this District (including all three proposed Co-Leads), a demonstrated history of working cooperatively with others in this case, an established track record of success, and the ability to devote all necessary time and resources to this litigation, the ICC Slate is the group best able to represent the interests of the class and lead this litigation. We sincerely hope that this Court continues placing its leadership trust in the ICC Slate, along with any other attorneys it wishes to add to our proposed PSC, and gives us the opportunity to continue to direct this important litigation to a successful resolution.

Respectfully submitted by:

| | |
|---|---|
| */s/ Andrew N. Friedman* | */s/ James J. Pizzirusso* |
| Andrew N. Friedman | James J. Pizzirusso |
| D. Md. Bar No. 14421 | D. Md. Bar No. 20817 |
| **COHEN MILSTEIN SELLERS & TOLL PLLC** | **HAUSFELD LLP** |
| 1100 New York Avenue, NW, Suite 500 | 1700 K Street NW Suite 650 |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| Tel. 202-408-4600 | Tel. 202-540-7200 |
| afriedman@cohenmilstein.com | jpizzirusso@hausfeld.com |

*/s/ Amy E. Keller*
Amy E. Keller
D. Md. Bar No. 20816
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel. 312-214-7900
akeller@dlcfirm.com

**Proposed Co-Lead Counsel**

| | |
|:---:|:---:|
| David Berger<br>*Pro Hac Vice*<br>**GIBBS LAW GROUP LLP**<br>505 14th Street, Suite 1110<br>Oakland, California  94612<br>Tel. 510-350-9700<br>dmb@classlawgroup.com | Megan Jones<br>D. Md. Bar No. 15671<br>**HAUSFELD LLP**<br>600 Montgomery Street, Suite 3200<br>San Francisco, California  94111<br>Tel. 415-633-1908<br>mjones@hausfeld.com |
| Lesley Weaver<br>*Pro Hac Vice*<br>**BLEICHMAR FONTI & AULD LLP**<br>555 12th Street, Suite 1600<br>Oakland, California  94607<br>Tel. 415-445-4004<br>lweaver@bfalaw.com | James Ulwick<br>D. Md. Bar No. 00536<br>**KRAMON & GRAHAM PA**<br>One South Street, Suite 2600<br>Baltimore, Maryland  21202<br>Tel. 410-347-7426<br>julwick@kg-law.com |

Hassan Zavareei
D. Md. Bar No. 18489
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Tel. 202-973-0900
hzavareei@tzlegal.com

**Proposed Plaintiffs' Steering Committee**

**CERTIFICATE OF SERVICE**

    I hereby certify, pursuant to Fed. R. Civ. P. 5(a), and L.R. 102(1)(c), that the foregoing document was filed using this Court's CM/ECF service, which will send notice of such filing to all counsel of record this 26th day of April 2019.

                                                             */s/ Amy E. Keller*
                                                            Amy E. Keller