IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

- - - - - - - - - - - - - - - x
                              :
IN RE:                        :
                              :
MARRIOTT INTERNATIONAL, INC., :
CUSTOMER DATA SECURITY BREACH  :    Civil No. 19-02879-PWG
LITIGATION                    :
                              :
- - - - - - - - - - - - - - - x    July 12, 2019


                                   Greenbelt, Maryland


**TELEPHONIC CONFERENCE**


    BEFORE:   THE HONORABLE PAUL W. GRIMM, Judge


APPEARANCES:              AUTHUR MAHONY MURRAY, Esq.
                          Murray Law Firm
                          650 Poydras Street, Suite 2150
                          New Orleans, Louisiana 70130
                              On Behalf of Bank of Louisiana

                          BRIAN C. GUDMUNDSON, Esq.
                          Zimmerman Reed
                          1100 IDS Center, 80 South 8th Street
                          Minneapolis, Minnesota 55402
                              On Behalf of Bank of Louisiana

                          DANIEL R. WARREN, Esq.
                          LISA M. GHANNOUM, Esq.
                          GILBERT S. KETELTAS, Esq.
                          Baker and Hostetler LLP
                          1050 Connecticut Ave., NW, Suite 1100
                          Washington, DC 20036
                              On Behalf of the Defendants


Audio Operator:           Shante Smith


Transcription Company:    Compuscribe
                          P.O. Box 789
                          Cheltenham, Maryland 20623-9998
                          (301) 577-5882

Proceeding recorded by electronic sound recording, transcript
produced by transcription service.

nm                                                                        2

<u>I</u> <u>N</u> <u>D</u> <u>E</u> <u>X</u>

                                                                    <u>Page</u>

Preliminary Discussion                                               3

<u>Motion to Dismiss:</u>

Comments by Daniel Warren, Esq.
    Attorney for Defendant                                          8

Comments by Arthur Murray, Esq.
    Attorney for Bank of Louisiana                                  9

Comments by Brian Gudmundson, Esq.
    Attorney for the Bank of Louisiana                             10

Comments by Judge Grimm                                            12

Ruling by Judge Grimm                                              15

Keynote:  "---" indicates inaudible in transcript.
          "*" indicates phonetically spelled in transcript.

<u>P R O C E E D I N G S</u>

(Whereupon, at 11:02 a.m., the proceeding began.)

THE COURT:  Good morning, everybody.  This is Judge
Grimm.  I have you on speaker phone.  Ms. Birch* and Ms. Levi*
who are helping on this are with me as well, as Ms. Smith, who
is the courtroom deputy who works with me.

I am going to -- I want to resolve this issue in the
phone call today.  So this conversation is going to be on the
record and Ms. Smith is going to be recording it for the
record.

So, Chante, you can hear us, all?

MS. SMITH:  Yes, Your Honor.

THE COURT:  Great.  So who is on the line for the
Defendants, please?

MR. WARREN:  Your Honor, Dan Warren.

THE COURT:  Thanks.

MR. WARREN:  I am on the line and others are as
well, who can identify themselves.

MR. KETELTAS:  Gilbert Keteltas.

MS. GHANNOUM:  Good morning, Your Honor.  Good
morning, Your Honor, Lisa Ghannoum for Defendants as well.

THE COURT:  All right.  Thanks.  Anyone else?

(No response.)

THE COURT:  All right.  Who do I have for the Bank
of Louisiana?

1          MR. MURRAY:  Your Honor, Art Murray on behalf of the

2     financial institution, Plaintiffs, as well as Brian

3     Gudmundson, he is on the line.

4          THE COURT:  Okay.  So I have reviewed ECF number 39,

5     which is Marriott's letter raising the issue of discovery that

6     it would like to take in order to file the motion to dismiss

7     the amended complaint by the deadline that has already been

8     established at the end of this month.  And I have also looked

9     at the response from -- you have ECF number -- the response

10    that was sent on July 10th by the bank.  I don't have the ECF

11    number for that handy, but it won't be hard to get --- made

12    the call.

