# BakerHostetler

Baker&Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

T 216.621.0200
F 216.696.0740
www.bakerlaw.com

Daniel R. Warren
direct dial: 216.861.7145
DWarren@bakerlaw.com

Gilbert S. Keteltas
direct dial: 202.861.1530
gketeltas@bakerlaw.com

Lisa M. Ghannoum
direct dial: 216.861.7872
lghannoum@bakerlaw.com

August 19, 2019

**Filed by ECF**

Hon. Paul W. Grimm
U.S. District Court
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD 20770

Re:   In re: Marriott International, Inc. Customer Data Security
      Breach Litigation, 8:19-md-02879

Dear Judge Grimm:

Defendants Marriott International, Inc. and Starwood Hotels & Resorts Worldwide, LLC submit this letter in anticipation of their motion to dismiss the Consolidated Consumer Class Action Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STANDING

Despite its great length, the consolidated complaint contains scant information about the bellwether plaintiffs' purported injuries. The burden is on plaintiffs to "clearly allege facts demonstrating" they have standing at the pleading stage. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016).

### The "non-misuse" plaintiffs

Fifteen of the 20 bellwether plaintiffs do not allege their information has been misused but are suing for harm that has not yet occurred. Those plaintiffs must allege facts showing not merely that future harm is possible or even objectively likely to occur, but that it is "certainly impending." *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 422 (2013)). Indeed, standing based on future harm is necessarily the exception, not the rule—anything less would "improperly water[] down the fundamental requirements of Article III." *Clapper*, 568 U.S. at 416. And, here, where plaintiffs purport to represent many millions of putative class members, allowing them to sue based on theoretical possibilities of future harm would not just water down constitutional standing requirements, but wash them away in a flood.

To begin, most of the non-misuse plaintiffs do not individually describe what information they provided to Starwood or Marriott. Instead, plaintiffs collectively allege "upon information and belief" that they provided "all or any part or combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest account information, date of birth, gender, arrival and departure information, reservation date, communication preferences, payment card numbers, and payment card expiration dates." (Consol. Compl. ¶¶ 17, 19.) Many of those types of information would not present *any* risk, much less a certainty of future harm if disclosed. Plaintiffs' generic, one-size-fits-all allegation, qualified by the information-and-belief disclaimer, lends no support to their conclusory assertions of injury-in-fact.

Five non-misuse bellwether plaintiffs allege they provided payment card information to "Marriott" (without distinguishing between Starwood or Marriott) but do not say when they did so or whether the cards are still valid. (*Id.* ¶¶ 28, 35, 39, 52, 72.) Obviously, an expired card presents no risk of future harm. Moreover, most of the payment card information at issue was encrypted. In these circumstances, the risk that a fraudulent charge will appear on any particular bellwether plaintiff's payment card as a result of the Marriott cyberattack is far from certain. Indeed, it is highly unlikely given the passage of time since the incident.

Seven non-misuse plaintiffs allege they provided their passport numbers to Marriott and assert, without explanation, that this will enable criminals "to impersonate [them] online" and even help commit "international terrorism, . . . pedophilia, and murder." (*Id.* ¶¶ 25, 28, 34, 37, 38, 43, 56, 264, 265.) Marriott will offer expert testimony that a hacker can accomplish virtually nothing with a passport number. A hacker cannot create a forged passport, cannot commit financial crimes such as opening a line of credit or bank account, and cannot otherwise steal plaintiffs' identities. We do not believe that plaintiffs will be able to dispute these points. But with or without the expert testimony, plaintiffs have not met their pleading burden of alleging facts that plausibly show a stolen passport number presents a risk of certainly impending harm.

Plaintiffs do not explain how the remaining information—such as names, addresses, birthdates, arrival dates, and room preferences—will be used to cause them certain harm in the future.[1] And the alleged theft of information by itself does not confer standing under Article III. See *Beck*, 848 F.3d at 275.

Plaintiffs' other theories of injury fail too. They claim they spent time and effort mitigating the risk that their personal information would be misused in the future, but a party "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." See *Clapper*, 568 U.S. at 402; *accord Beck*, 848 F.3d at 276-77. Plaintiffs also claim they overpaid for hotel rooms (without identifying when or where) but have not alleged facts showing they paid Starwood or Marriott a specific amount for data security or that the market value of their hotel rooms was less than what they paid. See *Chambliss v.*

---

[1] Plaintiffs also generally allege that Starwood Preferred Guest account information was disclosed in the breach, but none of them allege they are enrolled in that program.

