GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Jason J. Mendro
Direct: +1 202.887.3726
JMendro@gibsondunn.com

August 26, 2019

FILED VIA ECF

Hon. Paul W. Grimm
U.S. District Court
6500 Cherywood Lane, Suite 465A
Greenbelt, MD 20770

Re: *McGrath v. Marriott International, Inc.*, 8:19-cv-368 (*In re: Marriott International, Inc. Customer Data Security Breach Litigation*, 8:19-md-2879)

Dear Judge Grimm:

      Pursuant to Case Management Order No. 3 (ECF No. 279), Defendants respectfully submit this letter summarizing the grounds for their anticipated motion to dismiss the Securities Plaintiffs' Amended Consolidated Class Action Complaint ("Complaint" or "AC," ECF Nos. 369 & 401)[1] under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, and Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

      On the morning of November 30, 2018, Marriott International, Inc. ("Marriott" or the "Company") announced that it detected unauthorized access to its Starwood guest reservation database.[2] The very next day, plaintiffs filed the first lawsuit claiming that the drop in the Company's stock price that followed (albeit, only temporarily) revealed that Marriott had somehow defrauded its shareholders. The current Complaint spans 186 pages yet nowhere alleges that Marriott, or any other defendants, represented that Marriott—unlike the federal government and a multitude of the world's most sophisticated financial institutions, internet companies, and healthcare providers—was impervious to cyberattacks.

      The Complaint's efforts to portray a data security incident as fraud on investors are wholly lacking in merit. As further summarized below, Count I of the Complaint, which claims securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), should be dismissed because it fails to plead (1) any actionable misstatements or omissions; (2) scienter (i.e., a culpable state of mind); (3) that certain defendants are properly regarded as "makers" of challenged statements; or (4) loss causation (i.e., that any misstatement caused losses to investors). Count II, which asserts control person liability under Section 20(a) of the Exchange Act, should be dismissed because the Complaint fails to plead any primary violation upon which secondary liability could be predicated.

---

[1] Pin citations to "AC" refer to the Corrected Amended Consolidated Class Action Complaint, ECF No. 401.

[2] This is the reservation database for hotels that were managed by Starwood Hotel & Resorts Worldwide until it merged with Marriott in 2016.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Hon. Paul W. Grimm
August 26, 2019
Page 2

### A. The PSLRA Imposes Unique And Exacting Pleading Standards

"Congress recognized the potential for abuse in the securities fraud context, including 'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers.'" *Lerner v. Nw. Biotherapeutics, Inc.*, 273 F. Supp. 3d 573, 585 (D. Md. 2017) (citation omitted). "The PSLRA was enacted to discourage frivolous securities claims by imposing stringent pleading requirements with regard to allegations of securities fraud." *Burt v. Maasberg*, 2013 WL 1314160, at *12 (D. Md. Mar. 31, 2013). "Through the '[e]xacting pleading requirements' of the PSLRA, Congress charged courts to be vigilant in preventing meritless securities fraud claims from reaching the discovery phase of litigation." *Cozzarelli v. Inspire Pharm. Inc.,* 549 F.3d 618, 623 (4th Cir. 2008) (citation omitted). As further discussed below, the Complaint fails to meet these pleading requirements.

### B. The Complaint Fails To Plead Any Actionable Misstatement Or Omission

Under the PSLRA, plaintiffs asserting claims under Section 10(b) must "specify each [allegedly misleading] statement" and "the reason or reasons why the statement is misleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). When allegations are made on information and belief, plaintiffs must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). "[T]he challenged statement or omission must be '*factual*,' *i.e.*, 'one that is demonstrable as being true or false'; it 'must be *false*, or the omission must render public statements *misleading*'"; and it must be material. *Shah v. GenVec, Inc.*, 2013 WL 5348133, at *11 (D. Md. Sept. 20, 2013) (quoting *Longman v. Food Lion, Inc.,* 197 F.3d 675, 682 (4th Cir. 1999). "[A]n omission is only fraudulent in the presence of a duty to disclose"; thus, to allege an actionable omission, Plaintiffs must plead statements that give rise to "a duty to disclose additional facts . . . to make the affirmative statement not misleading." *In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *6 (D.N.J. Dec. 7, 2009).

The Complaint does not plead a single statement or omission that satisfies these standards. The Complaint catalogues a litany of allegedly "false and misleading" statements that can be grouped into three topic areas: (i) Marriott's contemporaneous comments on its due diligence and integration with Starwood, and optimism regarding the prospects of the combined company; (ii) Marriott's commitment to protecting customer data; and (iii) Marriott's descriptions of the risks the Company might face from the merger and from cyberattacks. *See generally* AC ¶¶ 236–359. All of these statements are nonactionable because they are not alleged to be factually false, are generalized "puffery" that is immaterial as a matter of law, and/or are protected by the PSLRA's safe harbor for forward-looking statements.

