GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Jason J. Mendro
Direct: +1 202.887.3726
JMendro@gibsondunn.com

September 9, 2019

FILED VIA ECF

Hon. Paul W. Grimm
U.S. District Court
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD 20770

Re: *Moore v. Marriott, et al.*, 8:19-cv-00830 and *Alves v. Sorenson, et al.*, 8:19-cv-00812 (*In re: Marriott International, Inc. Customer Data Security Breach Litigation*, 8:19-md-2879)

Dear Judge Grimm:

Pursuant to Case Management Order No. 3 (ECF No. 279), Defendants respectfully submit this letter summarizing the grounds for their anticipated motion to dismiss the Derivative Plaintiffs' Verified Shareholder Derivative Amended Consolidated Complaint ("Complaint" or "AC," ECF No. 397) under Rules 23.1, 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.

On November 30, 2018, Marriott International, Inc. ("Marriott" or the "Company") announced that it had detected unauthorized access to its Starwood guest reservation database.[1] Two purported stockholders of the Company ("Plaintiffs") filed separate derivative actions (since consolidated, *see* ECF Nos. 173, 279) asserting that certain of Marriott's directors and officers ("Defendants") are liable *to the Company* for not preventing the cyber incident and resulting lawsuits. Although Plaintiffs purport to assert claims on behalf of Marriott, Plaintiffs never asked the Company's board of directors to pursue these claims. This deficiency compels dismissal. Moreover, all of the counts of the Complaint fail to state a claim upon which relief can be granted.

It is "[a] cardinal precept . . . that directors, rather than shareholders, manage the business and affairs of the corporation," which includes the authority to decide "whether to initiate or pursue a lawsuit on behalf of the corporation." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (citations omitted).[2] "[T]he right of a stockholder to prosecute a derivative suit is limited to situations where either the stockholder has demanded the directors pursue a corporate claim and the directors have wrongfully refused to do so, or where demand is excused because the directors are incapable of making an impartial decision regarding whether to institute such litigation." *Stone v. Ritter*, 911 A.2d 362, 366–67 (Del. 2006) (citation omitted).

Because Plaintiffs failed to make a pre-suit demand on Marriott's board, AC ¶ 369, they must satisfy the heavy burden of pleading that they are excused from the demand requirement.

---

[1] This is the reservation database for hotels that were managed by Starwood Hotel & Resorts Worldwide until it merged with Marriott in 2016.

[2] Delaware law governs Plaintiffs' obligation to make a pre-suit demand because Marriott is incorporated in Delaware. *See In re AGNC Inv. Corp.*, 2018 WL 3239476, at *6 (D. Md. July 3, 2018).

Plaintiffs can do so only by pleading "particularized factual allegations [that] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *see Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (pleadings "must comply with stringent requirements of factual particularity"); Fed. R. Civ. P. 23.1(b). The Complaint "must show that a majority of the Directors were not independent" or disinterested. *In re Home Depot, Inc. S'holder Derivative Litig.*, 223 F. Supp. 3d 1317, 1324 (N.D. Ga. 2016). Plaintiffs have done neither.[3]

### A. The Complaint Fails To Raise Any Doubt That A Majority Of The Board Is Independent

The Complaint fails to plead that a majority of the board lacks independence. "Independence means that a director's decision is based on the corporate merits of the subject before the Board rather than extraneous considerations or influences." *In re Verifone Holdings, Inc. S'holder Derivative Litig.*, 2009 WL 1458233, at *11 (N.D. Cal. May 26, 2009). The Complaint cursorily asserts that (1) Defendant Harrison "is beholden to Defendant JW Marriott by virtue of their family relationship," AC ¶ 399; and (2) "the Director Defendants have longstanding business and personal relationships with each other," such as serving overlapping tenures on other boards, that "preclude them from acting independently," *id.* ¶¶ 449, 451–52.

Neither of these bare assertions rebuts Delaware law's "*presumption* that [the directors] were faithful to their fiduciary duties." *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004). "Demand is not excused . . . just because directors would have to sue their friends, family and business associates." *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 354 n.18 (Del. Ch. 1998) (quotation marks omitted). Courts have repeatedly held that "longstanding professional entanglements" and personal relationships are not inherently "such close relationships that independence can reasonably be doubted." *In re Verifone*, 2009 WL 1458233, at *11–12; *see Beam*, 945 A.2d at 1051. Plaintiffs fail to allege with particularity any facts suggesting that any Director Defendant was "so under" another Defendant's influence that his or her "discretion would be sterilized," *Rales*, 634 A.2d at 936, much less that the supposedly dominating Defendant is a wrongdoer.[4]

### B. The Complaint Fails To Raise Any Doubt That A Majority Of The Board Is Disinterested

Plaintiffs contend that the Board is not disinterested because each Director Defendant faces a likelihood of personal liability. AC ¶¶ 371–79. But "[d]emand is not excused solely

---

[3] Plaintiffs' allegations and verifications also fail to plead with the requisite specificity that they contemporaneously and continuously owned Marriott shares. *See* Fed. R. Civ. P. 23.1(b)(1).

