**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **IN RE: MARRIOTT INTERNATIONAL INC., CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL No. 19-md-2879 |
| | Judge Paul W. Grimm |
| **THIS DOCUMENT RELATES TO THE CONSUMER ACTIONS** | **JURY TRIAL DEMANDED** |

**CONSUMER PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS ACCENTURE LLP AND ACCENTURE PLC**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

I.      INTRODUCTION. ............................................................................. 1

II.     The Bellwether Plaintiffs have standing. ....................................... 2

III.    The Bellwether Plaintiffs have stated a claim. .............................. 3

        A.    Standard on motion under Rule 12(b)(6). ............................ 3

        B.    Plaintiffs' factual allegations plausibly support the recognition
              of a duty of care from Accenture to Plaintiffs to protect Plaintiffs'
              Personal Information. ........................................................... 4

              1.    Plaintiffs' harms included more than merely economic losses. .............. 4

              2.    Plaintiffs have also alleged sufficient facts to support a nexus with
                    Accenture. ...................................................................... 4

                    a.    Plaintiffs have alleged a sufficient nexus under
                          Maryland law. ......................................................... 4

                    b.    A duty of care likewise exists under Connecticut law. ................. 7

                    c.    A duty of care exists under Florida law. ....................... 10

              3.    The very duty Accenture voluntarily assumed was to protect
                    Plaintiffs from the foreseeable criminal conduct of third-parties. ............ 11

              4.    Plaintiffs do not seek recognition of an "unprecedented tort duty." ......... 14

        C.    Plaintiffs allege breach, causation, and damages. ................................ 17

        D.    The FTC Act supports Plaintiffs' claims for negligence and
              negligence per se. ................................................................. 19

              1.    Violation of the FTC Act is evidence of negligence under
                    Maryland law. ...................................................................... 19

              2.    Accenture had a duty to protect Plaintiffs' Personal Information
                    under the FTC Act. ............................................................... 20

              3.    Violation of the FTC Act is a basis for a negligence per se claim. ........... 21

IV.     The parties have agreed to suspend briefing on personal jurisdiction for now. ............... 24

V.      CONCLUSION. ................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 3

*Assa Compania De Seguros, S.A. v. Codotrans, Inc.*,
   No. 13-23563-CIV, 2014 WL 11906600 (S.D. Fla. Sept. 12, 2014) .................................. 10, 16

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................... 15

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
   451 Md. 600, 155 A.3d 445 (2017) ..................................................................... 5, 6, 7

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) .............................................................. 4, 17

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ................................................................................ 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 3

*Bentley v. Carroll*,
   355 Md. 312 (1999) ............................................................................................. 20

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
   238 F. Supp. 3d 1359 (S.D. Fla. 2017) ................................................................ 15

*Chicago Title Ins. Co. v. Allfirst Bank*,
   394 Md. 270, 905 A.2d 366 (2006) ...................................................................... 5, 6

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
   887 F.3d 803 (7th Cir. 2018) .......................................................................... 15, 23

*Coastline Terminals of Conn., Inc. v. USX Corp.*,
   156 F. Supp. 2d 203 (D. Conn. 2001) .................................................................. 20

*Colonial Penn Ins. Co. v. Coil*,
   887 F. 2d 1236 (4th Cir. 1989) ............................................................................ 13

*Conn. Mut. Life Ins. Co. v. New York & New Haven Railroad Co.*,
   25 Conn. 265 (1856) .............................................................................................. 8

*Cooney v. Chicago Pub. Sch.*,
   407 Ill. App. 3d 358 (2010) .................................................................................. 15

*Department of Labor v. McConnell*,
   305 Ga. 812 (2019) ........................................................................................ 23

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ...................................................................... 18, 19

*Dixon v. Cole*,
   No. CV TDC-16-3922, 2018 WL 922355 (D. Md. Feb. 15, 2018) ......................... 13

*Erie Ins. Co. v. Chops*,
   322 Md. 79, 585 A.2d 232 (1991) ...................................................................... 20

*F.T.C. v. Wyndham Worldwide Corp.*,
   799 F.3d 236 (3d Cir. 2015).............................................................................. 20

*First Choice Fed. Credit Union v. Wendy's Co.*,
   No. 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)................................... 22

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972) ........................................................................................ 20

*Goldstein, Garber & Salama, LLC v. J.B.*,
   300 Ga. 840 (2017) ........................................................................................ 20

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
   No. 2:18-cv-03019, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) .......................... 4

*Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*,
   335 Md. 135, 642 A.2d 219 (1994) .................................................................. 14

*Hewitt v. Avis Rent-A-Car Sys., Inc.*,
   912 So. 2d 682 (Fla. Ct. App. 2005)................................................................ 13

*Hill v. Williams*,
   813 A.2d 130 (Conn. Ct. App. 2003)................................................................ 16

*Houck v. Substitute Tr. Servs., Inc.*,
   791 F.3d 473 (4th Cir. 2015) ............................................................................. 3

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
   892 F.3d 613 (4th Cir. 2018) ........................................................................... 18

*In re Arby's Rest. Grp. Inc. Litig.*,
   No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)................... 12, 17, 22, 23

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   362 F. Supp. 3d 1295 (N.D. Ga. 2019) ................................................. 11, 16, 22, 23

iii

*In re Michaels Stores Pin Pad Litig.*,
   830 F. Supp. 2d 518 (N.D. Ill. 2011) ................................................................. 12

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
   No. 14–MD–2586 ADM/TNL, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ......................... 15

*In re Syngenta AG MIR 162 Corn Litig.*,
   131 F. Supp. 3d 1177 (D. Kan. 2015) ................................................................. 21

*In re TJX Companies Retail Sec. Breach Litig.*,
   564 F.3d 489 (1st Cir. 2009) ................................................................. 20

*In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 25831:14-md-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ............. 15, 22, 23

*Jacques v. First Nat`l Bank*,
   307 Md. 527, 515 A.2d 756 (1986) ................................................................. 5, 16

*Jarmie v. Troncale*,
   50 A.3d 802 (Conn. 2012) ................................................................. 12

*Jerue v. Drummond Co., Inc.*,
   No. 8:17-CV-587-T-17AEP, 2017 WL 10876737 (M.D. Fla. Aug. 17, 2017) ...................... 10

*Kaisner v. Kolb*,
   543 So.2d 732 (Fla. 1989) ................................................................. 10

*Knight v. Merhige*,
   133 So. 3d 1140 (Fla. Ct. App. 2014) ................................................................. 12, 13, 21

*Lawrence v. O & G Indus., Inc.*,
   126 A.3d 569 (Conn. 2015) ................................................................. 7, 8, 9

