IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MARRIOTT
INTERNATIONAL
CUSTOMER DATA                  MDL No. 19 and 2879
SECURITY BREACH                (JUDGE GRIMM)
LITIGATION.

## REPORT AND RECOMMENDATION

## INTRODUCTION

In 2016 Marriott International, (hereafter "Marriott") bought Starwood. On September 7, 2018,  a program called the IBM Guardian database security reported the use of certain credentials to access data in a Starwood Guest Reservation Database. The IBM system reported this event to another company, Accenture,  which investigated the alert. Accenture contacted the user whose credentials had been used to access the Reservation Database, and that user advised Accenture that it did not access that Database.  D. Ex. No. C, para. 9 and 10.

John Warren, Vice President and Senior Counsel, Global Compliance, Privacy and Data Security for Marriott, recognized that what Accenture had discovered could be a data breach. Warren knew

that such a breach could trigger Marriott's statutory obligations, both national and international, to report the breach. <u>Id</u>., para 12 and 14. He also knew that federal, state, and international agencies might investigate the breach and that "data security incidents frequently result in significant litigation brought by individuals, as well as regulators and commercial entities, often in large class actions." <u>Id</u>., para 14.

Warren also realized that the Marriott Law Department did not have the resources to analyze the obligations that Marriott had if there was a breach and that it required "outside counsel to advise Marriott on the numerous domestic and international legal issues potentially implicated by the potential data security incident." <u>Id</u>., para 17. Marriott, therefore, retained BakerHostetler "to advise Marriott about its legal obligations and exposure. " <u>Id</u>., para 19.

Warren was also aware that BakerHostetler, a law firm, "needed to engage a firm with computer forensics abilities and knowledge to explain  Marriott's technical information to BakerHostetler, including the information relevant to the potential data security incident so

BakerHostetler could fully advise Marriott about the legal obligations arising from and implications of the potential incident." Id., para. 20.

BakerHostetler, having been retained by Marriott, decided that it needed a computer forensics firm to "help us find and understand the facts of what occurred leading up to the Guardian event alert to advise Marriott about its legal obligations and strategy in anticipation of demands, litigation, and regulatory proceedings." D. Ex. No. B, Declaration of Craig Hoffman, para. 19. BakerHostetler retained such a firm, Crowdstrike, for this purpose. Id.

The agreement, hiring Crowdstrike, is among three parties, Crowdstrike, Marriott, and BakerHostetler. D. Ex. No. B, Ex 1. Its first few paragraphs specify the work Crowdstrike is to do—investigate what occurred and suggest remediation. Id.

Crowdstrike went to work, and the documents made available to me *in camera* show that it reported what it was doing and what it was finding to Marriott employees and BakerHostetler.

## PLAINTIFFS' DEMANDS

Plaintiffs have now demanded that Marriott produce the evidence of what Crowdstrike ("CS") accomplished. More specifically, they demand the following:

(1) all agreements and statements of work entered into by and between CS and Marriott/Starwood (or its counsel) pre- and post-dating the breach;

2) all investigations, reports, assessments, decisions, findings, conclusions, and recommendations prepared or documented by CS pursuant to its statement of work with Marriott following discovery of the breach regardless of form;

(3) all communications between Marriott and CS regarding CS's investigations, reports, assessments, decisions, findings, conclusions, and recommendations, including meeting agendas, status reports, PowerPoint presentations, and related materials;

(4) all communications between Marriott employees regarding CS's post-breach investigations, reports, assessments, decisions, findings, conclusions, and recommendations; and

(5) all memoranda, notes, and communications prepared by Marriott's

employees, reflecting conversations between CS and Marriott.

## THE PARTIES' CONTENTIONS

Marriott resists such discovery because it is privileged by the

attorney-client and work product privileges. Plaintiffs insist that neither

privilege applies.

