November 9, 2020

The Honorable John M. Facciola (Ret.) <facciolj@georgetown.edu>

Re: *In re: Marriott,* MDL 2879 (D. Md.), Third-Party Subpoenas re Bellwether Plaintiffs

Dear Special Master Facciola:

Consumer Plaintiffs ask this Court to issue a protective order disallowing Marriott's subpoenas to **31** different financial institutions and vendors. These subpoenas seek, among other things, seven years of unlimited financial statements, communications, and recorded telephone calls about the Bellwether Plaintiffs' most personal expenditures. *See* **Ex. A** (subpoenas).[1] The subpoenas are virtually infinite and the worst type of fishing expedition: Marriott seeks to weaponize Plaintiffs' irrelevant and personal financial history and communications in order to harass, annoy, and embarrass these data breach victims. All because Marriott claims that it *might* obtain some tiny amount of information on other data breaches that *could* support its causation argument (but will not). The Court should prevent this unprecedented intrusion. Whether the Plaintiffs' payment cards at issue here were hacked in other data breaches has almost no relevance to this case. Regardless, the subpoenas are not designed to determine that simple question and instead seek vast amounts of other highly sensitive and irrelevant data.

Despite the lack of relevance of this discovery, Plaintiffs have proposed reasonable alternatives, agreed to the procedures outlined in the Special Master's April 27, 2020 Response of Special Master to Joint Submission (ECF No. 572, **Ex. C**), and adhered with Judge Grimm's instructions by proposing several alternatives during the parties' most recent conference call so that "Judge Facciola may be able to broker a compromise." *See* ECF No. 667 at 2, **Ex. D**. Marriott has refused to engage, claiming that Plaintiffs have no privacy interest in their personal financial records. Thus, given Marriott's refusal to consider any compromise and as detailed below, Plaintiffs request that the Court issue a protective order prohibiting Marriott's subpoenas.

**I.  BACKGROUND**

Plaintiffs produced financial statements with limited redactions under the Stipulated Protective Order (ECF No. 552, **Ex. E**).[2] Marriott claimed it wanted the redactions removed so Marriott could review hypothetical third-party data breaches that potentially impacted Plaintiffs.

Marriott's assertion that unrelated transactions could theoretically shed light on third-party data breaches did not justify Marriott's overreach into Plaintiffs' financial records. In the spirit of cooperation, however, Plaintiffs invited Marriott to identify any breaches for which it wanted Plaintiffs to search. Plaintiffs offered to review and produce their financial statements with that information included. Marriott ignored Plaintiffs' offer for months, never responded, and instead raised the issue with the Court.

Your Honor responded to the issue in April, writing that you "appreciate that plaintiffs are not anxious to share information as to their use of the cards for purposes that it wishes to keep private" and recommended a procedure to the parties. *See* **Ex. C** at 2. Rather than comply with that

---

[1] Although the information sought in each of these subpoenas vary, for the sake of efficiency, Plaintiffs address the general law and analysis applicable to all subpoenas and their requests in this five-page letter brief. Plaintiffs provide a chart (attached as **Ex. B**) demonstrating the overbroad and harassing nature of Marriott's subpoenas, by showing, in part, the approximate date of any third-party misuse and when the payment card was replaced.

[2] The negotiated Protective Order allows the parties to redact "personal data that may . . . reveal sensitive PII." (ECF No. 271 at 1(k), 11(a)). Marriott itself recognized the propriety of such redactions under the Protective Order as it redacted "Highly Sensitive" portions of its documents, although it subsequently removed the redactions after the October 27, 2020 conference before Your Honor.

Hon. John M. Facciola
Page 2

process, Marriott served invasive and overbroad subpoenas on Plaintiffs' financial institutions which violated the Protective Order. Plaintiffs demanded that Marriott immediately withdraw the subpoenas, which it did on August 10, 2020. Marriott then submitted a brief requesting that Plaintiffs disclose their full payment card numbers to Marriott for use in the very subpoenas Marriott had just withdrawn. In response, Your Honor issued a Report and Recommendation, in relevant part, recommending that the Court "issue an Order to Show Cause why the Protective Order should be amended to permit such use." ECF No. 649 at 16.

