November 20, 2020

The Honorable John M. Facciola (Ret.) <facciolj@georgetown.edu>

    Re:    *In re: Marriott*, MDL 2879 (D. Md.), Modification of Protective Order

On November 6, 2020, Marriott moved Your Honor to amend the Stipulated Protective Order ("SPO") (ECF No. 552, **Ex. A**) negotiated by the Parties and entered by Judge Grimm. Specifically, Marriott is seeking a modification that would now preclude Plaintiffs from redacting their highly confidential financial information, which is expressly permitted under the SPO and which was an issue the parties specifically negotiated. Recognizing that it cannot meet the high bar necessary to modify a stipulated protective order, Marriott attempts to frame the issue as one of "relevance." Indeed, permeating Marriott's motion are assertions that Plaintiffs' redactions are "improper," and Plaintiffs are attempting to "hide" evidence relevant to Marriott's defenses. But there is nothing "improper" about redacting highly confidential information in accordance with a *mutually negotiated and stipulated* protective order entered by the Court in a case concerning a data breach. To be clear, Plaintiffs did not make redactions based on unilateral determinations of what they think is relevant; they redacted only that information expressly contemplated by the protective order—evidenced by Marriott's motion to amend the SPO entirely.

Accordingly, the only issue before Your Honor is whether Marriott has established "good cause" necessary to amend or modify the SPO. As set forth below, Marriott has not met its burden.

    **A.  The Redactions at Issue are Proper under the SPO**.

As a threshold matter, there is no real dispute that Plaintiffs' redactions are proper under the SPO. The SPO defines "Highly Confidential" information as "information (regardless of how generated, stored or maintained) that has not been made public or is not otherwise available or accessible in the public domain, and that the Designating Party believes: (i) concerns or relates to the highly sensitive personal, confidential, financial, commercial, proprietary, cybersecurity, competitively sensitive, or trade secret information of any Party or any third party; or (ii) contains 'PII,'[1] personnel files, or personal contact information for any person." **Ex. A** § 1(g). The SPO also provides that Highly Confidential information may be redacted. (*Id*. §§ 4(b)(i) ("If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portions (*e.g*., by redacting Highly Confidential information or making appropriate markings in the margins)"). It also allows for the redaction of PII. *See id.* § 11 ("Any Producing Party may redact from any Disclosures or Discovery Material any 'PII', personnel files, or personal contact information for any person."). The information Plaintiffs redacted constitutes both Highly Confidential information and PII under the SPO.

As Marriott admits, Plaintiffs produced financial statements with limited redactions that include their financial account numbers (some of which have already been produced) and

---

[1] The protective order defines "PII" as "**Personally Identifiable Information, which, for purposes of this Order, includes, but is not limited to: payment card numbers, financial account numbers, social security numbers, addresses, phone numbers, e-mail addresses**, driver's license numbers or other state identification numbers, employer identification numbers, tax identification numbers, passport numbers, or a foreign government equivalent of any of these numbers or identifiers, **or other personal data that may, in combination, reveal sensitive PII.**" **Ex. A** § 1(l) (emphasis added).

transaction history.[2] This information qualifies for redactions under the SPO as it includes information that "has not been made public or is not otherwise available or accessible in the public domain" and relates to the sensitive "financial . . . information of any Party." *See id*. § 1(g). The information independently qualifies for redaction because it includes non-public PII which can be used in combination with other information to reveal sensitive personal information. *See id*. § 1(l). Although Marriott tacitly suggests that such information may not qualify for protection under the SPO (*see* Mot. at 3-4),[3] Marriott's only justification for that conclusion is its false premise that Plaintiffs are "attempt[ing] to hide relevant information." Mot. at 4. Again, redacting information in accord with the redaction protocols stipulated by the parties is not "hiding" information—it is complying with the Court's Order designed to protect these data breach victims from further harm. Marriott's relevance arguments are a red herring and have no bearing on these issues.

### B. Marriott has not Presented Good Cause to Amend the Scheduling Order.

In assessing whether modification or amendment of an existing protective order is appropriate, courts generally consider four factors: "(1) the nature of the protective order; (2) the foreseeability of the requested modification or amendment at the time the protective order was entered; (3) the parties' reliance on the protective order; and, most significantly, (4) whether good cause exists for the modification or amendment." *K-TEC, Inc. v. Vita-Mix Corp.*, 2007 WL 9657986, at *2 (D. Utah June 20, 2007). "The party seeking to modify a protective order bears the burden of showing good cause for the modification." *Minoque v. Modell*, 2012 WL 4105312, at *4 (D. Md. Sept. 17, 2012); *see also Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (S.D. Iowa 1992) ("[T]here is general unanimity among the courts that where a party to stipulated protective order seeks to modify that protective order, that party must demonstrate particular good cause in order to gain relief from the agreed to protective order.").

Here, every factor weighs against Marriott's proposed modification.

#### 1. The Nature of the Protective Order.

The first factor considered is the nature of the protective order, which takes into account "its scope and whether it was court imposed or stipulated to by the parties." *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995). Here, the parties stipulated to a "blanket" protective order "that permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information." *Id*.

