# BakerHostetler

The Honorable John M. Facciola, via email at facciolj@georgetown.edu

Re:     *In re: Marriott,* MDL No. 2879 (D. Md.) Opposition to Motion for Protective Order

Dear Special Master Facciola:

The Consumer plaintiffs' motion for a protective order to prevent Marriott from issuing any subpoenas ("Motion") is yet another tactic to deny Marriott access to information fundamental to plaintiffs' claims—information in the hands of third parties that plaintiffs have identified as being relevant to this case. Because plaintiffs fail to meet the high burden required to establish good cause to block Marriott's subpoenas, the Court should deny their latest obstruction attempt and permit Marriott to utilize the normal discovery process to defend itself in this MDL.

First, plaintiffs broadly claim Marriott should be precluded from serving every single one of its subpoenas, with almost no effort to identify which specific document requests within those subpoenas they believe are objectionable. Second, the crux of plaintiffs' argument is the conclusory and baseless claim that Marriott seeks information from third parties to "harass, annoy, and embarrass" the plaintiffs (*see* Mot. at 1); but this type of broad, hypothetical assertion is not good cause for a protective order. And it ignores the fact that the Stipulated Protective Order ("SPO") [ECF No. 552] already limits how Marriott can use information it receives through the subpoenas. Third, plaintiffs disregard the relevance of the information Marriott seeks to defend itself in this case. Fourth, the subpoenas do not violate any cognizable privacy right, and the law does not permit plaintiffs to assert an undue-burden argument to preclude third-party subpoenas. And, finally, plaintiffs fail to even attempt to specify how the subpoenas violate the SPO, as they contend.

For these reasons, detailed below, the Court should reject plaintiffs' efforts to obstruct the discovery process and deny plaintiffs' Motion.

## BACKGROUND

Marriott's subpoenas are not intended to harass, annoy, or embarrass; rather, Marriott addressed each subpoena to a **third party that plaintiffs identified in discovery** as having information relevant to their claims. For example, fourteen bellwether plaintiffs allege someone misused their payment cards because of the cyberattack, an integral—if not the most vital—allegation in plaintiffs' lawsuit. Thus, Marriott intends to subpoena (a) the banks that issued the allegedly misused payment cards, (b) the card brands for those payment cards, and/or (c) the merchants where the alleged misuse occurred. Marriott also intends to subpoena third parties that have records related to damages sought by plaintiffs for time allegedly spent replacing payment cards or passports.

As Your Honor knows, this is not plaintiffs' first attempt to stop Marriott from obtaining discovery from third parties that plaintiffs identified as relevant to their claims. On July 13, 2020, Marriott gave notice to plaintiffs that it intended to issue third-party subpoenas, and plaintiffs did not initially object. Four days later, and after service of the subpoenas, plaintiffs demanded that Marriott withdraw them, claiming Marriott's inclusion of information designated as Highly Confidential in discovery responses—such as plaintiffs' publicly available street addresses and the last four digits of payment card numbers—violated the SPO. Marriott informed plaintiffs that, although it disagreed with the assertion that it had violated the SPO, Marriott would withdraw the subpoenas in an effort to work through plaintiffs' stated concerns.

The parties briefed the issue of whether Marriott could use plaintiffs' street addresses in third-party subpoenas, which Your Honor addressed in a September 14, 2020 Report and Recommendation (R&R) [ECF No. 649]. In the R&R, Your Honor rejected plaintiffs' undue-burden argument: "only the party who must comply with a subpoena can assert that doing so creates an unreasonable burden and is disproportionate to the needs of the case." (R&R at 13.) And, with regard to whether Marriott could include plaintiffs' full payment card numbers in subpoenas, Your Honor held that "[i]f plaintiffs do not agree to the use of the sixteen-digit numbers in the subpoenas that Marriott will serve on third parties, I recommend that Judge Grimm issue an order to show cause why the Protective Order should not be amended to permit such use by any party in this lawsuit." (*Id.* at 3.)

To date, only nine bellwether plaintiffs provided the full, 16-digit number for payment cards they allege were misused as a result of the cyberattack. Marriott now seeks to use those payment card numbers in subpoenas to obtain discovery about the very misuse plaintiffs allege in this case.

