IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 19-md-2879<br><br>Hon. Paul W. Grimm<br><br>**STIPULATION REGARDING MARRIOTT'S SEARCHING FOR INFORMATION IN NDS DATABASE & CONSUMER PLAINTIFFS' RESPONSES TO DISCOVERY REQUESTS** |

With the assistance of Special Master Facciola, the parties—plaintiffs in the Consumer Track ("Plaintiffs") and defendants Marriott International, Inc. and Starwood Hotels & Resorts Worldwide, LLC (collectively, "Marriott")—have agreed upon and stipulated to the following regarding (a) Marriott's searches for information in the NDS database, (b) Marriott's responses to certain of Plaintiffs' pending discovery requests, and (c) Plaintiffs' responses to certain of Marriott's pending discovery requests.

1. On August 28, 2019, Plaintiffs served their First Set of Requests for Production of Documents to Marriott, asking Marriott to produce "Documents sufficient to identify the types and kinds of Personal Information and Payment Card Data Marriott collected on and for each of the Consumer Plaintiffs in this litigation, and where and how such information was stored."

2. On November 13, 2019, Marriott served its objections and response to Plaintiffs' First Set of Requests for Production of Documents.

3. After the parties met and conferred regarding the request and Marriott's objections and response thereto, on January 31, 2020, Plaintiffs served their First Set

Interrogatories to Marriott, asking, in part, that Marriott "[i]dentify—by category, type, and listing the information specifically—all Personal Information and Payment Card Data in Marriott's possession, custody or control for each Consumer Bellwether Plaintiff." Plaintiffs further asked that Marriott, "[w]hen providing an answer to this interrogatory, please list each Consumer Bellwether Plaintiff individually, and provide the specific information that Marriott has for each individual Consumer Bellwether Plaintiff." Plaintiffs further provided a chart for illustrative purposes demonstrating the type of response Plaintiffs sought.

4. On February 7, 2020, Plaintiffs served their Second Set of Requests for Production to Marriott, seeking "[a]ll documents in Marriott's possession, custody, or control Reflecting the Personal Information or Payment Card Data of a Consumer Bellwether Plaintiff."

5. On March 16, 2020, Marriott served its responses and objections to Plaintiffs' Second Set of Request for Production to Marriott, and on March 18, 2020, Marriott served its responses and objections to Plaintiffs' First Set of Interrogatories to Marriott. In its March 2020 responses and objections, Marriott objected to providing "[a]ll Documents in Marriott's possession, custody, or control reflecting the Personal Information or Payment Card Data of a Consumer Bellwether Plaintiff," but stated that it would search for Plaintiffs' information in accessible copies of the information in the four NDS data tables that the PFI Report found were involved in the Starwood cyberattack (the Four Tables).[1]

6. On December 31, 2020, Plaintiffs served their Third Set of Requests for Production to Marriott, seeking, among other things, "Documents sufficient to show the amount

---

[1] The PFI Report identified these four tables as "GUEST_MASTER_PROFILE (main guest reservation information) - CONSUMPTION_ ROOM_TYPE (guest reservation room preferences) - RESERVATION_ROOM_SHARER (additional guest reservation information) - PP_MASTER (passport encryption values/information)." ECF No. 598-1 at 75-76.

of money and non-pecuniary payment (e.g., rewards points) that Your Hotels charged for goods and services used by Proposed Class Members[.]" Marriott's formal responses to that discovery are not yet due.

7. The parties have spent months negotiating search inputs and queries to accomplish the location and extraction of Plaintiffs' information in the copies of the information in the Four Tables, as well as discussing Plaintiffs' request for data involving their personal information from the entire NDS database. This included Plaintiffs' request that Marriott decrypt any payment card numbers related to them that might exist in the NDS database in encrypted form. On September 25, 2020, Plaintiffs wrote to Marriott stating that the parties had an agreement on, *inter alia*, the search inputs for Marriott's searching of the copies of the information in the Four Tables for Plaintiffs' information, and that they would provide confirmation of the search inputs necessary to conduct those searches in the coming weeks, but reserved their right to seek additional information from Marriott, including, but not limited, to the entire NDS database.

8. On October 6, 2020, following a hearing before Special Master Facciola, Plaintiffs moved to compel Marriott to search and provide access to the entire NDS database via letter to Special Master Facciola, which would require Marriott to rehydrate the NDS database (*i.e.*, make the system operational again). On October 20, 2020, Marriott objected to Plaintiffs' request. On November 5, 2020, Special Master Facciola issued a Report and Recommendation (ECF No. 682), which recommended that the Court hold an evidentiary hearing regarding Plaintiffs' motion to compel.

9. On November 19, 2020, the parties wrote to Special Master Facciola to inform him that they (a) were in the process of coming to an agreement without the need for a hearing,

and (b) were in agreement that the deadline for objections to the Report and Recommendation should be tolled pending the outcome of the parties' meet and confer efforts.

10. On November 20, 2020, Special Master Facciola informed the parties that he had advised the Court of the parties' communication and that "[the Court] advised [him] to tell [the parties] that they may have whatever time [they] need to work this out. [The Court] is satisfied with our correspondence and my email to [the Court] as a sufficient record of [the parties'] agreement and [the Court's approval of it."

