UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

IN RE: MARRIOTT INTERNATIONAL, INC.

CUSTOMER SECURITY

BREACH LITIGATION

                              MDL NO. 19-MD-2879

                              (JUDGE GRIMM)

# REPORT AND RECOMMENDATION

## THIS DOCUMENT RELATES TO THE CONSUMER TRACT

### I. The nature of the controversy

The latest controversy between Marriott and Plaintiffs in the consumer track stems from Marriott's desire to have a forensic scientist scan the content of Plaintiffs' digital devices.

### II. The warring protocols

### Plaintiffs' Protocol

The controversy began with Marriott's Request for Production, which demanded the following:

1

> 3. The results of a forensic examination of the Plaintiff's devices that connect to the internet and contain electronically stored information, including a list of the indicators of compromise, to include malicious files, historical evidence of malicious files, and events logs of any antivirus software that may have removed the malware prior to examination, as identified via a forensic examination conducted in accordance with industry-standard best practices by an expert selected by Plaintiff, and using a methodology and program to be agreed upon by Plaintiff and Marriott.

Plaintiffs' Exhibit A.

Plaintiffs objected (Plaintiffs' Exhibit B). Plaintiffs explained that the parties negotiated a compromise "whereby an expert would perform a forensic examination of a random sample of Plaintiffs' devices to search for evidence of any attack and, if no such evidence was found, the parties would move on." Letter of March 2, 2021, at 1. Plaintiffs then proposed a protocol for the forensic examination as follows:

> Specifically, the protocol provided that the vendor would create a forensic image of the selected devices and run automated scans looking for evidence of malware and viruses that could result in data exfiltration (as Marriott's request specifically delineated). If such malware was present, a "root cause" analysis would then be

2

performed to determine when and how the malware was installed and whether it could have resulted in the exfiltration of sensitive information.

Id.

# Marriott's Protocol

## The intended examination by the forensic scientist

Marriott was dissatisfied and proposed a radically different approach. Under this proposed approach, the forensic scientist would not merely forensically examine the device to look for malware or viruses; it would examine the actual content on the device.

Marriott's demand led to further discussions, and under its most recent suggested protocol, requested the examination of:

> 1. Evidence of malware and other viruses. (Ex. A § III.5.a.)
>
> 2. Web browsing history and bookmarked pages. (Id. § III.5.b.)
>
> 3. Installed programs and applications. (Id. § III.5.c.)
>
> 4. Identification of the location of personal information on the devices, e.g., in emails, text messages, or text files. (Id. §§ III.5.d-h & l.)
>
> 5. Evidence of Plaintiffs' information security habits, such as wireless and Bluetooth connectivity and security. (Id. §§ III.5.i-k.)

3

Letter of March 8, 2021

The forensic scientist will conduct the examinations under paragraphs 2, 3, 4, and 5 as follows:

1. Web browsing history and bookmarked pages:

    I would recommend a remote-inspection approach where Plaintiffs' experts or other consultants would host a remotely accessible platform where I could remotely access and analyze web browsing activity on Plaintiffs' devices without the ability to save or download any information. Any data sought for production from Plaintiffs to Defendant would be marked in the course of this analysis and reviewed by Plaintiffs' counsel for privilege prior to production.

2. Installed programs and applications:

    Programs and applications can store, process, or transmit personal information and may have allowed personal information to be either publicly exposed or used for identity theft or fraud if those areas of the devices or the applications themselves were compromised. I understand Plaintiffs also object to providing a full listing of applications and programs installed on their devices. As such, I would recommend a similar remote-inspection approach.

3. Identification of the location of personal information on the devices, e.g., in emails, text messages, or text files.

4

c) Notes/Documents/Text Files

i. Documents in many different formats can contain personal information. If the location in which these documents were stored, or any other platform, system, or application that stored or transferred the documents was compromised, that could have allowed personal information to be either publicly exposed or used for identity theft or fraud.

f) Chats & Messages

i. Individuals often share personal information through chat and messaging platforms on their devices and may have allowed this sensitive information to be inadvertently publicly exposed if those areas of the devices or the messaging platforms themselves were compromised.

g) Email

i. Personal information in email accounts can be sent to other people; email accounts can be compromised, or locally stored email data can be stolen if a device storing the data is compromised. As such, any personal information stored in email on the devices or in accounts associated with the devices could have allowed personal information to be either publicly exposed or used for identity theft or fraud.

