IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|   |   |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION | * * * MDL No.: 19-md-2879 |
|  | * JUDGE GRIMM |
| THIS DOCUMENT RELATES TO THE CONSUMER, FINANCIAL INSTITUTION, AND GOVERNMENT TRACKS | * |

\* \* \* \* \* \* \*   \* \* \* \* \* \* \*

**STIPULATED PROTOCOL AND ORDER FOR THE LOGGING OF PRIVILEGED ELECTRONICALLY STORED INFORMATION**

IT IS HEREBY RESOLVED, that the Court adopts the Parties' stipulation to streamline the production of a log of privileged ESI and to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1, and hereby ORDERS as follows:

**A.  Definitions**

1.  "Actions" shall mean the Consumer and Government track cases coordinated or consolidated for pre-trial proceedings in this multidistrict litigation captioned *In re Marriott International Customer Data Security Breach Litigation*, MDL No. 19-md-2879.

2.  "Counsel" shall mean attorneys who are employees of a Party acting in their capacity as attorneys (in contrast to acting for a business purpose) or attorneys who are not employees of a Party, but who are outside counsel retained to represent or advise a Party in the provision of legal advice.

3.  "Disclosing Party" shall mean a Party that produces information and/or discloses

information in a privilege log about information withheld from discovery on privilege grounds.

4. "Incident" shall mean the Starwood database security incident that is the subject of the Actions.

5. "Party" shall mean any party to the Actions, including all of its officers, directors, and employees.

6. "Privileged," unless otherwise qualified, shall mean information withheld from production (including redacted information) designated by the Disclosing Party as protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection.

7. "Receiving Party" shall mean a party that receives a production of documents and/or a privilege log from a Disclosing Party.

8. "Third Party Entity" shall mean any entity who is not a Party to the Actions and was served with a subpoena for production of documents in the Actions.

**B.   Scope**

1. The procedures outlined herein govern the format of privilege logs for all documents withheld, in whole or in part, from production based on attorney-client privilege, work-product doctrine, or any other applicable privilege or protection that the Parties agree is to be recognized or as otherwise ordered by the Court.

2. Any privilege log process, if challenged, shall be amended to include an attestation by an attorney to provide reasonable context as to the role of the person making the attestation, the applicability of the privilege, and how the review was conducted. An acceptable example is set forth below:

   a) "I personally reviewed the documents on this log and certify the documents are

entitled to privileged status."; OR

b) "I had supervisory responsibility over the collection and review of [party's] documents for the purpose of preparing and creating the privilege log. The privilege log was created via [insert method (e.g., manual, document-by-document review)] by attorneys at [law firm or vendor]. The documents listed on the privilege log were identified as privileged or protected based on this review."

3. Except as expressly stated, nothing in this order affects the Parties' discovery obligations under the Federal Rules of Civil Procedure, Local Rules, Stipulated Protocol and Order for Discovery of Electronically Stored Information (ECF No. 315; the "ESI Protocol"), Stipulation and Order No. 1 Covering Preservation of Electronically Stored Information (ECF No. 411), and Stipulated Protocol and Order for the Search and Culling of Electronically Stored Information (ECF No. 512). Any procedure set forth herein may be modified by written agreement of the Parties where such modification is deemed appropriate to facilitate the timely and economical exchange of data. Such modification shall be submitted to the Special Master for approval and submission to Judge Grimm for his approval.

4. The Parties agree to use reasonable efforts to comply with the procedures outlined below.

5. Should any Party subsequently determine it cannot in good faith proceed as required by this Protocol, the Parties will meet and confer in good faith to resolve any dispute before seeking Court intervention.

**C.    Privilege Log Exclusions**

1. As set forth in the ESI Protocol, the Parties previously agreed to certain categories of information for which a privilege log would not be required. This order further clarifies those categories; provided, however, that nothing in this order is intended to absolve the Parties' of their obligation to use their best efforts to comply in good-faith.

