UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MARRIOTT INTERNATIONAL, INC.
CUSTOMER SECURITY
BREACH LITIGATION

MDL NO. 19-MD-2879
(JUDGE GRIMM)

REPORT AND RECOMMENDATION

THIS DOCUMENT RELATES TO THE CONSUMER TRACT

I. Introduction

Marriott has produced a privilege log identifying the documents that it claims are privileged. Plaintiffs have taken exception to certain entries on the log and insist that the documents are not privileged. Plaintiffs have begun with a sample of twenty of the documents.

I reviewed the parties' submissions and held a hearing on the issues presented on May 26, 2021. Marriott has made available to me the twenty contested documents. The evening before the hearing, Marriott sent me eight additional documents.

I have now created the attached chart that indicates the entry and ID numbers of each of the documents. The entries on the chart that bear the letter "A" are the documents that Marriott made available to me the night before the hearing. Marriott has explained to me that the plaintiffs have not challenged the A documents, which transmitted the documents the plaintiffs do challenge. The A documents reveal who created, sent, or received the attachments. Therefore, the A documents are what Marriott calls "cover emails" to eight of the twenty documents

1

that the plaintiffs do challenge (Email from Lisa Ghannoum to Facciola, May 25, 2021).

I have also designated certain documents as *Crowdstrike*. In an earlier Report and Recommendation document, I held that the discovery of documents from Crowdstrike sought by the plaintiffs cannot be permitted now (ECF No. 634). Judge Grimm agreed and postponed the discovery of documents from Crowdstrike until Marriott's designation of its expert witnesses. I directed the parties to supplement their initial submissions on this issue at the hearing, and I expect that supplementation to be filed this week. Meanwhile, and in the interests of expedition, I will deal with the remaining documents in this Report and Recommendation.

Finally, the chart also indicates by use of the word "conceded" that Marriott has reconsidered its original claim of privilege and has now withdrawn its claim that these documents are privileged.

## II. The Hoffman Declaration

In two earlier Reports and Recommendations, ECF Nos. 634 at 1, and ECF No 707 at 1–2, I described how Craig Hoffman, a partner at BakerHostetler, explained how his firm was retained. Hoffman stated the following:

> Marriott engaged my law firm on September 10, 2018, to conduct an investigation regarding the Guardium event alert to enable BakerHostetler to provide advice to Marriott initially regarding its potential obligations under contractual obligations and laws like those I described above and in anticipation of payment demands, indemnification demands, and potential regulatory investigations and lawsuits.
>
> (Hoffman Declaration, para. 10)

2

Hoffman then described how Marriott and his law firm retained Crowdstrike, a cybersecurity firm, to assist his firm and Marriott in this investigation. Hoffman then explained how he worked with a Marriott Global Information Security (GIS) Team, consisting of Marriott employees:

> 20. Working with Marriott internal legal counsel and members of Marriott's GIS team, we developed an internal Marriott response team dedicated to supporting the investigation I was directing CrowdStrike to conduct. This dedicated team provided CrowdStrike with network access, access to devices, information about the Starwood network, and supported my iterative fact-finding requests of the investigation.
>
> 21. I managed and directed this investigation by asking questions, defining objectives, and developing investigation priorities and actions through phone calls and in-person meetings.
>
> (Hoffman Declaration, para. 20 and 21)

He then stated the following:

> 26. I advised the Marriott employees who were part of the dedicated internal investigation team to treat all communications with, and work product from, CrowdStrike as confidential and not to discuss any of it with individuals outside of the group. Often this group had to contact Marriott or Accenture employees who were not aware of the investigation to obtain answers or request that investigation-related tasks be carried out, and I provided scenario-specific instructions to the Marriott dedicated internal investigation team regarding those communications to preserve the confidentiality of the communications regarding the investigation. In scenarios such as these, the documents reflect Marriott or Accenture communicating or carrying out instructions that originated with me.

