**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

IN RE: MARRIOTT INTERNATIONAL,      *
INC., CUSTOMER DATA SECURITY
BREACH LITIGATION                             *          MDL No. 19-md-2879

*DERIVATIVE ACTIONS*                          *

*     *     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM OPINION**

This case is a derivative action filed by John P. Moore on behalf of Marriott International, Inc. related to a data breach of the Marriott-owned Starwood Hotels and Resorts, Inc.[1]  It is part of the Multidistrict Litigation ("MDL") pending before me concerning the data breach.  Plaintiff brings claims against sixteen of Marriott's corporate officers and directors for violations of the federal securities laws and for corporate mismanagement under the laws of Delaware.  Pending is Defendants' motion to dismiss.[2]  This motion is granted.  Plaintiff's federal securities claims are dismissed for failure to adequately plead the ownership and demand requirements for a derivative action under Federal Rule of Civil Procedure 23.1 and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  These claims are dismissed with prejudice because Plaintiff has already amended his Complaint twice and further amendment would be futile.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining Delaware state law claims, which are dismissed without prejudice.

---

[1] Second Amended Consolidated Complaint ("Complaint"), ECF No. 624.  References to "¶ __" throughout are citations to the Complaint.

[2] The motion is fully briefed.  *See* ECF Nos. 658 ("Def. Mot."), 689 ("Pl. Opp."), 708 ("Def. Reply").  A hearing is not necessary.  *See* Loc. R. 105.6 (D. Md. 2018).

**BACKGROUND**

This MDL is proceeding before me in five separate tracks, comprised of class action claims brought by Consumer Plaintiffs (the "Consumer Track"), claims brought by the City of Chicago (the "Government Track"), class action claims brought by the Bank of Louisiana (the "Financial Institutions Track"), class action claims brought by a Marriott shareholder (the "Securities Track"), and the instant claims, brought by a Marriott shareholder as a derivative action (the "Derivative Track"). The background to these cases is described in prior memorandum opinions in this MDL and need not be repeated here. *See, e.g.*, ECF No. 540 ("Consumer Track Motion to Dismiss Memorandum Opinion"), published at *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020); ECF No. 809 ("Securities Track Motion to Dismiss Memorandum Opinion"). The relevant facts as alleged in the instant complaint are as follows.

Plaintiff John P. Moore alleges that "he is, and was at relevant times, a shareholder of Marriott." ¶ 23. As an alleged shareholder, he brings this suit as a derivative action on behalf of nominal defendant Marriott. Marriott is one of the largest hospitality companies in the world, and operates, franchises, and licenses hotel, residential, and timeshare properties worldwide. ¶¶ 25, 125. Marriott is incorporated in Delaware and headquartered in Bethesda, Maryland. ¶ 25.

In addition to nominal defendant Marriott, Plaintiff brings claims against thirteen members of Marriott's Board of Directors: J.W. Marriott, Jr., Mary K. Bush, Bruce W. Duncan, Deborah Marriott Harrison, Frederick A. Henderson, Eric Hippeau, Lawrence W. Kellner, Debra L. Lee, Aylwin B. Lewis, George Muñoz, Steven S. Reinemund, Susan C. Schwab, and Arne M. Sorenson. ¶¶ 26–45. Collectively, these board members are referred to as the "Director Defendants."

Ms. Henderson, Ms. Bush, Mr. Lewis, Mr. Kellner, and Mr. Muñoz served on Marriott's audit committee, and are referred to collectively as the "Audit Committee Defendants."

Mr. Sorenson served as Marriott's President and Chief Executive Officer since 2012, until his recent death in 2021.  ¶ 34.  In addition to Mr. Sorenson, Plaintiff brings claims against three other Marriott officers: Kathleen Oberg, Marriott's Chief Financial Officer and Executive Vice President since 2016; Bao Giang Val Bauduin, Marriott's Chief Accounting Officer since 2014; and Bruce Hoffmeister, Marriott's Chief Information Officer since 2011, though Defendants state that he has recently retired.  ¶¶ 46–49.  Collectively, Mr. Sorenson, Ms. Oberg, Mr. Bauduin, and Mr. Hoffmeister are referred to as the "Officer Defendants."

Plaintiff's allegations center on Marriott's acquisition of Starwood Hotels and Resorts Worldwide and a subsequently identified breach of Starwood's guest reservations database.  On November 16, 2015, Marriott announced that it would acquire Starwood.  ¶ 117.  Before the merger closed, Marriott conducted due diligence on Starwood, including on its IT systems.  ¶ 6.  Marriott continually updated investors on the progress of the Starwood merger in its SEC filings and other public statements.  *Id.*  These statements form the basis of Plaintiff's federal securities claims discussed below.  The merger closed on September 23, 2016.  ¶ 4.

On September 8, 2018, Marriott's information technology team was notified by Accenture, a third-party information technology contractor, of an alert from a security tool called IBM Guardium that had occurred the previous day.  ¶ 132.  Marriott brought in a third-party investigator two days later.  ¶ 133.  On September 17, 2018, the third-party investigator found malware that could be used to access or monitor a computer.  *Id.*  Mr. Sorenson informed the Board the next day.  *Id.*  On November 13, 2018, the third-party investigator discovered that two encrypted files had been deleted.  ¶ 135.  On November 19, 2018, the investigator discovered that the files contained customers' personal information.  *Id.* On November 30, 2018, Marriott publicly announced the data breach.  ¶ 137.

Marriott entered into a contract with Verizon to conduct a forensic investigation of the incident.  ¶ 205.  Verizon conducted the investigation and authored a report on its findings, known as the Payment Card Industry Forensic Investigator ("PFI") Report.  The PFI Report did not bring good news.  It found that Starwood's systems were compromised for a period of more than four years, starting as early as July 28, 2014.  ¶ 209.  Therefore, the data breach was occurring for approximately two years before *and* after Marriott's acquisition of Starwood.  The PFI Report's findings include that Starwood's system (1) allowed for insecure remote access; (2) lacked or had insufficient access/query and firewall logging; (3) lacked monitoring and logging of remote access; and (4) Starwood inadvertently stored payment account numbers on systems and in databases that were not designated for the storage of sensitive payment account numbers.  ¶ 208.  The data breach compromised the personal information of up to 500 million people, including names, payment card data, passport information, traveling companions, and mailing addresses.  ¶ 409.

On February 26, 2019, Plaintiff filed a derivative action in the Southern District of New York.  *See Moore v. Marriott*, No. 19-1776 (S.D.N.Y. Feb. 26, 2019).  It was consolidated with a derivative action filed by Mr. Edmund Alves and transferred to this Court for pretrial proceedings as part of the MDL. [3]  Plaintiff brings claims for violation of the Securities Exchange Act of 1934 ("Exchange Act") Section 10(b) and SEC Rule 10b-5, Exchange Act Section 20(a), and Exchange Act Section 14(a) and SEC Rule 14a-9 (the "federal securities claims").  Plaintiff also brings claims under Delaware state law for breach of fiduciary duty, waste of corporate assets, and unjust enrichment (the "Delaware state law claims").  Pending is Defendants' motion to dismiss under

---

[3] On November 12, 2020, Mr. Alves voluntarily dismissed his claims without prejudice.  ECF No. 687.

Rules 12(b)(1), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure and under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in two ways: either by a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (alteration in original). Here Defendants bring a facial challenge to Plaintiff's Article III standing. Def. Mot. at 9–10. In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, plaintiff must establish "facial

plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)).

Where allegations in a complaint sound in fraud, the plaintiff also must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud." This requires that the plaintiff allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted).

