UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

IN RE: MARRIOTT INTERNATIONAL, INC.
CUSTOMER SECURITY
BREACH LITIGATION

MDL NO. 19-MD-2879

(JUDGE GRIMM)

REPORT AND RECOMMENDATION

THIS DOCUMENT RELATES TO THE CONSUMER TRACT

Report Concerning Confidentiality Designations.

### The controversy

The parties have filed redacted documents in accordance with paragraph 9 of the Stipulated Protective Order and FRD 502(d) and (e)Clawback Order. During the discovery period, they quarreled over the confidentiality designations that had been made. The parties, however, never sought judicial resolution of their controversies by invoking their rights under Section 5 of that Order during the discovery period.

While they have not indicated their positions in a pleading, they have advised me of some of their differences. For example, they may focus on whether the redacted material does not qualify as "confidential information" under Section 1, para. B of the Order because it was made public or was "available or accessible in the public domain."

While they have not explained their positions in writing, I understand that they may focus on how other sources available on the Internet will yield the same information redacted in their pleadings. I hasten to add that I do not know the exact specific facts that support their positions, nor do I know all of the legal arguments they will make. I do not know, for example, if they will rely on the expert Marriott will call who filed the report detailing how plaintiffs were not careful in protecting their personal information. That information is available on the Internet.

I explained that my work dealing with redacted documents in discovery and FOIA matters had convinced me that discussing the parties' legal arguments without seeing the unredacted arguments and comparing them with the redacted ones is foolish. The arguments are abstract and meaningless. I, therefore, will review the documents and then hear them as to whether I should unseal a document or portions of it.

## The legal standards

I researched the standards that speak to sealing judicial records in preparation for the conference. The Fourth Circuit's decision in <u>Rushford v. New Yorker Magazine</u>, 846 F.2d 249, 252 (4th Cir. 1988) and your decision in <u>Waterkeeper Alliance, Inc. v Alan & Kristin Hudson Farm,</u> 278 F.R.D. 136 (D. Md. 2011) were most helpful. I advised counsel that I drew the following principles from these cases:

1. Now that the parties have submitted their pleadings, public disclosure is no longer a question of the interpretation of the Protective Order. As the Fourth Circuit said: "The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents. " Thus, when the lower court premised its decision to permit access to filed pleadings solely on the terms of the protective order, it erred. Remand was necessary for it to consider whether the 1st Amendment right to access judicial records warranted disclosure of what the parties had filed with the court in support of and opposition to a motion for summary judgment.

3

2. The 1st amendment standard is demanding. A compelling government interest must necessitate denial of access to judicial records and the redaction must be narrowly tailored to serve that interest.

3. That the document was filed in contravention of the terms of the Protective Order is in this sense irrelevant. The court may conclude that a redaction was correctly made under the Protective Order, but the public interest compels disclosure of what was redacted. The converse is also true.

4. The words "judicial records" have a precise meaning—the documents filed in support of a party's claim for judicial relief. I call these records "pleadings." That would mean the motions and oppositions filed, for example, in support of or in opposition to plaintiffs' motion for class certification. I would include in that definition the specific portions of exhibits offered in support of the parties' positions when a party relied on that portion of the exhibit in advancing its arguments.

As you pointed out in the *Waterkeeper* case, that a party has littered the docket with entire depositions does not impose on the court any obligation to review the portions of the depositions that neither party quoted, cited, or referred to.

4

## The plan to resolve the controversy

From these principles, I derived the following plan that is acceptable to the parties:

1. I will review only certain pleadings. I have provided counsel with a spreadsheet of the pleadings I will review. They are obliged to make any additions or subtractions to the spreadsheet, and I will allow or disallow them. They have had the spreadsheet for a while, and I doubt there will be additions or subtractions.

2. I will use the standard articulated in the *Rushford* and *Waterkeeper* cases and determine whether the public interest requires disclosure. I will disregard whether or not the Protective Order permitted the redaction.

3. I will look only at the portions of the redacted exhibits quoted, cited, or referred to in the pleadings.

One other issue emerged. Mr. Nathan, for plaintiffs, questioned why we should not wait for your decisions. You have indicated that, when writing your opinions, you will not tarry over whether the material you are quoting or citing was redacted. Mr. Nathan has two concerns. First, if you quoted a certain pleading or exhibit that was redacted, you would render academic any controversy I would have to resolve. Second, there was a risk of inconsistent decisions.

I told him that the hearing was several months away, and I did not want to wait. I then noted my advanced years and my inability to guarantee my longevity. That got a few laughs, but I want to get this done now.

As to inconsistency, I told counsel that if I said yes, and you said no, I knew who would win that one.

Counsel also told me that they had met and conferred and were making excellent progress in resolving their differences and might be able to reach an agreement. I told them they should continue their discussions, and I was ready to help them if they thought I could. I told them, however, that the last word I had heard a few months ago was that they were at an impasse. I would give them a few weeks to see what they could do, but I extorted the promise that they would let me know when they had reached the point where they could not agree. I will give them until mid-January to let me know whether they had concluded that I should go forward because there was no hope of a settlement.

Here, therefore, is where we stand:

1. By mid-January, counsel will offer additions or subtractions of the spreadsheet I gave them, indicating the pleadings I will review.

2. By the same date, counsel will let me know whether they believe further negotiations are futile.

3. Marriott insists that it never addressed whether plaintiffs had overcome the common law presumption of access to judicial records. Marriott wanted to brief that. I will permit their counsel to do so. I will then permit plaintiffs to respond if they wish. I welcome the briefing. I am not at all clear in my mind as to how the common law presumption fits with the First Amendment requirements.

4. Counsel will prepare for me a copy of the unredacted documents submitted to you.

*John M. Facciola*

January 1, 2022