UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

IN RE: MARRIOTT INTERNATIONAL, INC.
CUSTOMER SECURITY
BREACH LITIGATION

MDL NO. 19-MD-2879

(JUDGE GRIMM)

## ORDER

**THIS DOCUMENT PERTAINS TO THE CONSUMER TRACK**

### Introduction

### The Work to Be Done

Despite the plaintiffs' objection, Judge Grimm ordered that plaintiffs provide Marriott with information pertaining to (1) whether malware was detected on their electronic device(s), and (2) if so, whether the malware was capable of exfiltrating data from the device, and (3) if so, whether a root cause analysis of the malware was performed. Plaintiffs' letter of February 25, 2022, at 2, citing ECF Nos. 752, 770.

The plaintiffs hired 4 Discovery to do the analysis. Marriott sought to take 4 Discovery's deposition and demanded that it produce documents that Marriott identified in its F. R. Civ. P. 30(b)(6) Notice of Deposition.

### The Motion to Quash in the Northern District of Illinois

1

On July 2, 2021, the plaintiffs sought a protective order prohibiting the deposition and the production of documents by 4 Discovery. However, 4 Discovery moved for a protective order in the Northern District of Illinois. Judge Grimm accepted my recommendation that I not proceed with the motion for a protective order filed in this Court until the Northern District had acted.

After the Northern District had acted, I returned to the plaintiffs' July 2, 2021, motion. In a videoconference with counsel, I expressed my concern that it was improvident and unnecessary to permit the deposition of 4 Discovery that Marriott sought or to resolve the privilege issues. The latter would probably require me to review the documents claimed to be privileged.

### Plaintiffs' Theory of Damages

By this time, I had become more familiar with the theory of damages, articulated by Dr. Prince, that underlies plaintiffs' motion for class certification. One premise of Dr. Prince's damage evaluation is that the plaintiffs' personal data (called PII in this case) had an inherent value. A second premise is that the plaintiffs lost the benefit of their bargain when Marriott assured them it would protect their data but failed to do so while they were staying at a Marriott hotel.

Ultimately, I presided over Dr. Prince's deposition. That deposition concluded with my asking the Doctor if the hack that the plaintiffs complained about diminished the inherent value of plaintiffs' PII. He advised me that it had not. In response to my next question, he indicated that if the inherent value of the PII was x the day before the hack, that value remained x after the hack.

### Consultation with Counsel

I asked counsel to collect the material pertaining to discovery from 4 Discovery. They graciously did so and, after I reviewed it, I indicated to counsel

2

that I believed I should recommend to Judge Grimm that he postpone consideration of plaintiffs' motion for a protective order. In a subsequent email to counsel, included here as Attachment One, I explained why "resolution of this controversy is premature at least until Judge Grimm resolves whether plaintiffs will be able to advance the validity of Dr. Prince's opinion that plaintiffs' PPI had an inherent value." Attachment One at 1.

I also created a diagram for counsel, which is included as Attachment Two. On the diagram, I inserted stop signs at each point where I thought an issue or other event must be resolved before we could have any idea whether the existence of other malware on plaintiffs' electronic devices would be relevant to any issue in this case.

I put stop signs at

- the acceptance or rejection by Judge Grimm of Dr. Prince's damages theories
- the grant or denial of plaintiffs' motion for class certification
- the resolution of any motions for summary judgment

I then stated: "Finally, we have the question of what will happen to any individual claims irrespective of any other issue. That is far away. It is impossible, in my view, to predict the relevance of the 4 Discovery analysis to the individual claims today." Id.

I sent a proposed stipulation to counsel that would postpone the resolution of the plaintiffs' motion for a protective order *sine die*. I directed them to meet and confer to determine whether they would agree to my proposal. I directed Ms. Keller, plaintiffs' counsel, to advise me whether there was any objection but not to identify the objector.

3

By this point, I became firmly convinced that the potential relevance of 4 Discovery's testimony was so attenuated and dependent on events that may never occur that Judge Grimm should postpone resolution of the issues pertaining to 4 Discovery's deposition at least until he resolved the motion for class certification.

As noted above, Dr. Prince told me that plaintiffs' data had not lost any of its inherent value because of the hack. Any other potential reason for personal data loss, such as malware, has nothing to do with his theory of damages. And, if that is so, how would malware on plaintiffs' electronic devices be relevant to any issue presently before the Court?

I then decided to permit Marriott to file a brief directed to why we should go forward with the deposition. I hoped that it would tell me why the deposition of 4 Discovery had anything to do with plaintiffs' damages theories. Instead, Marriott devoted its entire brief to arguing it should have the discovery it seeks from 4 Discovery. The brief is therefore not devoted to my question --whether it should have that discovery *now*.

## Analysis

Winston Churchill said that "generals are always prepared to fight the last war."" Marriott's generals fought the war to get discovery from 4 Discovery and won it handsomely. They overcame plaintiffs' opposition to the discovery of their electronic devices and secured from Judge Grimm a specific protocol guiding how the plaintiffs would have to answer certain questions. Plaintiffs retained 4 Discovery to comply with the protocol, and 4 Discovery provided reports of its actions to counsel for both sides. Letter of February 25, 2022, Exhibit A, paras. 4–5.

4

Ms. Keller, plaintiffs' counsel, has also explained to me, in a detailed declaration, the questions that Marriott's counsel asked as 4 Discovery did its work and the complete answers that plaintiffs' counsel provided. Id., paras 7–10. Marriott's complaint that it needs discovery from 4 Discovery as if it had not had any is hard to understand. No one should complain of hunger with a loaf of bread under each arm.

It is equally incorrect for Marriott to claim that it needs discovery from 4 Discovery to use at the hearings on March 21, 2022, and April 20, 2022. Letter of January 24, 2022 at 1–2.

