# EXHIBIT
# 27

*Exhibit to Defendants' Opposition to Plaintiffs' Motion for Class Certification*

*In re: Marriott International Customer Data Security Breach Litigation, MDL No. 19-md-2879*



**CONTAINS HIGHLY CONFIDENTIAL PORTIONS**

# Transcript of Anne Marie Amarena

**Date:** June 9, 2021
**Case:** Marriott International Customer Data Security Breach Litigation, In Re:

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

CONTAINS HIGHLY CONFIDENTIAL PORTIONS
Transcript of Anne Marie Amarena
Conducted on June 9, 2021
14 (53 to 56)

53

55

A I don't know what Accenture is. Well, I do, but I didn't know at the time. So I can't answer that question.

54

56

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

77

[redacted]

78

[redacted]

79

[redacted]

Q Okay. The top, Hotel Name, do you see is [redacted]?

Do you see that?

**A Yes.**

Q What does MV stand for?

**A I –**

MS. de BARTOLOMEO: If you know.

**A I'm not sure.**

Q Do you understand that to be a Marriott property?

**A Yes.**

Q Okay. And the next one down says, [redacted]

80

[redacted]

Do you see that?

**A Yes.**

Q Does FIS stand for Fairfield Inn & Suites, to your knowledge?

**A Could be.**

Q Was this a Marriott property, this stay in [redacted]?

**A I believe so.**

Q Okay. The next entry is an MV again, [redacted].

Do you see that?

**A Yes.**

Q You mentioned that your sheet says that you booked that on Marriott.com.

**A I see that.**

Q Was that a -- was that a Marriott property, to your knowledge, as well?

**A Yes.**

Q Okay. Moving on down, the [redacted] [redacted].

Was that a Marriott property, to the best



of your knowledge, as well?
**A Yes.**
Q All right. The next one down is the [redacted]. That appears to be a Marriott property as well. Correct?
**A Yes.**
Q The next one down is a [redacted] [redacted].
Does CY stand for Courtyard, to the best of your knowledge?
**A Could be.**
Q Okay. And is that a Marriott property, to the best of my knowledge?
**A I believe so.**
Q Okay. The next one down says, [redacted] [redacted].
Do you see that one?
**A Yes.**
Q All right. That appears to be a Marriott property as well, going by the name. Right?
**A Yes.**
Q Okay. The next one down is an [redacted]

[redacted].
Do you see that one?
**A Yes.**
Q And FI stands for Fairfield Inn, do you know?
**A I don't know, but sounds right.**
Q Have you stayed at Fairfield Inns in the past?
**A Yes.**
Q Okay. And is Fairfield -- is this [redacted] [redacted], to the best of your knowledge, a Marriott property?
**A I believe so.**
Q Okay. Moving on down, the next one is [redacted].
Do you see that one?
**A Yes.**
Q And does this appear to be a Marriott property, to the best of your knowledge?
**A Yes.**
Q Now, I noticed if you look at the dates, Ms. Amarena for both [redacted] and then the [redacted]

[redacted], those were both booked and had the same arrival date.
Do you know why that's the case?
Do you recall?
**A I do not recall.**
Q Okay. Is it possible that one of these was booked for you and the other was booked for somebody else?
MS. de BARTOLOMEO: Objection. Form.
**A I am not sure. This is information that Marriott required to my lawyers that I verified. So -- and it goes back over ten years. So I don't remember.**
Q Okay. Okay. We'll get -- we'll get to that in just a minute. I am just asking if you remember why maybe you had two stays at the same time in two different places.
Do you remember?
**A I don't remember.**
Q Okay. Second-to-last line, this is Row 11, Ms. Amarena, it references an [redacted] [redacted] -- or [redacted]. I am betraying my cultural

ignorance there.
But is that a Marriott property?
**A Yes.**
Q Okay. Does MV stand for Marriott Villas perhaps?
**A I believe --**
Q Do you know?
**A -- Marriott Vacation.**
Q Okay.
**A It could be Marriott Villa. I'm really not sure.**
Q Okay. And then the last -- the last stay says [redacted].
Do you see that?
**A Yes.**
Q And then there's a reference to booking -- excuse me, a booking source that references Sheraton.
Do you see that?
**A Yes.**
Q Okay. And is it your understanding that Sheraton is a Starwood property?

**A Yes.**

MS. de BARTOLOMEO: Objection, to the extent it seeks a legal conclusion.

**A I don't know. That would be -- I have no idea.**

Q Okay. So sitting here today, can you -- can you tell me whether that booking is a Starwood booking or a Marriott booking?

**A I believe it's a Starwood.**

Q Okay. So, Ms. Amarena, in the version of this spreadsheet that we received on Friday, this row with the -- with [REDACTED] stay was newly added.

Do you understand that to be the case?

MS. de BARTOLOMEO: Objection. Form.

To be the case in terms of that was just added? Is that what your --

MR. ANDERSON: Yes.

MS. de BARTOLOMEO: All right.

