# EXHIBIT 34

*Exhibit to Defendants' Opposition to Plaintiffs' Motion for Class Certification*

*In re: Marriott International Customer Data Security Breach Litigation, MDL No. 19-md-2879*



**HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER**

# Transcript of Peter Maldini

**Date:** May 20, 2021
**Case:** Marriott International Customer Data Security Breach Litigation, In Re:

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
www.planetdepos.com



```
                                                    7
 1   Q.  All right.  And you would agree your name is a matter
 2       of public record.  Correct?
 3   A.  Yes.
 4   Q.  What is your date of birth, Mr. Maldini?
 5   A.  [REDACTED]
 6   Q.  You'd also agree that your date of birth is a matter
 7       of public record.  Correct?
 8   A.  Yes.
```

Transcript of Peter Maldini
Conducted on May 20, 2021

14 (53 to 56)



Page 54:
17 Q. What made you believe you had a separate rewards
18 number for the Starwood program?
19 A. Because I was a member of the Starwood's program
20 prior to the merger.



Page 204:
3  Q. Now, you've indicated you were notified you were a
4     victim of the ▮▮▮▮▮▮▮▮▮▮ breach.
5     Correct?
6  A. Yes.

Transcript of Peter Maldini
Conducted on May 20, 2021

52 (205 to 208)

205

206

12 Q. So you did get notice of the breach from ▮▮▮, even
13    though you don't have it anymore?
14 A. Yes. We were -- we were notified that there was
15    limited information within the ▮▮▮ databases as it
16    relates to active duty military.

207

208

8 Q. And that's what I was just talking to you about. Do
9    you see, in Background Investigation Records, that
10   includes Social Security number, residency and
11   educational history, employment history, information
12   about immediate family and personal and business
13   acquaintances, health, criminal, and financial
14   history; is that right?
15       THE WITNESS: I would ask you to scroll
16   down and see if that's the same that's listed under
17   the active duty servicemember.
18 A. Yeah, that would be an accurate statement based on
19   what is -- what was presented.
20 BY MR. KETELTAS:
21 Q. And it might also include interview findings,
22   fingerprints, and usernames and passwords. Correct?

HIGHLY CONFIDENTIAL
Transcript of Peter Maldini
Conducted on May 20, 2021

53 (209 to 212)



273
1  response doesn't mean it's not responsive, Gil. This
2  also calls for a legal conclusion.
3  BY MR. KETELTAS:
4  Q.  You may answer.
5  A.  I was not aware that this contract had that statement
6    in it. But just because we referenced this document
7    doesn't -- doesn't somehow bind me to this contract
8    that I'm not a party to.
9       MR. KETELTAS:  I am -- if you give me one
10   minute to talk to my team, I think I'm ready to pass
11   the witness, but I -- I want to make sure. So let's
12   go off the record.
13      VIDEO TECHNICIAN:  Off record --
14      MR. KETELTAS:  And I think -- I think
15   Mr. Anderson may have some questions too, so...
16      (Off the record at 5:58 p.m.)
17      (Back on the record at 6:00 p.m.)
18      VIDEO TECHNICIAN:  On record.
19      [Simultaneous Speaking]
20      VIDEO TECHNICIAN:  6:00.
21      MR. KETELTAS:  Sorry.
22      Marriott is ready to pass the witness

274
1  for -- for further questioning by Mr. Anderson and
2  Mr. Engdahl to the extent he's got questions.
3       I will say, Marriott is not agreeing to
4  close this deposition. There were a few issues that
5  arose during the deposition, including the statement
6  that the SBC Global account has data in it, where FTI
7  indicated that they didn't find any data in it.
8       And also failure to try to see if the work
9  email was accessible, given -- given testimony that
10 that email would be a source of information on
11 reimbursements for stays.
12      So I understand plaintiffs may disagree
13 with that, but Marriott intends to argue this
14 deposition is still open.
15      MR. ENGDAHL:  Yeah, as you anticipated,
16 Gil, plaintiffs take the opposite position. We -- you
17 know, as you know from the deposition protocol,
18 depositions can only be left open and second day of
19 testimony can only be taken if there's good cause
20 shown or an agreement of the parties, and we think
21 Mr. Maldini's testimony today is sufficient and
22 further testimony is neither necessary or appropriate.

