September 22, 2022

Hon. Paul W. Grimm
U.S. District Court
6500 Cherrywood Lane, Suite 465A
Greenbelt, Maryland 20770

**Re:** *City of Chicago v. Marriott Int'l Inc.*, 19-cv-654 (*In re Marriott MDL*, 19-md-2879)

Dear Judge Grimm:

The City of Chicago (the "City") agrees with the Court's planned recommendation that this action be sent back to the Northern District of Illinois for any remaining pretrial proceedings and trial. (Dkt. 1062 at 42 (citing 28 U.S.C. § 1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36–37 (1998)).) As Marriott previously explained when urging the City's case to move forward independently, "[a]n MDL proceeding should not be viewed as a place to 'warehouse' cases indefinitely." Rather, the goal "should . . . be driven by a desire to move the cases to resolution as soon as possible, whether by motion practice, settlement, or trial/*remand*." (Dkt. 736 at 16-17 (emphasis added) (quoting *Guidelines and Best Practices for Large and Mass-Tort MDLs*, Bolch Judicial Institute, Duke Law School, at 2 (2d ed. 2018)).) Remand would accomplish this; Marriott's proposal—keeping the City's case "on ice" (*id.* at 17) during the pendency of its Rule 23(f) appeal as well as Consumer-specific discovery and motion practice—would not.

Importantly, the question before the Court is not whether pretrial proceedings in the Government Track are complete. *See In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003) ("The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings, and courts routinely have read the statute in that flexible fashion.") (citing *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)); *see also* Manual for Complex Litigation § 20.133 (4th ed.) ("In some cases, remands have been ordered relatively early, while substantial discovery remained to be done[.]").[1] Rather, the question is whether, "based upon the totality of circumstances involved in [this MDL's] docket," *In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006), the City's case will continue to "benefit from inclusion in [these centralized] pretrial proceedings." *In re Bard IVC Filters Prod. Liab. Litig.*, MDL No. 15-02641, 2021 WL 1616101, at *1 (D. Ariz. Apr. 26, 2021) (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 975 (J.P.M.L. 1979)).

Comparing the statuses of the Consumer and Government Tracks demonstrates that the City's case will no longer benefit from inclusion in this MDL. Merits discovery in the City's

---

[1] The order creating this MDL expressly contemplated potential early remand of individual cases. (*See* J.P.M.L. Dkt. 191 at 2 (the transferee court should recommend remand if it "finds at any point in pretrial proceedings that . . . [centralization] will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation[.]") (citing Panel Rules 10.1-3).)

case has been completed for over a year. (*See, e.g.*, Dkt. 1050 at 6; Dkt. 897 at 3.) All that remains is minimal merits expert disclosures and discovery before the City's claims are ready to be tried. Consistent with the parties' prior practices, the City anticipates that this process could be completed in 3-5 months. (*See* Dkt. 861 at 1 (affording less than four months for expert discovery on Marriott's partial motion for summary judgment).)

In contrast, while there *were* practical opportunities for additional coordination (Dkt. 736 at 11-12), the Consumer and Government tracks are no longer in sync. Marriott was permitted to move for early summary judgment and, by the time that motion was denied, activity in the Consumer Track stalled. Discovery and motion practice are now all but stayed pending the Fourth Circuit's resolution of Marriott's Rule 23(f) appeal, where no briefs have been filed and a hearing has not been scheduled. (Dkt. 1069 (staying discovery unrelated to Marriott's recent California Consumer Privacy Act ("CCPA") disclosures); Dkt. 1059 (ordering briefing regarding the Court's jurisdiction to proceed with CCPA discovery during appeal); App. Dkt. 23 (granting Marriott's motion for extension of time to file opening appellate brief).) And once the appeal *is* resolved, the Consumers and Marriott have identified a substantial amount of discovery and motion practice that will take place. This includes new discovery (and, assuredly, new motion practice) regarding Marriott's recent CCPA disclosures, which, the Consumers predict, may fill in evidentiary gaps identified in the Court's class certification order and, in turn, lead to more Rule 23 motion practice. (Dkt. 1040 at 1-2; Dkt. 1039 at 2-3 (citing Dkt. 1014 at 33-34).) Critically, *none* of these tasks are relevant to Marriott's alleged violations of the City's consumer protection ordinance, MCC § 2-25-090(a), or the City's case more generally. In short, the Consumer Plaintiffs and Marriott are digging in for more, perhaps years, of litigation. Forcing the City to wait on the sidelines—effectively staying its case—would significantly delay the completion of expert discovery and trial rather than "lead to the just and efficient litigation" of the City's case. *In re: Louisiana-Pac. Corp. Trimboard Siding Mktg., Sales Pracs. & Prod. Liab. Litig.*, 867 F. Supp. 2d 1346, 1347 (J.M.P.L. 2012) (denying Section 1407 motion where centralization would "result in substantial delays to the completion of expert discovery and an anticipated early 2013 trial date").

