Hon. Paul W. Grimm  September 29, 2022
U.S. District Court
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD 20770

Re: *City of Chicago v. Marriott International, Inc.*, 19-cv-654 (*In re: Marriott MDL*, 19-md-2879)

Dear Judge Grimm:

      Defendants Marriott International, Inc. and Starwood Hotels & Resorts Worldwide, LLC (collectively, Marriott) submit this letter in support of their position that the Court should not suggest to the Judicial Panel on Multidistrict Litigation that the Government Track be remanded to the transferor court because pretrial proceedings are not complete. The Panel's reasons for transferring the City's suit to this Court are still valid—continued centralization will eliminate duplicative discovery, avoid possibly inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The Court should not suggest the Panel abandon centralization when expert discovery on the merits has not even begun.[1]

      Remand before pretrial proceedings are complete is the exception. Notably, when a party seeks "remand before coordinated or consolidated pretrial proceedings have been completed, it has the burden of establishing 'good cause' for the transfer." *In re Chiquita Brands Int'l Alien Tort Statute & S'Holders Derivative Litig.*, 2019 U.S. Dist. LEXIS 237448, *80 (S.D. Fla. Nov. 5, 2019). The "court can only suggest remand if [party seeking it] demonstrates good cause." *In re Maxim Integrated Prod., Inc.*, 2015 WL 1757779, at *3 (W.D. Pa. Apr. 17, 2015); *see also Diaz v. Ameriquest Mortg. Co.*, 2014 WL 26265, at *2 (N.D. Ill. Jan. 2, 2014) ("The Panel will generally remand a case before pretrial proceedings are completed 'only upon a showing of good cause.'") (quoting *In re CBS Color Tube Patent Litig.*, 342 F.Supp. 1403, 1405 (J.P.M.L.1972)); *In re Reciprocal of Am. (ROA) Sales Pracs. Litig.*, 2012 WL 13018843, at *2 (W.D. Tenn. Apr. 11, 2012) (remand "is based upon the totality of circumstances," and "should only occur upon a showing of good cause") (quotation marks omitted).

      Here, good cause does not exist for early remand because the reasons for centralization remain valid. In particular, expert discovery on the merits of the claims in the Government and Consumer Tracks has not yet begun and there are common issues that would benefit from coordinated pretrial proceedings in this Court, both as a matter of efficiency and to avoid the potential for inconsistent rulings. While remand before pretrial proceedings have been completed "may be appropriate if everything that remains to be done is case specific," *In re Aqua Dots Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 84834, *5 (N.D. Ill. Aug. 2, 2011) (quotation marks omitted), remand "is not appropriate when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary," *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2020 WL 4542988, at

---

[1] The City presumably meant to refer only to fact discovery when it asserted "[m]erits discovery in the City's case has been completed for over a year" (ECF 1070 at 1-2), because it acknowledges that "[e]xpert discovery on merits issues has not yet occurred." (ECF 1071 at 6).

*3 (E.D. La. Aug. 6, 2020) (cleaned up). The City's arguments do not show early remand is appropriate here.[2]

The City argues that "[c]omparing the statutes of the Consumer and Government Tracks demonstrates that the City's case will no longer benefit from inclusion in this MDL." (ECF 1070 at 1). Not so. For starters, the Panel centralized the cases not because the statutes are the same but because the "factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections. Many also allege that Marriott did not timely notify the public of the data breach." (ECF 1.)[3] That factual overlap still exists and the City does not contend otherwise.

