**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**IN RE MARRIOTT INTERNATIONAL INC., CUSTOMER DATA SECURITY BEACH LITIGATION**

***City of Chicago v. Marriott Int'l, Inc., et al.,*** **Case No. 19-cv-654**

**MDL No. 19-md-2879**

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

This Multidistrict Litigation ("MDL") action involves claims against Marriott International, Inc., and related entities concerning a data breach. One of the Plaintiffs in the MDL is the City of Chicago ("Chicago" or "the City"), which sued Marriott and Starwood Hotels and Resorts Worldwide LLC (collectively, "Marriott") pursuant to a municipal consumer protection ordinance. Presently before the Court is Marriott's motion for partial summary judgment, ECF 1106, which seeks to limit the extent of the fines Chicago may seek under its ordinance. That motion has been fully briefed. ECF 1106-1, 1121, 1125. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Marriott's motion will be denied without prejudice.

## I. FACTUAL BACKGROUND

This Court will dispense with a full review of the facts underlying this dispute, which have been set forth previously. *See* ECF 1062 at 2-3. In brief, Marriott disclosed on November 30, 2018 that it had been the target of one of the largest data breaches in history. ECF 1121-11 at 2-3. An investigation indicated that over the course of four years, hackers had access to customers' personal information in the Starwood guest information database. ECF 943-31 at 6. In total, the breach impacted approximately 133.7 million guest records associated with the United States,

including an estimated 2.4 million records associated with Chicago. ECF 975-3 at 3-4. Chicago contends that Marriott's conduct with respect to the data breach violated the City's consumer protection ordinance, MCC § 2-25-090. *See* ECF 296. Specifically, Chicago argues that Marriott failed to safeguard the personal information of Chicago residents, failed to implement and maintain reasonable security measures for that information, misrepresented to Chicago residents that it had reasonable security safeguards in place, and failed to give prompt notice of the data breach to Chicago residents. *Id*. ¶¶ 80–108.

On September 8, 2022, this Court granted in part and denied in part Marriott's prior motion for summary judgment and to dismiss for lack of standing. ECF 1062. Specifically, Judge Grimm held that (1) Chicago lacked standing to pursue equitable relief, *id*. at 16-19; (2) the opinions of Chicago's expert established its standing to pursue monetary fines, *id*. at 19-25;[1] (3) Chicago's suit did not exceed its home rule authority, *id*. at 26-34; and (4) Chicago was not seeking to apply MCC § 2-25-090 in an extraterritorial fashion, *id*. at 34-42. Judge Grimm also indicated his plan to recommend that the City's lawsuit be remanded to its transferor court, the United States District Court for the Northern District of Illinois. *Id*. at 42. Marriott, however, opposed remand, contending that this Court should continue to oversee expert merits discovery in this and the related Consumer Track case, which is currently stayed pending appeal to the Fourth Circuit. ECF 1073. On December 5, 2022, the Special Master, Judge Facciola, issued a Report & Recommendation ("R&R") agreeing with Marriott and concluding that remand was inappropriate, in light of the substantial factual overlap between the expert discovery to be sought in the two cases and the

[1] Judge Grimm's opinion also denied Marriott's *Daubert* motion to exclude the opinions of Chicago's expert, Dr. Coleman Bazelon. ECF 1062 at 3-14.

likelihood of duplicative discovery were this case to be remanded. ECF 1089. This Court accepted Judge Facciola's R&R and declined to recommend remand. ECF 1093.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment shall also be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all

other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

The instant summary judgment motion asks this Court to limit as a matter of law the monetary fines Chicago may seek pursuant to its municipal statute, MCC § 2-25-090. The statute provides: "No person shall engage in any act of consumer fraud, unfair method of competition, or deceptive practice while conducting any trade or business in the city." MCC § 2-25-090(a). It further provides that any conduct constituting an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") "shall be a violation of this section." *Id.* The ICFA, in turn, bars "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce," 815 Ill. Comp. Stat. 505/2, including practices that knowingly violate the Illinois Personal Information Protection Act ("PIPA"), 815 Ill. Comp. Stat. 505/2Z. Chicago thus alleges that Marriott violated the IFCA and PIPA—and therefore, MCC § 2-25-090(a)—by failing to protect the data of Chicago residents, falsely representing that it provided adequate data security, and failing to provide prompt notice of the data breach. ECF 296 ¶¶ 80-108.

Of particular relevance to this motion is MCC § 2-25-090(g), which allows Chicago to seek monetary fines for the alleged violations referenced above. That provision states:

> Except as otherwise provided in this chapter, and in addition to any other penalty provided by law, any person who violates any of the requirements of this section shall be subject to a fine of not less than $500.00 nor more than $10,000.00 for each

> offense. Each day that a violation continues shall constitute a separate and distinct offense to which a separate fine shall apply.

