# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION<br><br><br>THIS DOCUMENT RELATES TO: ALL CONSUMER ACTIONS | Case No.: 8:19-md-02879-JPB<br><br>JUDGE JOHN PRESTON BAILEY |

### BRIEF OF DEFENDANT ACCENTURE LLP
### CONCERNING CLASS WAIVER ISSUE

Craig S. Primis, P.C. (Bar No. 811151)
Devin S. Anderson (Bar No. 805892)
Emily M. Long (Bar No. 811317)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: 202.389.5000
Facsimile: 202.389.5200

*Attorneys for Defendant Accenture LLP*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

      A.     Accenture's Role ..................................................................................... 2

      B.     Plaintiffs' Class Claims Against Accenture and Marriott ..................... 3

      C.     Procedural History ................................................................................. 5

ARGUMENT ....................................................................................................................... 6

I.      The Class Waiver in the SPG Program's Terms & Conditions Is Enforceable and Applicable to This Litigation ................................................................... 7

II.     The Class Waiver Bars Plaintiffs' Claims Against Accenture Under Equitable Estoppel . 7

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)........................................................................................6

*Bailey v. Vulcan Materials Co.*,
  2021 WL 5860743 (N.D. Ga. Nov. 16, 2021) ...............................................8

*Denney v. BDO Seidman, L.L.P.*,
  412 F.3d 58 (2d Cir. 2005)..........................................................................9, 11

*Hoffman v. Finger Lakes Instrumentation, LLC*,
  789 N.Y.S.2d 410 (Sup. Ct. 2005).................................................................7, 9

*In re Marriott Int'l, Inc. v. Accenture LLP*,
  78 F.4th 677 (4th Cir. 2023) .....................................................................5, 6, 7

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013).................................................6, 8, 9, 10, 11

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
  300 F. Supp. 2d 1107 (D. Kan. 2003).............................................................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)...........................................................................10

*Moss v. BMO Harris Bank, N.A.*,
  24 F. Supp. 3d 281 (E.D.N.Y. 2014) ............................................................10

*Naranjo v. Nick's Mgmt., Inc.*,
  2023 WL 416313 (N.D. Tex. Jan 25, 2023) ..................................................8

*Noel v. Paul*,
  2022 WL 4125216 (N.D. Tex. Sept. 9, 2022)..............................................7, 10

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010)...........................................................................9, 10

*Rothschild v. Title Guarantee & Tr. Co.*,
  204 N.Y. 458 (1912) ......................................................................................7

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*
  198 F.3d 88 (2d Cir. 1999).............................................................................11

*Story v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    427 F. Supp. 3d 822 (E.D. La. 2019).................................................................................7, 11

## INTRODUCTION

To the extent this Court determines that the class waiver provision in the Starwood Preferred Guest ("SPG") Terms & Conditions is valid, enforceable, and bars plaintiffs' class claims against Marriott, the same result should follow as to plaintiffs' class claims against Accenture, Marriott's co-defendant.  Under the doctrine of equitable estoppel, courts permit non-signatories to a contract to enforce contract provisions—including class waivers—where (1) claims against the non-signatory defendant are factually intertwined with the claims against a signatory defendant, and (2) there is a close relationship between the non-signatory and signatory defendants.

Both are true here.  Throughout this litigation arising out of the 2018 Marriott data breach, plaintiffs have maintained that Marriott and Accenture's conduct is linked.  The entire premise of plaintiffs' theory of liability as to Accenture is that Accenture bears responsibility for safeguarding plaintiffs' data because of the infrastructure outsourcing work it was doing under contract to support then-Starwood's IT environment.  Plaintiffs' claims often treat Marriott and Accenture as interchangeable: plaintiffs allege that defendants jointly failed to implement adequate security measures to protect plaintiffs' personal information and therefore breached their duties of care towards plaintiffs.  Basic principles of equity do not permit plaintiffs to seek the benefit of alleging that Accenture and Marriott were acting in concert while denying Accenture the benefit of the class waiver.  For the reasons Marriott provides, the class waiver is enforceable and applies to all of plaintiffs' claims.  And, for the reasons below, the waiver equally bars any renewed class claims against Accenture.