13          I have read what your positions are.  Admittedly,

14    the bank did not -- the speed with which this had to be

15    responded to did not allow them to have as much of a

16    discussion as what is in the ECF 319 filed by Marriott.

17    Nonetheless, its position is clearly stated.

18          So that is -- yes, ECF 320.  Thank you.  So now we

19    have the record complete as to what we are dealing with here.

20          In addition, I went back and read ECF 241, that is

21    the letter that was written by Marriott raising the issues

22    that it will bring in a motion to dismiss the initial

23    complaint that was filed.  That led to the amended complaint

24    being filed by the bank, which is the subject of the current

25    motion to dismiss, which Marriott is going to file this month.

1          So in the letter that Marriott filed, ECF 241, they

2   set forth the grounds under which they want to challenge the

3   existing complaints, which are pretty much the same as the

4   amended complaint.  They want to raise jurisdiction before the

5   Court -- subject matter jurisdiction -- under Rule 12(b)(1).

6   And they want to challenge the sufficiency of the complaint

7   under Rule 12(b)(6).

8          And as for the challenge for jurisdiction, the

9   justiciability challenge based upon the bank's view -- excuse

10  me -- Marriott's view that the bank lacks standing to

11  constitute a justiciable issue that can be heard by the Court.

12         In addition, they want to challenge, under Rule

13  12(b)(6), the sufficiency of the cause of action that have

14  been alleged by the bank.  And they also want to strike, at

15  the pleadings stage, the class certification ---.

16         The underlying issue that Marriott has raised

17  focuses on the bank's allegations that the conduct that they

18  initiated as remedial based upon the data breach that is the

19  subject of this MDL, came to their attention through certain

20  alerts, Compromised Account Management System, although it is

21  referred to by the acronym CAMS, that VISA sent.  And

22  apparently, if you have a contract with a credit card company,

23  there is an agreement that they will provide you with notice

24  when they have reason to believe that one of their

25  cardholder's account information may have been compromised.

1    This is if you are a vendor that -- have an agreement with

2    them.

3            Apparently, the others, such as MasterCard or

4    Discovery, may have the same thing, but called something

5    different.

6            So the bank says in response to that, they were

7    notified by VISA CAMS alerts that there are cards issued by

8    VISA and apparently, used to book reservations or purchase

9    goods and services as Marriott may have been subject to the

10   breach.  And therefore, they reissued cards and took other

11   action.  And based upon regulatory, financial, and customer

12   relationship consideration.

13           The costs that they incurred as a result of this,

14   they seek recover from Marriott.  Marriott says in its 241 --

15   document 241 that, well, if you don't get costs under the

16   agreement with the credit card company unless -- if you

17   anticipate that there could be a data breach, that could lead

18   in the future to charges that are improper against the credit

19   card and damages to the credit card holder, which would then

20   have to be mitigated and by the credit card company because

21   they have to hold the customer harmless.

22           And so the bank took steps to avoid that from

23   happening even if they did not have actual fraudulent charges

24   or actual damages to the credit or other interests of the

25   credit card holder beyond simply the notification that their

1   information was part of the data breach.

2           So according to Marriott, there is no standing.

3   And, of course, if there is no standing, then there is no

4   justiciable claim.  And if there is no justiciable claim, then

5   the Court doesn't have any jurisdiction.

6           In 319, Marriott gets a bit more --- with the

7   challenges that it wants to raise, specifically at page 2 of

8   ECF 219 that says it wants to raise both facial standing

9   challenges and factual standing challenges as well as its

10  motions to dismiss under Rule 12(b)(6).  And to do that it is

11  seeking expedited discovery under a variety of discovery

12  methods.  And while it has sought discovery under all these

13  methods, it has offered to select among them to get certain

14  information that it thinks it needs to be able to file the

15  motion to dismiss.

16          It will come as no surprise to anyone that what they

17  want are the -- indeed the CAMS alerts.  They are referred to

18  in the complaint and first amended complaint.  And it wants

19  interrogatories to identify specific --- card accounts that

20  may have been impacted and information about reimbursement.