August 19, 2019
Page 3

*Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016). And, finally, they have failed to allege facts plausibly showing how their personal information has diminished in value (or that that they would or could sell their personal information in any event). *See Kahn v. Children's Nat'l Health Sys., Inc.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016).

For all these reasons, the 15 bellwether plaintiffs who do not claim their information was misused do not have standing to sue.

### The "misuse" plaintiffs

Three bellwether plaintiffs claim their personal information has been misused in ways other than payment card fraud. But the misuse they allege cannot be fairly traced to this cyberattack.

Plaintiffs Kathleen Frakes Hevner and Adam Ropp allege that someone applied for unauthorized accounts in their names, and Ropp further alleges that an unauthorized individual collected his tax refund. (Consol. Compl. ¶¶ 36, 77.) But neither Hevner nor Ropp (nor any other plaintiff) claims to have provided Starwood or Marriott with a social security number—which would be necessary to accomplish these kinds of identity fraud. *See Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018) (social security numbers "required to open a credit card account"); *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *5, 9-11 (N.D. Cal. May 10, 2018) (tax fraud not traceable to data breach without disclosure of plaintiff's social security number).

Similarly, Roger Cullen alleges he incurred unauthorized charges on his bank account but does not (and cannot) allege he provided bank account information to Starwood or Marriott. (Consol. Compl. ¶ 70.) *See In re Cmty. Health Sys., Inc.*, 2016 WL 4732630, at *12 (N.D. Ala. Sept. 12, 2016) (unauthorized access to bank account not traceable to data breach that "did not include financial information such as bank account numbers").[2]

### FAILURE TO STATE A CLAIM

### Negligence (Counts 1 & 2)

Plaintiffs' Illinois negligence claim is barred by the economic loss rule. *See In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528-31 (N.D. Ill. 2011) (applying rule to dismiss negligence claim arising from data breach of retailer). Application of this rule is particularly appropriate for economic losses in a payment card data breach because "[a]ll parties involved in the complicated network of contracts that establish the card payment system have voluntarily

---

[2] Plaintiffs Barry Golin, Paula O'Brien, and Roger Cullen allege they suffered fraudulent charges on the same payment cards provided to Marriott (although none of them allege they were not reimbursed for those charges). (Consol. Compl. ¶¶ 42, 70, 72.) Although Marriott is not planning to challenge facially those allegations on standing grounds, it is highly unlikely those fraudulent charges can fairly be traced to the Marriott cyberattack as a factual matter. In any event, those plaintiffs have failed to state a claim upon which relief can be granted, as shown below.

August 19, 2019
Page 4

decided to participate and to accept responsibility for the risks inherent in their participation." *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018).

The Court should also reject plaintiffs' negligence per se claim under Georgia law because Section 5 of the FTC Act, on which this claim is premised, imposes no "ascertainable standard of conduct" relating to data protection. *See Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013) (Gramm-Leach-Bliley Act cannot support claim because statute provides no specific standards governing data protection). Although the Northern District of Georgia has made *Erie* guesses that Georgia would allow negligence per se claims for data breaches under Section 5, *see, e.g., In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *5-7 (N.D. Ga. May 18, 2016), that rationale has been criticized as "a prediction of Georgia law that seems to have been incorrect." *Cmty. Bank of Trenton*, 887 F.3d at 819. And just three months ago, the Georgia Supreme Court found no duty to safeguard personal information under a state statute that did not "explicitly establish any duty, nor . . . require any conduct at all." *Ga. Dept. of Labor v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019).

### Breach of contract (Counts 3 & 4)

Plaintiffs allege that Marriott's and Starwood's separate privacy statements constitute contracts under New York and Maryland law (Consol. Compl. ¶¶ 310-20), but gloss over the core element of any contract—mutual assent. Plaintiffs do not allege they "ever logged onto [defendant's] website and accessed, read, understood, actually relied upon, or otherwise considered [defendant's] privacy policy." *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004). Nor do plaintiffs allege how or when Starwood agreed to treat its privacy statement as a contract, given that the statement itself made clear it was merely an "explanation" of Starwood's data and privacy practices. And none of the plaintiffs allege they provided their information after September 23, 2016—the date Marriott acquired Starwood—so there is no basis to conclude that any plaintiff assented to the terms of the Marriott statement.