First, the statements regarding Marriott's diligence and integration with Starwood and Defendants' forecasts about the merger and the combined company are "optimistic generalizations, or 'puffery'" that are "too general to cause a reasonable investor to rely upon them" and "do not give rise to securities violations." *E.g.*, *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 297 (S.D.N.Y. 2013) (citations and quotation marks omitted) (dismissing claims that descriptions of "detailed and in-depth due diligence" were "misleading"); *Lighthouse Fin. Grp. v.*

Hon. Paul W. Grimm
August 26, 2019
Page 3

*Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 341 (S.D.N.Y. 2012) (holding statement providing update on "promising" progress of merged companies' integration to be nonactionable); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 314 (S.D.N.Y. 2010) (forecasting combined firm's "'significantly enhanced' capabilities" not actionable). Moreover, predictive statements about the prospects of the merger, *see, e.g.*, AC ¶ 282, are forward-looking and are shielded from liability under the safe harbor of the PSLRA. *See* 15 U.S.C. § 78u–5.

    Second, Plaintiffs fail to plead allegations of fact to support the claim that many of the challenged statements were false. For example, Plaintiffs assert that the use of the term "critical" to describe the way it treats the integrity and protection of customer data was "false and misleading" due to Marriott's supposed failure to protect that data. *E.g.*, AC ¶¶ 251–52. But "there is nothing inconsistent between Defendants' statements and the fact that [Marriott] suffered an . . . attack. . . . It is equally plausible that [Marriott] did place a high emphasis on security but that the Company's security systems were nonetheless overcome." *In re Heartland*, 2009 WL 4798148, at *5. Further, allegations of fraud predicated on the choice of "critical" as a descriptor have been held to be nonactionable as a matter of law. *See, e.g.*, *Anastasio v. Internap Network Servs. Corp.*, 2011 WL 13124500, at *9 (N.D. Ga. Sept. 30, 2011) (promoting "mission *critical* business applications" is "immaterial as a matter of law" (emphasis added)); *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 903 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008) (similar).

    Third, Defendants' statements regarding the risks the combined company might face from the merger and cyberattacks are not actionable. Plaintiffs do not plead they are false; if anything, they plead the opposite. Having failed to allege any false statements, Plaintiffs will likely resort to arguing Defendants should have made more risk disclosures that Plaintiffs devised in hindsight, but the Complaint cannot be salvaged through a formulaic demand to "tell me more." Plaintiffs fail to plead any legal "duty to disclose additional facts" that were known to Defendants at the time of their statements. *See In re Heartland*, 2009 WL 4798148, at *6; *see also San Diego Cty. Emp. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 121 (S.D.N.Y. 2010) ("A [Section 10(b)] claim . . . must be dismissed as a matter of law where the cautionary language provided 'explicitly warns of or directly relates to the risk that brought about a plaintiff's loss' . . . and '*no reasonable investor* could have been misled about the nature of the risk when he invested.'" (citations omitted)).

**C.    The Complaint Fails To Plead A Strong Inference Of Scienter**

    The PSLRA "unequivocally raised the bar for pleading scienter," requiring Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321. The Complaint may not survive dismissal unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324. This unique pleading standard requires a balancing of the inferences that follow from the allegations, in contrast to the usual rule in non-PSLRA cases that draws all inferences in favor of the plaintiff at the pleadings stage. Here, any inference of culpability that is not at least as strong as the opposing inference of innocence must be rejected. If "the facts as a whole more plausibly suggest that the defendant acted

innocently—or even negligently—rather than with intent or severe recklessness, the action must be dismissed.'" *Cozarelli*, 549 F.3d at 624.

Plaintiffs fail to plead a strong inference of scienter. The Complaint is bereft of specific factual allegations that any of the Defendants actually knew, or were reckless in not knowing, that Marriott made any statements that are remotely false. This deficiency is fatal to the claims.

Plaintiffs attempt to fill this void with characterizations of Defendants' job responsibilities and the importance of customer data in general, but these assertions are legally inadequate. For example, Plaintiffs argue that customer data was a "core" part of Marriott's business and motivation behind its merger with Starwood, AC ¶¶ 363–66, but "such allegations, without additional support, are not sufficient" to plead scienter. *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 692–94 (D. Md. 2018) (dismissing claims that representations about "core operations" were misleading). This exact argument has been rejected in the data breach context. *See In re Heartland*, 2009 WL 4798148, at *7–8 ("[O]ther, individualized allegations [must] further suggest that the officer had knowledge . . . of any ongoing [data] security problems."). Furthermore, scienter cannot be inferred merely from the positions of the Defendants. *See, e.g.*, *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014) ("[W]ithout additional detailed allegations establishing the defendants' actual exposure to the . . . problem, [a] complaint falls short of the PSLRA's particularity requirements.").[3]