[4] Plaintiffs' contention that Marriott's proxy statement "admits" that three directors are not independent, AC ¶¶ 380, 382, 388, 395, erroneously confuses stock exchange rules for independence with Delaware's standard for demand futility. *See Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015).

Hon. Paul W. Grimm
September 9, 2019
Page 3

because the directors would be deciding to sue themselves." *In re Citigroup*, 964 A.2d at 121. Instead, Plaintiffs must "show director conduct that is *so egregious on its face* that [it] cannot meet the test of business judgment, and a *substantial likelihood* of director liability therefore exists." *Id.* (emphases added). The Complaint comes nowhere close to meeting this standard.

> 1. **The Complaint Fails To Allege That A Substantial Likelihood Of Director Liability Exists For Breach Of Fiduciary Duty**

Plaintiffs' primary claim is that Defendants breached their fiduciary duty to oversee or monitor the Company with respect to cybersecurity. *See* AC ¶¶ 375–79, 464. Claims based on an alleged failure of oversight are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Liability arises only in extraordinary circumstances, where "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370 (emphasis omitted). In either case, "imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations." *Id.* (emphasis added).[5]

The Complaint fails to plead either basis for oversight liability. First, the Complaint admits that the Directors had in place reporting systems and controls related to cybersecurity. *See, e.g.*, AC ¶ 375. Second, the Complaint does not allege that, having implemented such systems and controls, Defendants failed to monitor them or *knowingly* allowed the data breach to occur. *See In re Home Depot*, 223 F. Supp. 3d at 1325 (holding that derivative plaintiffs failed to clear "incredibly high hurdle" of showing "with particularized facts beyond a reasonable doubt that a majority of the Board faced substantial liability because it consciously failed to act in the face of a known duty to act" related to data security responsibilities).

Failure-to-monitor claims can sometimes be premised on defendants' willful failure to respond to so-called "red flags" that were made apparent. *See Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008); *see In re Capital One Derivative S'Holder Litig.*, 952 F. Supp. 2d 770, 793 (E.D. Va. 2013) ("Plaintiffs must plead with particularity that *each individual director* was aware of the red flags." (emphasis added)). None of the purported "red flags" identified in the Complaint, *e.g.*, AC ¶¶ 9, 140–67, "show[] that the board ever was aware that" the board's systems for assessing and monitoring cybersecurity risks were inadequate or that "the board chose to do nothing about problems it allegedly knew existed." *Stone*, 911 A.2d at 370 (quotation marks omitted). Courts routinely dismiss derivative complaints claiming failure of oversight based on similar allegations about a cybersecurity breach. *See, e.g.*, *Home Depot*, 223 F. Supp. 3d at 1325–27; *Palkon v. Holmes*, 2014 WL 5341880, at *6 n.1 (D.N.J. 2014).

---

[5] Claims based on the duty of care, AC ¶¶ 462–63, are foreclosed as a matter of law by the Company's charter, which—as permitted by 8 *Del. C.* § 102(b)(7)—expressly exculpates directors from liability for such claims. *See, e.g.*, *In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173, 1176 (Del. 2015).

Hon. Paul W. Grimm
September 9, 2019
Page 4

Plaintiffs also claim that demand is excused because seven Defendants "engaged in insider sales" every time they sold stock between the merger and the announcement of the data breach. AC ¶¶ 13, 371, 448. But nowhere does the Complaint allege, as it must, that these Defendants traded with *knowledge* that a cyber incident would occur. *See Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003) (dismissing complaint in the absence of particularized facts supporting an inference that directors who engaged in insider sales possessed material non-public knowledge).

## 2. The Complaint Fails To Allege That A Substantial Likelihood Of Director Liability Exists For Any Of The Remaining Claims, Which Are Meritless

Plaintiffs' other state law claims—corporate waste, gross mismanagement, and unjust enrichment (Counts II–IV)—also do not subject any Defendant to a substantial likelihood of liability. As an initial matter, these claims duplicate the defective claims for breach of fiduciary duty and should be dismissed on the same grounds. *See, e.g.*, *In re Abbott Labs. Derivative S'holder Litig.*, 126 F. Supp. 2d 535, 537 (N.D. Ill. 2000) (waste); *In re Citigroup*, 964 A.2d at 114 n.6 (gross mismanagement); *Calma v. Templeton*, 2015 WL 1951930, at *20 (Del. Ch. Apr. 30, 2015) (unjust enrichment).