*Lodge v. Arett Sales Corp.*,
   717 A.2d 215 (Conn. 1998) ................................................................. 14

*Luigino`s Int`l, Inc. v. Miller*,
   311 F. App'x 289 (11th Cir. 2009) ................................................................. 10

*McCain v. Fla. Power Corp.*,
   593 So.2d 500 (Fla. 1992) ................................................................. 10, 18

*Monk v. Temple George Associates, LLC*,
   869 A.2d 179 (Conn. 2005) ................................................................. 9

*Penn. Steel Company v. Wilkinson*,
   107 Md. 574, 69 A. 412 (1908) ................................................................. 14

*Phelps v. Lankes*,
    813 A.2d 100 (Conn. Ct. App. 2003)........................................................ 17

*Polakoff v. Turner*,
    385 Md. 467, 869 A.2d 837 (2005) .......................................................... 19

*Rivers v. Hagner Mgmt. Corp.*,
    182 Md. App. 632, 959 A.2d 110 (2008).............................................. 19, 20

*RK Constructors, Inc. v. Fusco Corp.*,
    650 A.2d 153 (Conn. 1994) ...................................................................... 8

*Ruiz v. Victory Properties, LLC*,
    107 A.3d 381 (Conn. 2015) ...................................................................... 9

*Suarez v. Sordo*,
    685 A.2d 1144 (Conn. Ct. App. 1996)...................................................... 13

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*,
    244 So. 3d 383 (Fla. Ct. App. 2018)........................................................ 10

*Tiara Condo. Assn, Inc. v. Marsh & McLennan Companies, Inc.*,
    110 So. 3d 399 (Fla. 2013)....................................................................... 10

*Toll Bros. v. Dryvit Sys., Inc.*,
    432 F.3d 564 (4th Cir. 2005) ................................................................... 18

*Walpert, Smullian & Blumenthal, P.A. v. Katz*,
    361 Md. 645, 762 A.2d 582 (2000) ........................................................ 5, 6

*Warr v. JMGM Grp., LLC*,
    433 Md. 170, 70 A.3d 347 (2013) ........................................................... 12

*Webb v. Green Tree Servicing, LLC*,
    No. CIV.A. ELH-11-2105, 2012 WL 2065539 (D. Md. June 7, 2012)................... 20

*Weisman v. Connors*,
    312 Md. 428, 540 A.2d 783 (1988) ........................................................... 7

*Wells Fargo Bank, N.A. v. Jenkins*,
    293 Ga. 162 (2013) ................................................................................ 23

*Wittenberg v. First Indep. Mortg. Co.*,
    599 F. App'x 463 (4th Cir. 2013) ............................................................ 17

*Yonce v. SmithKline Beecham Clinical Labs., Inc.*,
    111 Md. App. 124, 680 A.2d 569 (1996).................................................... 18

Statutes

15 U.S.C. § 45 ............................................................................................................ 19

15 U.S.C. § 6801 ....................................................................................................... 23

Md. Code Ann., Com. Law § 13-408 ...................................................................... 16

Md. Code Ann., Com. Law § 14-3508 .................................................................... 16

O.C.G.A. § 10-1-910 ................................................................................................. 23

O.C.G.A. § 10-1-393.8 .............................................................................................. 23

O.C.G.A. § 51-1-6 ..................................................................................................... 23

Rules

Fed. R. Evid. 201 ...................................................................................................... 13

Other Authorities

The Law of Torts § 209 (2d ed.) .............................................................................. 11

Restatement (Second) of Torts § 448 ...................................................................... 11

Restatement (Second) of Torts § 919 ...................................................................... 18

## I.     Introduction.

Accenture describes itself as "one of the world's leading professional service companies" and provides a range of services including management and technology consulting services. Compl. ¶ 241. In 2009, Accenture entered into a $200 million contract with Starwood Hotels & Resorts Worldwide, LLC to take over its IT maintenance and data security infrastructure. *Id.* ¶ 242. Following Marriott International's acquisition of Starwood on September 23, 2016 (*id.* ¶ 98), Accenture continued managing Starwood's IT systems, including the operation of the Starwood guest reservation database. *Id.* ¶ 248. At all relevant times, Accenture played a critical role in shaping Starwood's IT policies and overseeing the security (or lack thereof) of the Starwood network. For example, ███████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████. *Id.* ¶ 249. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. *Id.* ¶ 1346. Accenture failed to live up to its promises.

On November 30, 2018, Marriott announced that hackers had exfiltrated hundreds of millions of hotel guest records from the Starwood guest reservation database over an extensive, four-year long data breach. *Id.* ¶ 1. Investigations revealed that starting in July 2014 (long after Accenture took over security operations), hackers exploited glaring vulnerabilities in the Starwood network to install malicious software, harvest user credentials, and then roam freely across the Starwood networks to steal valuable consumer data, including names, mailing addresses, phone numbers, email addresses, passport numbers, SPG account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, payment card

numbers and expiration dates, and tools needed to decrypt cardholder data ("Personal Information"). *Id.* ¶¶ 2, 17. The scope and extent of the data breach would not have been possible without Accenture's extensive security failures—including missing obvious critical threats, such as unauthorized queries on Starwood's guest reservation database and malware specifically designed to access and exfiltrate sensitive information. *Id.* ¶ 253. Accenture's failure to prevent, detect, and remediate the data security threats on Starwood's data systems violated its duty to Plaintiffs to use reasonable care to protect their Personal Information from a foreseeable cyberattack. While Marriott is certainly responsible for the extensive damage caused by the massive breach on Starwood's systems, the blame also lies on its trusted security partner, Accenture.  Nevertheless, ███████████████████████████████████████, Accenture now asserts that it is immune from suit because, *inter alia*, it somehow owed no duty to those persons whose data it swore to protect. Thankfully, the law does not support Accenture's unfounded argument.

## II.     The Bellwether Plaintiffs have standing.

Accenture adopts Marriott's standing arguments wholesale in contending Plaintiffs have not alleged injury-in-fact under Article III. *See* Brief in Support (Dkt. 464-1) ("Mem.") at 23-24. But as explained in Plaintiffs' Opposition to Marriott's Motion to Dismiss, ECF No. 473 (hereafter "Opp. to Marriot MTD") at 2-16, which Plaintiffs incorporate by reference in response, because Plaintiffs allege (1) the data breach was perpetrated by criminal hackers, (2) each Plaintiffs' Personal Information, including payment card information, was stolen therein, and (3) several Plaintiffs have alleged resulting misuse of their Personal Information stolen in the breach, all Plaintiffs are at a sufficiently imminent risk of harm to support Article III standing. *See id.* at 4-12. Each Bellwether Plaintiff also alleges having to spend time and money to mitigate against this

imminent risk of misuse, as well as a failure to receive the benefit of their bargains, which are additional injuries under Article III. *Id.* at 10, 13-15.