## APPLICATION OF THE FEDERAL RULES

Having reviewed the parties' submissions, which I have

summarized briefly, I concluded that something was missing— the

Federal Rules of Civil Procedure provisions pertaining to expert witness

testimony. I, therefore, wrote counsel the following which I have

reproduced here:

> I have reviewed your submissions and analyzed
>
> the cases and materials you cited in them.
>
> However, I have concluded that the issues you
>
> raise are premature and may evaporate if Marriott

designates anyone employed by CrowdStrike as a witness.

First, let us suppose that Marriott designates a CrowdStrike employee as an expert witness who will testify under Fed. R. Evid.702. That person will have to obey Fed. R. Civ. P 27(a)(2)(B) by providing a report which must comply with that Rule. As we know, Fed. R. Civ. P. 26(b)(3) protects against  disclosure [of]  work product, i.e., any "document and tangible thing prepared by a party or its attorney, consultant, surety, indemnitor, insurer, or agent."

It has been argued that communications between an attorney and, for example, an "expert trial consultant"  were protected from disclosure because they were "work product." See In re

<u>Cendant Corp</u>. <u>Sec. Litig</u>., 343 F.3d 658 (3d. Cir. 2003). But, the amendments to Fed. R. Civ. P 26 take a different tack in dealing with a work product privilege asserted as to the expert's work.

Fed. R. Civ. P 26(b)(4)(C) protects communications between the party's witness and any expert required to provide a report under Fed. R. Civ. P 26(b)(3)(A). It deems that the work product rules, Fed. R. Civ. P 26(b)(3)(A)and (B), "protect[s] communications between the party's attorney and any witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B). " That eliminates any quarrel about whether such communications between attorney and expert are work product.

They are protected as work product, but that is academic because Fed. R. Civ. P. 26(b)(4)(C) now specifies precisely the discovery that the party calling the witness must permit. It states that the party calling the witness must, despite any claim of work product privilege, disclose communications pertaining to (i) compensation (ii) an identification of the (a) facts or data provided to the expert by the party's attorney and (b) the assumptions the attorney provided the expert and the expert relied upon.

Therefore, I read these amendments to abolish any claim that the work product privilege applies absolutely to bar discovery of the work done by the expert for trial or in anticipation of litigation. In exchange, the amended Rules permit only the discovery specified in Fed. R. Civ. P.

26(b)(4)(C). In other words, the demanding party gets the discovery these Rules permit and nothing more or less, free of any claim of privilege against producing what the Rule demands.

If, on the other hand, Marriott does not designate Crowdstrike and does not call any of its employees as witnesses, then CrowdStrike becomes, by the operation of the Fed. R. Civ. P 26(b)(4)(D),  an "Expert Employed for Trial Preparation." Under that Rule, the discovery of the facts its employees knew and their opinions are available only upon showing the exceptional circumstances specified in that Rule.

May I suggest you look at <u>Shepard's Sara Lee Corp. v. Kraft Foods, Inc</u>. 273 F.R.D 416

(ND Ill. 2012), an opinion by MJ Dunlow, who reached a similar conclusion to mine?

I appreciate that you did not consider my views when you made your submissions. I would ask you to do so. Perhaps, we can have a conference call to discuss this if you disagree with them. On the other hand, if you prefer, I can immediately convert this document into a Report and Recommendation to Judge Grimm. If I am right, there is nothing pertaining to discovery about Crowdstrike's work that, in my view, should be done until Marriott determines whether it will call employees of Crowdstrike as witnesses. I will so recommend to Judge Grimm.

In résponse, BakerHostetler indicated that it read what I have just reproduced and interpreted it to mean that I had concluded that whatever

Crowdstrike produced that was sought by plaintiffs was work product. I corrected that and explained what I meant in my first communication in my second communication which I will also reproduce here:

I wanted to begin by indicating my disagreement with Mr. Keteltas's interpretation of my letter to you. I did not resolve whether the materials sought by plaintiffs are covered by a work product privilege, nor do I presently intend to.