On October 21, 2020, Judge Grimm issued a Letter Order adopting Your Honor's Report and Recommendation, acknowledging that "*Plaintiffs are alarmed by the possibility that Marriott will issue broadly framed third-party subpoenas to financial institutions for highly sensitive personal financial information relating to specific consumer plaintiffs*" and noting *"[t]hat is an understandable concern*." **Ex. D** at 2 (emphasis added). Judge Grimm then referred the matter back to Your Honor to "broker a compromise" or, alternatively, recommend appropriate measures including, but not limited to, "amending the existing Protective Order, the entry of a Separate Protective Order pursuant to Fed. R. Civ. P. 26(c), or restricting the type or method of discovery that Marriott may pursue if allowed to receive the sixteen-digit bank card information." *Id*.

During the October 27, 2020 conference on this issue before Your Honor, Plaintiff reiterated their proposal that they work with Marriott to draft narrow subpoenas, receive those documents first to review them for sensitive information, and then provide those materials to Marriott. Marriott refused to accept Plaintiffs' proposed compromise and made no proposal of its own. On October 29, 2020, Marriott provided Plaintiffs with **31** subpoenas, which are even more overbroad, invasive, and harassing than the 16 subpoenas Marriott previously served. Despite repeated requests from Plaintiffs, Marriott has yet to identify any data breach case where such extraordinary and harassing discovery was permitted, and Plaintiffs are aware of none.

## II.    ARGUMENT

Good cause exists to issue a protective order here because Marriott is seeking to obtain seven years of irrelevant and highly sensitive financial records to discover hypothetical third-party data breaches that it speculates somehow might have impacted Plaintiffs. *See* Fed. R. Civ. P. 26(c)(1) (the Court may issue a protective order to prevent discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . forbidding the disclosure or discovery . . . [or] forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters."). This Court has held that "a party may challenge a third-party subpoena through a motion for a protective order." *Fangman v. Genuine Title, LLC*, 2016 WL 560483, at *3 (D. Md. Feb. 12, 2016); *see also Sirpal v. Fengrong Wang*, 2012 WL 2880565 (D. Md. July 12, 2012).[3] Courts have broad discretion to decide when a

---

[3] Plaintiffs anticipate Marriott may argue Plaintiffs lack standing to challenge a subpoena directed at his or her financial institution because a bank's records are not privileged and belong to the bank. Those cases are distinguishable because, unlike here, they involved motions to quash under Rule 45(d), the bank records sought were directly relevant to the claims and defenses in those cases, there was not a stipulated protective order in those cases, and/or the subpoenas were not nearly as overbroad or harassing. *See, e.g.*, *Clayton Brokerage Co. of St. Louis v. Clement*, 87 F.R.D. 569 (D. Md. 1980); *Robertson v. Cartinhour*, 2010 WL 716221 (Feb. 23, 2010); *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys.*, Inc., 2011 WL 3651821, at *2–4 (D. Md. Aug. 17, 2011) (Grimm, J.); *Elat v. Ngoubene*, 2013 WL 12423806, at *3 (D. Md. July 10, 2013) (Grimm, J.). Plaintiffs also challenge the subpoenas as they constitute an undue burden to the third parties and Plaintiffs. *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *4 (E.D. Va. Mar. 17, 2016).

protective order is appropriate, and the degree of protection required. *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006).

### A. The Subpoenas Violate the Protective Order.

As a threshold matter, Marriott's subpoenas should be prohibited because they violate the Protective Order. Although Plaintiffs will address the Protective Order in their response to Marriott's motion to amend the Protective Order, Marriott's subpoenas rely on and include information Plaintiffs designated as Highly Confidential pursuant to the Protective Order. Notably, "[t]he party seeking to modify a protective order bears the burden of showing good cause for the modification." *Minoque v. Modell*, 2012 WL 4105312, at *4 (D. Md. Sept. 17, 2012); *Factory Mut. Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, Hn. 5 (M.D.N.C. 2002) (holding parties implicitly acknowledge there was good cause for stipulated protective order, and thus burden of showing good cause to modify was on party seeking modification); *see also* ECF No. 649 at 16, **Ex. F** ("I intend to recommend to Judge Grimm that he issue an Order to Show Cause why the Protective Order should be amended to permit such use."). Marriott has not and cannot make a showing of good cause, and the subpoenas are improper for this reason alone.