---

[2] Plaintiffs provided Marriott with a Redaction Log identifying the documents for which redactions were made pursuant to the SPO. MARCONPL0001714-1716 was inadvertently omitted from the redaction log because it was not properly identified by Plaintiffs' vendor because of the manner in which it was produced. This is something a simple meet and confer on the issue would have resolved, and Plaintiffs are providing Marriott with an amended Redaction Log to include this document.

[3] Consistent with the Special Master's Report and Recommendation, Plaintiffs provided Marriott with the full payment card numbers for some of the Plaintiffs, who allege those cards were misused as a result of the Data Breach. Marriott never served discovery seeking full account numbers, and doing so for Marriott's intended purpose, which is to serve overbroad and harassing subpoenas, is improper for the reasons discussed below and in Plaintiffs' November 9, 2020 Motion for Protective Order ("MPO"). Through the present motion, Marriott is seeking account numbers that unauthorized parties never acquired and were properly redacted pursuant to the SPO.

It is well-established that "[w]here . . . the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request." *Id*. Indeed, "[a] party's prior consent to the protective order will weigh against its motion for modification." *Id*. at 466. *See also K-TEC, Inc.*, 2007 WL 9657986, at *3 ("The scope of the [blanket] protective order in this case, especially when considered in light of the parties' stipulation to its terms, weighs against amending the protective order.").

Here, the motion to amend is brought by Marriott, a party to this action that negotiated and stipulated to the blanket protective order at issue *with several other tracks in this litigation, as well*. As in the above-cited cases, Marriott's direct involvement in negotiating and ultimately stipulating to the protective order at issue "weighs heavily against" its motion to amend. *Id*.

### 2. The Foreseeability of the Requested Amendment.

The second factor considered is "whether the need for the modification was foreseeable at the time the parties negotiated the original stipulated protective order." *Bayer AG & Miles*, 162 F.R.D. at 466. "Not surprisingly, a party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement has been held to not constitute good cause for relief from the protective order." *Jochims*, 145 F.R.D. at 502.

This case involves a data breach whereby Marriott failed to protect the highly personal information of millions of its customers. Thus, it was foreseeable that the parties would have an interest in redacting their highly sensitive information, which was expressly agreed to by the parties. Given this agreement, it was equally foreseeable that if Marriott wanted to conduct third-party discovery on the named plaintiffs, it would have to do so using information about those individuals already in its possession, which of course is most relevant to the breach, as well as information that would not be subject to the redaction. Indeed, the fact that the parties agreed upon the scope of permissible redactions demonstrates that this was a foreseeable outcome. *See K-TEC, Inc.*, 2007 WL 9657986, at *3 ("Because the language of the protective order prohibits what [the moving party] is requesting in its motion, it is clear that the parties did foresee the possibility that this situation would arise.").

Because the parties foresaw this situation at the time the parties were negotiating the protective order, Marriott "should have provided for that eventuality" prior to entering into the stipulation. *Bayer AG & Miles*, 162 F.R.D. at 467. Marriott's failure to do so "weighs heavily against" its motion to amend the SPO. *K-TEC, Inc.*, 2007 WL 9657986, at *3.

### 3. The Parties' Reliance on the Protective Order.

The third factor considered is the "extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Bayer AG & Miles*, 162 F.R.D. at 467 (quotations omitted).

As Plaintiffs informed Judge Grimm in earlier filings, there is good reason for parties in a data breach case to engage in arm's-length negotiations regarding privacy rights of the parties at the *outset* of the litigation. In Plaintiffs' case, they have already been victimized by Defendants' actions once and may be deterred from pursuing relief if there are inadequate protections in place

to ensure their privacy rights will not be further violated. *See* Dkt. 655 at 3 (citing cases for the proposition that "[t]here is an Orwellian irony to the proposition that in order to get relief for a theft of one's personal information, a person has to disclose even more personal information, including an inspection of all his or her devices that connect to the internet. If the Court were to grant [defendant's] request, it would further invade plaintiffs' privacy interests and deter current and future data theft victims from pursuing relief." *Henson v. Turn, Inc.*, 2018 WL 5281629, at *8 (N.D. Cal. Oct. 22, 2018)) (quoting *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 11505231, at *1 (N.D. Cal. Apr. 8, 2016)).

Indeed, the redaction provisions were a key component of the protective order from Plaintiffs' perspective, as they provided a necessary limitation on the disclosure of highly personal and sensitive financial and account information for individuals who have already been victimized by a breach. Without this limitation, the named plaintiffs may have been reluctant to be involved in this case. *See Jochims*, 145 F.R.D. at 503 (S.D. Iowa 1992) ("To permit [a party] to conduct discovery under one set of rules and then have the court abrogate those rules after [the party] has achieved his desired result would be to countenance discovery by ambush.").[4] Further, if Your Honor were to permit this late-stage amendment here, plaintiffs in future data breach cases may not participate knowing that stipulated protocols designed to protect their privacy can be eliminated after discovery commences. Courts analyzing this issue have acknowledged this very real concern: "The obvious effect of such an approach to discovery would be to place a chill upon future stipulated confidentiality agreements. This in turn would likely impede the processing of cases as the courts are called upon to rule upon countless motions under Rule 26." *Jochims*, 145 F.R.D. at 503.