## ARGUMENT

Marriott has a fundamental right to seek discovery regarding information that plaintiffs have put at issue—like information related to the alleged misuse of their payment cards they claim Marriott caused. *See, e.g.*, *McMillian v. Wake Cty. Sheriff's Dep't*, 399 F. App'x 824, 828-29 (4th Cir. 2010) (denial of discovery was abuse of discretion where discovery sought could have "confirmed (or dispelled) [party's] allegations"); *CX Reinsurance Co. Ltd. v. B&R Mgt., Inc.*, 2017 WL 2729075, at *3 (D. Md. June 23, 2017) ("[Defendant] is entitled to discovery of relevant documents that may aid it in refuting [plaintiff's] version of events or offering a factual alternative"). And, as Judge Grimm has recognized, plaintiffs face a high burden in their effort to prevent such discovery altogether. *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 279 (D. Md. 2012) (Grimm, J.) ("[T]he standard for issuance of a protective order is high."); *see also Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) ("[P]rotective orders should be sparingly used and cautiously granted.").

To meet this high burden, plaintiffs must prove that "good cause" exists to "protect" against "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c). "[Plaintiffs] may not rely upon stereotyped and conclusory statements" to do so. *Webb*, 283 F.R.D. at 279. "Instead, [they] must present a particular and specific demonstration of fact as to why a protective order should issue." *Id.* Indeed, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* Because plaintiffs fail to provide any facts, let alone the required showing to substantiate the extreme remedy of preventing discovery, the Court should deny their Motion.

## A.     Plaintiffs' Vague Request Is Not Good Cause to Block All of Marriott's Subpoenas.

Plaintiffs seek to block Marriott from serving every single one of its noticed subpoenas, an overreaching request that evidences plaintiffs' ongoing effort to obstruct Marriott from relevant discovery. Plaintiffs generally argue that Marriott should be barred from obtaining discovery from payment card companies, but they fail to provide any detail about which specific document requests they seek to protect against by protective order. Plaintiffs' vague request for relief is further evidence of their effort to keep Marriott from any meaningful discovery. Such a non-specific objection cannot meet plaintiffs' burden for obtaining a protective order and should not be allowed to further delay discovery in this case.

### B.     Plaintiffs' Conclusory and Speculative Assertion That Marriott Will Use the Discovery to Harass and Annoy Plaintiffs Is Not Good Cause for a Protective Order.

Plaintiffs' theme is the conclusory and speculative argument that "Marriott seeks to weaponize Plaintiffs' irrelevant and personal financial history and communications in order to harass, annoy, and embarrass . . . ." (Mot. at 1; *see also id.* at 5.) But plaintiffs lob this accusation without including details of how or why Marriott might "weaponize" their information, offering evidentiary support for their argument, or explaining why their fear is anything more than hypothetical. Furthermore, it overlooks that, as Your Honor recognized in the R&R (*see* R&R at 8), the SPO already restricts how Marriott can use confidential information in this case. *See Paws Up Ranch, LLC v. Green*, 2013 U.S. Dist. LEXIS 167174, at *12-13 (D. Nev. Nov. 22, 2013) (rejecting request to limit financial discovery because party's "privacy concerns can be mitigated by subjecting the banking records to a stipulated protective order that limits the use of the documents and the people with access to them"). And it misses the fact that the possibility of plaintiffs' embarrassment is not a discoverability issue but rather a potential admissibility issue to be determined under the Federal Rules of Evidence if and when evidence is introduced.

Plaintiffs' argument is, therefore, an impermissible request for a protective order based on "stereotyped and conclusory statements." *Webb*, 283 F.R.D. at 279. Your Honor rejected a similar request in *Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005). There, a party moved for a protective order to limit discovery on a third party by arguing that it could lead to harassment and embarrassment. Your Honor denied the motion, finding that the moving party had "made only general claims of potential harassment and embarrassment, unsupported by evidence of the specific harm that will result from [the third party's] compliance with the subpoena." *Id.* at 32.

Plaintiffs' citation to *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), cannot save their argument. (*See* Mot. at 5.) *Mattel* involved third-party discovery seeking irrelevant information from the employer of a party's retained expert. 353 F.3d at 813-14. That is far from the situation here, where Marriott seeks discovery from third parties that plaintiffs identified as having information regarding the alleged misuse of their payment cards and their alleged mitigation efforts.[1]

### C.     Marriott Seeks Third-Party Discovery That Is Necessary to Its Defense.

Unable to meet their burden, Plaintiffs argue that the information Marriott seeks is irrelevant. (*See* Mot. at 3-4.) In doing so, plaintiffs erect a straw man—that Marriott only subpoenaed plaintiffs' transaction histories (a subset of the subpoenas) to look for evidence of other data breaches.