11. Thereafter, to resolve Plaintiffs' motion to compel, Marriott offered to attempt to rehydrate the NDS database and to run searches across the entire database after rehydration for (a) Plaintiffs' information, and (b) queries that Plaintiffs' experts believe are necessary to obtain forensic information. Plaintiffs accepted this offer of compromise, Marriott has been working towards the rehydration of the NDS database since then. In addition, the parties have been cooperatively negotiating searches since November 2020, including some of Plaintiffs' and Marriott's experts speaking directly with each other on January 6, 2021.

12. On November 20, 2020, Plaintiffs also provided Marriott confirmation of the inputs that Marriott will use to search for Plaintiffs' information in the form of a chart that is attached as Exhibit A. Plaintiffs also requested that Marriott perform the searches in the copies of the information in the Four Tables in addition to the broader search across the rehydrated NDS database.

13. On November 23, 2020, Marriott informed Plaintiffs during a telephone conference that searching the copies of the information in the Four Tables independently would be duplicative of the broader searches in the NDS database since the data in the Four Tables also exists in the NDS database. Accordingly, Marriott informed Plaintiffs that it would not search for

Plaintiffs' information in both places—rather, Marriott would only search for the information once in the rehydrated NDS database. Marriott reiterated its position that it would not run duplicative searches in a December 11, 2020 letter to plaintiffs.

14. On December 18, 2020, in response to Marriott stating it needed until January 2021 to produce Plaintiff-specific information, Plaintiffs asked that Marriott expedite the production of information, and Marriott agreed to do so.

15. Separately, Marriott has issued Interrogatories, Requests for Admission, and Requests for Production to Plaintiffs during this case. Plaintiffs have objected to the following discovery requests on the basis that they do not have information from Marriott:

    a. Interrogatory Nos. 1-4, 6, 8, 11-14 (all Plaintiffs); 15 (Plaintiffs Cullen, Fishon, Maldini, O'Brien, Ropp); and 16 (Plaintiffs Cullen, Fishon, Maldini, O'Brien, Ropp); and

    b. Requests for Admission Nos. 4, 7, 10-11, 13-14 (all Plaintiffs); 15 (Plaintiffs Maisto ); 16 (Plaintiffs Lawrence, Long, Maisto, Maldini, Miller, O'Brien, Sempre, Wallace); 17 (Plaintiffs Lawrence, Maisto, Maldini, Marks, O'Brien, Sempre, Wallace); and 18 (plaintiff O'Brien).

16. Plaintiffs have repeatedly informed Marriott that they have produced all responsive documents and information in their possession, custody, or control, but that once Marriott provides Plaintiffs with the documents and information in its possession, custody, or control, Plaintiffs may discover additional responsive information from Marriott's files. The one exception is Plaintiffs' response to Marriott's Interrogatory Nos. 12 and 13 to Consumer Plaintiffs, which Plaintiffs have objected on grounds that it is overly burdensome and

disproportional to the needs of the case, given that Plaintiffs contend that Marriott has responsive information readily accessible responsive to these requests.

17. On January 14, 2021, Marriott informed the Court that its rehydration of the NDS database is taking longer than Marriott expected. Thereafter, on January 19, 2021, the parties met via video conference with Special Master Facciola to discuss their disputes relating to their responses and objections to various discovery requests. With the assistance of Special Master Facciola, the parties came to an agreement, memorialized in this stipulation.

18. Marriott will continue its efforts to rehydrate the NDS database and will provide the parties, Special Master Facciola, and the Court with updates regarding this project every 3-weeks beginning February 4, as requested by the Court during the January 14, 2021 conference.

19. While Marriott continues its efforts to rehydrate the NDS database, Marriott will instruct its vendor to search for records containing Plaintiffs' information in the copies of the information in the Four Tables. Specifically, Marriott will instruct its vendor to use Plaintiffs' personal information in Exhibit A (as revised per ¶ 20), marked Highly Confidential, which Marriott and Plaintiffs jointly compiled during prior negotiations, to search for the following:

   a. All rows containing Plaintiffs' SPG numbers;
   b. All rows containing Plaintiffs' email addresses;
   c. All rows containing Plaintiffs' unencrypted passport numbers;
   d. All rows containing Plaintiffs' first name(s) and last name(s) combination;
   e. All rows containing the first letter of Plaintiffs' first name(s) (including "also known as" names, to be provided by Plaintiffs), Plaintiffs' last name(s), and Plaintiffs' zip code combinations (or Hong Kong in address field for plaintiff Guzikowski, where appropriate);

    f.   All rows containing the first letter of Plaintiffs' first name(s) (including "also known as" names, to be provided by Plaintiffs), Plaintiffs' last name(s), and Plaintiffs' city combinations; and

    g.   All rows containing Plaintiffs' first initial of first name(s), last name(s), and last four digits of unencrypted payment card numbers combinations.