5.      Evidence of Plaintiffs' information security habits, such as wireless and Bluetooth connectivity and security.

> h) Wireless Device Connectivity
>
> i. Wireless devices used while traveling can be subject to interception or access by third parties when connecting to insecure or unofficial wireless networks. Connection to insecure or otherwise questionable wireless networks may have allowed personal information to be either publicly exposed or used for identity theft or fraud.
>
> i) Bluetooth Data Transfer
>
> i. Sharing or transferring information via Bluetooth can result in inadvertent disclosure of information to unknown third parties if the security of Bluetooth connections are not carefully verified before sending data. Even accidental sharing of information with an unknown third party can cause personal information to be either publicly exposed or used for identity theft or fraud.

Marriott's Exhibit B, Declaration of Kevin T. Poindexter.

There is now, therefore, a quantum difference between the parties. They have gone from a malware/virus scan to a new demand that Plaintiffs disclose to this scientist the content they have created on their electronic devices in the areas I have just specified.

## II. Recommendation

I recommend that the Court reject Marriott's proposed protocol and direct the parties to use the Plaintiffs' proposed protocol. I find that Marriott's protocol seeks inadmissible evidence and that even if that evidence is admissible, the demand for the information Marriott seeks is premature in certain respects and disproportionate in others.

## The evidence sought by Marriott's demand is inadmissible.

When I first saw Marriott's proposed protocol at a conference with counsel, I told Marriott's counsel that I was concerned that the demand was based on an incorrect premise. In my view, its theory of the admissibility of Plaintiffs' use of the internet was flawed. Marriott was trying to elicit evidence of Plaintiffs' character or a character trait to establish a propensity to be negligent in their use of the internet. Marriott would then argue that it was Plaintiffs' negligence that caused the breach.

Unfortunately, counsel for both parties have ignored the question that I find most troubling: Isn't Marriott attempting to find evidence that is not admissible based on the prohibition against Fed. R. Evid. 404(a)? The Rule provides:

> Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

Marriott is saying that Plaintiffs carelessly shared their email addresses with their friends in unencrypted text messages or emails or

7

provided their PPI[1] to providers of goods and services on the internet. From that use, Marriott will ask the jury to find that the Plaintiffs were equally careless and negligent in 2014–2018, and therefore the Plaintiffs, not Marriott, caused the data breach.

However, this argument claims that Plaintiffs have what the Rule calls "the character trait" of being negligent and careless, and therefore, they must have been just as negligent and careless in 2014–2018 and caused the breach. That, however, is precisely the inference the Rule prohibits.

Take a simple car accident case. Driver A and driver B collide at an intersection. A says B was negligent. At trial, A offers into evidence B's prior traffic violations for reckless driving to show that B is a terrible driver. Assume that Judge Grimm used that hypothetical in his Evidence class and asked a student whether the evidence of the violations for reckless driving is admissible. If the student said yes, you could offer the violations to show what kind of a driver B is, I am certain the judge would flunk him on the spot because that is exactly what the Rule prohibits. However, in my view, that is what Marriott is seeking to do by drawing a propensity from a party's prior behavior to prove that she acted in accordance with that trait.[2]

---

[1] I will use this acronym as it is defined in the Second Amended Stipulated Protective Order, E.C.F. No. 531, paragraph 1, (I). The lengthy definition is an appendix to this Report and Recommendation.

[2] Edward J. Imwinkelried, *An Evidentiary Paradox: Defending the Character Evidence Prohibition by Upholding a Non-Character Theory of Logical Relevance, The Doctrine of Chances*, The Social Science Research Network Electronic Paper Collection, http://ssrn.com/abstrract=795725 at 7. The chart on that page is particularly helpful.

8

# Even if the evidence was admissible, the demands made by Marriott's protocol are premature and disproportionate.

I also appreciate that Fed. R. Civ. P. 26(b)(1) provides that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." This does not mean that the court cannot consider the inadmissibility of evidence in determining whether the evidence is within the scope of discovery. Rather, the contrary is true.