2. Accordingly, and except as otherwise provided for herein or agreed by the Parties, a privilege log under this Order is not required for the following categories of documents:

   (i) properly recognized work product created by Counsel or specifically at the direction of Counsel exclusively for litigation purposes or in the context of the provision of legal advice, after Marriott publicly announced the Incident on November 30, 2018 (including those items outlined in paragraph B.3. above);

   (ii) any privileged communications generated after Marriott publicly announced the Incident on November 30, 2018, subject to a proper assertion of attorney-client privilege and/or work-product protection where the communications were exchanged between a Party and its Counsel who were acting solely in their capacity as legal counsel and the communications solely concern the provision of legal advice (not including those items outlined in paragraph B.4.above);

   (iii) Documents previously provided to regulators that were produced in the Actions pursuant to Judge Grimm's June 12, 2019 Order (ECF No. 281), for which any corresponding privilege logs provided to regulators will be produced to Counsel for plaintiffs in these Actions within five (5) days of the production of the respective documents;

  (iv) Documents previously provided to regulators for which there is a corresponding privilege log that has not already been produced to Counsel for plaintiffs in these Actions, the corresponding log shall be produced within five (5) days of the Court entering this Order; and

  (v) Non-Privileged documents attached to privilege communications generated after Marriott publicly announced the Incident on November 30, 2018, for which Marriott will produce these documents as part of a family of documents, with a slip sheet being produced in place of the privileged parent document.

**D.**   **Clawbacks of Documents Previously Produced to Regulators**

Nothing in this Order shall impact Plaintiffs' ability to assert that claw backs of any documents previously produced to regulators are improper, that those materials are not privileged or protected, or that any privilege or protection has been waived.

Upon a showing of good cause, documents clawed back after the close of discovery can form the basis for additional discovery requests or other requested relief deemed appropriate by the Special Master or the Court.

The Parties reserve all rights to oppose any requested relief in relation to these clawed back documents.

As previously ordered in the Court's Second Stipulated Protective Order, ECF No. 552, and Discovery Order, ECF No. 335, in accordance with Fed. R. Evid. 502(d), except when a party intentionally waives attorney-client privilege or work product protection by disclosing such information to an adverse party as provided in Fed. R. Evid. 502(a), the disclosure of attorney-client privileged or work product protected information pursuant to a non-waiver agreement

entered into under Fed. R. Evid. 502(e) does not constitute a waiver in this proceeding, or in any other federal or state proceeding.

E.   **Privilege Log Format, Generally**

1. Consistent with the ESI Protocol and unless otherwise addressed herein, the following terms will govern the Parties' privilege logs in these Actions.

2. A party withholding documents based on one or more claims of Privilege will produce a privilege log in an active sortable, searchable Excel file on a document by document basis.

3. If a party provides multiple privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified. A final log will be produced 14 days prior to the close of fact discovery.

4. When there is a chain of privileged e-mails involving all of the same individuals (*i.e.*, no individuals are added or dropped at any point within the email thread), the Producing Party need only make one entry on the privilege log for the entire e-mail chain. In the event that individuals are added or dropped at a point within the email thread, at the first change in individuals, that and all subsequent emails in the chain must be individually logged.

5. All redacted documents must be logged. Redacted documents will also be produced with corresponding metadata fields noting that (i) the document is redacted and (ii) the reason for the redaction (privacy, privilege, work product, etc.).

6. Each privilege log shall be produced with a corresponding key identifying all lawyers on any documents by name and firm/entity of employment.

7. If any entries on a privilege log are challenged, the Receiving Party may request that the Special Master require that the challenged entries contain a separate representation by counsel as to whether the challenged entries on the log: (a) were prepared to assist in anticipated or pending litigation, and/or (b) contain information reflecting communications between (i) counsel or counsel's representatives and (ii) the client or the client's representatives, for the purpose of facilitating the rendition of legal services to the client.

8. Each privilege log shall contain sufficient detail to enable the Receiving Party to determine whether the asserted Privilege should be challenged.

9. If the receiving party has questions about the identity of a person listed on a privilege log entry, the receiving party may request additional information from the producing party. Lists of known attorneys and/or law firms shall be provided at the time of production of the privilege log.

**F. Document by Document Privilege Logs**

1. As set forth below (or as otherwise agreed), privilege logs shall include the following information:

    (i) Bates Number or Control ID (as applicable);

    (ii) Document Type;

    (iii) Date on face of Document;

    (iv) Date of creation;

    (v) Author;

    (vi) To;

    (vii) From;

    (viii) CC;

  (ix) BCC;

  (x) Subject;

  (xi) Custodian(s);

  (xii) FileName;

  (xiii) Redact or Entire to denote the extent to which the document is withheld in its entirety or redacted;

  (xiv) Privilege(s) asserted;

  (xv) Document description; and

  (xvi) Parent or Attachment (to identify the extent to which the document is a parent or an attachment).

  2. To the extent any of the foregoing fields can be compiled from the objective metadata corresponding to the document, such data may be used to populate the required fields.