3

(Hoffman Declaration, para 26)

### III. The Controversy

Documents that clients create and transmit to lawyers for their advice or services are privileged (ECF No. 707, quoting *Flo Pac, LLC. v. Nutech*, LLC No. WDQ 09-510, 2010 WL 51225447 at * 6 (D. Md. December 9, 2010)(Grimm, J.). Because Marriott is a corporation, the documents created by its employees for transmittal to the corporation's counsel are equally protected, provided that (1) the communications are made by the corporate employees to counsel who was providing legal services to the corporation at the direction of their employer; (2) the employees knew that they were aiding their employer by communicating with counsel; (3) the communications concerned matters within the scope of the employees' duties; and (4) the employees knew that the communications were confidential and they were thereafter maintained in confidence *Upjohn v. United States*, 449 U.S. 383, 394–395 (1981).

That communications between Hoffman and Marriott employees are covered by the attorney client privilege is, therefore, a given. Understandably, plaintiffs' counsel conceded that the privilege therefore denied them any communication by Marriott employees to or from Hoffman. They insisted, however, that whatever the employees attached to their communications was not privileged. Under this theory, only what the client's employees said to Hoffman or what Hoffman said to them is protected. The attachments transmitted by the documents are not. Thus, in her email to me on May 27, 2021, plaintiffs' counsel (Joann Militano) stated, "We are only challenging the documents that were attached that we believe existed independently of whether Craig Hoffman asked for them and that they don't automatically become privileged just because they were sent to an attorney" (Email of Joann Militano to Facciola, May 27, 2021).

4

## IV. Analysis and Resolution

As indicated in Militano's email to me and during the hearing, the plaintiffs' theory is that information does not become privileged merely because it is transmitted to a lawyer. I agree. "[D]ocuments do not become privileged merely because they are communicated to an attorney." (David M. Greenwald, Erin R. Schrantz, and Michele L. Slachetka, *Testimonial Privileges*, section 1:19 at 76 (2019–2020). The authors quote the following statement from *United States v. Fisher* to illustrate their point. The Supreme Court noted, "This Court and the lower courts have . . . uniformly held that preexisting documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." (*United States v. Fisher*, 425 U.S. 403–404).

By the same token, the notes prepared by an incarcerated client of issues to be discussed with an attorney and later discussed with counsel were protected by the attorney client privilege. Greenwald, Schrantz, and Slachetka, *supra*, at 76, n. 4, citing *United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006). It would follow then that the lawyer could resist the subpoena for those notes correctly if her client gave her the notes for safekeeping because they were privileged. In the *DeFonte* case, the Second Circuit stated that two other cases had reached this conclusion:

> Central to the finding of privilege in both decisions, it appears, is the fact that the notes were communicated by the client to the attorney. Such a requirement comports with the language of the rule—i.e., that there be a communication by the client—and makes sense from a policy perspective. A rule that recognizes a privilege for any writing made with an eye toward legal representation would be too broad. A rule that allows no privilege at all

5

for such records would discourage clients from taking the reasonable step of preparing an outline to assist in a conversation with their attorney.

(*United States v. DeFonte*, 441 F.3d at 95–96)

This, therefore, rejects the plaintiffs' claim that whatever the client gave the lawyer that is not a direct communication to her from the client lost its protection because the client did not utter the words in the document to the lawyer. On the contrary, a document transmitted by the client maintains its protection if the client transmits the document intending that the lawyer consider it in providing legal services or legal advice to the client. One court stated the following:

> A client cannot shield a document from discovery by including it in a request for legal advice. *Fisher v. United States*, 425 U.S. 403–04; see also *Evergreen Trading, LLC ex rel Nussdorf*, 80 Fed. Cl. 122, 138 (2007). The fact that a client included a document in a request for legal advice is privileged, however, because it partially reveals the substance of the client's privileged communication to an attorney.

*Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 99 (2013)

Similarly, another court has stated the following:

> The copy of the document itself is also privileged, despite the fact that it was written by a third party. Although the original document was not a communication between attorney and client, Popp's act of sending the preexisting document to Coffey as the means of providing legal advice constitutes a privileged communication. The document cannot be disclosed

6

without revealing the substance of his legal advice to her, and therefore, the entire document is privileged.

*Robinson v. Tex. Auto. Dealers Ass'n*, 214 F. R. D. 432, 447 (E.D. Tex. 2003))

Therefore, it follows that the statements that the attachments to the emails sent to or from Hoffman are not protected are incorrect. Documents attached to emails to or from Hoffman do not lose their privileged status because they are attachments to those emails. Nor is their privileged nature forfeited because, as attachments, they are not in the text of the email sent to Hoffman if the authors of the emails intended to bring the information in the attachments to Hoffman's attention or to answer a question he posed. Stated simply, the attorney client privilege protects a "communication." In this case, the email with its attachment sent to or from Hoffman to or by his client's employees is the privileged "communication."