For Plaintiff's allegations of securities fraud under Exchange Act Section 10(b) and Rule 10b-5 and Exchange Act 14(a) and Rule 14a-9, he must also face the higher burden imposed by Congress in the PSLRA, 15 U.S.C. § 78u-4. For each alleged material misrepresentation or omission, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, for each alleged misrepresentation or omission, the complaint must "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If a complaint fails to meet these requirements, it must be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

Finally, to maintain a derivative action, Plaintiff must comply with Federal Rule of Civil Procedure 23.1. This Rule applies "when one or more shareholders" bring a derivative action. Fed. R. Civ. P. 23.1(a). Under Rule 23.1(b)(3), a Plaintiff must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." This Rule reflects the "demand requirement" to bring a derivative action. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991). Under Rule 23.1(b)(1), Plaintiff must allege that he "was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." This Rule reflects the "continuous ownership" and "contemporaneous ownership" requirements to bring a derivative action. *See Innovative Therapies, Inc. v. Meents*, No. CIV.A. DKC 12-3309, 2013 WL 2919983, at *3 n.1 (D. Md. June 12, 2013).

## DISCUSSION

### I.    Subject Matter Jurisdiction

"Where state and federal claims asserted in a single action derive from a 'common nucleus of operative fact,' *and the federal claim is substantial in the jurisdictional sense*, a federal court has the constitutional power to decide the pendent claims." *O'Neil v. Marriott Corp.*, 538 F. Supp. 1026, 1034 (D. Md. 1982) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371 (1978); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1965)) (emphasis added). Plaintiff alleges that this Court has jurisdiction over its federal securities claims under 28 U.S.C. § 1331 and that this Court should exercise supplemental jurisdiction over its Delaware state law claims

under 28 U.S.C. § 1367.  Defendant moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction.  Def. Mot. at 9–10. Specifically, Defendant argues that Plaintiff's federal claims are too insubstantial to confer subject matter jurisdiction.  *Id.*

Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is denied. As explained below, Plaintiff's federal securities claims ultimately fail for failure to meet the requirements of a derivative suit imposed by Federal Rule of Civil Procedure 23.1 and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  But they are not so insubstantial that the Court lacks jurisdiction to hear them.  This Court considered nearly identical federal securities claims in the Securities Track of this MDL.  *See* Securities Track Motion to Dismiss Memorandum Opinion.  Therefore, this Court has subject matter jurisdiction over Plaintiff's federal securities claims.  However, for the reasons discussed below, I will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## II.   Federal Securities Claims

Plaintiff alleges claims derivatively on behalf of Marriott under Exchange Act Section 10(b) and Rule 10b-5, Exchange Act Section 20(a), and Exchange Act Section 14(a) and Rule 14a-9.  Defendants move to dismiss these claims, arguing that Plaintiff failed to adequately allege the requirements to maintain a derivative action under Federal Rule of Civil Procedure 23.1 and failed to state a claim.

### a.   Ownership Requirements of Federal Rule of Civil Procedure 23.1

Federal Rule of Civil Procedure 23.1 applies "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P.

21.1(a).  Rule 23.1(b) requires a plaintiff in a derivative suit to "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law."  This rule reflects both a "contemporaneous ownership" and "continuous ownership" requirement.  *See Innovative Therapies, Inc. v. Meents*, No. CIV.A. DKC 12-3309, 2013 WL 2919983, at *3 n.1 (D. Md. June 12, 2013).  The "contemporaneous ownership" requirement is based on Rule 23.1(b)(1)'s condition that the plaintiff be "'a shareholder or member at the time of the transaction complained of.'"  *Id.* (quoting Fed. R. Civ. P. 23.1).  The "continuous ownership" requirement is based on Rule 23.1's applicability to derivative actions brought by "one or more *shareholders*."  *Id.* (emphasis added).

Failure to allege contemporaneous and continuous ownership under Rule 23.1 is a question of prudential standing that does not implicate the Court's subject matter jurisdiction.  In *Sopkin v. Mendelson*, the Fourth Circuit affirmed the district court's dismissal of a derivative action under Federal Rule of Civil Procedure 23.1 for the plaintiff's lack of standing.  746 F. App'x 157, 161 (4th Cir. 2018).  In doing so, the Fourth Circuit cited to opinions from the Second and Seventh Circuits that explained dismissal under Rule 23.1 is a question of prudential standing, and not Article III standing, that does not implicate a court's subject matter jurisdiction.  *Id.* (citing *Doermer v. Callen*, 847 F.3d 522, 526 n.1 (7th Cir. 2017) and *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015)).  In *Doermer v. Callen*, the Seventh Circuit explained: "[W]e agree with the district court that [the plaintiff] lacked standing to sue derivatively [under Fed. R. Civ. P. 23.1].  However, the problem is one of prudential rather than constitutional standing, so it did not actually affect subject matter jurisdiction."  847 F.3d at 526 n.1 (7th Cir. 2017).  Likewise, in *In re Facebook, Inc., Initial Public Offering Derivative Litig.*, the Second Circuit stated, "Failure to satisfy the contemporaneous ownership requirement of Rule

23.1 does not, of course, raise a jurisdictional issue under Article III. Rather, it means that the putative derivative plaintiff does not have standing to represent the interests of the nominal defendant in a derivative capacity." 797 F.3d 148, 156 (2d Cir. 2015). *See also In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1237 (9th Cir. 2008) ("Federal Rule of Civil Procedure 23.1's pleading requirement does not directly implicate subject matter jurisdiction[.]"). I follow the reasoning of the Second, Seventh, and Ninth Circuits, and the Fourth Circuit's citation to *Doermer* and *In re Facebook*, in concluding that a failure to adequately plead contemporaneous and continuous ownership under Rule 23.1 is a question of prudential standing that does not implicate the Court's subject matter jurisdiction.

To satisfy the continuous and contemporaneous ownership requirements, Plaintiff alleges only that he "is, and was at relevant times, a shareholder of Marriott." ¶ 23. Defendants argue that this is a conclusory allegation that fails to meet the pleading requirements of Rule 23.1. In his brief in opposition, Plaintiff cites to *Galdi v. Jones*, 141 F.2d 984 (2d Cir. 1944) for the proposition that a plaintiff is only required to recite the language of Rule 23.1 and allege that he or she "was a shareholder or member at the time of transaction complained of" to meet its pleading requirements. Def. Opp. at 34. Plaintiff also attaches a declaration to his brief in opposition, which states that he "first purchased shares of common stock in Marriott International, Inc. on June 11, 2018 and ha[s] continuously held those same shares to the present date." ECF No. 698-3. Defendant argues that Plaintiff should not be permitted to amend his Complaint through his brief in opposition to the motion to dismiss. Further, Defendant argues that even if Plaintiff's declaration were considered, it would confirm that all of his claims based on pre-June 11, 2018 conduct – which comprise the vast majority of the claims – must be dismissed because Plaintiff was not a shareholder at the time. Plaintiff argues that he has standing to bring all of his claims, even those based on pre-June 11,

2018 conduct, under the "continuing wrong" exception to the contemporaneous ownership requirement.