First, it is impossible for malware on the electronic devices to have anything to do with the issues of the admissibility of expert testimony that the Judge will address at the hearing on March 21, 2022.

Second, as to the hearing on April 20, 2022, Marriott admits, as it must, that the presence of malware can only bear on the question of causality. Id. But that is not a class issue that Judge Grimm will resolve in determining whether he will allow a class action on the basis of plaintiffs' damage theories. The presence of malware on a computer has nothing to do with whether Judge Grimm will permit a class action based on the inherent value of the plaintiffs' PII or the benefit of the bargain theories.

The most that can be said is that there is a theoretical possibility that, irrespective of Judge Grimm's resolution of the motion for class certification, he will exercise his discretion under F. R. Civ. P. 26(c)(4) and permit plaintiffs to raise the issues of Marriott's negligence, breach of contract, or statutory or nominal

damages as a class action. In that situation, Marriott may have a defense premised on the presence of malware on an individual plaintiff's electronic device.[1]

However, recall that Marriott opposes any such class action because "of the individualized nature of determining whether plaintiffs can prove defendants caused their alleged injuries." Letter of January 25, 2022, at 3 and n.1. If Marriott prevails in that opposition, the need for discovery from 4 Discovery evaporates.

Alternatively, if Judge Grimm permits such an F. R. Civ. P. 26(c)(4) class action, there will be time enough to investigate whether Marriott can defend itself because there was malware on plaintiffs' computers undetected by 4 Discovery. Unless and until that happens, spending time and money on that issue is wasteful.

Finally, Marriott now knows exactly what 4 Discovery did. If Marriott believes that 4 Discovery did a poor job and its conclusions should be disregarded, Marriott can hire its own expert to make that point. It does not need discovery from 4 Discovery to do that.

Therefore, I persist in my view that the resolution of the plaintiffs' motion for a protective order be postponed. I recommend that the Court issue the following order:

1.   Consideration by the Special Master of plaintiffs' Motion for Protective Order and to Quash 4 Discovery Subpoena is stayed *sine die*.

2.   The defendants reserve all their rights to demand the deposition of 4 Discovery and the production of the documents sought by subpoena served upon

---

[1] For a fuller explanation of Marriott's opposition to any class certification pursuant to F. R. Civ. P. 26(c)(4), see ECF No. 885 at 51–54.

4 Discovery. That subpoena is also Exhibit 5 to the Declaration of Amy Keller, July 2, 2021 (hereafter "Exhibit A").

3. Plaintiffs reserve all their objections to that subpoena and the production by themselves or by 4 Discovery of the documents specified in Exhibit A.

4. Plaintiffs will preserve all documents demanded by Exhibit A that are in their possession, custody, or control until relieved from doing so by the Court, subject to the below paragraph.

5. If plaintiffs have not already done so, they shall instruct 4 Discovery to preserve all documents demanded by Exhibit A that are in 4 Discovery's possession, custody, or control, until otherwise instructed, and inform plaintiffs' counsel if 4 Discovery becomes at risk of ceasing operation or being acquired.

*/s/ John M. Faccola*

March 11, 2022

# ATTACHMENT ONE

  I appreciate your collection of the material pertaining to the controversy about 4 Discovery. I reviewed them again and I am now more firmly convinced that I was at our last conference and the resolution of this controversy is premature at least until Judge Grimm resolves whether plaintiffs will be able to advance the validity of Dr. Prince's opinion that plaintiffs' PPI had an inherent value.

  My consideration of the materials and the thoughts we exchanged at our last conference led to refine the diagram I had made. Here is my revision:

  I am attempting to indicate that evidence that malware on the bellwether plaintiffs' device cannot possibly to any issue I can divine until we know whether Judge Grimm will permit plaintiffs to advance Dr. Prince's inherent value theory. If Judge Grimm rejects plaintiffs' attempt, we have our first Stop sign. At that point, there will be, in my view, the need to reassess where the case goes from there. The same is true if Judge Grimm permits the theory but denies the motion for class certification. That would be the second Stop sign.

  If on the other hands, plaintiffs prevail on the motion for class certification, we face the possibility of both parties moving for summary judgment. This is the next Stop sign.

  It is again difficult to understand how the possibility of malware on the bellwether plaintiffs' devices would bear on the issues presented by such motions.

  Finally, we have the question of what will happen to any individual claims irrespective of any other issue. That is far away. It is impossible, in my view, to predict the relevance of the 4 Discover analysis to the individual claims today.

  Whatever may happen under these or these scenarios, I think it indubitable that it is premature to consider the probative value of the 4 Discovery's analysis until (at least) Judge Grimm determines whether he will admit Dr. Prince's opinion.

  I have no interest in spending my time and your money on an issue that threatens to become academic. I have decided to propose your agreeing on a stipulation postponing my resolution of the controversies arising from the 4 Discovery examination of the devices. I am sending you a proposed stipulation in a separate file.

  I am comfortable with the stipulation. We are dealing with a company that can be subjected to a F. R. Civ. P. 30(b)(6) deposition. We are not dealing with an individual who decides to go to Tahiti and paint.

  You will see that plaintiffs' counsel are required to collect the documents called for by Martiott's subpoena and to preserve them indefinitely.

  I think this is sufficient. Also, by agreeing to the stipulation neither party forfeits nor waives any objection they may have.

Please consider the stipulation and communicate to each other but not to me whether it is acceptable. Ms. Keller will send me an email in seven days. She will indicate only whether the stipulation is acceptable to all parties. She is to indicate that it is or is not in a single sentence. She is not to tell me who has objected. Once I learn that, I will decide what to do and advise you.

# ATTACHMENT TWO