MR. ANDERSON: That's my question.

MS. de BARTOLOMEO: Do you understand his question?

THE WITNESS: No, I don't understand.

Q Okay. So we --

MS. de BARTOLOMEO: Maybe you can try it again, please.

MR. ANDERSON: Yep.

Q You understand that your counsel has provided documents to the defendants in this litigation.

Do you understand that?

**A Yes.**

Q Okay. And do you understand that one of these documents is this spreadsheet that's put together about your stays. Right?

**A Yes.**

Q Okay. We have received multiple versions of that spreadsheet, and I'm representing to you that in the latest version of this spreadsheet the row 12 on the Sheraton property was just added.

My question to you is, do you know why the Sheraton stay was just added to this spreadsheet on Friday?

**A It might have been the information they received from Marriott. Marriott gave them this information. They produced this spreadsheet, and I verified my stays.**

Q And how did you verify the Sheraton stay reflected on Line 12 of this document?

**A I remember staying there.**

Q Do you have any documents in your current possession relating to your stay at the [REDACTED] [REDACTED]?

MS. de BARTOLOMEO: Line 12. Right, Counsel?

MR. ANDERSON: Yes.

MS. de BARTOLOMEO: Okay.

**A No.**

Q Okay. And so your understanding here is that this information reflected on Line 12 would have come from -- from Marriott.

Is that correct?

**A Yes.**

Q Okay. Did you go back and look through any of your e-mails or other files for records relating to the Sheraton stay reflected on Line 12?

MS. de BARTOLOMEO: I m sorry. Can you either repeat the question or have the court reporter read it back? I didn t catch the first part of it, please.

MR. ANDERSON: Sure. I ll just repeat it.

MS. de BARTOLOMEO: Okay. Thank you.

Q Did you go back to look through your records for any files relating to the Sheraton stay that appears on Row 12 of this document?

**A Yes.**

Q Did you find anything?

**A No.**

Q Okay.

MR. ANDERSON: Austin, can we scroll left to right here over to what is column -- so that we can see Column T, as in tiger, associated with Row 12.

Q So, Ms. Amarena, can you see this, this part of the document in front of you? I m going to focus my questions right now on Columns T as in

89

tiger and U as in umbrella.

**A Yes.**

Q Okay. So you see that the only stay that has a credit card number associated with it in your spreadsheet here is the stay reflected on Row 12. Right?

**A That's what I see.**

Q Okay. And then Row 12, as we saw earlier, was the stay at the .

Is that your recollection as well?

**A Yes.**

Q Okay. So do you see the credit card number there has all 16 digits?

**A I do.**

MS. de BARTOLOMEO: Well, do you want us to count the digits?

Q Okay. And you see how it's a credit card number that ends in ?

**A Yes.**

Q Do you remember this credit card?

**A No.**

Q Do you see where it says, CC Expiration

90

Date? I'm talking about Column S as in Steven.

**A ?**

Q Yes.

**A Yeah.**

Q Do you understand that to mean an expiration date of ?

**A I --**

MS. de BARTOLOMEO: I think he's referring to when he says "this."

**A Yeah, I think so.**

Q And do you see where it says, Credit Card Type ?

**A Yes.**

Q Do you have any understanding of what is referring to?

**A No.**

Q Ms. Amarena, I want to draw your attention to the column labeled U, as in umbrella.

Do you see that? It says, Documents Received (Y/N), yes, no?

**A Yes.**

Q Okay. Here you said that documents were

91

received in connection with your stay at the .

Do you see that with a Y, that's what I assume your Y indicates?

**A Yep.**

Q What documents do you recall receiving when you stayed at the Sheraton?

MS. de BARTOLOMEO: The Line 12 Sheraton he's talking about.

**A Yeah, probably my receipt from when I checked out, the room card, and maybe directions through the facility.**

Q When you're talking about your receipt, are you talking about, like, the folio printout that goes under your door?

**A Right.**

Q Any other documents that you can recall?

**A No.**

MR. ANDERSON: Can we scroll all the way back over to the left, please, Austin, to see the locations again.

Q Okay. Ms. Amarena, do you see that the

92

Sheraton stay -- again we're focusing right now on Row 12 -- took place in August of 2007?

**A Yes.**

Q Do you see that?

**A Yes.**

Q And to the best of your recollection, is that in fact when you stayed at that Sheraton?

**A Yes.**

[Page 105 — text redacted]

[Page 106 — text redacted]

[Page 107 — text redacted]

Page 108:

12 Q  Okay. Fair to say that you've probably
13 given your name to hundreds, if not thousands of
14 people since 1991?
15     MS. de BARTOLOMEO: Objection. Form.
16 A  Yes.

Transcript of Anne Marie Amarena
Conducted on June 9, 2021

42 (165 to 168)

[Pages 65 and 66 fully redacted]

Page 67:
21  Q   How many Starwood Preferred Guest
22  accounts do you have?

Page 68:
1   A   I believe it's just the one.