275
1       MR. KETELTAS:  We'll go under the good
2  cause prong.
3       With that, I'll -- I'll turn it over to
4  Mr. Anderson.
5       MR. ANDERSON:  Thank you.
6       Good afternoon, Mr. Maldini.
7       THE WITNESS:  Good afternoon -- or evening.
8       MR. ROBINSON:  Yeah, we're -- we're --
9  we're getting on, aren't we?
10      EXAMINATION
11 BY MR. ANDERSON:
12 Q.  Mr. Maldini, have you ever heard of a company called
13   Accenture?
14 A.  Yes, I have.
15 Q.  What is your understanding of what Accenture does?
16 A.  Accenture was an IT -- provided IT services to
17   Starwood.
18 Q.  Had you heard of Accenture's relationship with
19   Starwood at all before filing the lawsuit that has
20   given rise to your deposition today?
21 A.  No.
22 Q.  And so your understanding of the relationship between

276
1  Accenture and Starwood arises out of -- arises out of
2  this litigation?
3  A.  Yes.
4  Q.  Did you ever become aware that Accenture had a
5    contract with Starwood hotels and resorts?
6  A.  Yes.
7  Q.  When did you become aware of that contract?
8  A.  At some point during the last two-plus years since
9    the data breach.
10 Q.  So it was --
11 A.  I -- I don't have --
12 Q.  You can't --
13 A.  -- a specific time. It -- it was -- it was brought
14   up in discussions.
15 Q.  And those discussions you're referencing to, which I'm
16   not asking about the content of, are those discussions
17   with your attorneys?
18 A.  Yes.
19 Q.  And so, outside of any discussions or information that
20   may have been provided to you, sir, by your attorneys,
21   did you have any independent knowledge of Accenture's
22   relationship with Starwood Hotels and Resorts?

277
1  A. No.
2  Q. Do you have any understanding of what the contract
3     between Accenture and Starwood requires?
4         MR. ENGDAHL: Objection. Calls for legal
5     conclusion.
6  A. I don't know the specific conditions. I understand
7     the -- the -- the overarching contract was to provide
8     IT security services to Starwood.
9  BY MR. ANDERSON:
10 Q. Have you yourself reserved -- excuse me. Have you
11    yourself reviewed that contract between Accenture and
12    Starwood?
13 A. I have not.
14 Q. You testified earlier today, sir, that you have stayed
15    at multiple Starwood properties prior to the
16    announcement of the data breach; is that correct?
17 A. That is correct.
18 Q. To your knowledge, did you interact with any employees
19    of Accenture in relationship to those hotel stays?
20        MR. ENGDAHL: Objection. Calls for
21    speculation. Vague.
22 A. I -- I don't know. I don't have -- you know -- I

278
1     don't know.
2  BY MR. ANDERSON:
3  Q. So -- so you do not know -- you -- you -- to your
4     knowledge, did you interact with any Accenture
5     employees in connection with the Starwood stays that
6     you've referenced earlier in your testimony?
7         MR. ENGDAHL: Same objection.
8  A. I am not aware that I interacted with an Accenture
9     employee, but that doesn't mean that there wasn't an
10    Accenture employee at one of those hotels. But I --
11    I don't have personal knowledge that I dealt with an
12    employee of Accenture.
13 BY MR. ANDERSON:
14 Q. To your knowledge -- and, again, sir, I'm just asking
15    you about your knowledge. To your knowledge, did
16    Accenture provide you with any information in
17    connection with your hotel stays at Starwood?
18 A. Not that I'm aware of.
19 Q. To your knowledge, did Accenture make you any promises
20    in connection with your stay at a Starwood hotel?
21        MR. ENGDAHL: Objection. Vague. Calls for
22    a legal conclusion.

279
1  A. Knowing that there was a contractual relationship
2     between Accenture and Starwood, and the fact that, at
3     some point, there was a data breach, you know,
4     there -- there's -- there is a -- I forget the word
5     you used. You know, there -- there is a -- I would
6     say, there is a responsibility there.
7         If -- if Accenture is responsible for the
8     data security of Starwood and your -- the -- the
9     Starwood system was breached, there would be a
10    responsibility there.
11 BY MR. ANDERSON:
12 Q. Let me -- let me ask the question again because I
13    didn't ask about responsibility.
14        I asked, to your knowledge, when you -- in
15    connection with your stay at a Starwood hotel, did
16    Accenture make you any promises?
17        MR. ENGDAHL: Same objection.
18 A. I would say that Accenture, by nature of their
19    contractual relationship with Starwood, would --
20    would have made -- you know, would -- would of -- has
21    some responsibility for protecting my personal
22    information.

280
1  BY MR. ANDERSON:
2  Q. So, sir, I want -- I want you to listen to the
3     question because I'm not asking about responsibility.
4         My question is, when you engage in a
5     transaction with Starwood to say at one of their
6     hotels, did Accenture, to your knowledge, make you any
7     promises in connection with that transaction?
8         MR. ENGDAHL: Same objection. Asked and
9     answered.
10 A. I -- did Accenture directly make a promise to me?
11    No. But by their relationship -- contractual
12    relationship to provide IT security, I -- I would --
13    I would say that there is a -- there is a promise to
14    protect my personal information.
15 BY MR. ANDERSON:
16 Q. Where is that promise located, sir?
17 A. It's -- it's an expectation that I had, when I stayed
18    at a Starwood property, that I was providing them my
19    information and my information would be protected
20    from security breaches, from hackers. That --
21    that -- that my information would be protected.
22 Q. And when you say "them," you mean Starwood. Right?