The possibility of down-the-road efficiencies does not outweigh this unavoidable delay. At the September 14 status hearing, Marriott noted that expert discovery might overlap between the Consumer and Government Tracks. But "the fact that the [City's and Consumers'] claims have some degree of commonality is not a sufficient reason to keep the Related Actions here," where, as discussed above, the City's case must sit stagnant before any efficiencies can be realized. *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, 840 F. Supp. 2d 1193, 1199 (D. Minn. 2012) (citing *In re Brand–Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375–76 (J.P.M.L. 2003)). Besides, at this point Marriott's predicted efficiencies are all hypothetical. While the City and Consumer Plaintiffs have discussed sharing experts, there is no guarantee that they will disclose identical or substantially overlapping reports given that, *inter alia*, their cases assert different claims under different states' laws. For example, the Consumer Plaintiffs must address the general duty of care owed by Marriott to its customers for their negligence claims under Florida, Maryland, Connecticut, and Georgia law. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 173-74 (D. Md. 2022). The City's claims, in contrast, address Marriott's alleged violations of MCC § 2-25-090(a), rather than any common law duty of care. (City Dkt. 27 at 23-27.) Even if similar

reports are produced, there's no guarantee that they will draw *Daubert* motions at all. And if the reports draw different *Daubert* motions (that, in turn, require different rulings), there is "[n]o gain in judicial economy [] to be had by this Court deciding the . . . motions instead of remanding them to the transferor courts to which they must ultimately be remanded." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08 CIV. 5440 RJH, 2011 WL 1046162, at *6 (S.D.N.Y. Mar. 22, 2011). Finally, there is opportunity for efficiencies even without centralization. To the extent Marriott or the Consumer Plaintiffs believe that the substance of expert testimony or discovery elicited in the City's case could benefit the Consumer Track, for example, the parties may still—as they have done to this point—informally coordinate and share information, which is often cited as a preferred alternative to centralization. *See, e.g.*, *In re OSF Healthcare Sys. Emp. Ret. Income Sec. Act (ERISA) Litig.*, 223 F. Supp. 3d 1343, 1345 (J.P.M.L. 2016). This should be easy to accomplish: Marriott is represented by the same attorneys in the Consumer and Government Tracks and the Consumer Plaintiffs are supportive of the City's request that the Court recommend remand. *See In re: Ronald Beecher Est. Litig.*, 816 F. Supp. 2d 1379 (J.P.M.L. 2011) (denying centralization where "informal cooperation among the involved attorneys is both practicable and preferrable.").

Nor can the parties obviously leverage the Court's familiarity with the substantive issues of this case by keeping the City's case in the MDL. An appointed "judge's time and energy spent becoming familiar with the recurring issues [in an MDL]" is often cited as a reason in favor of continued centralization. *See In re Patenaude*, 210 F.3d at 145. But as a practical matter, Your Honor's retirement means that the new transferee judge, Judge Gallagher, must become newly familiar with the issues of this MDL. Judge Gallagher will no doubt do so promptly. But Judge Gallagher will be at no great advantage—as compared to the transferor judge, who will also have to come up to speed with the case—when addressing any anticipated motions, regarding the City's experts, the merits, or otherwise. Indeed, given that the City's case will eventually return to the Northern District of Illinois, it makes more practical sense to get Judge Kocoras up to speed on the issues now and push the parties towards trial. This is particularly true for any issues that touch on the merits of the City's claims under the MCC, given that the transferee judge has presumed "familiar[ity] with the state law of [his] jurisdiction[.]" *In re Activated Carbon-Based Hunting*, 840 F. Supp. 2d at 1199 (quoting *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 832 F. Supp. 2d 74, 77 (D. Me. 2011)). And besides, this Court's hands-on experience overseeing these cases can still be leveraged through Judge Facciola, who, we understand, is willing to help (e.g., with settlement discussions) even following remand.

Finally, without remand the City will suffer additional—and avoidable—prejudice. Resolution of its case will be needlessly delayed. *See In re: Louisiana-Pac. Corp.*, 867 F. Supp. 2d at 1347. The City will also continue to incur costs as it waits to bring its case to trial— including by paying for the significant monthly expense of housing Marriott's massive document production (which is thousands of dollars each month).

\*          \*          \*          \*

The Consumer and Government Tracks have each benefited immensely from these centralized and coordinated pretrial proceedings, and the City is grateful for the Court's oversight of the process. But for the City's case, "the central purpose of the JPML referral"—i.e.,

3

leveraging common factual issues, eliminating duplicative discovery, preventing inconsistent pretrial rulings, and conserving resources (J.P.M.L. Dkt. 191 at 1-2)—has been achieved, even though "some pretrial work [is] undone." *In re Light Cigarettes*, 832 F. Supp. 2d at 78. Thus, the City agrees that "the game no longer is worth the candle." *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d at 1376 (citing *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)). The Court should recommend that the Panel remand its case to the Northern District of Illinois for any remaining pretrial proceedings and trial.

        Respectfully,

        /s/ Eve-Lynn J. Rapp
        *Attorney for City of Chicago*

        Stephen J. Kane (*pro hac vice*)
        Deputy Corporation Counsel
        stephen.kane@cityofchicago.org
        CITY OF CHICAGO DEPARTMENT OF LAW
        Affirmative Litigation Division
        121 North LaSalle Street, Room 600
        Chicago, Illinois 60602
        Tel: 312.744.6934
        Fax: 312.744.5185

        Eve-Lynn J. Rapp (*pro hac vice*)
        erapp@edelson.com
        EDELSON PC
        2101 Pearl Street,
        Boulder, Colorado 80302
        Tel: 720.741.0084
        Fax: 720.741.0076

        Benjamin H. Richman (*pro hac vice*)
        brichman@edelson.com
        Benjamin Thomassen (*pro hac vice*)
        bthomassen@edelson.com
        EDELSON PC
        350 North LaSalle, 14th Floor
        Chicago, IL 60654
        Tel: 312.589.6370
        Fax: 312.589.6378

        *Counsel for the City of Chicago, Government Track*

cc: All Counsel of Record (via CM/ECF)