Moreover, the City does not actually compare the statutes in the Consumer and Government Tracks. (*See* ECF 1070, at 2.) Had it done so, it would be forced to admit that the statutes at issue in both tracks clearly overlap and all concern the reasonableness of data security measures. For example, this Court certified Rule 23(b)(3) damages classes with respect to claims under the Maryland Consumer Protection Act (MCPA) and California UCL. (ECF 1014 at 70-71.) The elements of claims under the MCPA, California UCL, and Illinois Consumer Fraud and Deceptive Practices Act (ICFA) are substantially similar, and, as this Court observed, "Chicago's ordinance [MCC § 2-25-090(a)] incorporates the ICFA." (ECF 1062 at 34.)[4] Notably, the California UCL covers violations of the California Customer Records Act, which is akin to the Illinois Personal Information Protection Act (IPIPA), which the ICFA also incorporates. (ECF 1062 at 34, n.28.) This just compares statutes applicable to current bellwether claims, there are numerous other state consumer fraud claims lying in wait. The bottom line is the statutory (and negligence) claims in the Consumer Track and the City's claims require common proof around the reasonableness of Marriott's data security, including encryption issues, which will be the subject of common expert discovery.

The Panel recognized that centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. (ECF 1.) This Court then explained at the first case management conference (and the City's counsel agreed) "that it makes a lot of sense to have that common participation of maybe all the tracks as part of the discovery process so that there's not four separate discovery requests the defendants are dealing with on different schedules that deal with overlapping information." (4/5/19 Hearing Tr. at 49:23-50:3.) This remains true today, especially with expert discovery on the merits still to come. Because there is significant overlap between the City and Consumer

---

[2] The City contends Marriott previously urged the Government Track should move forward independently (ECF 1070 at 1), but that was about moving for summary judgement in this Court on issues unique to the Government Track (*i.e.*, standing, home rule, and extraterritoriality), not abandoning coordination regarding common issues.

[3] The Panel said it was transferring the City's case to the District of Maryland for the same reasons set forth in its first transfer Order regarding consumer cases. (ECF 87.)

[4] *Compare* ECF 958 at 6-13 (elements of claims under MCPA and California UCL) *with* 815 Ill. Comp. Stat. Ann. 505/1 et seq. (elements of a claim under the ICFA are: (1) an unfair or deceptive act or practice by the defendant, (2) defendant intended for the plaintiff to rely on the unfair or deceptive practice, and (3) the unfair or deceptive practice occurred during course of conduct involving trade or commerce).

cases, it is important to coordinate expert discovery to gain the benefits of centralization, including avoiding duplicate expert disclosures, multiple depositions of the same expert witnesses, and the possibility of inconsistent rulings on *Daubert* motions.

While the parties have not yet disclosed experts on merits issues, Marriott anticipates offering expert testimony to address (1) the reasonableness of its data security measures, (2) the inability of a threat actor to read personally identifiable information that it had encrypted, and (3) the absence of indicators of a failure to safeguard personal information (such as dark web advertisements or payment card common point of purchase alerts). This expert testimony is relevant to Marriott's defense against the City's and the Consumer Track plaintiffs' claims.

Expert testimony demonstrating the reasonableness of Marriott's data security measures relates to Counts 1 and 2 of the City's Complaint, which alleges Marriott failed to safeguard personal information and implement and maintain reasonable data security measures, and to Count 3, which alleges Marriott's privacy statements misrepresented its data security practices. (ECF 296 at 23-27.) Expert testimony about the inability of a threat actor to read personally identifiable information that had been encrypted by Marriott relates to Counts 1 and 2. It also relates to Count 4 alleging delayed notification (*id.* at 27), as the Court recognized in its summary judgment decision. (ECF 1062 at 39, n.36 (noting the required number of notifications is a disputed fact subject to expert testimony regarding encryption).) Expert testimony about the absence of indicators of a failure to safeguard personal information is relevant to Count 1 because it is evidence there was no failure to safeguard personal information.

All this expert testimony is likewise relevant to claims in the Consumer Track cases. Indeed, in certifying consumer classes, the Court found the "gravamen of these allegations is that Marriott and Accenture failed to take reasonable steps to protect Plaintiffs' personal information against the foreseeable risk of a cyberattack and, in the case of Marriott, contrary to its express privacy statements and statutory duties." (ECF 1014 at 3.)