MCC § 2-25-090(g). Marriott argues that the second sentence of that provision, permitting a separate fine for each day a violation "continues," does not apply to past conduct, but only to ongoing and active violations. In other words, Marriott contends that Chicago cannot seek daily fines for each day between 2014 and 2018 that the Starwood Database was compromised, because any violations were resolved before this lawsuit was filed in 2019. Marriott's motion also seeks a ruling that the City may not seek a separate fine for each Chicago-associated record in the Starwood database, but instead can only seek fines for each "practice" that constitutes a violation. Despite the fact that expert merits discovery in this case has not yet occurred, Marriott insists that "judicial efficiency and sound case management would best be served by addressing these issues now." ECF 1106-1 at 2.

Chicago's opposition refutes Marriott's interpretation of MCC § 2-25-090(g). But the City also contends, as a threshold matter, that the instant motion is premature and procedurally improper.[2] Specifically, Chicago contends that any ruling on damages at this stage would constitute an impermissible advisory opinion, because (1) future rulings on liability may render the damages issue moot, and (2) Chicago may choose not to seek both daily and per-record fines.

---

[2] Chicago also argues that Marriott's motion is procedurally improper because its damages arguments were not raised in Marriott's prior motion for summary judgment. *See White v. Date Trucking, LLC*, Civ. No. 17-117, 2018 WL 11469493, at *1-2 (D. Md. July 20, 2018) (noting that courts "routinely deny" successive motions for summary judgment "if the arguments in the second motion could have been raised in the first motion" (internal quotation marks omitted)). However, Marriott represents that it was not until an October, 2022 conference with the Special Master—which occurred *after* Judge Grimm ruled on the prior summary judgment motion, *see* ECF 1062—that Chicago's alleged damages theories came to light. *See* ECF 1125 at 3; ECF 1125-1. Thus, this Court disagrees with Chicago that the issues in the instant motion should have been raised in Marriott's previous summary judgment motion.

As a general matter, district courts may exercise their discretion to deny motions for summary judgment in certain circumstances, including where the procedural posture of the case dictates that judgment would be improper. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2728 (4th ed. 2017) ("The timing of the summary-judgment motion also may influence the court to exercise its discretion under Rule 56 and refuse to grant summary judgment because it believes that further development of the case is needed in order to be able to reach its decision."); *see also Haskins v. Hawk*, Civ. No. ELH-11-2000, 2013 WL 1314194, at *23 (D. Md. Mar. 29, 2013) ("[A] district court has discretion 'to deny summary judgment motions even when the standard [might] appear[ ] to have been met.'" (quoting *Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009))). As Chicago notes, this Court and other courts have denied motions for partial summary judgment seeking to limit damages as "premature" where "liability has yet to be determined." *Randolph v. PowerComm Constr. Inc.*, Civ. No. GJH-13-1698, 2014 WL 4981439, at *4 (D. Md. Oct. 1, 2014); *see also Stormo v. State Nat'l Ins. Co.*, No. 19-cv-10034, 2021 WL 4973835, at *2-3 (D. Mass. Oct. 26, 2021) (declining to resolve a motion for partial summary judgment seeking to limit damages, and explaining that such motions should not be "used as a vehicle for obtaining rulings on issues that may never have to be addressed"). This does not mean, however, that motions seeking summary judgment on damages-related issues necessarily constitute advisory opinions. To the contrary, courts regularly rule on damages issues before trial where the resolution does not depend on disputed issues of fact. *See, e.g.*, *Bezek v. First Nat'l Bank of Pa.*, Civ No. SAG-17-2902, 2023 WL 348967, at *14-16 (D. Md. Jan. 20, 2023); *Michelin N. Am, Inc. v. Inter City Tire & Auto Ctr., Inc.*, Civ. No. 6:13-1067-HMH, 2015 WL 12843179, at *1-2 (granting summary judgment on the issue of whether a contractual provision precluded a party from seeking consequential, punitive, or exemplary damages). In *Bezek*, for example, this

Court recently granted partial summary judgment on competing interpretations of the measure of treble damages available to successful plaintiffs under a provision of the Real Estate Settlement and Procedures Act ("RESPA"). 2023 WL 348967, at *14-16.

While the instant motion, as in *Bezek*, presents legal questions of statutory interpretation, this Court nonetheless concludes that the circumstances and posture of this case counsel in favor of denying the instant motion as premature. Most notably, Chicago represents that it has not decided yet whether it will seek both daily and per-record fines. *See* ECF 1121 at 20. It appears that the basis for Marriott's motion is a statement made by counsel for Chicago during an October, 2022 conference with the Special Master that the municipal ordinance allowed Chicago to seek damages under both of the above-mentioned theories. ECF 1125 at 9, ECF 1125-1. But this hardly means that Chicago will in fact seek damages under both theories, and the City has not previously represented as much to this Court. That the City has apparently not conclusively settled on a theory of damages is not surprising, either, given that expert discovery in this case has not yet occurred. *See* C. Wright, A. Miller & M. Kane, *supra* at § 2728 (noting that the timing of a motion for summary judgment "may influence the court to exercise its discretion" in refusing to grant the motion). In effect, Marriott argues it is entitled to summary judgment on the theories of damages it *believes* Chicago will assert. But as Chicago notes in its opposition, it appears that recovery under either damages theory could be substantial, meaning the City may choose to seek only daily fines and not per-record fines (or vice versa). *See* ECF 1121 at 12.[3] Given the circumstances, then,