## BACKGROUND

On November 30, 2018, Marriott announced that its legacy Starwood guest-reservation database had experienced a cyberattack.  Forensic investigation determined that a threat actor may have gained access to the personal information of Starwood guests—including names, addresses, email addresses, phone numbers, and birthdates, as well as some passport and payment-card numbers, the vast majority of which were encrypted.  ECF No. 598-1 at 5–7.  Much of the information in this database is stale, dating as far back as 2002.  ECF No. 859-41 at 183:12–14. Following Marriott's announcement of the cyberattack, numerous lawsuits were filed against Marriott and were ultimately consolidated in a multi-district litigation in the District of Maryland before Judge Paul Grimm.

### A.    Accenture's Role

Accenture was an IT contractor for Starwood during the relevant period, "providing the support and services to ensure that" the "Starwood IT systems" were "up and running" pursuant to a Master Services Agreement.  ECF No. 1019-18 at 46:10–17.  Given its role as a behind-the-scenes third-party service provider, Accenture never interacted directly with Marriott customers. Nevertheless, upon learning that Accenture performed work for Marriott's legacy Starwood systems, plaintiffs added Accenture as a named defendant and asserted claims for negligence and negligence per se, alleging that Accenture owed them a duty of care solely because of its role as Marriott's "third party IT security provider."  *See* ECF No. 537 ¶¶ 5, 171, 249–255.

After consolidation in the MDL, this Court directed parties to select bellwether claims that would be subject to motions to dismiss, discovery, and ultimately class certification.  Accenture and plaintiffs selected negligence claims under Connecticut, Florida, and Maryland law, and negligence per se claims under Connecticut, Georgia, and Maryland law.  ECF No. 438. Accenture moved to dismiss plaintiffs' negligence and negligence per se claims on the basis that

its relationship with plaintiffs was too attenuated to give rise to a duty of care.  *See generally* ECF No. 465-1.  Judge Grimm disagreed.  *See generally* ECF No. 671.  In ruling against Accenture, the Court found that Accenture's contract with Starwood created an "intimate nexus" or "link" between plaintiffs and Accenture because, among other things, "Accenture explicitly acknowledged in its contract with Starwood that 'it had a duty to protect the Personal Information of end-users, defined to include guests and customers of Starwood.'"  ECF No. 671 at 13–14 (citing the language of Accenture's contract with Starwood); *see also id.* at 16 ("Accenture specifically contracted with Starwood to protect the personal information of this class of potential claimants— Starwood customers—who entered their information on Starwood's on-line reservation system."). This relationship between Accenture and plaintiffs, which the Court described as "equivalent of contractual privity," *id.* at 16, was found sufficient to give rise to a duty of care under Florida, Georgia, Connecticut, and Maryland law.

## B.     Plaintiffs' Class Claims Against Accenture and Marriott

After nearly a year of fact and expert discovery, plaintiffs moved to certify sprawling classes against both Marriott and Accenture that encompassed every consumer in the bellwether states who provided personal information to Starwood before and during the breach.  ECF No. 1022-1 at 4–7.  The proposed classes sought to recover for (1) breach of contract, (2) consumer fraud, and (3) negligence against Marriott, and for negligence only against Accenture.  *Id.*  The proposed negligence damages classes against Marriott and Accenture were identical—alleging harm arising out of the supposed loss of inherent value caused by the threat actor accessing the information of persons who gave information to Starwood in connection with the making of a reservation at a Starwood property.  *Id.* at 3.  In their class brief, plaintiffs usually treated the alleged misconduct of both "Defendants" as indistinguishable.  *See id.* at 9 ("Defendants committed at least four major security failures"); *id.* at 17 ("neither Marriott nor Accenture took

anything close to proper responsibility to secure Plaintiffs' information"); *id.* at 30 ("whether Defendants' inadequate security caused the Breach and harmed Plaintiffs is a common question with a common answer"); *id.* at 31–32 ("[w]hether Defendants' inadequate data security and/or uniform misrepresentations or omissions regarding the data security violated these statutes is a common, predominating question that will be answered the same way for each class member").

On May 3, 2022, Judge Grimm certified two classes: an overpayment damages class against Marriott under Rule 23(b)(3) and a so-called "issue" class on two elements of negligence (duty and breach) against Marriott and Accenture under Rule 23(c)(4).  ECF No. 1014 at 69–73. The Court denied certification of the Rule 23(b)(3) damages class against Accenture and Marriott on plaintiffs' loss-of-value theory, *id.* at 33, 60–61, finding that theory could not support class certification because plaintiffs' expert had not showed how his model could be used to measure class-wide injury, or indeed any injury at all.  *See Daubert* Order, ECF No. 1012 at 24–38.

Nevertheless, Judge Grimm found that there were "efficiencies" inherent in trying class members' claims as to both Accenture's and Marriott's conduct simultaneously.  The Court reasoned that, having "certified damages classes against Marriott," it would "already be analyzing the intertwined factual circumstances relevant to the duty and breach issues" that it certified against Accenture and Marriott.  ECF No. 1014 at 66.  The Court therefore found that the requirements of Rule 23(b)(3)—including commonality, predominance, and superiority—were met as to the issue classes.  *See id.* at 3 ("The gravamen of these allegations in that Marriott and Accenture failed to take reasonable steps to protect Plaintiffs' personal information against the foreseeable risk of a cyberattack and, in the case of Marriott, contrary to its express privacy statements and statutory duties."); *id.* at 20 ("Common questions of fact include whether Defendants knew about their data security vulnerabilities, what Defendants did or did not do to address those vulnerabilities, and

whether the hacker(s) exploited those vulnerabilities to exfiltrate customers' PII."); *id.* at 21 ("The common answers to the common questions of fact discussed above will ultimately generate yet more common answers to common questions of law—i.e., whether Defendants failed to adequate protect customers' PII such that they breached a duty or contract or violated a state consumer protection statute."); *see also id.* at 64–65 (similar).

### C.    Procedural History

On appeal, Marriott sought reversal of class certification on the grounds that all claims certified for class treatment were barred by the class waiver in the SPG Program Terms & Conditions.  Marriott Op. Br., Civil No. 22-1744, ECF No. 28 at 2.  Reiterating arguments made before the district court, Marriott asserted that deferring the issue of class waiver until the merits stage of litigation undermines the expectations of contracting parties and abrogates their agreement to litigate as individuals.  Marriott Op. Br. at 18–19.  Defendants also sought reversal of the Rule 23(c)(4) "issue" class on the grounds that (a) the Court improperly certified a class on only two elements of negligence—duty and breach, which contravened Supreme Court direction, Rule 23, and Article III; and (b) the Court was wrong that class treatment was a superior mechanism for adjudication of those elements, which the Court based based in large part on its decision to certify a separate Rule 23(b)(3) damages class as to Marriott.  *See* Accenture Op. Br., Civil No. 22-1744, ECF No. 27 at 11–13.

The Fourth Circuit ruled for defendants on both issues.  *In re Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 687 (4th Cir. 2023).[1]  Explaining that "a class-waiver defense is not a defense to liability but to being required to litigate a class action at all," the appellate court held that class waiver provisions must be addressed at the certification stage of litigation.  *Id*.  It

---

[1]    All case quotations have been cleaned up unless otherwise noted.

therefore vacated the class certification order and remanded for further consideration of the applicability and enforceability of the class waiver. *Id.* at 680. Likewise, the Fourth Circuit found that the issue class against both defendants was improperly certified because, without the Rule 23(b)(3) damages classes against Marriott, "nothing remains to support the district court's superiority finding as to the issue classes against Accenture." *Id.* at 690. The Fourth Circuit acknowledged that this court could reconsider that determination on remand, while "taking into account its ultimate disposition of the plaintiffs' motion to certify Rule 23(b)(3) damages classes against Marriott." *Id.*

In light of the Fourth Circuit's recent ruling that the applicability of the class waiver must be addressed at the class certification stage and that the district court should decide questions concerning the applicability and scope of the waiver, as well as this Court's subsequent order for briefing on the issue, *see* ECF No. 1135, Accenture now submits this brief concerning its ability to invoke the class waiver under equitable estoppel. Accenture preserved the estoppel defense in its answer to the complaint, *see* ECF No. 691, and given the Fourth Circuit's ruling and this Court's direction, this is the appropriate time to raise the equitable estoppel issue with this Court. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013) ("In the context of a class action, however, the [non-signatory] Defendants could not have waived their rights to enforce the contractual clauses at issue," including class waiver, "until the class composition was final.") (citing cases).

## ARGUMENT

Under New York law, the class waiver in the SPG Program Terms & Conditions applies with full force to the claims raised by plaintiffs against defendants in this litigation, and Accenture, although a non-signatory to those terms and conditions, is equally entitled to their benefit under

the doctrine of equitable estoppel.[2]  The class waiver thus bars any renewed class claims against Accenture on remand.

## I.      The Class Waiver in the SPG Program's Terms & Conditions Is Enforceable and Applicable to This Litigation

Accenture fully incorporates the arguments made by Marriott regarding the scope and application of the class waiver to this litigation.  For the reasons laid out by Marriott in its brief, the class waiver in the SPG Program Terms & Conditions is valid and enforceable under New York law.  Moreover, the broad language of the waiver—which applies to *any* disputes "arising out of or related to the SPG Program" or its "Terms," *In re Marriott Int'l, Inc.*, 78 F.4th at 682—readily covers this dispute and forecloses all of plaintiffs' class claims, whether in contract, tort, or otherwise.

## II.     The Class Waiver Bars Plaintiffs' Claims Against Accenture Under Equitable Estoppel

Principles of equitable estoppel demand that the waiver in the SPG Program Terms & Conditions apply with equal force to plaintiffs' class claims against Accenture.  Like other equitable doctrines, equitable estoppel does not "rest upon a consideration or agreement or legal obligation," but rather acts as a backstop that ensures basic fairness in dealings between parties and allows non-signatories to enforce contract provisions in certain circumstances.  *Rothschild v.*

---

[2]      Equitable estoppel is governed by the law of the state that governs the contract.  In this case, the SPG Program Terms & Conditions provide that New York law governs the agreement. Therefore, New York's equitable estoppel law applies.  *See, e.g*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (state law is applicable to determine the scope of contracts, "including the question of who is bound by them"); *Noel v. Paul*, 2022 WL 4125216, at *5 (N.D. Tex. Sept. 9, 2022) (same); *Story v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 427 F. Supp. 3d 822, 828 (E.D. La. 2019) (same).

*Title Guarantee & Tr. Co.*, 204 N.Y. 458, 464 (1912); *see also, e.g.*, *Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S.2d 410, 415 (Sup. Ct. 2005).

Consistent with that guiding principle, several courts, including a court in this district, have allowed non-signatories to benefit from class waiver provisions under the doctrine of equitable estoppel. *See In re Titanium Dioxide.*, 962 F. Supp. 2d at 852 (allowing non-signatory to invoke class waiver); *Naranjo v. Nick's Mgmt., Inc.*, 2023 WL 416313, at *10–11 (N.D. Tex. Jan 25, 2023) (same); *Bailey v. Vulcan Materials Co.*, 2021 WL 5860743, at *7 (N.D. Ga. Nov. 16, 2021) (same); *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1131 (D. Kan. 2003) (similar). While the analytical framework differs slightly depending on the relevant state laws, these courts all agree that, when plaintiffs bring claims that rest in part on a contract and allege interdependent or coordinated conduct by a signatory and a non-signatory to that contract, plaintiffs are estopped from denying the non-signatory defendant the benefit of the class waiver provision. *See, e.g.*, *In re Titanium Dioxide*, 962 F. Supp. 2d at 852; *Naranjo*, 2023 WL 416313, at *10–11; *Bailey*, 2021 WL 5860743, at *7.

*Titanium Dioxide* is the leading decision in this space. The plaintiffs there were customers who had entered contracts with various producers of titanium dioxide pigments. 962 F. Supp. 2d at 852. After two defendants settled, the remaining defendants sought to enforce several provisions, including class waiver provisions, in plaintiffs' contracts with the producers who were no longer part of the case. *Id.* at 849. The non-signatory defendants alleged that they were entitled to enforce those provisions under the doctrine of equitable estoppel. *Id.* The court analyzed the issue under the laws of "Delaware, Ohio, and New York," which "apply the same equitable estoppel test applied by the Fourth Circuit." *Id.* The court explained that "for equitable estoppel to apply, there must be allegations of coordinated behavior between a signatory and a nonsignatory

defendant, and the claims against both the signatory and nonsignatory must be based on the same facts, be inherently inseparable, and fall within the scope of" the relevant clause. *Id.* at 851. Finding that plaintiffs had alleged "coordinated behavior between signatories and non-signatories" to a contract and brought claims "based on the same facts," the *Titanium Dioxide* court held that equitable estoppel applied. *Id.*

Other courts applying New York's equitable estoppel doctrine have similarly allowed non-signatories to enforce provisions of a contract where claims against signatory and non-signatory defendants are based on the same facts. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–28 (2d Cir. 2010) (allowing non-signatory to enforce an arbitration clause); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (same); *Hoffman, LLC*, 789 N.Y.S.2d at 415 (same). As the Second Circuit explained in *Ragone*, the key question is whether "a careful review of the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them" demonstrates that (1) the issues the non-signatory seeks to resolve are "factually intertwined" with the contract, and (2) the relationship among the parties justifies allowing a non-signatory to enforce the relevant contractual provision. 595 F.3d at 126–28 (citations and internal quotation marks omitted).

Here, as in *Titanium Dioxide*, New York law supports the application of equitable estoppel and allows Accenture to enforce the class waiver provision in the SPG Terms & Conditions. **First**, the allegations against Accenture in this litigation arise out of the very same facts as the dispute between the original parties to the agreement—plaintiffs and Marriott. *See Ragone*, 595 F.3d at 126–28. Indeed, the Court recognized at class certification that the "gravamen" of plaintiffs' allegations is "that Marriott and Accenture failed to take reasonable steps to protect Plaintiffs' personal information against the foreseeable risk of a cyberattack." ECF No. 1014 at 3; *see also*

*id.* at 20.  The Court also took the view that it could try plaintiffs' contract claims against Marriott simultaneously with the negligence claims against Marriott and Accenture because of the allegedly "intertwined factual circumstances relevant to [] duty and breach."  *Id.* at 66; *see also id.* at 21 ("The common answers to the common questions of fact discussed above will ultimately generate yet more common answers to common questions of law—i.e., whether Defendants failed to adequately protect customers' PII such that they breached a duty or contract or violated a state consumer protection statute.").  At least as described by plaintiffs and Judge Grimm, plaintiffs' claims against Accenture are thus plainly "based on the same facts" and "inherently inseparable" from their claims against Marriott.  *In re Titanium Dioxide*, 962 F. Supp. 2d at 851.

It is true that on appeal, Accenture contested Judge Grimm's certification of Rule 23(c)(4) issue classes as to these two elements of negligence, arguing that certification was inappropriate because, *inter alia*, the issue classes would not meet the Rule 23 requirements of predominance or superiority.  *See* Accenture Op. Br. at 31–49.  Accenture maintains that litigating two elements of negligence—duty and breach—where causation and injury will still be litigated on an individual basis does not meet Rule 23's requirements for all of the reasons explained in its briefing both before the district court and on appeal.  But the point for present purposes is that plaintiffs are *claiming* that the issues concerning Marriott and the issues concerning Accenture are overlapping. That is all that matters when it comes to the equitable principles in play here.

In similar circumstances, courts applying New York law have found that there was "no question that the subject matter of the dispute" between plaintiffs and a non-signatory was sufficiently "factually intertwined" for purposes of estoppel.  *Ragone*, 595 F.3d at 126–28 (equitable estoppel applied where plaintiffs' disputes with signatory and non-signatory were effectively the "same dispute"); *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177–78

(2d Cir. 2004) (same); *Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 289 (E.D.N.Y. 2014) (similar); *see also Noel v. Paul*, 2022 WL 4125216, at *11 (N.D. Tex. Sept. 9, 2022) (similar); *Story v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 427 F. Supp. 3d 822, 828 (E.D. La. 2019) (similar).

*Second*, plaintiffs allege a close relationship between Accenture's and Marriott's conduct that further supports the application of equitable estoppel. Under New York law, this element is satisfied where plaintiffs treat signatory and non-signatory defendants as a single unit or allege that they worked in concert to cause plaintiffs' injuries. In *Denney*, for example, the Second Circuit explained that where plaintiffs allege that defendants acted in concert to cause their injuries, plaintiffs "cannot [] escape the consequences of those allegations" by later arguing that defendants lack the close relationship necessary for estoppel. *See* 412 F.3d at 70. Likewise, in *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, the Second Circuit found a close relationship when a signatory party had "treated ... [the] related companies as though they were interchangeable" and as "a single unit" in its complaint in related litigation. 198 F.3d 88, 97–98 (2d Cir. 1999). And in *Titanium Dioxide*, it was sufficient that the plaintiffs had alleged "coordinated behavior" between the signatory and non-signatory defendants. 962 F. Supp. 2d at 845, 851.

Similarly, throughout this litigation, plaintiffs have alleged that Marriott and Accenture engaged in a shared course of conduct. For example, in their Second Amended Consolidated Complaint, plaintiffs allege that "[i]n conjunction with Starwood and Marriott, Accenture's ongoing failure to maintain adequate security controls . . . was a direct and proximate cause of the Data Breach." *See* ECF No. 537 ¶ 255. In their class certification briefing, plaintiffs repeatedly alleged that "***Defendants*** committed…security failures," ECF No. 1022-1 at 9, and argued that

"whether ***Defendants'*** inadequate data security and/or uniform misrepresentations or omissions regarding the data security violated these statutes is a common, predominating question that will be answered the same way for each class member." *Id.* at 31–32.  And, in his opinion regarding class certification, Judge Grimm accepted plaintiffs' view of the world, referring to "***Marriott and Accenture's*** course of conduct" and asserting that "***Defendants*** operated one data security system with centralized leadership."  ECF No. 1014 at 20–21 (emphasis added).  Plaintiffs have, in other words, treated Accenture and Marriott as a single, interchangeable unit for purposes of their class claims, and that alleged close relationship justifies estoppel.

Plaintiffs cannot have it both ways.  Plaintiffs plainly root their dispute with Accenture in the same facts as their dispute with Marriott and based on the same alleged ***joint*** misconduct.  Basic principles of equity do not permit plaintiffs to seek the benefit of alleging that Accenture and Marriott were acting in concert while denying Accenture the benefit of the class waiver.  Accenture is entitled to invoke the waiver under the doctrine of equitable estoppel.

## CONCLUSION

For the foregoing reasons, the class waiver precludes plaintiffs' classes against Accenture.


Dated: October 13, 2023

/s/ Devin S. Anderson
Devin S. Anderson (Bar No. 805892)
Craig S. Primis, P.C. (Bar No. 811151)
Emily M. Long (Bar No. 811317)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: 202.389.5000
Facsimile: 202.389.5200
*Attorneys for Defendant Accenture LLP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October, I caused the foregoing Supplemental Brief to be filed with the Clerk of Court via the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Devin S. Anderson
Devin S. Anderson (Bar No. 805892)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202.389.5000
Facsimile: 202.389.5200

*Attorney for Defendant Accenture LLP*