21  They want documents to deal with the same thing.  And also, as

22  long as they are asking, a 30(b)(6) deposition to stitch it

23  all up.  And they want it right away because the 31st is just

24  around the corner.

25          In opposition, the bank says, wait a minute.  The

1   complaint should rise and fall on the basis of the factual

2   allegations in the first amended complaint.  They don't need

3   the discovery now.  They want discovery.  We want discovery.

4   Everybody wants discovery.  We walk down that path, then this

5   thing is going to drag out, the schedule will be affected, and

6   there is plenty of time for discovery down the line.  And if

7   we don't have standing, then that could be raised under a Rule

8   12(b)(6) motion or a Rule 56 motion.

9            Now, the bank didn't actually say, but that is where

10  they were going.

11           So thinking ---, I looked at some other materials as

12  well.  I have a pretty good idea where I want to go with this.

13  But before I do that, is there anything that I left out

14  material to the -- Marriott's position in terms of stating my

15  understanding of what the issue is?

16           MR. WARREN:  Your Honor, I thought that was -- that

17  is a pretty complete summary.  The only thing I would add --

18  and this is Dan Warren speaking.

19           THE COURT:  Yes.

20           MR. WARREN:  The only thing I would add is that the

21  core issue here -- I mean, there are a number of things they

22  raise in terms of what they think constitutes an injury, but

23  the real core issue is the very simple and binary question as

24  to whether they claim or did, in fact, reimburse for an

25  unauthorized charge on a card that appeared on the CAMS alert

1   that they received.

2           And, as you indicated, this is not raised in a

3   vacuum.  The initial complaint made no allegation at all about

4   reimbursement for fraud charges.  And that became a focus of

5   our document 241 in which we pushed, based on our clients, for

6   a motion to dismiss.

7           THE COURT:  Right.

8           MR. WARREN:  And it was after that that they filed

9   an amended complaint, alleging for the first time, that they

10  did, in fact, reimburse for fraud charges.  But --- needs to

11  studiously avoid stating in any kind of definitive way a very

12  straight forward fact of whether or not any of those

13  reimbursed charges were for a card or on a card that appeared

14  on the CAMS alert.  And that is the question we really want to

15  focus on.  --- it is a very simple and straight forward, and

16  binary question, and we think jurisdiction very well may turn

17  on that.

18          THE COURT:  Understood.  Thank you.

19          So let me hear -- give the bank an opportunity to

20  tell me if I got the gist of their position or if they want to

21  add anything before I put it -- lay out what I think makes

22  sense to do going forward.

23          MR. MURRAY:  Your Honor, Art Murray for the

24  financial institutions.

25          I would say that your summary is very accurate and

1   very thorough.  I mean, I don't think we have anything to add.

2   I just apologize for the brevity of our letter.  We were, as

3   you pointed out, just trying to get it in quickly and get our

4   position, at least, in summary form, sort of out there.  But

5   you have hit the nail on the head.

6          This is essentially an entire merits defense and

7   they want to have it now.  And, of course, no court in these

8   data breach cases to date, to my knowledge, has done that.

9   Equifax, Home Depot, Arby's, they all go up to pleadings based

10  upon on what you allege.  I think we have sufficiently plead,

11  so we just say that it should wait until after the motion to

12  dismiss is ruled on.

13         THE COURT:  Okay.  Well, I --

14         MR. GUDMUNDSON:  Your Honor?

15         THE COURT:  Yes, go ahead.

16         MR. GUDMUNDSON:  I am sorry.  This is Brian

17  Gudmundson.  And Art and I are both representing the Plaintiff

18  and we are in different rooms, so we don't have a chance to

19  speak.

20         But I do have something to add.  I have been

21  involved, as Mr. Murray has, in a lot of these cases.  And I

22  can tell you that this is not a novel defense.  This defense

23  comes up all the time.  This is the first time I have ever

24  heard it described as jurisdictional.  Generally, this is the

25  full merits discovery, or close to it, that a defendant takes.

1   I can tell you that this issue has been addressed and resolved

2   by Judge Thrash just recently in the Equifax case.  We weren't

3   able to get all of our case citations into our submission

4   because it was done so quickly, but I could give that Your

5   Honor if you are interested.

6          But what they are really saying here is that you

7   have to have a fraud charge in order to have standing.  And

8   that is just not so.  And Judge Thrash squarely ruled that in

9   the Equifax case.  And other courts have also overruled

10  motions to dismiss on similar grounds.

11         But the core of our case is not that every person

12  who received a CAMS alert suffered a fraud charge.  The core

13  of our case is that everybody who received a CAMS alert or

14  notification that they had breached cards, was obligated to

15  respond.  And in responding incurred injury.

16         Now, they may have incurred injury at different

17  levels, but that just goes to different damages.  And that is

18  a class certification question.  We will know that here down

19  the line.  But if a financial institution gets word that ten

20  of their cards were breached in the Marriott breach, they have

21  every right -- and, in fact, arguably an obligation to respond

22  immediately.  And one of those responses might be to reissue

23  those cards immediately before any fraud is incurred.

24         According to Defense Counsel, those people would not

25  have any standing.  And that sort of flies in the face of all

1   of these rulings that denied these motions to dismiss.  And,

2   in fact, that was our argument in the Target data breach case

3   on behalf of financial institutions in class certification.

4   And the class was certified.  Even though some institutions

5   may have only reissued cards, some may have reissued no cards,

6   but suffered a lot of fraud, or something in between.

7              And I just wanted to add that to Your Honor's

8   consideration.

9              THE COURT:  All right.  Thanks, everybody.

10             So let me tell you where I come out on this.  It is

11  an interesting issue and well stated by both sides.  And it

12  triggers -- as sometimes these issues do -- a more nuanced

13  appreciation of the Federal Rules of Civil Procedure than you

14  might expect in just your run of the mill discovery dispute.

15  And I think that the authority that we found that is most

16  helpful that helps give me the guidance as to where I am going

17  on this is the Fourth Circuit case from 2009, Kerns v. United

18  States, which is found at 585 F3rd 187.

19             Now, I note that in its most recent filing, 219,

20  that Marriott indicates that it intends to bring facial as

21  well as factual challenges to standing.  This becomes

22  important because that was the focus of the Fourth Circuit

23  when it reversed one of my colleagues here for granting a

24  12(b)(1) motion on jurisdictional issues.  A little bit

25  different factual situation.  That was a Federal Tort Claims

1   Act that dealt with the issues of whether or not a government

2   employee that is involved in a motor vehicle accident that

3   lead to the death of a motorcycle riding was acting in a -- as

4   a representative in an official capacity of the government or

5   --- to it.

6           But the Fourth Circuit took a look at the

7   distinction between a 12(b)(6) motion and a 12(b)(1) motion as

8   it deals with jurisdictional challenges and underlying merits

9   challenges.  And I am going to quote from the decision and I

10  will leave out internal references to other authorities.

11          So the Fourth Circuit said, "We have recognized that

12  a defendant may challenge subject matter jurisdiction in one

13  of two ways.  First, the defendant may contend when a

14  complaint simply fails to allege facts upon which subject

15  matter jurisdiction can't be based.  When a defendant makes a

16  facial challenge to subject matter jurisdiction, the

17  plaintiff, in effect, is afforded the same procedural

18  protection as he would receive under a 12(b)(6) consideration.

19  In that situation, the facts alleged in the complaint are

20  taken as truth, and the motion must be denied if the complaint

21  alleges sufficient facts to invoke subject matter

22  jurisdiction."

23          That is a facial challenge and Marriott wants to

24  raise that in their motion.  But they also want to do what the

25  other way is and that is a factual challenge.

1          So the Fourth Circuit picks up by saying, "In the

2     alternative, the defendant can contend, as the government does

3     here, that the jurisdictional allegations of the complaint are

4     not true.  The plaintiff in this later situation is afforded

5     less procedural protection, but the defendant challenges the

6     factual predicate of the subject matter jurisdiction.  The

7     trial court may then go beyond the allegation of the complaint

8     and in an evidentiary hearing determine if there are facts to

9     support the jurisdictional allegation without converting the

10    motion to a summary judgment proceeding.

11          In that situation, the presumption of truthfulness

12    normally accorded to a complaint allegation does not apply.

13    And the District Court is entitled to decide the dispute in

14    issue of fact with respect to the subject matter

15    jurisdiction."

16          And so that is the dichotomy and apparently Marriott

17    wants to do both.  The Fourth Circuit went on.  And in doing

18    so found some helpful analysis from the Fifth Circuit to say

19    that generally speaking there is no harm in a District Court

20    having the discretion to determine whether it possesses

21    jurisdiction.  But where the jurisdictional facts appear to be

22    intertwined with the facts central to the merits of the

23    dispute, a presumption of truthfulness should attach to the

24    Plaintiff's allegation.  And in that situation, the Defendant

25    has challenged, not only the Court's jurisdiction, but also

1    the --- of the Plaintiff's call of action.  So then merit

2    becoming entwined with the jurisdictional issue.

3          And the Fifth Circuit made it even less a function

4    of rule geek-ness, but rather just sort of common sense.  It

5    said in the Williamson v. Tucker, case -- a 1991 case -- "No

6    purpose is served by indirectly arguing the merits in the

7    context of federal jurisdiction.  Judicial economy is best

8    promoted when the existence of the federal right is directly

9    reached, and where no claim is found to exist, the case is

10   dismissed on the merits.  This refusal to treat indirect

11   attacks on the merits of the 12(b)(1) motion provides,

12   moreover, a greater level of protection to the plaintiff who

13   in truth is facing a challenge to the validity of his claim:

14   the defendant is forced to proceed under Rule 12(b)(6), or

15   Rule 56, both of which place greater restrictions on the

16   District Court's discretion."

17         And that -- I mean, jurisdictional facts and the

18   facts central to the tort claim are inextricably intertwined,

19   the trial court should ordinarily assume jurisdiction to

20   proceed to the intertwined merits discovery.

21         So that is helpful to me and here is how I see it

22   and here is how I rule:  Marriott has indicated it wants to

23   make both a facial and a factual challenge.  We know that if

24   it makes a facial challenge, then I have to look at the

25   12(b)(6) standard and I assume the truth.

 1         If it is a facial (sic) challenge, then we have got

 2   to get into the merits.  And the very fact that Marriott wants

 3   to take this discovery before they file their motion to

 4   dismiss, indicates the central importance of having these

 5   underlying facts resolved before the Court openly makes a

 6   ruling.

 7         So the question becomes, in my mind, the balancing

 8   question.  If I order this discovery, I am not so naïve as to

 9   believe that even with very skilled and experienced lawyers

10   like I have here who know their game, that they are going to

11   be able to get it all done in sufficient time to have my

12   schedule -- which I am very fond of -- complied with and the

13   motions filed by the end of the month.

14         And once we get into it, these things have a way of

15   being like a loose piece of yarn on an Irish fisherman's

16   sweater, when you start pulling on it, the sweater starts

17   getting -- losing pieces, and they are hard to control and

18   scheduling is difficult.  And we are accelerating information,

19   which seems to me, at least, that their argument could be made

20   by the bank, but we are dealing with merits discovery on the

21   very beginning of the case on a motion to dismiss.

22         And in my mind, standing is a little bit different

23   than other types of jurisdictional issues.  If you have got a

24   Federal Tort Claims Act issue and you don't have a government

25   employee acting within the scope, then you got to get that

1   thing done before you go into the underlying merits.

2          If you have got a case where someone says you are

3   trying to assert long-arm jurisdiction over me and I don't

4   have any contacts in the forum state, then you have got to

5   jump into that and take care of that to the exclusion of all

6   else.  And that deals with facts that have nothing to do with

7   the underlying merits.

8          But it seems to me that, as with all disputes --

9   that the CAMS thing is going to turn around.  What exactly

10  were the costs and the sources of the costs that the bank is

11  trying to reimburse by getting it from Marriott that deals

12  with these data breach notifications?  And that is going to

13  animate, not only the issue of standing, but it is also going

14  to drive the nature of whether or not the claims asserted by

15  the bank are contract claims bound by contract or whether they

16  are tort claims because all of that is all of a piece.

17         And I, candidly, don't think it makes sense to take

18  on this discovery before we have a motion to dismiss.  I think

19  that the prudent way for me to decide it is exactly what the

20  Fourth Circuit laid out.  And to the extent that the challenge

21  that is going to be made by Marriott is to the truth of the

22  allegations, and those facts that need to be resolved to

23  decide that are baked into the underlying merits issue.  To

24  the extent that they make the facial challenge, then I have to

25  assume the truth of the pleadings that the bank alleges and we

1  can go from there.

2         Now, it seems from the information that the bank has

3  provided in this phone call that they didn't have the time to

4  provide in the letter.  Some of these same issues have

5  addressed before in some of the earlier cases.  And that is

6  going to be information that will be helpful to me with regard

7  to looking at the issues that are going to be briefed up in

8  the motion to dismiss.

9         My hope is to start working.  I have a very talented

10 and enthusiastic law clerk that I just have brought onboard to

11 work on this case, who is going to start working on the motion

12 to dismiss as soon as we start getting the initial brief and

13 work through it so that I can give you all a ruling very

14 quickly.

15        And I am not necessarily adverse to allowing you to

16 start discovery while the motion to dismiss is pending.  And I

17 am also a big proponent of phasing discovery to focus on

18 information which is very important.  And I don't have any

19 quarrel, and I think the parties would both be well served,

20 when we get to the discovery, to -- from the bank's position

21 -- or from Marriott's position initially, they are going to

22 want to get this information.

23        Obviously, the CAMS reports are discoverable and

24 ought to be produced without a great deal of burden and

25 problem.  So for purposes of trying to decide what do we start

1   with when we get into the discovery phase and what do I to

2   look at, the bank's -- or the Marriott has got a short list of

3   information it wants.  We know that that short list is here.

4           The bank hasn't had a chance to say, here is our

5   short list, but when the discovery plan is being discussed,

6   they will be able to do that.  And the parties ought to be

7   able to focus their attention on the information that each

8   side believes is most critical to get to it at the very

9   beginning as we move forward.

10          If this phased discovery is such that the bank

11  produces information requested by Marriott and Marriott then

12  says, Ah-ha, we can now file a summary judgment motion to

13  challenge on basis of standing, we can address that at that

14  time.  And that may be close on the heels of the resolution of

15  the motion to dismiss as the discovery will allow.

16          But I just don't see doing this doing this dive into

17  what I see is essentially merits of discovery before we have

18  even had the briefing on the motion to dismiss.  So for that

19  reason, and with my appreciation for the hard work that you

20  have done and your input, I am going to deny the request.

21          Anything else we need to talk about here today,

22  folks?

23          MR. MURRAY:  No, Your Honor.

24          MR. WARREN:  Your Honor, not on our end.  Thank you.

25          THE COURT:  All right.  Thank you.  I would, by the

1   way, have you all give some thought to talking about what

2   those wish lists are for discovery so that when we get to that

3   point that we are not doing this from the very first -- at the

4   very first instance.

5           I am going to get a brief letter order out that just

6   says for the reasons explained during the telephone call, that

7   the request is denied.  And the recording here constitutes my

8   ruling.

9           Thank you very much, everybody.  Have a good Friday

10  and a safe weekend.  Bye-bye.

11          MR. MURRAY:  Thank you, Your Honor.

12          MR. WARREN:  Thank you.

13          (Whereupon, at 11:31 a.m., the proceeding

14  concluded.)

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the duplicated electronic sound recording of the proceedings in the above-entitled matter.

*Noemy Martinez*   07-18-19
_____
Noemy Martinez          Date
Transcriber