Plaintiffs also claim an implied contract was formed solely because they expected Marriott would provide data security in exchange for their personal information. (Consol. Compl. ¶¶ 321-28.) But plaintiffs' subjective belief alone is not enough. *See Lovell v. PF Changs China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015) (plaintiffs' "unilateral and subjective expectations do not give rise to enforceable contracts").

### Statutory claims (Counts 8, 15, 46, & 62)

Plaintiffs' statutory claims fail too. Michigan's Identity Theft Protection Act applies only to "personal information"—which does not include passports and includes payment card numbers only "in combination with any required security code, access code, or password that would permit access to . . . financial accounts." Mich. Comp. Laws §§ 445.63(r), 445.72(1). Plaintiffs cannot allege that security or access codes or passwords were taken in the Marriott cyberattack. This claim also fails because the Act provides no express private right action.

Under Maryland's Consumer Protection Act, "[c]onsumers must prove that they relied on the misrepresentation in question." *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 730 (D. Md. 2013). Although plaintiffs claim they "rel[ied] on Marriott's misrepresentations and omissions" (Consol. Compl. ¶ 371), they do not identify what those misrepresentations or omissions were. Nor do they allege they read, considered, or were even aware of them. This falls short of Rule 9(b)'s demands, which apply to claims under this statute. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Moreover, as with the Michigan statute, the Maryland Personal Information Protection Act only covers payment cards when accompanied by access or security codes or passwords. *See* Md. Code Ann., Com. Law §§ 14-3501(e)(1)(i)(3), 14-3503(a), 14-3504(b). And although Maryland's PIPA covers passports, *id.* § 14-3501(e)(1)(i)(1), neither Maryland plaintiff claims to have provided a passport to Starwood. (Consol. Compl. ¶¶ 52-53.)

New York's consumer protection law, GBL § 349, is inapplicable because it applies only to deceptive conduct that occurs in New York. *See In re Fyre Festival Litig.*, 2019 WL 3006629, at *14 (S.D.N.Y. July 10, 2019). Plaintiffs do not identify any deceptive conduct that occurred there—nor do the New York plaintiffs claim to have read or been aware of any allegedly deceptive statements at all. (*See* Consol. Compl. ¶ 927.)

Finally, the four California plaintiffs are among those who do not allege any misuse of their information. Accordingly, they neither have standing under Article III nor under California's Unfair Competition Law, which is "substantially narrower" than Article III and requires loss of "money or property." *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 886 (Cal. 2011).

**Damages**

Damages are an essential element of each of plaintiffs' common law claims. In New York, Maryland, and Oregon, actual loss is required for breach of contract. *Primoff v. Warfield*, 495 F. App'x 293, 298-300 (4th Cir. 2012); *Lexington 360 Assocs. v. First Union Nat'l Bank of N. Carolina*, 234 A.D.2d 187, 189-90 (N.Y. App. Div. 1996); *Sharma v. Providence Health & Servs.-Oregon*, 412 P.3d 202, 211 (Or. Ct. App. 2018). The same is true for negligence claims in Illinois, Florida, and Georgia. *Collins v. Athens Orthopedic Clinic*, 815 S.E.2d 639, 643-45 (Ga. Ct. App. 2018); *In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, 2018 WL 1189327, at *11-13 (D. Minn. Mar. 7, 2018) (Illinois law); *Lucarelli Pizza & Deli v. Posen Const., Inc.*, 173 So. 3d 1092, 1094 (Fla. Dist. Ct. App. 2015). And actual injury is required under plaintiffs' Maryland and New York statutory claims as well. *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 10 (D.D.C. 2019) (Maryland law); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1004 (S.D. Cal. 2014) (New York law).

Here, the 15 non-misuse bellwether plaintiffs seek recovery based on (i) increased risk of harm, (ii) overpayment, and (iii) time and money spent to mitigate the risk of future fraud. None of those alleged injuries, at least as set forth here, amount to actual damages. *See Attias*, 365 F. Supp. 3d at 16. And as discussed above, two of the five misuse plaintiffs have not plausibly alleged any injury connected to the cyberattack at issue.

August 19, 2019
Page 6

Sincerely,

*/s/ Daniel R. Warren*
Daniel R. Warren
Gilbert S. Keteltas
Lisa M. Ghannoum
Baker & Hostetler LLP

*Attorneys for defendants*

**Certificate of Service**

I certify that on August 19, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing trough the Court's system.

*/s/ Daniel R. Warren*