Plaintiffs claim that Defendants' scienter should be inferred from their alleged knowledge (or reckless lack thereof) of purported "red flags"—(i) cyberattacks against Starwood, (ii) contemporaneous data breaches, and (iii) issues with Starwood's IT system—that should have alerted Defendants to the need for heightened due diligence. *See, e.g.*, AC ¶¶ 365–67. This argument lacks merit. Allegations that "[D]efendants should or could have done more" are insufficient "to establish a strong inference of scienter." *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 314 (4th Cir. 2009).

Plaintiffs' reliance on the duration of Defendants' unawareness of the Starwood breach also is misplaced. "[C]alling a problem 'long-standing' does not necessarily suggest that *knowledge* of the problem was long-standing." *In re Constellation Energy Grp., Inc. Sec. Litig.*, 2012 WL 1067651, at *7 (D. Md. Mar. 28, 2012). The Complaint is devoid of any allegation that Defendants knew about the data breach or believed any of their statements were false.

---

[3] Plaintiffs' attempt to impute scienter to Mr. Sorenson based on the timing of the public announcement is equally unavailing. *See* AC ¶ 369. "Taking the time necessary to get things right is both proper and lawful. Managers . . . are entitled to investigate for a reasonable time, until they have a full story to reveal." *Knurr v. Orbital ATK Inc.*, 272 F. Supp. 3d 784, 803 n.30 (E.D. Va. 2017) (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007)). Similarly, the generic assertions about Mr. Sorenson supposedly being "hands on" with "Marriott's M&A activity," AC ¶ 370–71, "are insufficiently particular to satisfy the scienter requirement, because [they] are merely generic allegations that a manager may have insight into certain areas of the business, rather than direct insight into the aspects of the business relevant to Plaintiffs' claims." *In re Mellanox Techs. Ltd. Sec. Litig.*, 2014 WL 12650991, at *19 (N.D. Cal. Mar. 31, 2014) (refusing to infer scienter from allegations that "Defendants were 'hands-on'" and "hyper-involved").

Finally, the Complaint's reliance on Confidential Witnesses ("CWs") does not support an inference of scienter. Plaintiffs must describe the CWs with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged," *Yates*, 744 F.3d at 885 (citation omitted), and the statements attributed to such CWs "must themselves be indicative of scienter," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). None of the CWs is alleged to have interacted with any individual Defendant, much less obtained personal knowledge of their states of mind. Plaintiffs attribute vague and generalized claims to the CWs—consisting largely of unreliable hearsay and pure speculation that has no bearing on scienter, *see, e.g.*, AC ¶¶ 106, 145, 158, 160—which is not "sufficient to raise a strong inference of scienter," *Zucco Partners*, at 996.

**D.    Many Challenged Statements Were Not Made By The Individual Defendants**

Liability under Section 10(b) extends only to the "maker" of the statement—"the person or entity with ultimate authority over the statement." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The Complaint fails to plead, however, that all Defendants made all the challenged statements. *See, e.g.*, AC ¶ 286 (attributing only one challenged statement to Ms. Linnartz); *id.* ¶ 330 (attributing only one challenged statement to Mr. Hoffmeister).

**E.    The Complaint Fails To Plead Loss Causation**

To state a claim under Section 10(b), "the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009). The Complaint does not adequately plead loss causation because it alleges no causal link between a "corrective disclosure" revealing the truth about a past misrepresentation and Plaintiffs' economic loss. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007). Although the Complaint reflexively cites the disclosure of the breach as the cause of a decrease in the Company's stock price, *see* AC ¶¶ 380–81, it fails to plead that this "disclosure[] . . . revealed to the market the undisclosed truth about [anything] fraudulent." *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472–73 (4th Cir. 2011).

**F.    The Complaint Fails To State A Claim Under Section 20(a)**

A "claim for controlling person liability under Section 20(a) must be based upon a primary violation of the securities laws." *E.g.*, *Svezzese v. Duratek, Inc.*, 67 F. App'x 169, 174 (4th Cir. 2003). As Plaintiffs have not established a predicate violation under Section 10(b), this claim should be dismissed. *See, e.g.*, *Cozzarelli*, 549 F.3d at 628.

For all of the foregoing reasons, which would be further developed in a full brief, the Complaint should be dismissed in its entirety.

Hon. Paul W. Grimm
August 26, 2019
Page 6

Respectfully submitted,

*/s/ Jason J. Mendro*

Jason J. Mendro

cc: All Counsel of Record (via ECF)