Each state law claim also fails for additional, independent reasons. Count II fails to clear the high bar for corporate waste, i.e., that the "directors irrationally squander[ed] or g[ave] away corporate assets." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (quotation marks omitted). Count III should be dismissed because "Delaware law does not recognize an independent cause of action against corporate directors and officers" for "gross mismanagement." *In re Citigroup*, 964 A.2d at 114 n.6. With respect to Count IV, Plaintiffs argue that Defendants were unjustly enriched because they received "unjustly lucrative" bonuses based on performance during the Starwood merger. AC ¶ 178. But to the extent this compensation was paid pursuant to Defendants' employment contracts, those contracts preclude an equitable challenge. *See Feuer v. Redstone*, 2018 WL 1870074, at *17 (Del. Ch. Apr. 19, 2018). Moreover, the allegations fail to "raise a plausible inference that there was *no* justification" for the supposedly unjust compensation. *In re Capital One*, 952 F. Supp. 2d at 783 (emphasis added); *see also Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *24 (Del. Ch. May 18, 2009).

Counts V through VII assert violations of the federal securities laws and must be dismissed. In addition to being subject to the stringent requirements for pleading demand futility, these claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b).

Counts V and VI, which rely on allegations copied from the complaint in the Securities Track (ECF Nos. 369, 401) to claim violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, fail for all the reasons explained in Defendants' August 26, 2019 letter to the Court (ECF No. 414), including failure to plead any actionable misstatement or omission and failure to plead a strong inference of scienter. Plaintiffs also fail to allege that the Company itself, which they purport to represent, "was deceived as a result of any alleged fraud." *See, e.g.*, *In re Citigroup Inc. S'holder Derivative Litig.*, 2009 WL 2610746, at *10 (S.D.N.Y. Aug. 25, 2009).

Hon. Paul W. Grimm
September 9, 2019
Page 5

Count VII, which claims violations of Section 14(a), fails for lack of causation.[6] To state a Section 14(a) claim, Plaintiffs must plead with particularity that Defendants misrepresented or omitted material facts from proxy statements, and that the misrepresentation or omission was "essential" to "accomplish[ing] . . . the transaction that produced the injury" to the Company. *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3 (D. Md. July 3, 2018) (quotation marks omitted). "[T]he shareholders must have voted for the [transaction proposed in a proxy statement] because of the omission (i.e., transaction causation), and the losses to the company must have resulted directly from the . . . vote, not from the omission itself (i.e., loss causation)." *In re Home Depot*, 223 F. Supp. 3d at 1331. Here, the alleged injury was caused by the criminal actors who perpetrated the breach, not by shareholders' approval of any action proposed in a proxy statement. Although the Complaint states that the votes led to "election of directors," AC ¶¶ 199–201, it fails to show that "the security breaches to the company would not have occurred but for the Defendants being []elected to the Board," *In re Home Depot*, 223 F. Supp. 3d at 1331; *see also In re AGNC*, 2018 WL 3239476, at *3–6.

In sum, the Complaint fails to plead allegations sufficient to show that a substantial likelihood of director liability exists with respect to any claim, and therefore fails to raise a doubt that a majority of the board is disinterested.[7]

\*   \*   \*

For all of the foregoing reasons, which would be further developed in a full brief, the Complaint should be dismissed in its entirety.

Respectfully submitted,

*/s/ Jason J. Mendro*

Jason J. Mendro

cc: All Counsel of Record (via ECF)

---

[6] The Complaint also fails to identify with the requisite particularity statements allegedly rendered false or misleading by the purported omissions. *Compare, e.g.*, AC ¶¶ 301, 307, *with In re Marsh & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d 313, 323 (S.D.N.Y. 2007) (dismissing Section 14(a) claim absent a "link between an omission and a specific public statement").

[7] Plaintiffs' other arguments that particular Defendants are not disinterested are also frivolous. First, Plaintiffs suggest that certain Defendants' membership on the Audit Committee, Nominating and Corporate Governance Committee, or Compensation Policy Committee renders them unable to consider impartially a demand. AC ¶¶ 380(b), 435, 437, 440. But "Delaware law does not allow knowledge to be inferred from committee membership alone and instead requires plaintiffs to allege with particularity specific facts evidencing that the members of the committee likely knew about the red flags"—which the Complaint fails to do. *In re Capital One*, 952 F. Supp. 2d at 793 & n.26. Second, Plaintiffs suggest that demand is futile because, if the Directors were to sue themselves, they would not be covered by Director and Officer Insurance. AC ¶ 458. "[T]his argument has been rejected repeatedly under Delaware [l]aw." *Ferre v. McGrath*, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007).