Like Marriott, Accenture also challenges traceability as to Plaintiff Hevener's unauthorized credit card accounts, Mem. at 24, but as explained in opposition to Marriott's argument, a social security number is not essential to commit fraud because numerous personally identifying markers were stolen in the breach that fraudsters can use to "verify" the consumer's identity to open fraudulent accounts or "phish" for additional sensitive information to do so. Opp. to Marriott MTD at 9, 15-16. At best, these are issues that cannot be decided on a Motion to Dismiss.

**III.    The Bellwether Plaintiffs have stated a claim.**

   **A.    Standard on motion under Rule 12(b)(6).**

"[A] motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint," and "the legal sufficiency is determined by assessing whether the complaint contains sufficient facts, when accepted as true, to 'state a claim to relief that is plausible on its face.'" *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard requires only that the complaint's factual allegations 'be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "If [the plaintiff's] explanation is plausible, [the] complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation." *Id.*

**B.      Plaintiffs' factual allegations plausibly support the recognition of a duty of care from Accenture to Plaintiffs to protect Plaintiffs' Personal Information.**

**1.      Plaintiffs' harms included more than merely economic losses.**

Accenture argues that Plaintiffs' Maryland, Connecticut, and Florida negligence claims should be dismissed because there isn't an "intimate nexus" between the parties sufficient to support Plaintiffs' economic loss claims. Mem. at 7. But the entire premise of that argument is flawed because Plaintiffs seek more than pure economic losses. Plaintiffs here allege not only economic losses, but also harm to their property interest in their Personal Information, actual identity theft, and harms in the form of aggravation, inconvenience, and time spent dealing with the repercussions of the breach. Courts have recognized that these allegations are not merely economic in nature and therefore do not implicate the economic loss doctrine. *See, e.g., Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) ("[P]laintiff alleged his loss of time as a harm and so does not allege pure economic loss. The economic loss rule therefore does not apply."); *Hameed-Bolden v. Forever 21 Retail, Inc.*, No. 2:18-cv-03019, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) (recognizing that loss of value of personal information may represent a form of property damages, not merely economic losses). As explained in Plaintiffs' opposition to Marriott's motion at 14 n.11, 17-18, because Accenture's argument relies on an unduly restrictive description of Plaintiffs' injuries, its argument that Plaintiffs' negligence claim should be denied on this basis is not well-taken.

**2.      Plaintiffs have also alleged sufficient facts to support a nexus with Accenture.**

**a.      Plaintiffs have alleged a sufficient nexus under Maryland law.**

As it concerns Plaintiffs' economic damages, however, Plaintiffs have, in fact, alleged facts sufficient to show an "intimate nexus" between themselves and Accenture such that Accenture owed Plaintiffs a duty to use reasonable care to protect their Personal Information. Under Maryland

law, contractual privity is not required for a duty of care to arise in tort where only economic loss is alleged.[1] Rather, a duty will be found where there is "some connection" or "linking conduct" between the plaintiff and defendant, such as the defendant's "knowledge of [the plaintiff]'s reliance" on its work. *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290, 292-93, 905 A.2d 366, 377, 379 (2006) (holding depository bank owed duty of care to third-party drawer of check for improper handling of check where there was evidence the depository bank knew or should have known the drawer expected the check to be handled in a different manner); *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 693, 762 A.2d 582, 608 (2000) (permitting non-client to assert negligence claim for economic loss against an accountant where there was evidence the accountant knew the non-client would be relying on its work product); *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 620-21, 155 A.3d 445, 456-57 (2017). Such "linking conduct" creates "the legal equivalent of privity" sufficient to "establish the necessary 'intimate nexus' between the parties in a tort action where only economic loss results." *Chicago Title*, 394 Md. at 290, 292 (citing *Jacques v. First Nat'l Bank*, 307 Md. 527, 534-35, 515 A.2d 756, 759-60 (1986)). This makes sense, of course, because the defendant's knowledge of the plaintiffs' reliance ensures the defendant's "risk exposure" is limited "to an actually foreseeable extent, allowing [the] defendant to control the risk to which he or she is exposed." *Chicago Title*, 394 Md. at 294; *Walpert*, 361 Md. at 671; *Balfour*, 451 Md. at 617-18.

In this case, Plaintiffs allege facts showing Accenture knew Plaintiffs were foreseeable victims of Accenture's failure to adequately secure its clients' databases storing Plaintiffs' Personal Information, and therefore that Plaintiffs relied on Accenture to use reasonable care to

---

[1]     Because the tests for determining whether a duty of care will be found are stated differently by Maryland, Connecticut, and Florida courts, Plaintiffs address the issues separately.

maintain the security of those databases. In particular, Plaintiffs allege that ████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. *See* Compl. ¶¶ 246-51. The Complaint identifies ███████████████████████████████████████████████. *Id.* ¶ 249. Most importantly here, ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ███████████ *Id.* ¶ 1346. This duty included, among other things, ████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. *Id.*

Thus, Plaintiffs' allegations support Accenture's *express recognition* of the duty it owed to Plaintiffs to keep their Personal Information secure. This satisfies the requirement that Accenture's "risk exposure" be limited "to an actually foreseeable extent, allowing [Accenture] to control the risk to which [it was] exposed" and therefore supports the finding of a duty under Maryland law. *Chicago Title*, 394 Md. at 294, 905 A.2d at 380; *Walpert*, 361 Md. at 671, 762 A.2d at 596; *Balfour*, 451 Md. at 617-18, 155 A.3d at 455.

6

While Accenture cites cases where courts have found an intimate nexus lacking, Mem. at 8-9, Accenture is incorrect that these cases indicate some categorical bar to Plaintiffs' claim. Maryland courts recognize that "context is critical" in determining whether the relationship between the parties supports a finding of a duty of care. *Balfour*, 451 Md. at 620-21. In fact, the court in *Balfour* recognized that the question of duty may be left to the jury where there is evidence indicating a sufficiently close nexus between the parties.[2] Plaintiffs have alleged in detail the factual basis for Accenture's knowledge of the Plaintiffs' dependence on Accenture acting reasonably in securing Starwood's and Marriott's data systems. Conversely, in none of the cases Accenture cites did the defendant explicitly recognize it was taking on the very obligation to the plaintiff that the plaintiff sought to have recognized as a duty of care, like here.

### b. A duty of care likewise exists under Connecticut law.

Nor does the lack of contractual privity prevent the Connecticut Plaintiffs from asserting claims against Accenture. In assessing whether a duty of care will be found between parties not in contractual privity under Connecticut law, courts perform a four-factor analysis considering: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Lawrence v. O & G Indus., Inc.*, 126 A.3d 569, 575 (Conn. 2015). Based upon these factors, Accenture owes such a duty.

---

[2]     *See* 451 Md. at 620-21 (citing *Weisman v. Connors*, 312 Md. 428, 448, 540 A.2d 783, 793 (1988) (holding issue of duty of care was for the jury in claim brought by job applicant against prospective employer for negligent statements made during recruitment meeting where the purpose of the meeting was to accurately exchange information about the position and the prospective employer should have realized the economic harm that would result by the negligent conveyance of information)).

First, regarding the expectations of the parties, as explained above, 

. Thus, Accenture cannot dispute that it appreciated and understood its obligation to secure Plaintiffs' Personal Information. Likewise, Plaintiffs expected that Marriott, Starwood, and any data security contractors operating on their behalf would adopt reasonable data security measures to ensure their Personal Information was kept secure. Because the harm to Plaintiffs resulting from the data breach is the very harm Accenture was supposed to protect against, there is nothing "remote," "indirect," or "attenuated" about this harm that would warrant rejecting a duty of care here. *See id.* at 576-77 (citing *Conn. Mut. Life Ins. Co. v. New York & New Haven Railroad Co.*, 25 Conn. 265, 276-77 (1856) (holding where economic harm to third party not in contractual privity with defendants is "a remote and indirect consequence of the misconduct of the defendants," no duty of care will be found); *RK Constructors, Inc. v. Fusco Corp.*, 650 A.2d 153, 156 (Conn. 1994) (holding "what is relevant . . . is the measure of attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand")).

The second and third factors, "the public policy of encouraging participation in the activity, while weighing the safety of the participants," and "the avoidance of increased litigation," also weigh in favor of finding a duty here.[3] In particular, recognizing a duty running from Accenture to Plaintiffs is not "likely to increase the pool of potential claimants greatly." *Lawrence*, 126 A.3d at 580. Rather,

---

[3]      The *Lawrence* court analyzed these factors together because they are "analytically related." 126 A.3d at 580.

███████████████████████████████████████████████████████

██████████████████████████████████. On the other hand, "the recognition of

such a duty" will directly "correspond[] [to] an increase in safety." *Id.* In particular, holding data

security contractors responsible for their negligent conduct will incentivize them to ensure they

are acting reasonably and in accordance with the standard of care, resulting in fewer data breaches

and less litigation. *Cf. id.* at 580-81[4] (citing *Ruiz v. Victory Properties, LLC*, 107 A.3d 381, 394

(Conn. 2015) ("[R]ather than unnecessarily and unwisely increasing litigation, imposing a duty in

this case will likely prompt landlords to act more responsibly toward their tenants in the interest

of preventing foreseeable harm caused by unsafe conditions in areas where tenants are known to

recreate or otherwise congregate."); *Monk v. Temple George Associates, LLC*, 869 A.2d 179, 187-

88 (Conn. 2005) (attributing duty of care to parking facility owner with respect to patron injured

by criminal act would "protect customers by encouraging businesses to take reasonable care to

decrease the likelihood of crime occurring on their premises," noting that "[i]f, in fact, imposing a

duty of care has that result," litigation was "unlikely to increase" and "may even decrease")).[5]

      For the foregoing reasons, this Court should find a duty under Connecticut law.

---

[4]     Conversely, the *Lawrence* court held that no duty of care should be found by construction companies to workers at a construction site for lost wages resulting from an accident caused by the construction companies' negligence because construction companies "are subject to extensive state and federal regulation, and already may be held civilly liable to a wide variety of parties who may suffer personal injury or property damage as a result of their negligence in the industrial or construction context" such that imposing a duty of care would result in no "corresponding increase in safety." 126 A.3d at 580-81.

[5]     The final factor, decisions in other jurisdictions, is not directly applicable given the dearth of case law addressing the issue presented here. Data breach litigation is a relatively new area of the law. The amount of personal data companies collect from their customers has increased precipitously, often before the companies have taken the necessary precautions to protect that information from criminal theft. Plaintiffs are not aware of a case where a court has analyzed whether a data security contractor can be liable in tort to consumers whose personal information was compromised because the data security contractor failed to reasonably perform its contractual obligations.

### c.      A duty of care exists under Florida law.

Florida law also compels the conclusion that Plaintiffs have stated sufficient facts to support the existence of Accenture's duty of care to Plaintiffs. The Florida Supreme Court has explicitly confined the economic loss rule to the products liability context,[6] and "Florida ... recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992). Thus, "[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* (quoting *Kaisner v. Kolb*, 543 So.2d 732, 735 (Fla. 1989)). Indeed, "*each* defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element." *Id.* (emphasis added). Plaintiffs have alleged facts detailing the foreseeability of the data breach that occurred in this case, including that

███████████████████████████████████████████████████████████

---

[6]      *See Tiara Condo. Assn, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 407 (Fla. 2013); *see also Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *3 (M.D. Fla. Aug. 17, 2017) ("The logical implication of the Florida Supreme Court's ruling in *Tiara* is that outside of the products' liability context, a plaintiff may sue in tort for purely economic damages 'unaccompanied by any injury to a person or other property.'"). In any event, even before *Tiara*, the economic loss rule did not apply in Florida when the parties were not in contractual privity. *See Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 293 (11th Cir. 2009) ("In the absence of contractual privity between [plaintiff] and [defendant], Florida's economic loss rule does not apply."); *Assa Compania De Seguros, S.A. v. Codotrans, Inc.*, No. 13-23563-CIV, 2014 WL 11906600, at *7 (S.D. Fla. Sept. 12, 2014) ("The economic loss rule has never applied to parties who are not in contractual privity with each other."). Accenture cites a Florida appellate court case decided after *Tiara* that held that "to proceed on a common law negligence claim based solely on economic loss, there must be some sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim." *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393 (Fla. Ct. App. 2018). But this statement conflicts with *Tiara* and the case law recognizing that the economic loss doctrine never applied in Florida when the parties lacked contractual privity. In any event, Plaintiffs have alleged the link between Accenture and Plaintiffs. *See supra*, Section III.B.2.a.

███████████████████████████████████████████. Thus, Plaintiffs have sufficiently shown that Accenture's conduct created a foreseeable risk of harming Plaintiffs, creating a duty of care under Florida law.

### 3. The very duty Accenture voluntarily assumed was to protect Plaintiffs from the foreseeable criminal conduct of third-parties.

Accenture next contends that even if the Court finds that a duty to Plaintiffs would otherwise exist, Accenture still cannot be liable because the data breach was caused by a criminal hack, and Plaintiffs have not alleged a "special relationship" between themselves and Accenture, or Accenture and the hackers, to create a duty of care to prevent criminal conduct. Mem. at 10-12. Accenture's argument misses the mark. There is no separate "special relationship" requirement under these circumstances.

First, it is well established that "if a criminal or intentional intervening act is foreseeable, or is part of the original risk negligently created by the defendant in the first place, then the harm is not outside the scope of the defendant's liability." Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 209 (2d ed.); *see also* Restatement (Second) of Torts § 448 (third-party criminal act not intervening cause where "the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."). This is especially true in the data breach context where the *entire purpose* of implementing reasonable security measures—indeed, Accenture's business model—is to curtail unauthorized access. Plaintiffs allege that Accenture ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████. Accenture is not insulated from liability under these circumstances. *See, e.g., In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1319-20

(N.D. Ga. 2019) (where criminal data hack was foreseeable result of failure to secure data systems, defendant could be held liable for its negligence in securing those data systems); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *3-5 (N.D. Ga. Mar. 5, 2018) (same); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (same).

Second, the "special relationship" cases Accenture cites are inapposite. As explained in Section III.B.2, *supra*, Plaintiffs are not unknown members of the "general public" at large. *See Warr v. JMGM Grp., LLC*, 433 Md. 170, 183, 70 A.3d 347, 355 (2013); *Jarmie v. Troncale*, 50 A.3d 802, 809 (Conn. 2012). Accenture ██████████████████████████████████ ████████████████████████—the very people who make up this class. Likewise, Plaintiffs do not seek to hold Accenture liable for failing "to *control* a third person's conduct." *Warr*, 70 A.3d at 355 (emphasis added); *see also Knight v. Merhige*, 133 So. 3d 1140, 1144 (Fla. Ct. App. 2014). Rather, Plaintiffs seek to hold Accenture to ██████████████████████████ ████████████████████████████████████████████████ ████████████████. *See Knight*, 133 So. 3d at 1148 (recognizing distinction between cases "address[ing] only an affirmative duty to control third parties," which requires a special relationship, and those "address[ing] the ordinary duty of reasonable care with regard to conduct that might provide an occasion for a third party to cause harm"). In any event, because Plaintiffs allege Accenture had control over Starwood's and Marriott's data security functions, it owed a duty to perform its data security responsibilities reasonably. *Cf. id.* at 1144 ("[T]he imposition of a legal duty in this type of case is tied to *either* a special relationship between the plaintiff and

defendant or *the defendant's control over the premises where the injury occurred, the instrumentality causing the injury*, or the person causing the injury.") (emphasis added).[7]

Thus, contrary to Accenture's argument, because Plaintiffs allege that 

██████████████████████████████████████████████████████████████████████████,[8]

it can be held liable without a finding of a "special relationship" between Accenture and Plaintiffs. *See Hewitt v. Avis Rent-A-Car Sys., Inc.*, 912 So. 2d 682, 685 (Fla. Ct. App. 2005) (holding car rental company had duty of care to protect plaintiff from one of its vehicles being stolen, resulting in car accident that injured the plaintiff); *Suarez v. Sordo*, 685 A.2d 1144, 1149 (Conn. Ct. App. 1996) (analyzing whether apartment owner could be liable to police officer who was shot by criminal after criminal being pursued by officer entered the apartment owner's unsecured building,

---

[7]     The facts in *Knight* stand in stark contrast to those here and illustrate why the "special relationship" cases are inapposite. In *Knight*, the defendants' adult child with known violent tendencies murdered other family members at a Thanksgiving dinner to which the defendants had invited him. The court held there is no duty to control the conduct of an adult, emancipated child. *Id.* at 1146. Likewise, the defendants did not maintain control over the firearm their adult child used, or the house where the shooting occurred. *Id.* The court also held that public policy did not support imposing liability on a family for including troubled children in their family gatherings. *Id.* at 1150-51.

[8]     Discovery is necessary to fully determine Accenture's role in the breach. ████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████ (emphasis added). Because this document was submitted in an administrative proceeding on an issue relevant and critical to the matters at issue here, Plaintiffs request that the Court take judicial notice of it. Fed. R. Evid. 201(b)(2); *see also Colonial Penn Ins. Co. v. Coil*, 887 F. 2d 1236, 1239 (4th Cir. 1989) (federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relationship to matters at issue); *Dixon v. Cole*, No. CV TDC-16-3922, 2018 WL 922355, at *1 (D. Md. Feb. 15, 2018) (court make take judicial notice of administrative proceedings).

stating the question was whether the criminal's conduct was a foreseeable consequence of the apartment owner's failure to secure the building); *cf. Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 157-58, 642 A.2d 219, 230-31 (1994) (analyzing whether motel could be liable to insurance company where motel employee left keys in unattended motel van and escaped psychiatric patient stole the van and caused car accident, injuring the insurance company's insured, question was whether the psychiatric patient's negligent conduct was foreseeable result of leaving keys in unattended van) (citing *Penn. Steel Company v. Wilkinson*, 107 Md. 574, 69 A. 412 (1908) ("[T]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated.")).

### 4.    Plaintiffs do not seek recognition of an "unprecedented tort duty."

Accenture next contends that even if a tort duty could be found under generally recognized tort principles, a duty still should not be found because such a duty would be unprecedented. Mem. at 12-16. But if a tort duty exists under generally-recognized tort principles, there is nothing unprecedented about finding such a duty here. Rather, if the circumstances of the case and the relationship between the parties warrant the finding of a duty of care, there is no basis to reject the existence of a duty as contrary to either tort or contract law. *See, e.g., Lodge v. Arett Sales Corp.*, 717 A.2d 215, 219 (Conn. 1998) ("Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.") (internal quotations omitted).

Likewise, Accenture's alarmist argument that recognition of a duty here will expose all "behind the scenes" third-party service providers to tort liability (Mem. at 13) is significantly

overstated. While large-scale data breaches are a relatively new phenomenon that require courts to apply legal principles to different factual scenarios, Plaintiffs do not assert or rely on a novel theory of the law.[9] Indeed, a duty exists here because ███████████████████████; it had an obligation to use reasonable care to protect Plaintiffs' Personal Information from a foreseeable criminal data breach. Whether other third-party service providers can be held liable in other circumstances would depend on the particular facts of those cases. For example, in most other data breach cases, the breached companies themselves handled internal IT security. In this case, Starwood contracted those services to Accenture. Rather than allow Starwood to point the finger at an "empty chair," Accenture should be held liable for its own failures.

Accenture also (erroneously) contends that Plaintiffs' claims fail because they rely on Accenture's breach of its contracts with Starwood and Marriott. But Plaintiffs are not seeking to hold Accenture liable under a contractual theory—to the contrary, ████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████. Notwithstanding, it is well-established that a

---

[9]         Accenture cites three cases applying Illinois law refusing to recognize a duty to safeguard sensitive information at all. Mem. at 14 (citing *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 363 (2010); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 816 (7th Cir. 2018); *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14–MD–2586 ADM/TNL, 2018 WL 1189327, at *14 (D. Minn. Mar. 7, 2018). These cases run contrary to the basic tort principle that a duty of care exists when a party's conduct creates a risk of foreseeable harm. *See, e.g., Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017) ("It is well-established that entities that collect sensitive, private data from consumers and store that data on their networks have a duty to protect that information."); *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 25831:14-md-2583-TWT, 2016 WL 2897520, at *3 (N.D. Ga. May 18, 2016) ("A retailer's actions and inactions, such as disabling security features and ignoring warning signs of a data breach, are sufficient to show that the retailer caused foreseeable harm to a plaintiff and therefore owed a duty in tort."). They should not be followed here. Accenture also cites *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 12-17 (D.D.C. 2019), which found no duty of care to protect personal information under D.C. law. But the *Attias* court concluded the plaintiffs had "made no allegations that it was foreseeable that CareFirst specifically would suffer a data breach." *Id.* at 21. This case is thus inapposite.

defendant's contractual breach can also breach a duty in tort. *See Jacques*, 307 Md. at 534, 515 A.2d at 759; *Hill v. Williams*, 813 A.2d 130, 135 (Conn. Ct. App. 2003) ("[T]he same course of conduct may sound both in tort and in contract."); *Assa Compania De Seguros, S.A.*, 2014 WL 11906600, at *7 (non-contracting party is not precluded from suing in tort for conduct that also breaches contract). ███████████████████████████████████████████████████████

███████, they do not supplant it.

Finally, Accenture argues Plaintiffs are asking this Court to act like a "legislature" in recognizing a tort duty under these facts. Mem. at 15. But that's a mischaracterization. Plaintiffs are only asking this Court to apply common law tort principles that establish a tort duty here. Accenture contends Plaintiffs "did not and could not bring claims against Accenture under any of the various state consumer-protection or data-security statutes," and that this is proof that no claim against Accenture should be permitted here. Mem. at 15. Pointing to the *absence* of certain claims, however, is irrelevant to analyzing duty under traditional tort principles. In any event, many statutes addressing unfair conduct do not require a direct relationship between the parties to assert a claim. *See Equifax*, 362 F. Supp. 3d at 1337 (finding that many state statutes covering unfair or deceptive conduct are to be liberally interpreted and that some do not require the plaintiff and defendant to be in privity). That legislatures have limited the reach of consumer protection or data breach statutes in some instances does not, therefore, supplant basic tort rules.[10]

---

[10]     That Plaintiffs could have brought statutory claims does not mean they are limited to statutory remedies. The various statutes at issue provide remedies in addition to those available at common law. *See, e.g.,* Md. Code Ann., Com. Law § 14-3508 (stating violation of Maryland's Personal Information Protect Act is "an unfair or deceptive trade practice" under the Maryland Consumer Protection Act); Md. Code Ann., Com. Law § 13-408 (person may bring action to recover for injury or loss sustained as a result of a practice prohibited by the Maryland Consumer Protection Act "in addition to . . . any other action otherwise authorized by law").

**C.      Plaintiffs allege breach, causation, and damages.**

Accenture next argues that Plaintiffs have not alleged Accenture breached its duty of care or that Accenture's breach caused Plaintiffs' damages. But that's not supported by the allegations. First, in contrast to Accenture's argument to the contrary, the Complaint plainly states a "link between a specific responsibility that Accenture had and the hackers' access of the Starwood guest reservation database." Mem. at 16-17. Plaintiffs allege that Accenture's responsibility was to ████████████████████████████████████████████████████████████. Compl. ¶¶ 249, 251, 252. Accenture repeatedly failed to do so: hackers not only accessed the database but carried on *undetected* for *four years* under Accenture's watch. *Id.* ¶¶ 5, 253, 255. Accenture's detection failures included missing obvious critical threats such as unauthorized queries on Starwood's guest reservation database and malware specifically designed to access and exfiltrate sensitive information. *Id.* ¶ 253. This repeated failure to detect (and remediate) data security threats breached Accenture's duty to adequately protect Plaintiffs' Personal Information. *See* Section B, *supra; see also Arby's*, 2018 WL 2128441, at *8 (failure to provide adequate data security and protect systems from foreseeable data security threats constitutes breach in a negligence claim); *Bass*, 394 F. Supp. 3d at 1039 (failure to comply with "data security standards" comprises a "classic negligence claim").[11]

Plaintiffs have also alleged that Accenture's failure to detect data security threats caused an injury to Plaintiffs by permitting the theft of their Personal Information. To plead causation under Maryland, Connecticut, and Florida law, plaintiffs must allege that defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. *Phelps v. Lankes*, 813 A.2d 100, 104

---

[11]      Accenture demands that Plaintiffs further "specify" the actions Accenture took or failed to take and detail "which safeguards Accenture failed to implement." Mem. at 17. But that is not the law. *See Wittenberg v. First Indep. Mortg. Co.*, 599 F. App'x 463, 468 (4th Cir. 2013) (negligence is subject to the Rule 8 pleading standard which "does not require detailed factual allegations.").

(Conn. Ct. App. 2003); *Yonce v. SmithKline Beecham Clinical Labs., Inc.*, 111 Md. App. 124, 138, 680 A.2d 569, 575-76 (1996); *McCain*, 593 So. 2d at 502. Here, Plaintiffs plausibly allege that Accenture's years-long failure to detect the hackers' presence—despite obvious signs like unauthorized database queries and malware—was a proximate cause and substantial factor in allowing the hackers to steal Plaintiffs' Personal Information at their leisure. *See* Compl. ¶¶ 5, 253, 255.

Finally, Accenture argues that the Bellwether Plaintiffs fail to allege cognizable harm, again adopting Marriott's arguments on this point. Mem. at 17-18. Accenture ignores that all nine Bellwether Plaintiffs allege lost time and effort mitigating the risks of the data breach. Compl. ¶¶ 32, 35-39, 52-53. This alone is a cognizable harm supporting the injury and damage elements under the applicable state laws. *See, e.g., Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) (time lost in seeking to respond to fallout from a data breach was cognizable injury); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (recognizing in a data breach that where the harm is "sufficiently imminent" a party may "reasonably incur costs to mitigate or avoid that harm"); *see also Toll Bros. v. Dryvit Sys., Inc.*, 432 F.3d 564, 570 (4th Cir. 2005) ("[A] plaintiff may recover from a tort-feasor the expense of a reasonable attempt to avoid being injured by the tort.") (citing *Restatement (Second) of Torts* § 919(1) (1979)); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("[T]he value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing."). In addition to time and effort, Plaintiffs Long

and Viggiano also spent money in mitigating against the data breach. Compl. ¶¶ 37, 38. "Money out of pocket is a standard understanding of actual damages." *Dieffenbach*, 887 F.3d at 830.[12]

Accenture also contends Plaintiff Hevener has no cognizable injury because she did not allege that she incurred unreimbursed charges on the fraudulent accounts opened in her name. Mem. at 18. Accenture's argument misses the point. Plaintiff Hevener had to spend her time and effort dealing with the fraudulent accounts, including ensuring they were canceled and removed from her credit report. Compl. ¶ 36. This was "a loss from an opportunity-cost perspective" supporting money damages. *Dieffenbach*, 887 F.3d at 828. Thus, Plaintiffs adequately plead damages for their negligence claims.

**D.      The FTC Act supports Plaintiffs' claims for negligence and negligence per se.**

**1.   Violation of the FTC Act is evidence of negligence under Maryland law.**

Accenture claims that Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) ("FTC Act"), cannot support a negligence claim under Maryland law. Mem. at 19. Not so. As a threshold matter, while Maryland does not apply the doctrine of negligence per se, the "violation of a statute . . . is itself sufficient to prove such a breach of duty as will sustain a private action for negligence." *Rivers v. Hagner Mgmt. Corp.*, 182 Md. App. 632, 653, 959 A.2d 110, 122 (2008) (citations omitted); *see also Polakoff v. Turner*, 385 Md. 467, 476 n.5, 869 A.2d 837, 843 n.5 (2005) ("The standard for establishing a prima facie case of negligence in a statutory-based negligence action is different from the general standard for establishing a prima facie case of negligence in cases that are not governed by a statute.") (citations omitted). To state a claim for negligence based on a statutory violation, Plaintiffs need only plead (a) a statutory violation; and

---

[12]      As explained in their Opposition to Marriott's Motion to Dismiss, all Plaintiffs also allege additional forms of cognizable harm in the form of overpayment for Marriott's services, Compl. ¶¶ 270, 273-75, and the diminished value of their Personal Information following the breach, *id.* ¶¶ 270, 340-42.

(b) proximate cause, by showing that (1) Plaintiffs are "within the class of persons sought to be protected," and (2) "the harm suffered is of a kind which the drafters intended the statute to prevent." *Rivers*, 182 Md. App. at 653. Also, contrary to Accenture's claim, "[t]he existence of an express or implied private right of action is not necessary to a negligence claim based on a statutory violation." *Webb v. Green Tree Servicing, LLC*, No. CIV.A. ELH-11-2105, 2012 WL 2065539, at *7 n.8 (D. Md. June 7, 2012) (citing *Bentley v. Carroll*, 355 Md. 312, 326 n. 8 (1999)). As discussed in Sections III.D.2 & 3, *infra*, Accenture's violation of the FTC Act is a basis for Plaintiffs' negligence and negligence per se claims.

### 2. Accenture had a duty to protect Plaintiffs' Personal Information under the FTC Act.

To state a claim for negligence per se based on a statute like the FTC Act, plaintiffs must allege that they are "member[s] of the class of persons the statute was designed to protect and the injury was of the type the statute was designed to prevent." *Erie Ins. Co. v. Chops*, 322 Md. 79, 84, 585 A.2d 232, 234 (1991); *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 210 (D. Conn. 2001); *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 845 (2017)). Accenture contends that despite ████████████████████████████████████████ ███████████████████, it owes no duty of care to Plaintiffs under the FTC Act, because Plaintiffs are not members of the "class of persons the statute was designed to protect." Mem. at 20. Specifically, Accenture argues that Plaintiffs are neither "consumers" nor "competitors," and that holding Accenture liable for negligence per so would impermissibly extend liability under the FTC Act. *Id.* (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972)).

Plaintiffs do not seek to extend FTC Act liability: Plaintiffs *are* consumers, and courts routinely recognize the failure to adequately secure consumers' Personal Information is a violation of the FTC Act. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 246 (3d Cir. 2015); *In*

re *TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 495-98 (1st Cir. 2009). The cases Accenture cites are therefore inapposite, as all involve harm to the breached entities' banks, not consumers. *See* Mem. at 20-21.

Accenture further argues that Plaintiffs are not "consumers" because "plaintiffs are Marriott's customers, not Accenture's." *Id.* at 20. This ignores that Marriott hired Accenture to safeguard Plaintiffs' Personal Information in the first place. Plaintiffs have a relationship with Accenture not only because Accenture is responsible for their personal data, but because without that data Accenture would not be able to monetize data security-related needs of clients like Marriott. Far from "non-existent" (Mem. at 20), Accenture's interactions with Plaintiffs and their Personal Information are fundamental to Accenture's business. *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1191 (D. Kan. 2015) (seller of genetically modified crop seeds owed a duty to farmers with whom it had no preexisting relationship because all parties were "participants in an inter-connected market"). That Accenture did not have "custody of plaintiffs' data and did not itself experience a breach" (Mem. at 21) is irrelevant: Accenture ██████████ ████████████████████████████████████████████████████████████████. *See supra* at 12-13 (citing *Knight*, 133 So. 3d at 1144). Nor can Accenture credibly argue it was unforeseeable that a data breach would result causing Plaintiffs to suffer harm if it failed to do its job. Thus, Accenture had a duty to protect Plaintiffs' information under the FTC Act.

### 3.    Violation of the FTC Act is a basis for a negligence per se claim.[13]

Accenture again adopts Marriott's arguments, and asserts that it is "highly doubtful" that a negligence per se claim could be based on the FTC Act at all in a data breach case, Mem. at 21,

---

[13]    While Maryland does not recognize a stand-alone claim for negligence per se, the FTC Act violation still constitutes evidence of duty and breach in negligence under Maryland law. *See* Section III.D.1., *supra*. And, as discussed in Section III.C., *supra*, Plaintiffs have also sufficiently alleged causation and actual injury to state a claim for negligence under Maryland common law.

and that the Act lacks an ascertainable standard of conduct to serve as a predicate for negligence per se. This argument has already been rejected by the numerous courts that have considered the issue. *See, e.g., Equifax*, 362 F. Supp. 3d at 1327-28 (rejecting the argument that the FTC Act does not "impose[] a duty with specificity"); *Arby's*, 2018 WL 2128441, at \*8 (rejecting the argument that the FTC Act "only generally proscribes 'unfair' or 'deceptive' trade practices and does not enumerate any required or prohibited acts"); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 16-506, 2017 WL 9487086, at \*4 (W.D. Pa. Feb. 13, 2017) (rejecting the argument that the FTC Act "does not impose a clear and concrete duty or standard of conduct"); *Home Depot*, 2016 WL 2897520, at \*4 (same). *See also* Opp. to Marriot MTD at 19-21. In fact, the Complaint specifically links to the FTC's privacy and security enforcement webpage, which lists 12 actions the FTC has filed against companies for deficient security practices since August 2019 alone. *See* Compl. ¶ 259 n.126   (https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement).

Accenture also contends that violation of the FTC Act cannot be the predicate for negligence per se because the states at issue (Connecticut and Georgia) do not articulate a common law duty to safeguard information and therefore recognizing such a duty under the FTC Act would "impermissibly expand tort liability." Mem. at 22-23. First, as discussed in Section III.B.2.b, *supra*, Connecticut common law would recognize this duty of care. So does Georgia. *Arby's*, 2018 WL 2128441, at \*5 (allegations that a company knew of a foreseeable risk to data security systems establish the existence of a plausible legal duty under Georgia law); *see also* Opp. to Marriott MTD

---

The cases cited in in this section—*Equifax, Arby's, Wendy's, Home Depot*—all found that failure to adequately protect personal information against a data breach supported claims of both common law negligence and negligence per se. *See infra.*

at 20-21.

Second, Accenture misreads *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162 (2013), to suggest that no statutes relating to information security support a negligence per se claim. Mem. at 22; *contra* Opp. to Marriot MTD at 20. However, *Jenkins* held only that duties imposed by the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801(a), do not give rise to a cause of action for negligence under O.C.G.A. § 51-1-6; the case had nothing to do with the FTC Act. 293 Ga. at 165 n.4 Likewise, Accenture misreads *Department of Labor v. McConnell*, 305 Ga. 812 (2019), which held that a duty to safeguard personal information was not created by two statutes, O.C.G.A. § 10-1-910 and O.C.G.A. § 10-1-393.8—not the FTC Act. The court concluded O.C.G.A. § 10-1-910 merely "recites a series of legislative findings about the vulnerability of personal information and the risk of identity theft"—it does not "establish any duty, nor does it prohibit or require any conduct at all. *Id.* at 816. By contrast, as discussed above, the FTC Act creates a duty to have adequate security standards to safeguard consumers' personal information. And O.C.G.A. § 10-1-393.8 guards against the *intentional* disclosure of an individual's social security number. *Id.* Since the plaintiff in *McConnell* argued that the defendant had a duty to safeguard against *negligent* disclosure, the *McConnell* court found no such duty under O.C.G.A. § 10-1-393.8. *Id.* By contrast, the FTC Act does impose a negligence duty. *See Equifax*, 362 F. Supp. 3d at 1327-28; *Arby's*, 2018 WL 2128441, at *8; *Home Depot*, 2016 WL 2897520, at *4.[14]

Thus, a violation of the FTC Act can serve as the predicate for Plaintiffs' negligence per se claims.

---

[14] Accenture cites to *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018) for the proposition that *Home Depot* was decided incorrectly. Mem. at 22 n.9. But that case specifically examined the common law of Illinois and Missouri, not Georgia, and was decided before *Equifax*.

**IV.     The parties have agreed to suspend briefing on personal jurisdiction for now.**

Finally, pursuant to the proposed stipulation filed by Plaintiffs and Accenture on November 5, 2019 (Dkt. 479), the parties have agreed to suspend briefing on Accenture plc's personal jurisdiction argument without waiver of any rights. The parties will promptly notify the Court of the progress of their discussions on November 12, 2019.

**V.     Conclusion.**

For the foregoing reasons, Accenture's motion should be denied.


Dated: November 5, 2019                                    Respectfully submitted,


*/s/ Amy E. Keller*                                        */s/ James J. Pizzirusso*
Amy E. Keller (D. Md. Bar No. 20816)                       James J. Pizzirusso (D. Md. Bar No. 20817)
**DiCELLO LEVITT GUTZLER LLC**                             **HAUSFELD LLP**
Ten North Dearborn Street, Eleventh Floor                  1700 K Street NW Suite 650
Chicago, Illinois 60602                                    Washington, D.C. 20006
Tel. 312-214-7900                                          Tel. 202-540-7200
akeller@dlcfirm.com                                        jpizzirusso@hausfeld.com

*/s/ Andrew N. Friedman*
Andrew N. Friedman (D. Md. Bar No. 14421)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202-408-4600
afriedman@cohenmilstein.com


*Consumer Plaintiffs' Co-lead Counsel*

Norman E. Siegel                                           MaryBeth V. Gibson
**STUEVE SIEGEL HANSON LLP**                               **THE FINLEY FIRM, P.C.**
460 Nichols Road, Suite 200                                3535 Piedmont Road, Bldg. 14, Suite 230
Kansas City, Missouri 64112                                Atlanta, GA 30305
Tel: 816-714-7100                                          Tel: 404-320-9979
siegel@stuevesiegel.com                                    mgibson@thefinleyfirm.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY 10119
Tel: 212-946-9300
atadler@tadlerlaw.com

Daniel Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel: 949-720-1288
drobinson@robinsonfirm.com

Timothy Maloney
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
tmaloney@jgllaw.com

Jason Lichtman
**LIEFF    CABRASER    HEIMANN    &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212-355-9500
jlichtman@lchb.com

Megan Jones
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: 415-633-1908
mjones@hausfeld.com

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
glynch@carlsonlynch.com

*Consumer Plaintiffs' Steering Committee*

Veronica Nannis
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
vnannis@jgllaw.com

James Ulwick
**KRAMON & GRAHAM PA**
1 South Street, Suite 2600
Baltimore, MD 21202
Tel: 410-347-7426
julwick@kg-law.com

*Consumer Plaintiffs' Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Veronica Nannis, Co-Liaison Counsel for the Consumer Plaintiffs, hereby certify that on

November 5, 2019, I served the above and foregoing Consumer Plaintiffs' Response in Opposition

to Motion to Dismiss by Defendants Accenture LLP and Accenture PLC on all counsel of record

by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

/s/ *Veronica Nannis*