My point was that, if my interpretation of the pertinent Federal Rules is correct, the question of whether the materials sought are privileged evaporates as soon as Marriott designates Crowdstrike as an expert witness. Once it does, then plaintiffs are entitled to Marriott's providing what the Federal Rules require as to expert

witnesses and nothing more. Plaintiffs get only what the Rules require, and whether anything else Crowdstrike produced, created, or communicated is privileged is of no consequence.

If, on the other hand, Marriott does not designate Crowdstrike as an expert witness, then Marriott, if it intended to resist discovery from Crowdstrike,  will have to establish that Crowdstrike is what the pertinent Rule, Fed. R. Civ. P. 26(b)(4)(D), calls an "Expert Employed Only for Trial Preparation." Once again, discovery, if any from Crowdstrike, is defined and limited by this Rule.

 I must ask each of you whether you accept my interpretation of the pertinent Federal Rules of Civil Procedure so that I can complete my Report

to Judge Grimm.  If you do not, I would ask you

to advise me in writing of your disagreement and

the reasons for it.  If you do agree, please so

advise me in writing.

 Please submit your position and any supporting

analysis by the close of business, Thursday,

August 27, 2020.

## WHY MARRIOTT SHOULD INDICATE WHETHER IT WILL CALL CROWDSTRIKE AS AN EXPERT

I will now do what I said I would do—recommend to Judge

Grimm that he direct Marriott to indicate whether it intends to call

Crowdstrike as an expert witness.

First,  unless a party indicates that a witness will be an expert

witness, there is a risk of wasting a great amount of time.

Take this case. If Marriott does not have to indicate that

Crowdstrike will be an expert witness, then I will have to decide the

13

legal issue of whether BakerHostetler and Marriott hired Crowdstrike in anticipation of litigation. If I conclude that it did, plaintiffs still have the right to demand the information they seek, claiming that they cannot secure the information they want in any other way and substantially need it. See Fed. R. Civ. P. 26(b)(3)(A)(ii);Fed. R. Civ. P. 26(b)(3)(B). If they met their burden, the privilege would yield except as to documents or portions of them that disclose counsel's mental impressions, conclusions, opinions, and legal theories.

Furthermore, no less an authority than then Magistrate Judge Grimm has indicated that a party claiming privilege must substantiate it by admissible proof. Judge Grimm has stated:

> Thus, insuring that a privilege or protection claim
> is properly asserted in the first instance and
> maintained thereafter involves a several step
> process. First, pursuant to Fed. R. Civ. P. 26(b)
> (5), the party asserting privilege/protection must
> do so with particularity for each document, or
> category of documents, for which

privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden by a properly prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis-by affidavit, deposition transcript, or other evidence-for each element of each privilege/protection claimed for each document or category of documents. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the

> evidentiary support offered by the asserting party,
> can either Rule on the merits of the claim or order
> that the disputed documents be produced for in
> camera inspection.

<u>Victor Stanley, Inc. v. Creative Pipe, Inc</u>., 250 FRD 251, 267 (D. Md. 2008).

Thus, everyone, including me, has a lot of work to do to resolve the privilege claim. Indeed, while in that same opinion, Judge Grimm cautioned against unnecessary in camera review (<u>id</u>.), it may be unavoidable. From my experience, I can state that even an adequate assertion of privilege may not be enough to resolve the controversy.   I resolved many privilege claims that I encountered by *in camera* review. In many instances, it was unavoidable.

Consider, on the other hand, what happens is I accept plaintiffs' argument that Marriott and BakerHostetler did not hire Crowdstrike in

anticipation of litigation but for a business purpose, thereby defeating a work product privilege. As Judge Grimm indicated in <u>Victor Stanley</u> and as I certainly agree, privilege claims are not made in gross.  The cases plaintiffs cite for the proposition that information is not work product if produced for a business purpose say nothing more than that.  Those cases do not say that there cannot be work product in any of the documents.   Life is never that easy. There might be documents within a collection that qualify for the privilege even if the motivation for creating the rest of them was a business purpose. This case may be one of them. Indeed, in the documents made available to me *in camera*, I have already seen counsel's comments on a draft, which may well be work product because it reveals counsel's mental impressions. That he did that in the course of an investigation done for a business purpose does not destroy that privilege if, in the particular document,  he was, for example,  preserving his thoughts for trial or in anticipation of litigation. There is simply no way of asserting and resolving a privilege claim unless one looks at the particular assertion of privilege for each document and, if necessary, the document itself.

Finally, Marriott also claims an attorney-client privilege for the information. That, of course, persists whether or not there was an anticipation of litigation. Once again, each document and the privilege asserted for it will have to be reviewed to see if it is privileged. Certainly, communications between BakerHostetler and Marriott employees are prima facie protected. Upjohn v. United States, 449 US 383 (1981).

Thus, whichever way one turns, there will be a lot of time and money that will have to be spent. But, if Marriott denominates CrowdStrike as an expert witness, all of that money and time will have been spent even though plaintiffs may not be entitled to the information they seek. It makes much more sense to force Marriott's hand and make it identify its experts now.

I appreciate that lawyers may play who they will call as an expert close to their vests to keep from the opposing party that they

contemplated using a certain person as an expert witness but changed their mind. That is not a concern in this case. It is hardly a secret that Crowdstrike did what it did. Speaking more universally, accommodating counsel's desire not to disclose who her experts are, if legitimate, is a poor reason to waste time and money on what may be useless acts.

In a submission to me on August 27, 2020, Marriott accepts my interpretation of the applicable Federal Rules and tells us that it intends to make Crowdstrike available as a fact witness for a deposition. However, it insists that it will not decide whether to call Crowdstrike as an expert witness until it must do so in the period set aside for expert discovery.

But, I am afraid that puts us back where we started.

Surely, plaintiffs have a compelling case that they should get the discovery they have sought about Crowdstrike's work before Crowdstrike is deposed. That would mean that plaintiffs are equally entitled to the resolution of all of Marriott's privilege claims. As I have explained, that will require all of the work involved in resolving those

claims. But, we all must agree that if Crowdstrike is designated as an expert, the discovery from Marriott about Crowdstrike is strictly restrained by the Federal Rules of Civil Procedure. That restraint may, in turn, render resolution of the privilege claims moot because plaintiffs are not entitled to what they seek in the first place. Thus, as I have pointed out, all the work that went into resolving the privilege claims will have been wasted if this occurs.

I appreciate that, as matters now stand, there is a rigid bifurcation between fact and expert discovery. But, in my view, it should yield to this unusual situation where Crowdstrike may have a foot in both worlds.

Finally, I note that Fed. R. Civ. P. (a)(2)(A) requires a party to identify its expert witnesses. The Rule does not specify a deadline, but I am hard-pressed to see why Judge Grimm could not require Marriott to do so now if the Judge accepts my point of view.

## RECOMMENDATION

Therefore, I recommend first that the discovery sought by plaintiffs be stayed until the Court considers this Report and Recommendation.

Second, I must note that, in addition to constraining discovery from an expert witness who must prepare a report, Fed. R. Civ. P. 26(2)(B), the pertinent Rule, Fed. R. Civ. P. 26(2)(C), constrains discovery from any witness who "is expected to present evidence under Federal Rule of Evidence 702, 703 or 705." Thus, whether or not Marriott intends to have Crowdstrike prepare a written report, it must also state whether it intends to call Crowdstrike as a witness and elicit from it an opinion based on its "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Therefore, I recommend that Marriott be required to indicate: (1) whether it intends to designate Crowdstrike as an expert pursuant to Fed. R. Civ. P. 26(2)(B) who will file the report required by that Rule or (2) if it does not, whether it intends to call Crowdstrike as a witness and expects to present evidence from

Crowdstrike pursuant to "Federal Rule of Evidence 702, 703 or 705."

Fed. R. Civ. P 26(2)(A).


                                                    John M. Facciola
                                                    Special Master

August 28, 2020