### B. The Subpoenas are Overbroad and Seek Sensitive Records that are Irrelevant.

Marriott's subpoenas amount to an overbroad and unprecedented inquisition into personal financial records and communications that are both highly sensitive and wholly irrelevant. A party seeking discovery through a subpoena must show that the documents sought are relevant. *See Jackson v. Mercantile Safe Deposit and Trust Co.*, 2009 WL 10682247, at *3 (D. Md. July 21, 2009) (Grimm, J.); *Metropolitan Property and Casualty Ins. Co. v. McKaughan*, 2010 WL 11692405, at *2 (D. Md. Sept. 14, 2010) (stating scope of discovery is the same for requests served on parties and nonparties alike). Personal financial discovery, in particular, may be limited when it is of marginal relevance or based on speculative allegations. *See, e.g.*, *Brady v. Conseco, Inc.*, 2009 WL 5218046, at *2 (N.D. Cal. Dec. 29, 2009); *Brown v. Cox Commc'ns, Inc.*, 2005 WL 8161656, at *3 (D. Nev. Apr. 18, 2005) ("The intrusion into plaintiff's personal and financial affairs [by examining every credit card and financial transaction plaintiff engaged in over a three-year period of time] is outweighed by whatever marginal relevance examination of these records might have to substantiate or rebut his claims . . . ."). Indeed, courts frequently reject fishing expeditions exactly like Marriott's here, holding that to "the degree that discovery into proposed class representatives' [financial transactions] could be probative on some issue, any potential value is outweighed by the proposed class representatives' interest in privacy." *In re Sci.-Atlanta, Inc., Sec. Litig.*, 2006 WL 8429125, at *1 (N.D. Ga. Sept. 27, 2006). Just like in *Brady*, *Brown*, and *Sci.-Atlanta*, Plaintiffs' personal financial transactions have at most "marginal relevance."

Marriott contends that it is entitled to examine seven years' worth of every one of Plaintiffs' financial transactions and communications to investigate whether fraudulent activity may have been a result of another breach. Marriott's subpoenas are breathtakingly overbroad for this purpose: they sweep in large quantities of sensitive financial records relating to irrelevant transactions. These transactions may include things like hospital stays, medical information, political contributions, religious donations, and charitable donations that might be highly personal or embarrassing. Rule 26(b) does not permit parties to request vast amounts of speculative discovery in hopes of finding a needle in the haystack. *See Topline Solutuions, Inc. v. Sandler Systems, Inc.*, 2017 WL 1230817, at *5 (D. Md. April 3, 2017) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."). Marriott has done nothing to limit the data sought despite Plaintiffs' repeated concerns.

Hon. John M. Facciola
Page 4

Importantly, even if a particular Plaintiff purchased a product at another retailer that was breached in the past, such information is irrelevant as it does not show that the Plaintiff's information was breached in that case or that the breach impacted Plaintiffs. As numerous courts have held, to allow defendants "to rely on other data breaches to defeat a causal connection would 'create a perverse incentive for companies: so long as enough data breaches take place, individual companies will never be found liable.'" *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1318 (N.D. Ga. 2019) (quotations omitted). Marriott's best-case scenario is that the parties comb through thousands of pages of Plaintiffs' sensitive financial statements, dating back seven years, to find transactions with other entities who suffered a data breach in hopes of arguing, without any proof, Plaintiffs may have been impacted by a breach. This hypothetical and attenuated argument is speculative and provides no justification for the overbroad intrusion into the most sensitive aspects of each Bellwether Plaintiff's life: purchases concerning their sexual orientation, religious beliefs, political affiliations, potential medical information, and financial information. *See, e.g.*, *Jackson*, 2009 WL 10682247, at *3 (Grimm, J.); *Brady*, 2009 WL 5218046, at *2; *In re Sci.-Atlanta, Inc., Sec. Litig.*, 2006 WL 8429125, at *1.

### C. There are Far Less-Intrusive Means to Obtain the Information Marriott Seeks.

Even if relevant, Marriott does not need seven years' worth of personal financial transactions to determine whether Plaintiffs have been victims of other data breaches. When there are less intrusive, more targeted methods for a party to obtain the discovery it seeks, courts regularly issue protective orders. *See Amsel v. Gerrard*, 2017 WL 1383443, at *2 (D. Nev. Apr. 12, 2017) (finding personal financial information was not proportional to needs of the case because there were less intrusive means to obtain evidence); *see also In re Anthem, Inc. Data Breach Litig.*, 2016 WL 11505231, at *1 (N.D. Cal. Apr. 8, 2016) (denying discovery where there were less intrusive and more targeted means to obtain discovery); *Sarbacher v. Americold Realty Trust*, 2011 WL 2470681, at *3 (D. Idaho June 20, 2011) (denying discovery of personal financial records because they were marginally relevant and there were other methods of obtaining the same information); *Equal Rights Ctr. v. Archstone-Smith Tr.*, 251 F.R.D. 168, 172 (D. Md. 2008) (granting protective order where burden of discovery outweighs its likely benefit, and discovery was obtainable through a less burdensome source). Here, there are substantially less intrusive, more targeted ways for Marriott to obtain information about whether Plaintiffs have been victims of other data breaches, but Marriott has refused to consider or negotiate them.

The most obvious solution is for Marriott to serve discovery on *Plaintiffs* concerning third-party data breaches. *See Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (there is "a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (same). After our suggestion in that regard, Marriott finally served such discovery and Plaintiffs responded by identifying breaches of which they are aware that potentially compromised their information. But Plaintiffs have also proposed the following compromises:

1) Marriott identifies the data breaches for which it would like Plaintiffs to search their records and Plaintiffs will report to Marriott any potentially relevant information; and

2) the parties, with Your Honor's guidance, craft narrowly tailored subpoenas, but Plaintiffs receive the production of documents first to review and redact any sensitive information.

These options strike a balance between Plaintiffs' legitimate privacy concerns and Marriott's purported need for this information. *See Kirkpatrick v. Raleigh Cnty. Bd. of Educ.*, 1996 WL 85122, at *2 (4th Cir. Feb. 29, 1996) (holding district court properly balanced privacy interests

against requesting party's need for the material in granting protective order); *see also Hilt v. SFC Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997) (allowing party to redact irrelevant financial information produced in discovery); *Van Westrienen v. Americontinental Collection Corp.*, 189 F.R.D. 440, 441 (D. Or. 1999) (same); *Terwilliger v. York International Corp.*, 176 F.R.D. 214 (W.D. Va. 1997) (allowing party to withhold relevant documents containing irrelevant information when relevant information discoverable in less invasive documents).

### D. The Subpoenas are Designed to Annoy, Embarrass, and Oppress Plaintiffs.

Despite repeated requests, Marriott has never identified a single data breach case where such unprecedented discovery was permitted, nor has it ever provided a reasonable justification for this discovery or why Plaintiffs' compromises are inadequate. No matter its intentions, at the end of the day Marriott will weaponize Plaintiffs' financial statements and communications, which shed light on their personal finances, religious and political contributions, charitable donations, medical information (*e.g.*, payments to medicinal dispensaries or treatment centers), and other embarrassing purchases (*e.g.*, pornography or purchases suggesting sexual preference), but which bear no relevance at all on this case. Judge Grimm recognized this when he stated Plaintiffs raised "an understandable concern." *See* **Ex. D** at 2.

Marriott has also yet to confirm that any of Plaintiffs' payment card numbers were involved in the Data Breach, despite Plaintiffs having now provided Marriott with ten complete payment card numbers for nine Plaintiffs. Before Marriott embarks on such invasive discovery, it should *first* confirm that Plaintiffs' payment card numbers were in fact compromised by the Data Breach. Otherwise, Marriott may also obtain financial statements concerning accounts that were never involved in the breach, and thus there is not even potential relevance of that discovery.

Marriott's subpoenas are designed to harass and embarrass Plaintiffs in hopes that they drop out of this litigation or risk their financial history being provided to a defendant who already exposed their sensitive information. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming order prohibiting subpoena "served for the purpose of annoying and harassment and not really for the purpose of getting information."). Marriott is framing itself as the victim and Plaintiffs as the wrongdoers. But requiring Plaintiffs—who have already been victimized by Marriott's failure to keep their information secure—to provide more irrelevant and sensitive personal information to Marriott is unreasonable. It is wholly unreasonable for Marriott to seek, for example, "All recordings of telephone calls between you and Account Holder" and "All Account Holder statements." For Marriott's discovery to proceed, it should explain precisely why it needs what it has requested: such as *all* financial statements, *all* communications with the banks, and *all* recorded telephone calls, in particular for Plaintiffs claiming no fraud or cards that may not have been impacted in the breach.

### III. CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request Your Honor recommend the Court issue a protective order prohibiting Marriott from issuing the overbroad subpoenas at issue.

Respectfully,

| /s/ Amy E. Keller | /s/ Andrew N. Friedman | /s/ James J. Pizzirusso |

*Co-Lead Counsel, Consumer Track*