Other courts have refused to amend a protective order in similar circumstances. *See, e.g., Alcoa, Inc. v. Universal Alloy Corp.*, 2016 WL 9175820, at *2 (N.D. Ga. Mar. 2, 2016) ("the Court is unwilling to alter the agreement agreed upon by the parties, particularly where, as here, both parties were fully aware of the nature of this action at the time the Consent Protective Order was drafted."); *K-TEC, Inc.*, 2007 WL 9657986, at *4 (Defendant "has relied upon the protective order in producing its confidential documents and testimony to [plaintiff], its direct competitor. [Defendant] should not now be permitted to use the documents for a purpose that the parties agreed was prohibited under the stipulated protective order."); *Bayer AG & Miles*, 162 F.R.D. at 467 ("If the Court were to allow [defendant] to modify the Protective Order after [plaintiff] has produced millions of documents in reliance on that Order, the Court would be sending a negative message to future litigants. Litigants and their counsel must know that they can rely on protective orders to protect sensitive commercial information from disclosure"). For the same reasons here, this factor weighs strongly against amendment.

### 4. Marriott Has Not Established Good Cause.

Marriott's justification for its proposal to eliminate Plaintiffs' ability to redact their own highly sensitive information by amending the redaction provisions of the protective order to only include

---

[4] In fact, Marriott itself utilized the redaction provision under the SPO when it redacted "Highly Sensitive" portions of its documents, although it subsequently removed the redactions after the October 27, 2020 conference before Your Honor after Plaintiffs identified that Marriott had also redacted "Highly Sensitive" information.

Hon. John M. Facciola
Page 5

non-parties does not constitute good cause. In a nutshell, Marriott claims it wants the redactions removed so it can review hypothetical third-party data breaches that potentially impacted Plaintiffs. How does it intend to do this? By issuing subpoenas to **31** different financial institutions and vendors that rely on and include information Plaintiffs designated as "Highly Confidential" pursuant to the Protective Order. These subpoenas seek, among other things, seven years of unlimited financial statements, communications, and recorded telephone calls about the Bellwether Plaintiffs' most personal expenditures. *See* **Ex. B** (subpoenas). They are grossly improper, overbroad, and not relevant to the claims at issue.

As noted in Plaintiffs' November 9 motion for a protective order seeking to limit these subpoenas, Marriott's best-case scenario is that the parties comb through thousands of pages of Plaintiffs' sensitive financial statements, dating back seven years, to find transactions with other entities who suffered a data breach in hopes of arguing, without any proof, Plaintiffs *may* have been impacted by another breach. This hypothetical and attenuated argument is speculative, has no impact on causation, and provides no justification for the overbroad intrusion into the most sensitive aspects of each Bellwether Plaintiff's life: financial information and personal purchases (which concern their sexual orientation, religious beliefs, political affiliations, potential medical information, and financial information).

Examining the true purpose of Marriott's proposed amendment weighs strongly against its approval. Marriott's desire to conduct this third-party discovery using Plaintiffs' unredacted information does not constitute "good cause" necessary to amend a protective order that Marriott already stipulated to and Plaintiffs' have relied on in producing discovery. As recognized by other courts, a party's late-stage attempt "to alter and expand the terms of the Protective Order" is a remedy that "is not to be undertaken lightly." *Viskase Corp. v. W.R. Grace & Co.-Conn.*, 1992 WL 13679, at *4 (N.D. Ill. Jan. 24, 1992); *see also K-TEC, Inc.*, 2007 WL 9657986, at *5 (finding moving party did not demonstrate good cause where it "previously agreed by stipulating to the protective order that the information would not be submitted" and "this situation was, or should have been, foreseen by the parties when they negotiated the protective order.").

What is more, Plaintiffs have proposed reasonable alternatives that would avoid this unprecedented intrusion into their privacy, including (1) having Marriott identity the data breaches for which it would like Plaintiffs to search their records and Plaintiffs will report to Marriott any potentially relevant information; and (2) having the parties, with Your Honor's guidance, craft narrowly tailored subpoenas that give Plaintiffs the right to receive the production of documents first to review and redact any sensitive information. *See* MPO at 4-5. Other courts have found that where such reasonable alternatives are available, there is not "good cause" to amend a stipulated protective order. *See Bayer AG & Miles*, 162 F.R.D. at 465 ("Thus, [plaintiff's] proposed alternative clearly provides an adequate opportunity for [defendant] to ascertain witnesses' credibility without exposing confidential information to a competitor's employee. [Defendant] has not demonstrated 'good cause' for its proposed modification of the stipulated Protective Order.").

*  *  *

As set forth herein, every factor weighs strongly against Marriott's proposal to amend the protective order, most of which Marriott simply fails to address. For these reasons, Marriott's motion to amend the protective order should be denied.

Respectfully,

/s/ Amy E. Keller         /s/ Andrew N. Friedman         /s/ James J. Pizzirusso
*Co-Lead Counsel, Consumer Track*