But, as Marriott explained during many meet and confers, there are myriad reasons the subpoenas seek relevant information, such as: (1) prior transactions at locations where plaintiffs now allege misuse occurred; (2) where, when, and how often charges occurred on the payment cards around the same time as plaintiffs now allege misuse occurred—which is probative of a lost payment card versus misuse of a payment card number; (3) whether the charges were the result of an authorized

---

[1] To be sure, Marriott will not misuse plaintiffs' information "to harass, annoy, and embarrass." And if plaintiffs are truly concerned that Marriott will misuse the fruits of third-party discovery during depositions—which Marriott will not do—Rule 30(d) is the mechanism for relief, not a pre-emptive protective order preventing subpoenas from being issued. *See, e.g., Adams v. Sharfstein*, 2012 U.S. Dist. LEXIS 100366, at *5, n. 6 (D. Md. July 19, 2012) (Grimm, J.) (rejecting request for protective order based on what party "perceive[d] [would be] the conduct of lawyers" during a deposition, as this was a "stereotyped and conclusory" argument that would "not support issuance of a protective order").

user or payment card on plaintiffs' accounts; (4) whether plaintiffs were refunded for the alleged misuse; (5) when, where, and how often plaintiffs experienced prior misuse on the payment cards, and if they were refunded for such other misuse; (6) whether plaintiffs identified a data breach, or another issue, to a third party as the reason for their alleged efforts to mitigate; (7) plaintiffs' enrollment in or payment for credit-monitoring services; and (8), when and how often plaintiffs used the payment cards at another merchant that suffered a data breach.

Aside from the final reason above, plaintiffs do not even bother to argue why this information might be irrelevant. Nor could they—all of this information informs whether Marriott caused the payment card misuse plaintiffs now allege or their purported mitigation efforts. And it is critical to Marriott's defense. For example, in litigation stemming from another hotel data security incident (1:16-cv-00702, N.D. Ill.), a plaintiff claimed the defendant's breach caused fraudulent misuse of her Bank of America ("BOA") account. The defendant received call records from BOA through a Rule 45 subpoena. Those call records revealed that a woman claiming to be plaintiff provided BOA with several pieces of plaintiff's personal information that the defendant never possessed—and that therefore could not have been stolen during the breach. The defendant cited this information in a dispositive motion, which led the plaintiff to voluntarily dismiss [ECF No. 36-1].

Plaintiffs' case citations do not support their irrelevance argument. (*See* Mot. at 3.) *Jackson v. Mercantile Safe Deposit & Tr. Co.*, 2009 WL 10682247 (D. Md. July 21, 2009) (Grimm, J.), involved a motion to quash a subpoena issued to the defendant that would have required a review of 143 years' worth of files—an undue burden on the defendant because the files had no impact on the plaintiffs' legal claims. *Id.* at *2-3. *Jackson* is inapposite, as plaintiffs cannot claim undue burden for third-party subpoenas (*see infra* Section D), and the records Marriott seeks relate directly to causation and mitigation. Likewise, *Brady v. Conseco, Inc.*, 2009 WL 5218046, at *2 (N.D. Cal. Dec. 29, 2009); *Brown v. Cox Commc'ns, Inc.*, 2005 WL 8161656, at *3 (D. Nev. Apr. 18, 2005); and *In re Sci.-Atlanta, Inc., Sec. Litig., 2006 WL 8429125*, at *1 (N.D. Ga. Sept. 27, 2006), all involved discovery requests issued to parties, not Rule 45 subpoenas to third parties that data-breach plaintiffs identified as having information relevant to fraud or mitigation efforts. And, in *Metropolitan Property and Casualty Ins. Co. v. McKaughan*, 2010 WL 11692405, at *2 (D. Md. Sept. 14, 2010), the Court permitted the plaintiff to subpoena a bulldozer company for insurance policies relevant to the case.

Plaintiffs also cite *In re Equifax, Inc.,* 362 F. Supp. 3d 1295 (N.D. Ga. 2019), for the proposition that "even if a particular Plaintiff purchased a product at another retailer that was breached in the past, such information is irrelevant . . . ." (Mot. at 4.) But *Equifax* involved whether a data-breach defendant could defeat a complaint **at the pleading stage** by arguing that other data breaches could have led to a plaintiff's alleged harm. 362 F. Supp. 3d at 1318. And, as other courts have recognized, information related to other data breaches can be used to challenge causation and class certification. *See, e.g.*, *S. Indep. Bank v. Fred's, Inc.*, 2019 U.S. Dist. LEXIS 40036, at *54 (M.D. Ala. Mar. 13, 2019) (recognizing issue of "other known data breaches in the period before and after the [defendant's] breach" in analyzing class certification). Indeed, it strains credulity to argue that a plaintiff's purchase at another vendor that had a data breach (*e.g.*, Wendy's, Home Depot, or Target) during the germane time period is irrelevant to plaintiffs' claim that Marriott caused the misuse on that payment card.

Finally, plaintiffs complain that Marriott seeks irrelevant material because some of the subpoenas request information dating back to 2014. (Mot. at 3-5.) But plaintiffs' own allegations are the basis for Marriott's doing so. (*See* Second Am. Compl. [ECF No. 413] at ¶¶ 2, 146, 172.) Indeed, because plaintiffs allege the hackers had access to their payment card numbers since 2014, Marriott seeks

information dating back to 2014 to evaluate whether plaintiffs had fraud on their accounts in prior years, whether their payment cards were used at the merchant at which they now allege fraud, and whether plaintiffs used their card at another location that was breached.[2]

**D.      Plaintiffs Do Not Have a Cognizable Privacy Right in Their Bank Records.**

Plaintiffs imply their bank records should not be subject to third-party discovery because they have a "legitimate privacy concern." This argument fails under the Supreme Court's holding in *United States v. Miller*, 425 U.S. 435, 442 (1976), that a bank customer has no "legitimate expectation of privacy" in subpoenaed bank records, including financial statements. *See also Robertson v. Cartinhour*, 2010 U.S. Dist. LEXIS 16058, at *3 (D. Md. Feb. 23, 2010) ("[A] person does not have a general right to or privilege in his banking records held by his bank."); *cf. Elat v. Ngoubene*, 2013 U.S. Dist. LEXIS 203689, at *5 (D. Md. July 9, 2013) (Grimm J.) (holding "[t]he issuance of a subpoena requiring the bank to produce its records is not violative of any cognizable privacy right of the [party]").[3]

Plaintiffs also make the same undue burden argument that Your Honor rejected in the R&R—that the subpoenas "constitute an undue burden to the third parties and Plaintiffs." (Mot. at 2, n. 3.) But "only the party who must comply with a subpoena can assert that doing so creates an unreasonable burden and is disproportionate to the needs of the case." (R&R at 13.) Plaintiffs cite *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *4 (E.D. Va. Mar. 17, 2016), despite the fact that the decision expressly limited its analysis to "practice and precedent in [the E.D. Va.]," which is different than the clear District of Maryland rule that a party cannot claim undue burden for a subpoena issued to a third party. (*See* R&R at 13, n. 4 (citing D. Md. cases).)

**F.      The Subpoenas to Financial Institutions and Card Brands Do Not Violate the SPO.**

Finally, plaintiffs argue the subpoenas violate the SPO, without explaining how. If plaintiffs are arguing that the inclusion of 16-digit payment card numbers in the subpoenas to the issuing banks and card brands violates the SPO, they are wrong as ¶ 6.c.viii of the SPO provides that a party may share information designated as Highly Confidential with the "original source" of that information.

**CONCLUSION**

For the foregoing reasons, the Court should deny plaintiffs' vague and unsupported Motion.

Sincerely,

*/s/ Lisa M. Ghannoum*

Lisa M. Ghannoum, Co-Lead Counsel for the Marriott Defendants

---

[2] Plaintiffs rely on *Topline Sols., Inc. v. Sandler Sys., Inc.* (*see* Mot. at 3), but that breach-of-contract case involved a plaintiff seeking discovery regarding defendants' orders and sales in an effort to identify additional contractual breaches. 2017 WL 1230817, at *5-6 (D. Md. Apr. 3, 2017).

[3] Further, plaintiffs assert that their records will reveal the "most sensitive aspects" of their lives (Mot. at 4), but, at most, the statements will reveal where a charge occurred, not the underlying reason for the charge.

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, the foregoing was served via e-mail on co-lead counsel in the Consumer Track.

*/s/ Lisa M. Ghannoum*
*One of the Marriott Defendant's Co-Lead Counsel*