20. By February 5, 2021, Plaintiffs shall provide Marriott with revisions to Exhibit A that include additional information, including, but not limited to, information from Marriott's December 30, 2020 and January 22, 2021 productions.

21. By February 5, 2021, Marriott will provide Plaintiffs with the 'code' that its vendor will use to query the data for Plaintiffs' information. By February 9, 2021, Plaintiffs will provide any comments regarding the 'code' to Marriott, which comments Marriott shall respond to within two business days of receipt.

22. Once the search of the copies of the information in the Four Tables is completed, Marriott will instruct its vendor to extract the results from these searches.[2]

23. Marriott will then remove any row containing a foreign address due to foreign privacy regulations, with the exception of the rows containing foreign addresses provided by Plaintiff Guzikowski. Marriott will then produce the final results to plaintiff in a reasonable format to allow sorting and searching (*e.g.*, XLSX or CSV format), which production Marriott will endeavor to have completed by February 18, 2021. Marriott will identify the number of rows removed due to foreign privacy regulations, and Plaintiffs reserve their right to inquire

---

[2] Plaintiffs agree that Marriott's instructions to its vendor regarding the foregoing and Marriott's production to plaintiffs of the results therefrom will not act as a waiver of any attorney-client privilege or work-product protections that exist between Marriott and the vendor.

about additional information concerning those rows to ensure no information pertaining to Plaintiffs was removed.

24. Following Marriott's production of the results of its searches of the copies of the information in the Four Tables, Plaintiffs will make best efforts to provide supplemental responses to Marriott's discovery requests to which Plaintiffs objected on the basis that Marriott had not yet provided information to them within 14 days. Plaintiffs reserve the right to seek additional time after review of the information supplied by Marriott and in consultation with their expert(s), and Marriott reserves the right to oppose such a request.

25. If and when Marriott completes the NDS rehydration project such that Marriott can perform searches across the entirety of the NDS database, Marriott will first perform searches for records containing Plaintiffs' personal information using Exhibit A (as revised per ¶ 20) and any additional information discovered by Plaintiffs that Plaintiffs add to Exhibit A before Marriott performs the search. To the extent the initial querying of the NDS database yields Plaintiff-specific record keys that can be used to search for additional records containing Plaintiffs' information, Marriott will use those Plaintiff-specific record keys in a second round of searching for Plaintiffs' information in the NDS database. To the extent this second round of querying yields further Plaintiff-specific record keys that can be used to search for additional records containing Plaintiffs' information, Marriott will use those Plaintiff-specific record keys in a third round of searching for Plaintiffs' information in the NDS database. Marriott will also perform searches that Plaintiffs' experts have requested in writing (including follow-up searches provided in a timely manner). To the extent Marriott is unable to rehydrate the NDS database, or takes an excessive amount of time to rehydrate the NDS database, then Plaintiffs reserve all

rights to file appropriate motions concerning the NDS database and the parties' agreement that the database was to be searched, and Marriott reserves the right to oppose such motions.

26. If Marriott believes that searches Plaintiffs' experts request are overly burdensome or that they seek irrelevant information, the parties shall promptly meet and confer regarding the dispute. If the parties are unable to resolve the dispute, the parties shall arrange a video conference with Special Master Facciola where he will determine whether the searches are overly broad or seeks irrelevant information.

27. Once final searches are completed in the rehydrated NDS database, Marriott will produce the results to Plaintiffs in a reasonable format to allow searching and sorting (*e.g.*, XLSX or CSV format). The parties will further meet and confer to determine whether any additional searches are necessary based on the results of the search, and will contact Special Master Facciola if there are any unresolved disputes.

28. The parties agree to reserve all rights concerning the results of searching the Four Tables and the rehydrated NDS database, as well as their respective responses to pending discovery requests identified herein.

29. The parties also preserve their right to object to Special Master Facciola's Report and Recommendation (ECF No. 682) or his discovery rulings about whether a search is overly broad or irrelevant to the extent any dispute regarding the NDS database is not resolved by the foregoing.

Date: January 28, 2021

| **Marriott Defendants' Co-Lead Counsel for the Consumer Track** | **Plaintiffs' Co-lead Counsel for the Consumer Track** |
|---|---|
| */s/ Gilbert S. Keteltas* | */s/ Amy E. Keller* |

Daniel R. Warren (*pro hac vice*)
Lisa M. Ghannoum (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel: 216.621.0200
Fax: 216.696.0740
Email: dwarren@bakerlaw.com
Email: lghannoum@bakerlaw.com

Gilbert S. Keteltas (Bar No. 12679)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
Tel: 202.861.1530
Fax: 202.861.1783
Email: gketeltas@bakerlaw.com

Amy E. Keller (Bar No. 20816)
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
T 312.214.7900
akeller@dicellolevitt.com.com

James J. Pizzirusso (Bar No. 20817)
**HAUSFELD LLP**
1700 K Street NW Suite 650
Washington, DC 20006
T 202.540.7200
jpizzirusso@hausfeld.com

Andrew N. Friedman (Bar No. 14421)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
T 202-408-4600
afriedman@cohenmilstein.com

*Co-Lead Counsel, Consumer Plaintiffs Track*