The Advisory Committee notes accompanying the 2015 amendment of Fed. R. Civ. P. 26 indicated that the amendment was intended to replace the troubling language in an earlier version of the Rule that allowed the discovery of inadmissible evidence if its discovery was reasonably calculated to lead to admissible evidence. Adv. Comm. Notes to Rule 26 (2015). The Committee then stated,

> The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible remains available so long as it is otherwise within the scope of discovery.

Id.

F.R. Civ. P. 26(b)(1) then defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense" and proportional to the needs of the case. The latter determination requires

9

balancing the factors in that Rule, including "the importance of the discovery in resolving the issues." Obviously, inadmissible evidence cannot aid in the resolution of the issues in a case. It would be a strange civil procedure system that would find the discovery of evidence to be proportional to the needs of the case when that evidence will never see the evidentiary light.

Nevertheless, I am obliged to be comprehensive in this Report and allow for the possibility that Judge Grimm will disagree with my opinion that Marriott seeks inadmissible evidence. I will therefore assume the contrary—the evidence may be admissible—and indicate why Marriott's demands are premature and disproportionate.

## Relevance to causality

Marriott argues that Plaintiffs' present use of Plaintiffs' digital devices to interface with the internet may show that their profligate disclosure of their PPI to others on the internet may permit the jury to conclude that there was another cause for the breach that is the subject of this case. Letter of March 8, 2021, at 3 ("Moreover, the less securely and sensitively Plaintiffs treat their personal information—e.g., by not securing it on their electronic devices and by providing to other third parties—the less likely a juror is to believe Plaintiffs claim that Marriott caused fraud or the risk of fraud.")

First, as to causation, Marriott does not explain how Plaintiffs' use of their digital devices in, let us say, 2020 could bear on the cause of a breach that occurred no later than 2018. Thus, Marriott has to be once again suggesting that Plaintiffs' present use of the internet is evidence of how they used the internet in 2014–2018. In that case, we are back to the issue of the admissibility of character evidence.

10

In any event, there is, at most, a theoretical possibility that, for example, Plaintiffs' indicating their names and credit card numbers to buy something from an internet vendor or their visiting a particular website might have caused a subsequent breach. But that possibility cannot justify the extensive demand that Marriott makes to have a third party see (1) every website Plaintiffs visited and (2) every text message or email they sent that contained their PPI. As Justice Frankfurter once put it, albeit in a different context: "Surely, this is to burn the house to roast the pig." Butler v. Michigan, 353 U.S. 383 (1957).

I should note that, in this context of proportionality, courts have permitted such forensic screening, and Marriott indicates that Plaintiffs agree to its legitimacy here. Letter of March 8, 2021, at 5. No matter how those courts use the words "forensic screening," I take them to mean, in the context of this case, a scientific exploration to detect the presence of a virus, malware, or any other tool designed to capture data from a device without the knowledge of its owner. While that kind of examination may or may not prove causality in any given case, it is light years away from Marriott's proposal that a third party read, for example, every one of Plaintiffs' email and text messages to search for their disclosure of their PPI.

## Prematurity of the demand

Marriott also argues that it should be able to show that Plaintiffs' negligent use of the internet, thereby jeopardizing Plaintiffs' PPI, would contradict and weaken the claim that their PPI has a value. Thus, Marriott asks why the jury should award Plaintiffs' damages for the loss

of their PPI when Plaintiffs have shown so little interest in safeguarding it from being hacked and stolen. Letter of March 8, 2021, at 4.[3]

During our discovery conferences, Plaintiffs have explained that they will make the information bearing on the loss of their PPI value available to their experts. Those experts will, in turn, create a damages model supporting the claim that there is a monetary value to their PPI and that the breach has deprived them of that value.

Whether Plaintiffs' PPI has value and the related questions of what will or will not diminish that value will be addressed by Judge Grimm.

Judge Grimm has indicated that he intends to subject Plaintiffs' experts' opinions to rigorous analysis under Fed. R. Evid. 702 to the point of hiring a technical expert to guide him on the science underlying those opinions. His resolution of whether Plaintiffs' experts can present a damages model that attributes, for example, a value to Plaintiffs' PPI or their ability to use credit cards to make purchases[4] will clarify whether evidence of Plaintiffs' present use of their computers diminishing the value of their PPI is admissible. Moreover, if Marriott succeeds in having Judge Grimm reject the experts' damage model, the jury will never consider the value of Plaintiffs' PPI. The issue of whether Plaintiffs' behavior on the internet diminished the value of their PPI will be irrelevant if Judge Grimm rejects as unfounded Plaintiffs' theory that Plaintiffs' PPI has a monetary value.

---

[3] "In general, the more third parties to whom a Plaintiff provides personal information, the less likely a juror is to believe their claim that they consider this information highly sensitive or that they desire to protect the purported value of that information. And if Plaintiffs do nothing to secure the devices that contain their personal information, a reasonable juror could conclude that they do not, in fact, protect or value that information." Letter of March 8, 2021.

[4] See id. at 3.

Marriott would counter that Plaintiffs could prevail, and their need for the information would then ripen, but fact discovery will be closed. I appreciate that and would recommend that Judge Grimm revisit (or direct me to revisit) this issue after he has resolved whether he will permit expert testimony on the Plaintiffs' damage model. The alternative—permitting the extraordinary disclosure to a third person of every email or text message containing PPI the Plaintiffs wrote or every website they visited when the evidence yielded by that disclosure may never be relevant—makes no sense at all.

## Relevance to injunctive relief

Marriott, noting that Plaintiffs seek injunctive relief, argues:

> Plaintiffs also seek injunctive relief, arguing that an injunction is necessary to prevent them from injury due to further cyber-attacks. (See, e.g., id. ¶ 352.) Whether the Court issues an injunction should turn, in part, on the degree to which Plaintiffs protect their own information. If, for example, Plaintiffs do not protect their information, then an injunction would do nothing to prevent the harm they argue an injunction would protect against.

Letter of March 8, 2021, at 8.

The Fourth Circuit, quoting a Supreme Court decision, has identified the factors that bear on the award of injunctive relief as follows:

> Under the traditional equitable analysis, a plaintiff seeking injunctive relief must demonstrate:

13

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)

S.A.S. Inst., Inc. v. World Programming Ltd., 952 F.3d 513, 527 (4th Cir. 2020). See also Beacon Theatres v. Westover, 359 U.S. 500, 506–507 (U.S. 1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.")

Plaintiffs' use of their computers and their access is not one of these factors, nor does it relate to any of them.

First, Plaintiffs' negligent use of their devices does not render whatever damages they win an inadequate remedy for the harm done them by the breach. Additionally, the existence of those damages militates against a finding that they are threatened with irreparable harm. The Fourth Circuit has stated,

> The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974). A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Hughes*

14

*Network Sys., Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

Di Biase v. S.P.X. Corp., 872 F.3d 224, 230 (4th Cir. 2017)

 Moreover, the award of those damages means that Plaintiffs are not threatened with irreparable harm post-verdict. "[G]enerally 'irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate.'" Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994.) "Irreparable," after all, means "impossible to rectify or repair." *Compact Oxford English Dictionary* 592 (2d rev. ed 2003). The availability of the damages Plaintiffs may win indicates that the harm to them from another breach is not irreparable.

 Finally, there may be a profound public interest in how Marriott, one of the largest hoteliers in the world, manages the PPI that its guests make available to Marriott when they make a reservation or check into their room. Whether that interest is served by an injunction ordering Marriott to do or not do something to safeguard that PPI will require a careful, scientific evaluation of the state of Marriott's cybersecurity protection system when the injunction is sought. That Plaintiffs are not as careful as they should be in using the internet has nothing to do with the Marriott cybersecurity system's strength or weakness when Judge Grimm may have to determine whether the public interest in cybersecurity will be advanced or retarded by an injunction.

 Therefore, I conclude that Marriott's demand for the information has nothing to do with Plaintiffs' potential demand for injunctive relief, even if that demand was not premature.

## III Conclusion

For the reasons stated in this Report, I recommend that the forensic examination of Plaintiffs' devices be done in accordance with Plaintiffs' proposed protocol, Plaintiffs' Exhibit A. I further recommend that all Plaintiffs make their devices available as required by that protocol and that the forensic examinations be conducted promptly. Under the Plaintiffs' protocol, they only need to deliver the devices to the forensic scientist, and I see no unreasonable invasion of their privacy from a search for malware and viruses.

*John M. Facciola*

Dated: *March 15, 2021*