**G. Challenge Procedure**

  1. Following the receipt of a privilege log, a Receiving Party may identify, in writing, the particular document or category of documents that it believes require further explanation. The Receiving Party shall explain in writing the need for additional information and state the specific document or documents (by document identifier or Bates number) or category or categories for which it seeks this information.

  2. Within five (5) calendar days of such an identification (unless another timeframe is agreed to by the Parties), the Disclosing Party must respond to the request by doing the following: provide additional information about the specific documents by the fifth day of identification, or hold a mutually-scheduled call to assert the basis for challenging the request within five (5) calendar days of identification (unless otherwise mutually agreed upon).

3. If the Disclosing Party challenges the Receiving Party's request for further information, the Parties shall follow the protocol by which discovery disputes are heard by Special Master Facciola that was entered by the Court on May 22, 2020 (ECF No. 580) provided, however, that the following deadlines shall be substituted for the deadlines specified in ECF No 580 as follows:

a. Within five (5) calendar days after a dispute regarding a specific discovery issue has become ripe (*i.e.*, after the parties have engaged in a sufficient meet-and-confer process), a party may present its discovery request and support for the same in a letter of up to five pages in length—including a description of how meet and confer efforts have been exhausted—by email to Special Master Facciola with copies to counsel.

b. Within five (5) calendar days of submission of a discovery-dispute letter to the Special Master, the opposing party shall respond with a letter of up to five pages in length to be emailed to Special Master Facciola with copies to counsel;

c. After the opposing party files its letter, Special Master Facciola will schedule a conference within 48 hours for the parties to discuss the discovery dispute and their respective positions with him;

d. If the discovery dispute is not resolved during the conference (or otherwise), Special Master Facciola will cause the initial letter, the opposition letter, and a Report and Recommendation on the dispute to be filed on the docket;

e. If no party files an objection within six (6) calendar days of the filing of the Report and Recommendation, the Report and Recommendation will be deemed adopted by the

Court, and the Producing Party shall de-designate similar documents within ten (10) days of the dispute being lodged on the docket;

 f. If a party objects to the Special Master's Report and Recommendation, it shall file on the Court's docket an Objection Letter (not to exceed 3 pages) no later than five (5) calendar days after the filing of the Report and Recommendation (with an Opposition to the Objection Letter due in five (5) calendar days).

4. The burden shall lie with the Disclosing Party to substantiate any claim of privilege as to any document or categories of documents.

5. The Special Master shall, upon a showing of good cause by a Receiving Party, permit sampling of any privilege log generated pursuant to this Order. At the discretion of the Special Master, such sampling shall be up to 10% of the total privilege log entries, with 50% of such sampling being the result of random selection and 50% of the challenging parties' choice.

 (i) The Special Master shall review the sampled documents and make a report and recommendation to the Court regarding the adequacy of any assertion(s) of privilege or work product protections. No samples may be withdrawn after selection.

 (ii) If more than 10% of the documents are deemed not privileged by the Special Master and adopted by the Court, the Special Master shall also recommend a curative measure (*e.g.*, new privilege logs, additional sampling, fines or costs (including the allocation of Special Master fees to the producing party), and/or individual document waiver or subject matter waiver).

6. Those documents found by the Special Master not to be privileged, and as to which the Disclosing Party does not file a challenge or objection, shall be de-designated and produced to

the Receiving Party within five (5) days. The producing party shall de-designate substantially similar documents based on the Special Master's decision within thirty (30) days.

7. To the extent the Disclosing Party disagrees with the Special Master's determination(s) and wishes to challenge the Special Master's determination(s), the following procedures shall apply:

(i) The Disclosing Party will file with the Court under seal *ex parte* any challenge or objection to the report of the Special Master, within three (3) calendar days of the filing of the Special Master's report, in the form of a letter not exceeding five (5) pages in length, explaining why any document or documents found by him not to be Privileged should nevertheless be protected by a Privilege.

(ii) The Disclosing Party shall serve a redacted copy of the objections on the Receiving Party, omitting only those portions that reveal allegedly Privileged information.

(iii) The Receiving Party may respond in the form of a letter not exceeding five (5) pages to the objections to be filed with the Court within three (3) calendar days of receiving the objecting Disclosing Party's challenge.

(iv) Thereafter, the Court will review such challenges and objections to the Special Master's report.

8. Any documents de-designated, either by agreement or by Order of the Court, shall, unless otherwise agreed or ordered by the Court, be produced to the Plaintiffs within five (5) calendar days of reaching agreement or receiving an Order of court for de-designation and production, but in no event later than 30 days before the end of fact discovery.

**IT IS SO ORDERED.**

Dated: _____         _____ 4/23/21

United States District Judge