I have reviewed each of the emails to or from Hoffman. Each of them meets that criterion—they bring the information to Hoffman's attention or answer one of his questions. They are therefore privileged. I, accordingly, reject the plaintiffs' objections to the following documents identified in my chart:

641
640
643
642
6777
6776
6801
6800

That leaves four others: 9617, 9620, 9622, and 10135. Unlike the others, Marriott has not provided emails for these to show that they were transmitted to or

7

from Hoffman. Nevertheless, Marriott quotes my Report and Recommendation, ECF No. 718, adopted by Judge Grimm, ECF No 720, for the proposition that the attorney client privilege protects communications between Marriott employees who were part of the Marriott internal investigation team, whether or not they were transmitted to Hoffman. Letter of Gilbert S. Keteltas at 1. I was careful, however, not to say that. Instead, I stated the following:

> As these cases illustrate, *sine qua non* to the existence of the privilege is that there must be a communication between privileged persons in confidence for the purpose of seeking, obtaining, or providing legal assistance to the client. *Flo Pac*, 2010 WL 5125447 at * 4
>
> The emails at issue are certainly not communications between a lawyer and counsel. They are communications among employees of the client. They are simply not attorney–client communications at all. Indeed, Hoffman does not and could not say the emails were transmitted to him to secure legal advice or his services.
>
> To accept Marriott's claim in this situation, one would have to say that communications by one employee of a client to another are protected by the attorney client privilege, although those communications are not in turn transmitted to a lawyer. This would expand the attorney client privilege to include everything a client's employees say to one another in fulfilling a task that the lawyer believes will benefit the client, even though the employee's communications *inter se* are never brought to the lawyer's attention. Such an experiential expansion of the attorney client privilege has nothing to do with its purpose to encourage clients to speak candidly to their attorneys. *Upjohn v. United States*, 449 U.S. 383, 390 1981). And it is in the teeth of the requirement that the privilege is narrowly construed. *Flo Pac*, 2010 WL 5125447 at *4.

8

(ECF No 707 at 7–8)

I therefore conclude that the following documents identified in my chart are not privileged:

9617
9620
9622
101325

I shall review the Crowdstrike documents after the parties file their supplements. Meanwhile, I recommend that the court either sustain or overrule the claim of privilege, as indicated in this report and the attached chart.

*John M. Facciola*

June 2, 2021

| Entry No | ID Number | Marriott position | Marriott Crowdstrike | Recommendation a… |
|---|---|---|---|---|
| 308 | 000545699 | conceded | | |
| 320 | 000545725 | conceded | | |
| 640A | 000415709 | | Cover letter | Not challenged |
| 641 | 000415710 | | | Sustained |
| 641A | 000415710 | | Cover letter | Not challenged |
| 642A | 000415741 | | Cover letter | Not challenged |
| 643 | 000415742 | | | Sustained |
| 643A | 000415742 | | Cover letter | Not challenged |
| 777 | 00006504 | conceded | | |
| 805 | 00016488 | conceded | | |
| 1503 | 000063123 | conceded | | |
| 1689 | 00010135 | | Crowdstrike | |
| 1702 | 00003163 | | Crowdstrike | |
| 6584 | 000190901 | conceded | | |
| 6776A | 000415294 | | Cover letter | not challenged |
| 6777 | 000415925 | | | Sustained |
| 6777A | 000415295 | | Cover letter | not challenged |
| 6800A | 000418251 | | Cover letter | not challenged |
| 6801 | 000418252 | | | Sustained |
| 6801A | 000418252 | | Cover letter | not challenged |
| 9494 | 00000015 | | Crowdstrike | |
| 9495 | 00000016 | | Crowdstrike | |
| 9496 | 00000017 | | Crowdstrike | |
| 9497 | 00000018 | | Crowdstrike | |
| 9617 | 00184074 | | | Overruled |
| 9620 | 00185091 | | | Overruled |
| 9622 | 00185096 | | | Overruled |
| 10135 | 00950581 | | | Overruled |