The case of *In re Force Prot., Inc. Derivative Litig.*, No. 2:08-1904-CWH, 2010 WL 11537806, at *6 (D.S.C. Aug. 6, 2010) from one of our sister districts within the Fourth Circuit is directly on point.  In that case, the plaintiff brought a derivative action against Force Protection, Inc. and certain of its officers and directors.  Like here, the plaintiff in *In re Force Protection* alleged that he "is, and at all times relevant to this action, was a shareholder" of Force Protection, and that he held his shares "continuously during the relevant period."  Defendants moved to dismiss, arguing that these conclusory allegations failed to meet the pleading requirements of Rule 23.1.  As in this case, the plaintiff pointed to *Galdi v. Jones*, which found that merely reciting the language of Rule 23.1 was sufficient to survive a motion to dismiss.  Reviewing subsequent caselaw, the court rejected this argument, finding that the plaintiff's allegations were conclusory and insufficient to meet the pleading requirements of Rule 23.1.  The court explained:

> The Court declines to accept Galbraith's invitation to apply *Galdi* in this case, for two reasons.  First, *Galdi* appears to be an anomaly—Force Protection points to several cases, and the Court has found others, in which derivative complaints have been dismissed for failing to allege the specific dates on which the plaintiff acquired shares in a company.  *See In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007); *see also DiLorenzo v. Norton*, No. 07–144, 2009 U.S. Dist. LEXIS 66862, at * 11 (D.D.C. Aug. 3, 2009) ("Plaintiff alleges that he 'is and at relevant times was' a shareholder . . . .  Such a thin allegation, however, is insufficiently particular to satisfy Rule 23.1.  Without a specific allegation as to the date on which plaintiff became a shareholder, it is unknown whether plaintiff was a shareholder at the time of *each set* of challenged stock-options grants, which took place over seven years."); *Belova v. Sharp*, No. 07–299, 2008 U.S. Dist. LEXIS 19880, at *9 (D. Ore. Mar, 13, 2008) ("In this case, the shareholders do not allege with sufficient particularity that they owned . . . shares during the relevant time periods.  The Complaint states they owned . . . stock at 'times relevant.'  This general allegation is not sufficiently particular . . . ."); *In re Maxim Integrated Products, Inc., Derivative Litig.*, No. 06–03344, 2007 U.S. Dist. LEXIS 70763, at *12 (N.D. Cal. July 25, 2007) ("Here, Plaintiffs merely allege that they owned Maxim stock 'at all relevant times.'  This statement does not allege continuous ownership or ownership during the transactions forming the basis of the complaint;

> similarly conclusory allegations have been rejected as insufficient for purposes
> of Rule 23.1."); *In re Computer Sciences Corp. Derivative Litig.*, No. 06–05288,
> 2007 U.S. Dist. LEXIS 25414, at *48 (C.D. Cal. March 27, 2007) ("[T]he
> Complaint only generally alleges that each Plaintiff 'is, and was during the relevant
> period,' or 'is, and was at all times relevant to,' a shareholder of CSC stock. This
> general allegation is insufficient to allege contemporaneous ownership during the
> period in which the questioned transactions occurred, and is, in fact, inaccurate by
> Plaintiffs' own varying admissions."). Second, the Court believes it highly
> doubtful that the holding in *Galdi*—that a mere allegation tracking the language
> of Rule 23.1(b)(1) is enough to plead contemporaneous ownership—is compatible
> with the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937
> (2009).

*In re Force Prot., Inc. Derivative Litig.*, 2010 WL 11537806, at *4. I agree with this analysis and find that Plaintiff's allegations regarding his contemporaneous ownership of Marriott stock are insufficient to maintain a derivative action under Rule 23.1. In particular, I emphasize that the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—decided by the Supreme Court decades after (and therefore far more authoritative than) *Galdi*—made clear that a pleading that offers "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). That is precisely what Plaintiff offers here to meet Rule 23.1's contemporaneous ownership requirement. Therefore, Plaintiff's federal securities claims are dismissed for lack of prudential standing to sue in a derivative capacity for failure to adequately plead contemporaneous ownership under Federal Rule of Civil Procedure 23.1.

Plaintiff's declaration attached to his brief in opposition to Defendants' motion to dismiss stating that he purchased shares of Marriott International, Inc. on June 11, 2018 and has held them continuously since that time does not save his claims. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) (citing *Car*

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984);   *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011)).   Plaintiff is on his third amended complaint, and it was drafted with the benefit of knowing in advance what the Defendants viewed as the deficiencies in his earlier pleadings.   *See* ECF No. 427 (Defendants' pre-motion letter explaining arguments for dismissal).   He may not amend further through his opposition to Defendants' motion to dismiss.

Moreover, Plaintiff's declaration that he purchased shares on June 11, 2018 underscores why the allegations in his Complaint that he held shares "at relevant times" is deficient.   Plaintiff alleges that the "Relevant Period" for his claims is November 16, 2015 to the present.   ¶ 1.   Plaintiff brings claims for allegedly unlawful statements by Defendants between November 16, 2015 and June 11, 2018.   *See* ¶¶ 245–408, 577–604.   Therefore, Plaintiff's declaration shows that he did not hold Marriott shares for almost the entirety of the "relevant period" and demonstrates why this type of conclusory allegation is deficient to satisfy Rule 23.1.   *In re Force Prot., Inc. Derivative Litig.*, 2010 WL 11537806, at *5 (finding allegations of stock ownership during only portion of relevant period made for the first time in opposition to motion to dismiss "troubling" and "demonstrate[ing] the wisdom" of the court's decision finding pleadings inadequate).

And even if I were to consider Plaintiff's declaration, he would still lack prudential standing for his pre-June 11, 2018 derivative claims.   Plaintiff argues that his June 11, 2018 stock purchase allows him to bring derivative claims for Defendants' conduct reaching back to 2015 based on the "continuing wrong" exception to the contemporaneous ownership requirement.   But this argument is unavailing.

The "continuing wrong" exception applies in limited circumstances when a series of events constitutes a single transaction.   *Blasband v. Rales*, 971 F.2d 1034, 1046 (3d Cir. 1992).   The

Fourth Circuit does not appear to have endorsed the continuing wrong exception. *See McPheely v. Adams*, No. 6:13-CV-02660-GRA, 2013 WL 6581850, at *3 (D.S.C. Dec. 16, 2013) ("This court is unable to find any support in this Circuit that the continuing wrong exception is applicable.")[4] However, "[t]he 'prevailing view' from other Courts of Appeals is to construe the exception narrowly." *Id.* (citing 7C Wright, *et al.*, *Federal Practice and Procedure Civil* § 1828 (3d ed. 2007); *Kaliski v. Bacot*, 320 F.3d 291, 298 (2d Cir.2003); *Blasband v. Rales*, 971 F.2d at 1046; *Herald Co. v. Seawell,* 472 F.2d 1081, 1098 (10th Cir. 1972); *Weinhaus v. Gale*, 237 F.2d 197, 200 (7th Cir. 1956); *Henis v. Compania Agricola de Guatemala*, 210 F.2d 950 (3d Cir. 1954); *Silverstein v. Knief*, 843 F. Supp. 2d 441 (S.D.N.Y. 2012); *Sprando v. Hart*, No. 3:10–cv–415–ECR–VPC, 2011 WL 3055242 (D. Nev. July 22, 2011)).  As the Third Circuit explained, "because every wrongful transaction may be viewed as a continuing wrong to the corporation until remedied, [] the 'test to be applied in such situations concerns whether the wrong complained of is in actuality a continuing one or is one which has been consummated. . . . [W]hat must be decided is when the specific acts of alleged wrongdoing occur, and not when their effect is felt.'" *Blasband v. Rales*, 971 F.2d at 1046 (citing *Newkirk v. W.J. Rainey, Inc.*, 76 A.2d 121, 124 (Del Ch. 1950) and quoting *Schreiber v. Bryan*, 396 A.2d 512, 516 (Del. Ch. 1978)).

For example, in *Maclary v. Pleasant Hills, Inc.*, the Delaware Chancery Court found that "the transaction complained of" was not complete until shares in dispute were both authorized and issued.  109 A.2d 830, 833–34 (Del. Ch. 1954).  In that case, the nominal defendant corporation

---

[4] I have found only one case in which the Fourth Circuit discussed an allegation of a continuing wrong in the derivative suit context.  *See Lawson v. Krock*, 17 Fed. R. Serv. 2d 700, at *1 (4th Cir. 1973).  In that case, the plaintiff alleged an illegal stock option scheme.  The Fourth Circuit affirmed the district court's dismissal of the claims and did not allow for damages under the continuing wrong exception based on conduct that was completed prior to the plaintiff's acquisition of shares.  *Id.*

authorized shares to the individual defendants in 1940.  The share certificates, however, were not issued until 1943.  In the three years in between, the plaintiffs became shareholders and filed suit challenging the grant of shares to the individual defendants.  Under those circumstances, the court held that "where the issuance of stock is authorized and where certificates are presumably to be issued therefor at once, and that is the very action under attack, the transaction is not complete for purposes of applying 8 Del. C. § 327[5] until the certificates are issued."  *Id.*

Here Plaintiff brings federal securities claims for making false and misleading statements and omissions related to Marriott's cybersecurity and the acquisition and integration of Starwood.  *See* ¶¶ 245–408, 577–604.  Each of the statements in question is a "specific act[] of alleged wrongdoing" that I must evaluate individually.  *Blasband v. Rales*, 971 F.2d at 1046; *see* sections II.b.i.1–3 below.  It is not akin to the type of transaction in *Maclary* that started at one point in time but was not complete until another.

Plaintiff quotes *Desimone v. Barrows* for the proposition that a "plaintiff who acquires his stock after a particular transaction has begun but before it [was] completed" has standing to pursue a derivative claim.  924 A.2d 908, 925 (Del. Ch. 2007); Pl. Opp. at 25.  Plaintiff omits the first part of the quoted sentence, however, which states, "This court's written decisions, though, do suggest that the doctrine is a narrow one that typically applies only in unusual situations . . . ."  *Desimone v. Barrows*, 924 A.2d at 924–25.  The court then continues:

> What is clear is that it is not, as the plaintiff would seek to characterize it, a sweeping exception to the contemporaneous ownership requirement of § 327. Importantly, the continuing wrong doctrine does not bestow standing upon a stockholder to challenge transactions occurring before he bought his stock simply

---

[5] This Delaware statute is nearly identical to Federal Rule of Civil Procedure 23.1(b)(1) and states, "In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law."  8 Del. C. § 327.

> because they are similar or related to transactions or other conduct that occurred later.  This court has traditionally been skeptical about the type of continuing wrong allegations made here and has refused to blind itself to the fact that a plaintiff was actually challenging a discrete series of individual transactions that pre-dated his stock ownership.

*Desimone v. Barrows*, 924 A.2d at 925.  In that case, the plaintiff challenged a series of option grants to the company's officers and directors that were allegedly subject to a backdating scheme over several years.  The plaintiff was not a shareholder at the time most of the options were granted.  Even though the option grants were the subject of one alleged scheme, the court found that each of the grants that occurred after he became a stockholder "can be easily segmented from any wrongs that occurred before" and held the continuing wrong exception did not apply.  *Id.* at 926.  The same is true here.  Each of the allegedly false or misleading statements and omissions that form the basis of Plaintiff's federal securities claims can easily be segmented by the date they were made, before and after Plaintiff states that he acquired Marriott stock.  *Cf. In re Nanthealth, Inc. S'holder Litig.*, No. CV 2018-0302-AGB, 2020 WL 211065, at *4 (Del. Ch. Jan. 14, 2020) (dismissing claims for false statements made before plaintiff was stock owner because they "easily can be segmented because each allegedly misleading statement during this period was made at different times with distinct contents" even if they were related).  Therefore, even if I considered Plaintiff's declaration, the continuing wrong exception would not confer prudential standing for Plaintiff's pre-July 11, 2018 federal securities claims.

Plaintiff conceivably could establish prudential standing for his post-July 11, 2018 federal securities claims if I allowed Plaintiff leave to amend his Complaint yet again.  However, such amendment would be futile because Plaintiff has failed to meet the demand requirements of Federal Rule of Civil Procedure 23.1 and failed to state a claim for his federal securities claims, as explained below.

### b.  Demand Requirement of Federal Rule of Civil Procedure 23.1

Federal Rule of Civil Procedure 23.1(b)(3) requires a plaintiff in a derivative action to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  This Rule reflects the "demand requirement" to bring a derivative action.  As the Supreme Court explained:

> The purpose of the demand requirement is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'"  *Daily Income Fund, Inc. v. Fox*, [464 U.S. 523, 533 (1984)], quoting *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463 (1903).  Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate "suit on behalf of his corporation in disregard of the directors' wishes."  R. Clark, Corporate Law § 15.2, p. 640 (1986).

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. at 96.  "Thus, the demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders.'"  *Id.* at 101 (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. at 530).

Here it is undisputed that Plaintiff did not make a litigation demand prior to filing this suit.  However, demand may be excused if doing so would be futile under criteria set by the relevant jurisdiction.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. at 101–02.  Because Marriott is incorporated under the laws of Delaware, Delaware law governs the internal affairs of the corporation and the criteria for assessing demand futility.  *See id.* at 108–09 (holding that a court must apply the demand futility exception for a derivative action as defined by the law of the state of incorporation); *see also In re Cap. One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 791 n.22 (E.D. Va. 2013).

Delaware Courts use the demand futility test described in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) in cases where, as here, a plaintiff alleges a violation of a board's oversight duties. *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).[6]   Under the *Rales v. Blasband* test, a demand is excused as futile if a court determines that "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could [not] have properly exercised its independent and disinterested business judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d at 934.  At the time Plaintiff's original complaint was filed, Marriott's Board consisted of the thirteen Director Defendants listed above.  ¶¶ 26–45.  Therefore, Plaintiff must show that "a majority" of the Director Defendants were not independent or disinterested. *Rales v. Blasband*, 634 A.2d at 934.

Plaintiff alleges that he only needs to allege that a majority of eleven members of the board were not independent or disinterested.  ¶ 490.  This is because at the time Plaintiff filed his Second Amended Consolidated Complaint, Marriott's board had only eleven members: the thirteen Director Defendants listed above with the exceptions of Ms. Bush, Mr. Duncan, and Mr. Reinemund, and with the addition of non-party Margaret M. McCarthy.  *Id*.  However, the relevant time for making a demand was the filing of the original complaint, as long as subsequent amendments "did not significantly alter the claims alleged."  *In re LendingClub Corp. Derivative Litig.*, No. CV 12984-VCM, 2019 WL 5678578, at *8 n.43 (Del. Ch. Oct. 31, 2019).  A "claim" for these purposes "does not refer simply to legal theories of liability but refers broadly to the acts and transactions alleged in the original complaint."  *Braddock v. Zimmerman*, 906 A.2d 776, 785–86 (Del. 2006).  That is the case here.  Plaintiff's original and Second Amended Consolidated

---

[6] When a plaintiff challenges a board decision, Delaware Courts apply the test in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).  *See Wood v. Baum*, 953 A.2d at 140 (explaining distinction between *Rales* and *Aronson* tests for demand futility)

Complaint both bring derivative claims on behalf of nominal defendant Marriott related to the Marriott data breach.  Both bring causes of action for breach of fiduciary duty, corporate waste, and false statements in violation of Exchange Act Section 10(b) and Rule 10b-5.  Although Plaintiff added causes of action under Exchange Act Section 14(a) and Rule 14a-9, Exchange Act Section 20(a), and for unjust enrichment under Delaware law, the nature of the claims did not change.  *Cf.* 19-cv-830-PWG, ECF No. 1 (Original Complaint) *with* 19-md-2879-PWG, ECF No. 624 (Second Amended Consolidated Complaint).  Therefore, Plaintiff must provide particularized factual allegations that a majority of the thirteen-member board comprised of the Director Defendants could not exercise their disinterested and independent business judgment in responding to a demand.  Nonetheless, for the reasons discussed herein, Plaintiff fails to allege demand futility for either the thirteen- or eleven-member board.

### i.  Director Defendants' Disinterest

"A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders.  Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."  *Rales v. Blasband*, 634 A.2d at 936 (internal citations omitted); *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006) ("Disinterested 'means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'") (quoting *Aronson v. Lewis*, 473 A.2d at 812).

Here Plaintiff alleges that a majority of the Director Defendants could not exercise their disinterested business judgment in considering a demand because of the liability they face for the

federal securities claims against them in this case and in the Securities Track.  ¶¶ 491–95.  But "the mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors."  *Aronson v. Lewis*, 473 A.2d at 815.  Rather, the alleged conduct must be "so egregious on its face" that it "cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists."  *Id.; see also In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *1 (Del. Ch. June 26, 2015), *aff'd*, 133 A.3d 971 (Del. 2016) ("If a mere allegation of liability on the part of the directors were enough to demonstrate a disabling self interest, conclusory allegations of breach of director duty would eat the rule whole, in a single bite.").  "'The analysis of whether a majority of the board faces a substantial likelihood of personal liability is conducted on a claim-by-claim basis.'"  *Wilkin on behalf of Orexigen Therapeutics, Inc. v. Narachi*, No. CV 12412-VCMR, 2018 WL 1100372, at *10 (Del. Ch. Feb. 28, 2018) (quoting *Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. of Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at *6 (Del. Ch. Aug. 1, 2016)) (internal quotation marks omitted).  Therefore, for each of the federal securities claims, I must evaluate whether the alleged wrongdoings, based on particular factual allegations taken as true, are so egregious on their face that there is a reasonable doubt a majority of the Director Defendants face a substantial likelihood of liability and therefore could not exercise their independent business judgment in responding to a demand.[7]  For the reasons explained below for each of Plaintiff's federal securities claims, Plaintiff fails to meet this burden.

---

[7] Plaintiff allege that the Director Defendants are not disinterested with respect to the Delaware state law claims as well.  But because demand futility is considered on a claim-by-claim basis, and I am not exercising supplemental jurisdiction over the Delaware state law claims, I need not address those allegations.

### 1.  Exchange Act Section 10(b) and Rule 10b-5 Claims

Plaintiff alleges that Defendants made 73 false or misleading statements or omissions in violation of Exchange Act Section 10(b) and Rule 10b-5.  *See* ¶¶ 245–397; 577–83.  "The purpose of the Exchange Act and its accompanying regulations is to ensure that companies disclose the information necessary for investors to make informed investment decisions."  *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014).  Section 10(b) of the Exchange Act prohibits the use of "any manipulative or deceptive device or contrivance" in connection with the sale of a security in violation of SEC rules.  15 U.S.C. § 78j(b).  Rule 10b–5 makes it unlawful, in connection with the sale of a security:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b–5.  Purchasers of a security have an implied right of action to bring a claim for violations of Section 10(b) and Rule 10b-5.  *See Stoneridge Inv. Partners v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d at 884.  To prevail in a § 10(b) action, a private plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners v. Scientific–Atlanta, Inc.*, 552 U.S. at 157; *see also Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d at 884.  Plaintiff's Section 10(b) and Rule 10b-5 claims are subject to the heightened pleading requirements of the PSLRA.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313–14 (2007).

Plaintiff's Section 10(b) allegations are almost entirely copied and pasted from the complaint in the Securities Track.  *Cf.* ¶¶ 245–397 *with* Securities Track Third Amended Consolidated Complaint, ECF No. 609, ¶¶ 442–590.  Plaintiff alleges that the same 73 statements were false or misleading for the same reasons as alleged by the plaintiff in the Securities Track.  *See id.*  I discussed these allegations at length in a Memorandum Opinion filed contemporaneously with this one granting Marriott's motion to dismiss the Securities complaint.  *See* Securities Track Motion to Dismiss Memorandum Opinion.  Specifically, I explained that the plaintiff in the Securities Track failed to adequately allege a material representation or omission, scienter, and loss causation for any of the 73 statements.  *Id.*  In this case, the allegations are the same and Plaintiff presents no new arguments that I have not already addressed in the Securities Track Motion to Dismiss Memorandum Opinion.  Therefore, I incorporate my discussion of the Section 10(b) and Rule 10b-5 claims in the Securities Track Motion to Dismiss Memorandum Opinion here and conclude that for the same reasons, Plaintiff in this case has failed to adequately allege violations of Section 10(b) and Rule 10b-5.  For a cross reference of the Section 10(b) and Rule 10-b5 allegations in the Derivative and Securities Tracks and the reasons for dismissal as explained in the Securities Track Motion to Dismiss Memorandum Opinion, see Appendix A.

Because the Plaintiff here and in the Securities Track failed to allege a violation of Section 10(b) and Rule 10b-5, it follows that Plaintiff has not created a reasonable doubt that a majority of the Director Defendants face a substantial likelihood of liability for these claims.  *Aronson v. Lewis*, 473 A.2d at 815.  Therefore, Plaintiff fails to show that a majority of the Director Defendants would not be disinterested in responding to a demand for these claims.

## 2.   Exchange Act Section 20(a) Claims

Plaintiff alleges secondary liability under Exchange Act Section 20(a) against the Officer Defendants and the Audit Committee Defendants.  ¶¶ 584–92.  "A 'claim for controlling person liability under section 20(a) must be based upon a primary violation of the securities laws.'"  *Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 596 (D. Md. 2017) (*quoting Svezzese v. Duratek, Inc.*, 67 Fed. Appx. 169, 174 (4th Cir. 2003)).  Here the alleged predicate violations for Section 20(a) liability are the alleged violations of Exchange Act Section 10(b) and Rule 10b-5 discussed above.  ¶ 586.  Because Plaintiff fails to state a claim under Exchange Act Section 10(b) and Rule 10b-5, his claim under Exchange Act Section 20(a) fails as well.  Therefore, Plaintiff has not created a reasonable doubt that a majority of the Director Defendants face a substantial likelihood of liability for these claims and fails to show that a majority of the Director Defendants would not be disinterested in responding to a demand for the Section 20(a) claims.

## 3.   Exchange Act Section 14(a) and Rule 14a-9 Claims

Plaintiff alleges the Director Defendants violated Exchange Act Section 14(a) and SEC Rule 14a-9 because Marriott's proxy statements filed on April 5, 2017 (the "2017 Proxy Statement") and April 4, 2018 (the "2018 Proxy Statement") contained material misstatements and omissions.  ¶¶ 398, 403; 593–604.  Section 14(a) makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security" in contravention of SEC rules.  15 U.S.C. § 78n(a)(1).  SEC Rule 14a-9 makes it unlawful for any proxy statement to contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to

the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." 17 C.F.R. § 240.14a–9(a). As the Supreme Court explained, "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964).

The 2017 and 2018 Proxy Statements were filed before Plaintiff asserts that he became a Marriott shareholder. Therefore, as discussed above, Plaintiff lacks prudential standing to file a derivative action based on these statements. For this reason alone, Plaintiff fails to plead a reasonable doubt that the Director Defendants face a substantial likelihood of liability for the Section 14(a) claims.

Plaintiff also fails to plead a reasonable doubt that the Director Defendants face a substantial likelihood of liability under Section 14(a) and Rule 14a-9 based on the substance of the allegations. To state a claim based on Section 14(a) and Rule 14a-9, a plaintiff must plead "(1) the proxy statement contained a material misrepresentation or omission (2) that caused the plaintiff injury and that (3) the proxy solicitation was an essential link in the accomplishment of the transaction." *Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x 857, 861 (4th Cir. 2003). The second and third elements are referred to as "loss causation" and "transaction causation," respectively. *See In re AGNC Inv. Corp.*, No. CV TDC-16-3215, 2018 WL 3239476, at *3 (D. Md. July 3, 2018). Section 14(a) claims are subject to the heightened pleading requirements of the PSLRA. *See Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x at 861. Defendants argue that Plaintiff fails to adequately allege a material misrepresentation or omission, transaction causation, and scienter. These arguments are discussed in turn.

### a.   Material Misstatement or Omission

Plaintiff alleges that Marriott's 2017 and 2018 Proxy Statements contained material misstatements and omissions.  ¶¶ 398–408; 593–604.  For these claims, the PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

Plaintiff alleges that both the 2017 and 2018 Proxy Statements reference Marriott's Code of Ethics, stating:

> The Company has long maintained and enforced a Code of Ethics that applies to all Marriott associates, including our Chairman of the Board, Chief Executive Officer, Chief Financial Officer and Principal Accounting Officer and to each member of the Board. The Code of Ethics is encompassed in our Business Conduct Guide, which is available in the Investor Relations section of our website (www.marriott.com/investor) by clicking on "Corporate Governance" and then "Documents & Charters." We will post on that website any future changes or amendments to our Code of Ethics, and any waiver of our Code of Ethics that applies to our Chairman of the Board, any of our executive officers, or a member of our Board within four business days following the date of the amendment or waiver.

¶¶ 399, 404.  Plaintiff alleges that this statement was false and misleading because Marriott did not follow its Code of Ethics as "Defendants conducted little, if any, oversight of the Company's engagement in Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise Defendants' violations of law, failed to maintain the accuracy of Company records and reports, comply with laws and regulations, protect customer information and the Company's reputation, or conduct business in an honest and ethical manner."  ¶¶ 400, 405. In addition, Plaintiff alleges that multiple Defendants violated the Code of Ethics "by selling shares of Company stock while in possession of material, non-public information about the Company." *Id.*

Plaintiff's allegations fail to identify a false or misleading statement. No part of the statement above from the 2017 and 2018 Proxy Statements says anything about due diligence, Marriott's records and reports, complying with laws and regulations, protecting customer information, or selling company stock. While Marriott's Code of Ethics includes statements regarding protecting customer information, accurate reporting, and acting with integrity, Plaintiff fails to allege that any of these statements, or the Proxy Statements' reference to the Code of Ethics, were false or misleading.

The Code of Ethics states, "***Information concerning customers and associates must be safeguarded*** and should be used only for legitimate business purposes and should not be shared, even with Marriott, except on a need-to-know basis." ¶ 60 (emphasis in Complaint). It also states, "There are only limited circumstances in which the private information of associates or customers may be disclosed outside of Marriott. . . . ***This private information includes any Personally Identifiable Information (PII), which can be associated with or traced to an individual*** . . . ." ¶ 68 (italics in original, bold in Complaint). Regarding recordkeeping, the Code of Ethics states, "Be honest and act with integrity in all communications . . . in every record created and in all data entered, from financial information and personal resumés to quality and safety reports." ¶ 62. Regarding "fair and ethical dealing," the Code of Ethics states, "***Never gain unfair advantage by misleading, misrepresenting or deceiving. We do not participate in false or deceptive advertising of our products, services or our company***." ¶ 64 (emphasis in Complaint).

Plaintiff's allegations are essentially that Defendants violated Marriott's Code of Ethics (and therefore the Proxy Statements were false or misleading) because the Defendants did not disclose their own mismanagement. However, Section 14(a) and Rule 14a-9 do not themselves impose a freestanding disclosure requirement, particularly regarding unadjudicated allegations.

*See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 322–23 (S.D.N.Y. 2007) ("[C]ourts in this and other circuits have held that there is no per se rule, under either section 14(a) or Rule 14a–9, requiring the disclosure mere mismanagement or uncharged, unadjudicated criminal activity.") (collecting cases); *see also Kahn v. Wien*, 842 F.Supp. 667, 678 (E.D.N.Y. 1994) ("The Second Circuit has held that the disclosure of unproven allegations is not required in proxy solicitations.") *aff'd* 41 F.3d 1501 (2d Cir. 1994); *In re Browning–Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 369–70 (S.D. Tex. 1993) ("The governing cases hold that 'mismanagement' is not actionable under section 14(a)") (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 444 n.16 (5th Cir. 1983), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994)).[8]   Rather, consistent with the language of Rule 14a-9, "corporations are obligated to disclose facts necessary to ensure that their statements are not misleading" and "[t]his duty applies to the disclosure of [uncharged, unadjudicated conduct] to the same extent it applies to the disclosure of any other material information."  *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 536 F. Supp. 2d at 323 (internal quotation marks omitted).

Further, courts have rejected state law claims for corporate mismanagement brought under the guise of Section 14(a).  *See Stricklin v. Ferland*, 1998 WL 966023, at *5 ("Plaintiff's claims regarding failure to disclose poor oversight, reckless management [], and others similar to them are an attempt to 'dress up' state law claims of corporate mismanagement or breach of fiduciary duty in a 'Section 14(a) suit of clothes.'") (quoting *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d

---

[8] Some courts have found that while allegations of failure to disclose mismanagement are not actionable under Section 14(a), claims of self-dealing are.  *See Stricklin v. Ferland*, No. CIV.A. 98-3279, 1998 WL 966023, at *5 (E.D. Pa. Nov. 10, 1998).  Plaintiff does not allege self-dealing, but asserts only that the Defendants were negligent in the performance of their duties for the Section 14(a) claims.  *See* ¶ 398 n.18, 403 n.19, 594.  Therefore, this exception for self-dealing conduct does not apply.

Cir. 1979); *Behrmann v. Brandt*, No. CV 19-772-RGA, 2020 WL 4432536, at *18 (D. Del. July 31, 2020), *report and recommendation adopted*, No. CV 19-772-RGA, 2020 WL 5752389 (D. Del. Sept. 25, 2020) ("The law is well-established that bootstrapping a federal securities claim to a cause of action for breach of fiduciary duty is not permissible.").

Here Plaintiff's allegations that Defendants failed to conduct adequate oversight, maintain accurate records and reports, protect customer information and Marriott's reputation, follow all laws and regulations, and conduct business in an honest manner in violation of its Code of Ethics are all allegations of unadjudicated corporate mismanagement.  Defendants had no duty under Section 14(a) or Rule 14a-9 to disclose such unadjudicated claims in the 2017 and 2018 Proxy Statements, and Plaintiff is not permitted to "dress up" state law breach of fiduciary duty claims under Section 14(a).

Regarding the allegations of selling company stock, Plaintiff alleges no details as to which Defendants allegedly sold Marriott stock, when the stock was sold, or how those Defendants violated Marriott's Code of Ethics or any other law or regulation.  Plaintiff's assertions are merely conclusory allegations, falling far short of the particularized allegations required by the PSLRA.

The only other language in the 2017 and 2018 Proxy Statements that Plaintiff identifies as false and misleading is the following statement in the 2018 Proxy Statement regarding performance bonuses:

> ***Taking into consideration*** the unique nature of the Starwood combination and ***the Company's success in maintaining strong quality and brand control over our legacy Marriott operations while maintaining the brand reputation and managing the successful integration of the Starwood operations, and the management team's success in building stockholder value through this transformative merger, the [Compensation and Policy] Committee approved a one-time supplemental cash bonus for 2017 in the amount of $500,000 to each of the NEOs and the Board approved a one-time supplemental cash bonus for 2017 in the amount of $1,000,000 for Mr. Sorenson.*** The purpose of the bonus is ***to reward senior management for its outstanding performance in 2017 regarding***

> ***the ongoing seamless integration of Starwood*** while promoting strong
> performance in the Company's legacy operations.  In particular, the Board cited
> strong performance across a broad array of criteria, including high levels of
> associate engagement, human capital development, completion of cobranded credit
> card deals, successful asset sales, work toward linking and combining loyalty
> programs, and progress toward improved leverage in the competitive marketplace.
> . . . The supplemental cash bonus amounts were determined by the Committee with
> the objective that the award would result in compensation for each of the NEOs that
> is well-aligned with the Company's pay-for-performance philosophy and
> exceptionally strong 2017 performance.

¶ 407 (emphasis in Complaint).  Plaintiff alleges that these bonuses "were unwarranted and

unjustified as a result of the breaches of fiduciary duty in evaluating and approving the merger."

*Id.*  Again, these are allegations that Defendants failed to disclose unadjudicated claims of

mismanagement, which are insufficient to state a Section 14(a) claim.

Similarly, Plaintiff alleges that both the 2017 and 2018 Proxy Statements were false and

misleading regarding executive compensation because they used "pay-for-performance" elements

including stock awards based on earning per share, which were artificially inflated by Defendants'

allegedly false and misleading statements.  ¶¶ 401, 406, 598; *see also* ¶¶ 427–53 (alleging that

Marriott's repurchases of its stock were at artificially inflated prices because of Defendants' false

statements).   But for the reasons discussed herein, Plaintiff fails to adequately allege that

Defendants made any false or misleading statements.  Therefore, the allegations that Marriott's

stock was artificially inflated because of the false statements necessarily fails.

To the extent that Plaintiff alleges that the characterization of the integration as

"outstanding" and "seamless," are false or misleading, these are unactionable statements of

opinion.  ¶ 599.  Generally, statements of opinion are not actionable.  *Longman v. Food Lion, Inc.*,

197 F.3d 675, 683 (4th Cir. 1999).  An opinion can be false if (1) the speaker does not actually

hold the stated belief; (2) a statement begins with an opinion word like "I believe" but contains an

embedded statement of fact that is false; or (3) the statement omits material facts about the

speaker's "inquiry into or knowledge concerning a statement of opinion" and those facts "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184–85, 189 (2015). Regarding this third category, "whether an omission makes an expression of opinion misleading always depends on context." *Id.* at 190. Likewise, Rule 14a-9 requires consideration of whether a statement is false or misleading "at the time and in the light of the circumstances under which it is made." 17 C.F.R. § 240.14a–9(a). "An opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose some fact cutting the other way" as " [r]easonable investors understand that opinions sometimes rest on a weight of competing facts." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. at 189–90. Here, the 2018 Proxy Statement was made on April 4, 2018, five months *before* Plaintiff alleges that Marriott was notified of the data breach by its third-party information technology contractor Accenture on September 8, 2018. ¶ 132. Thus, Plaintiff fails to allege facts to plausibly suggest that as of April 4, 2018, the Defendants believed the characterization of the integration as "outstanding" or "seamless" in the 2018 Proxy Statement was false or that it would otherwise be misleading to reasonable investors.

Plaintiff also alleges that the 2017 and 2018 Proxy Statements "failed to disclose that: (1) the Company did not maintain customer's [sic] personal data on a secure system; (2) unknown actors had gained unauthorized access to Starwood's network since 2014; (3) Marriott's due diligence in the Merger failed to discover the Data Breach; (4) the Data Breach caused personal information of up to 500 million guests to be exposed; (5) the Company failed to maintain internal controls; and (6) as a result of the foregoing the Company's public statements were materially false and misleading at all relevant times." ¶¶ 402, 408, 597. But at the time of the Proxy Statements, Defendants did not know that the data breach occurred, and therefore they could not disclose any

information about it.  *Cf. In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1225 (N.D. Ga. 2019) ("[T]he Defendants were under no duty to disclose the existence of the Data Breach before they knew it had occurred.").  Plaintiff's remaining allegations that the Defendants did not maintain customers' personal data on a secure system and failed to maintain internal controls are once again allegations that the Defendants failed to disclose unadjudicated claims of mismanagement.  Section 14(a) and Rule 14a-9 do not create independent requirements to disclose this information, and Plaintiff fails to allege that any portion of the Proxy Statements were rendered misleading by these alleged omissions.  *See Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, No. CV CCB-17-132, 2018 WL 1535496, at *4 (D. Md. Mar. 28, 2018), *aff'd*, 918 F.3d 312 (4th Cir. 2019) (**"**A proxy statement is not unlawful under Rule 14a-9 simply because it makes inaccurate statements or omits information; it is unlawful only if, by what it states or omits, it contains *misleading* information."); *In re The Home Depot, Inc. S'holder Derivative Litig.*, 223 F. Supp. 3d 1317, 1330–31 (N.D. Ga. 2016) ("By not showing specific statements in the proxy that were rendered misleading or false, the Plaintiffs have failed to demonstrate a duty on the part of the Board to disclose the information, as well as failing to satisfy the requirements of the PSLRA.")

Finally, in his Opposition to the Defendants' motion to dismiss, Plaintiff argues that the 2017 and 2018 Proxy Statements were false and misleading because they incorporated Marriott's 2016 and 2017 10-Ks, respectively, which, in turn, contained false and misleading statements. Def. Opp. at 33.  Plaintiff also argues that Marriott made false claims regarding Marriott's stock repurchases.  *Id.* at 34.  Plaintiff's complaint fails to make these allegations with respect to his Section 14(a) claims, and he cannot amend his complaint through his brief in opposition to Defendants' motion to dismiss.  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d at 184–85.  Moreover, for the reasons discussed above and in the

31

Securities Track Motion to Dismiss Memorandum Opinion, Plaintiff fails to allege that the 2016 and 2017 10-Ks contained any false or misleading statements.  *See* Appendix A.  Therefore, Plaintiff fails to allege that the 2017 or 2018 Proxy Statements were false, misleading, or contained material omissions.  It follows that Plaintiff fails to create a reasonable doubt that a majority of the Director Defendants face a substantial likelihood of liability for the Section 14(a) claims.

### b.  Transaction Causation

Plaintiff's Section 14(a) claims fail for a second reason.  To meet the transaction causation prong of a Section 14(a) claim, Plaintiff must allege facts to provide a reasonable inference that "the proxy solicitation was an essential link in the accomplishment of the transaction."  *Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x at 861.  This "requires a showing that the challenged proxy statement induced shareholders to directly authorize the specific transaction that resulted in the economic loss."  *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3–4 (citing *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796–97 (11th Cir. 2010); *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)).

For example, in *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992), the plaintiff alleged a violation of Section 14(a) based on proxy solicitations that omitted several instances of alleged corporate mismanagement and potential litigation.  The district court dismissed the claims for failure to adequately allege transaction causation.  The Third Circuit affirmed, explaining:

> [A]s the district court observed, this is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement. The pecuniary harm to General Electric that Levit alleges resulted from the appellees' purported mismanagement. Yet the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought. Thus, the

appellees' re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses.

*Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d at 933.

Here Plaintiff alleges that the allegedly false and misleading statements in the 2017 and 2018 Proxy Statements led to the reelection of the Director Defendants. ¶¶ 600–02. This fails to satisfy the transaction causation requirement because even assuming the Defendant Directors were responsible for corporate mismanagement related to the data breach, that was an indirect consequence of their reelection, and not a transaction approved by shareholders via the Proxy Statements. *Cf. Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d at 933; *see also In re The Home Depot, Inc. S'holder Derivative Litig.*, 223 F. Supp. 3d at 1331 ("The Plaintiffs make no statement showing that the security breaches to the company would not have occurred but for the Defendants being reelected to the Board.").

Plaintiff also alleges that the 2017 and 2018 Proxy Statements led to the approval of officer compensation. ¶ 600. Consistent with 15 U.S.C. § 78n–1, the 2017 and 2018 Proxy Statements solicited shareholder votes on officer compensation. Even assuming this was a transaction that caused harm to the company, this allegation fails because the officers' compensation was not dependent on a shareholder vote. The Proxy Statements made clear that the shareholder votes regarding executive compensation were for "a non-binding advisory resolution." *See* ECF No. 658-4, Def. Ex. C (2017 Proxy Statement) at 8; ECF No. 658-5, Def. Ex. D (2018 Proxy Statement) at 9; *see also* 15 U.S.C. § 78n–1(c) (stating that a vote for shareholder approval of executive compensation under 15 U.S. Code § 78n–1 "is not binding").[9] Therefore, the shareholders' vote

---

[9] The Court takes judicial notice of the 2017 and 2018 Proxy Statements because they are documents referenced in and integral to the Complaint. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d at 881 ("And as did the district court, we take judicial notice of the content of relevant SEC filings and other publicly available documents included in the record."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 349 (D. Md. 2004) ("In considering a motion to dismiss a securities fraud complaint, the

was not an "essential link" in approving the compensation.  *See Yu Liang v. Berger*, No. 13-CV-12816-IT, 2015 WL 1014525, at *10 (D. Mass. Mar. 9, 2015) (holding that shareholder approval of executive compensation "on an advisory basis" failed to allege transaction causation). Therefore, Plaintiff's Section 14(a) claim fails for failure to adequately allege transaction causation.  Accordingly, Plaintiff fails to create a reasonable doubt that a majority of the Director Defendants face a substantial likelihood of liability for the Section 14(a) claims for this reason as well.

### c.  Scienter

Plaintiff also fails to adequately allege scienter.  Under the PSLRA, the Complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for each alleged material misrepresentation or omission.  15 U.S.C. § 78u-4(b)(2).  "The Supreme Court has expressly declined to determine what showing of culpability is required to establish liability for a misleading proxy statement."  *Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x at 861 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444, n.7 (1976)). Plaintiff specifically alleges that his Section 14(a) claim is based solely on negligence and not based on any allegation of reckless or knowing conduct by the Defendants and does not sound in fraud.  ¶ 398 n.18; 403 n.19; 594.

Even evaluating the Section 14(a) claims under this standard, Plaintiff fails to allege particular facts that give rise to a strong inference that the Director Defendants were negligent in approving the 2017 and 2018 Proxy Statements.  Plaintiff alleges only that the Director Defendants

---

Court is entitled to rely on public documents quoted by, relied upon, incorporated by reference or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment." (internal quotation marks omitted)).

"should have known that . . . the statements contained in the 2017 Proxy Statement and 2018 Proxy Statement were materially false and misleading" based on Plaintiff's allegations described above.  This conclusory statement does not meet the PSLRA's requirement for particularized factual allegations for scienter.[10]  Therefore Plaintiff's Section 14(a) claim fails and Plaintiff does not create a reasonable doubt that a majority of the Director Defendants face a substantial likelihood of liability for this reason as well.[11]

### ii.  Director Defendants' Independence

Under the second part of the *Rales v. Blasband* test, "if any directors were interested, the court considers whether any other directors were not independent of an interested director." *McElrath v. Kalanick*, 224 A.3d 982, 991 (Del. 2020).  "Independence turns on whether 'the director's ability to act impartially on a matter important to the interested party can be doubted because that director may feel either subject to the interested party's dominion or beholden to that interested party.'"  *Id.* (*quoting Marchand v. Barnhill*, 212 A.3d 805, 818 (Del. 2019)).  For the reasons discussed above, Plaintiff fails to allege that any of the Director Defendants were interested.  Therefore, he cannot show that any of the Director Defendants were beholden to an interested director, and his allegations regarding the lack of independence fail.

Because Plaintiff fails to allege facts to create a reasonable doubt that a majority of the Director Defendants were interested or lacked independence, Plaintiff fails to allege that a pre-suit

---

[10] The Court does not address whether Defendants were negligent in failing to detect or prevent the data breach, which is a question not before the Court on this motion.  Rather, my holding here is limited to Plaintiff's claim that the Director Defendants were negligent in approving the 2017 and 2018 Proxy Statements, for which Plaintiff fails to plead particularized factual allegations.

[11] To the extent that Plaintiff alleges the 2017 and 2018 Proxy Statements also violated Section 10(b) and Rule 10b-5, those claims would also fail for failure to adequately allege a material misrepresentation or omission and scienter as described above.

demand would have been futile, and his failure to make a demand is not excused.  Therefore, Plaintiff's claims must be dismissed for failure to make a pre-suit demand.

### c.   Failure to State a Claim

In the preceding sections, I explained that Plaintiff failed to allege facts that would create a reasonable doubt that a majority of the Director Defendants would face a substantial likelihood of liability for Plaintiff's federal securities claims.  For the same reasons as discussed above, Plaintiff has failed to adequately allege claims under Exchange Section 10(b) and Rule 10-b, Exchange Act Section 20(a), and Exchange Act Section 14(a) and Rule 14a-9.  Therefore, these claims are also dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### d.   Dismissal with Prejudice

For the reasons stated above, Plaintiff's federal securities claims are dismissed.  This dismissal is with prejudice.  "'The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.'"  *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (*quoting 180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)).  Generally, when there has been no opportunity to amend, the dismissal should be without prejudice and the plaintiff granted an opportunity to amend.  *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013).  As discussed, Plaintiff may be able to establish prudential standing for his post-July 11, 2018 federal securities claims by amending his Complaint with further allegations regarding his stock ownership.  However, that would not save Plaintiff's claims, because for all of his federal securities claims he has failed to plead demand futility and failed to state a claim.  Plaintiff has already amended twice.  *See* 19-cv-830-PWG, ECF No. 1 (Original Complaint); 19-md-2879-PWG, ECF

No. 397 (First Amended Consolidated Complaint), ECF No. 624 (Second Amended Consolidated Complaint).  This includes an amendment made with notice of the Defendants' arguments for dismissal, in accordance with my pre-motion procedures.  *See* ECF No. 427 (Defendants' pre-motion letter explaining arguments for dismissal).  The current complaint spans 604 paragraphs over 225 pages with an additional 217 pages of exhibits.  Yet, for all its length and the fact that Plaintiff was forewarned of the specific deficiencies that the Defendants would be raising in a motion to dismiss, it fails to state any cognizable federal claims.  On this record, further amendment would be futile.  Therefore, the federal securities claims are dismissed with prejudice.

## III.   Delaware State Law Claims

The Court may, but is not required to, exercise supplemental jurisdiction over state law claims that are so related to the federal claims that form the basis of the Court's original jurisdiction that they are part of the same case or controversy.  28 U.S.C. § 1367(a).  The Court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  As the Supreme Court explained, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. at 726.  Further, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *Id.*

Plaintiff's Delaware state law claims for unjust enrichment, breach of fiduciary duty, and corporate waste are all based on the same underlying facts regarding the Marriott data breach as the federal securities claims and form part of the same case or controversy.  Because I have dismissed all of the federal securities claims, which formed the basis of the Court's original

jurisdiction, I decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. at 726; *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 2018 WL 1535496, at *9 ("Because the court will dismiss all of the plaintiffs' federal claims, and because the remaining claims involve factually related but legally distinct issues of state securities and corporation law, the court will exercise its wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished to decide against doing so here.") (internal quotation marks omitted).  It is particularly appropriate not to exercise supplemental jurisdiction here to promote comity and judicial economy because there is a pending derivative action in the Delaware Chancery Court regarding the Marriott data breach.  *See Firemen's Ret. Sys. of St. Louis v. Sorenson*, No. 2019-0965-AGB (Del. Ch.); ECF 658-3, Def. Ex. B (Complaint, *id.*).  Therefore, Plaintiff's Delaware state law claims are dismissed without prejudice.

## CONCLUSION

In sum, Defendants' motion to dismiss is granted.  Plaintiff's federal securities claims are dismissed for failure to allege contemporaneous ownership of Marriott stock to maintain a derivative action, failure to plead demand futility, and failure to state a claim.  Because Plaintiff already amended his Complaint twice, and with notice of the deficiencies discussed above, further amendment would be futile and the dismissal of Plaintiff's federal securities claims is with prejudice.  The Court declines to exercise supplemental jurisdiction over Plaintiff's Delaware state law claims and those claims are dismissed without prejudice.  A separate Order follows.

    June 11, 2021                                                    /S/                          
Date                                                      Paul W. Grimm
                                                         United States District Judge