The City and the Consumer plaintiffs presumably will offer expert testimony to support their respective allegations that the data security at issue was deficient and misrepresented. While the City says there "is no guarantee" it will have experts in common with the Consumer Track plaintiffs (ECF 1070 at 2), that has been the case so far. Indeed, the Consumer Track plaintiffs' data security expert at the class certification stage stated in her report that she was also retained by the City. (ECF 857, Tab 4, ¶10.) And while the City says the Consumer Track cases "assert different claims under different states' laws," (ECF 1070 at 2) that was true before, too, yet the City said "there are significant overlaps between the City and Consumer cases" and "[g]iven these overlaps, the Consumer and City Tracks have discussed coordination and resulting efficiencies of expert topics and reports, which will ultimately inure to benefit of all Parties and the Court (less time/costs, fewer *Daubert* motions, etc.)." (ECF 839 at 3.)

In addition, once the parties make their expert disclosures there will certainly be rebuttal expert disclosures, as well. For example, the City and Consumer plaintiffs may have a rebuttal expert on the issue of encryption (which may or may not be the same as their expert(s) on the reasonableness of other data security measures). All these experts will need to be deposed, so remand now would cause numerous experts to be deposed multiple times. The City tries to downplay the importance of coordinating expert discovery on overlapping issues, but this is a

core purpose of the MDL process. Accordingly, courts have denied motions for suggestion of remand where expert discovery remained on common issues. *See*, *e.g.*, *Wang v. Bear Stearns Cos.*, 2013 U.S. Dist. LEXIS 97794, *5-6 (S.D.N.Y. July 7, 2013); *In re Aqua Dots Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 84834, at *7. Remand is inappropriate where common discovery remains outstanding such that the defendant "would be left to defend two related claims with similar discovery in different forums" following remand. *Diaz v. Ameriquest Mortg. Co.*, 2014 WL 26265, at *2 (N.D. Ill. Jan. 2, 2014).

Notably, the City does not cite any cases where remand was suggested before common expert discovery had begun. *See In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003) (common expert and fact discovery was substantially completed); *In re Bard IVC Filters Prod. Liab. Litig.*, 2021 WL 1616101, at *1 (D. Ariz. Apr. 26, 2021) ("All common fact and expert discovery has been completed."); *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 975 (J.P.M.L. 1979) ("discovery on all common factual issues in this docket has been completed"); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, 840 F. Supp. 2d 1193, 1199 (D. Minn. 2012) ("the key factor is that discovery in these actions is now complete"); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *6 (S.D.N.Y. Mar. 22, 2011) ("Coordinated fact and expert discovery is complete . . . , which is among the 'primary purpose[s]' of multidistrict litigation."). The City contends the benefits of centralization still can be achieved after a remand because the parties will "informally coordinate and share information" (ECF 1070 at 3), but the cases it cites were uncomplicated matters where the Panel was rejecting centralization in the first place, not deciding whether to remand. *See In re OSF Healthcare Sys. Emp. Ret. Income Sec. Act (ERISA) Litig.*, 223 F. Supp. 3d 1343, 1345 (J.P.M.L. 2016) (there were only two cases); *In re: Ronald Beecher Est. Litig.*, 816 F. Supp. 2d 1379 (J.P.M.L. 2011) (issues were not "sufficiently complex" and there were only two cases).

The City also dismisses the risk of inconsistent rulings, saying there is "no guarantee" there will be *Daubert* motions at all, or such motions might be different. But the point of centralization is to avoid the *possibility* of inconsistent rulings, which clearly exists here. *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 200150, *16 (W.D. Tenn. Apr. 11, 2012) ("Discovery overseen by this Court and a federal court in Louisiana could clearly lead to the type of inconsistent pretrial rulings and failure to conserve resources the Panel intended to prevent."); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, 2012 U.S. Dist. LEXIS 72833, *10 (S.D. Cal. May 24, 2012) (declining to suggest remand where not only case-specific issues remained because "coordinated proceedings will preserve judicial and party resources and avoid the chance of inconsistent rulings").

The City's argument that it is prejudiced by delay while the Fourth Circuit hears the certification appeal is not grounds for remand, either. Courts are clear that a case should not be remanded because of the pace of proceedings in the MDL. For example, the Northern District of Illinois noted a party seeking remand on this basis had "not identified any authority which would permit us to suggest a remand because of the alleged uniqueness of her claims or the delay associated with inclusion in the MDL." *In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 2010 WL 1418399, at *2 (N.D. Ill. Apr. 6, 2010). Another district court likewise noted delay in MDL proceedings is not a reason for remand, explaining as follows:

> [T]he gist of [movant's] motion appears to be that, because this case has been pending for some years, is progressing slowly and has at times focused on other parties, its continued inclusion in the MDL is no longer of benefit as its individual claims could have been resolved more quickly in a separate action and, therefore, the Court should exercise its discretion in its favor. However, the Court is unconvinced that such an assertion forms the basis for a suggestion for remand.

*In re Reciprocal of Am. (ROA) Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 200150, at *17.[5]

      Despite the City exaggerating any delay caused by the consumer appeal, it cannot establish any meaningful prejudice. Although merits briefing had not commenced in the Fourth Circuit when the City filed its letter (ECF 1070 at 2), it is now underway and is scheduled to conclude in November. (Case No. 22-1744, ECF 23.). Parties complaining of prejudice from delay are typically plaintiffs seeking damages to be made whole. Here, the City cannot recover damages or even obtain injunctive relief; the most it can seek is a fine to punish Marriott. The fact that the City is paying a vendor a monthly fee for electronic storage (ECF 1070 at 3) is a far cry from an injured plaintiff unable to pay medical expenses while a case was pending six years—yet even that circumstance did not support remand, *see In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 2012 U.S. Dist. LEXIS 100715 (N.D. Ill. July 16, 2012) ("Standly argues that the continued delay of this case, originally filed in 2006, has significantly hindered his ability to pay for his medical care and other living expenses. Although the Court recognizes Standly's position that the MDL has not benefitted him, his argument fails because he does not allege that discovery is complete or that the remaining discovery is 'case-specific.'").

      Finally, the City says Your Honor's retirement means this Court will not have familiarity with the issues of this case so "will be at no great advantage" over the transferor court when addressing any anticipated motions. (ECF 1070 at 3.) But Judge Gallagher will become familiar with the issues of this MDL regardless, and the great advantage this Court has in addressing such motions is that it avoids potentially inconsistent rulings. In all events, "getting trial judge 'up to speed' is not good cause" for early remand. *See In re Maxim Integrated Prod., Inc.*, 2015 WL 1757779, at *5 (W.D. Pa. Apr. 17, 2015).

      In sum, the present circumstances do not warrant remanding this case before pretrial proceedings are complete. The Panel and this Court have recognized the Government and Consumer Tracks benefit from coordination because they arise from a common set of facts. That has not changed. Expert discovery on the merits has not begun and will involve significant issues common to both tracks. Any disappointment by the City with the pace of the MDL proceedings is not a basis for remand. Because the reasons for centralization are still valid, including to avoid the possibility of inconsistent rulings, this is not the appropriate time for remand and this Court should continue to preside over the two remaining tracks in the MDL.

/s/ *Daniel R. Warren*          /s/ *Gilbert S. Keteltas*          /s/ *Lisa M. Ghannoum*

---

[5] The City cites *In re Louisiana-Pac. Corp. Trimboard Siding Mktg., Sales Pracs. & Prod. Liab. Litig.*, 867 F. Supp. 2d 1346, 1347 (J.M.P.L. 2012), but that was not about remand; it was about whether to centralize new cases that had had "no discovery" with cases that were close to trial.