[3] For similar reasons, this Court's finds the Eighth Amendment concerns raised by Marriott premature at this stage. Marriott in essence argues that Chicago's supposed interpretation of MCC § 2-25-090 would allow it to seek constitutionally excessive fines into the trillions of dollars, and therefore the ordinance should be interpreted so as not to permit daily fines for past conduct and individual fines for each Chicago-affiliated record. *See Clark v. Martinez*¸ 543 U.S. 371, 380-81 (2005) (stating that when one of two possible statutory constructions "would raise a multitude of constitutional problems, the other should prevail"); *see also Wakefield v. ViSalus, Inc.*, 51 F.4th

this Court agrees with Chicago that addressing both damages theories now could lead this Court to unnecessarily opine on significant issues of statutory interpretation that may ultimately prove superfluous to this case.[4] Furthermore, to the extent that Marriott contends that Chicago has failed to adduce adequate proof that can support a per-record theory of fines, *see* ECF 1106-1 at 25-27, this Court finds that such issues are best reserved until after the close of discovery. *See In re Breast Implant Cases*, 942 F. Supp. 958, 961 (E.D.N.Y. 1996) ("In cases where additional information is required to adequately pass on a motion for summary judgement, the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence.").

Relatedly, this Court disagrees with Marriott's assertion that "judicial efficiency and sound case management" are best served by resolving damages issues now as opposed to waiting until the close of discovery, given the distinct possibility that one or both parties may seek summary judgment on merits issues at that point. *See Bezek*, 2023 WL 348967, at *14-16 (adjudicating damages issue as part of cross motions for summary judgment filed after discovery had concluded).

---

1109, 1123 (9th Cir. 2022) (holding that, even where a per-violation fine is constitutional, aggregated statutory damages "are subject to constitutional limitation in extreme situations—that is, when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits" (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). But Marriott's prognostication that it may face trillions in fines requires numerous assumptions, not the least of which being that Chicago will actually pursue both posited damages theories. Furthermore, the City notes that in prior cases arising under MCC § 2-25-090, it has significantly reduced the amount of fines sought from what, in its view, it was statutorily entitled to. *See* ECF 1106-16 (*City of Chicago v. Gold Strike, LLC, et al.*, No. 2019 CH 12943 (Ill. Cir. Ct. Cook Cnty.)) (noting, in motion for entry of judgment against an e-cigarette seller, that while Chicago was entitled to daily fines for fraudulent marketing and sales practices "since [the defendant] first began these practices," it nonetheless sought a lesser, "reasonable" fine assessment); ECF 1121-17 (*City of Chicago v. E-Liquid Depot, et al.*, No. 2018 CH 14183 (Ill. Cir. Ct. Cook Cnty.)) (stating the same and reducing the amount of fines sought from a total "in the millions" to $407,500).

[4] Caution is especially warranted in this case, given that the precise language of MCC § 2-25-090(g) at issue—providing that separate violations of the municipal Code shall accrue "each day that a violation continues"—appears in dozens of provisions throughout the Code. *See, e.g.*, MCC §§ 2-44-120(K); 2-92-416(f); 2-156-080(b)(4); 2-156-465(b)(1)-(3); 4-4-333(c); 4-4-334(c).

In this Court's view, damages can be more effectively and efficiently addressed after discovery, once the record evidence and theories of liability and damages have been more fully developed. Furthermore, the Court has already expended significant resources addressing Marriott's prior motion for summary judgment. *See* ECF 1062. While one of the purposes of summary judgment is to promote efficiency and judicial economy, piecemeal motions practice—particularly on issues that may not ultimately need to be resolved—has the opposite effect. *See Wootten v. Virginia*, No. 6:14-CV-00013, 2016 WL 4742336, at *3 (W.D. Va. Sept. 12, 2016) ("[R]epetitive motion practice undermines both the Court's and the parties' interests in efficiency and finality."). Although resolving the scope of available damages now could theoretically help guide settlement discussions, "the fact that a hypothetical issue is 'an important one to the parties' and 'might hasten the informal resolution of the litigation' does not mean that the Court should decide the issue." *Stormo*, 2021 WL 4973835, at *3 (quoting *Borup v. CJS Sols. Grp., LLC*, Civ. No. 18-1647 (PAM/DTS), 2019 WL 4820732, at *1 (D. Minn. Oct. 1, 2019)). For all of the above reasons, then, this Court concludes that resolution of the damages issues raised by Marriott are best reserved for a later date.

## IV.   CONCLUSION

For the reasons stated above, Marriott's motion for partial summary judgment, ECF 1106, will be DENIED WITHOUT PREJUDICE. Marriott is free to re-raise its damages arguments, to the extent that they remain relevant, following the conclusion of discovery. A separate Order follows.

Dated: July 5, 2023                                         /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge