**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION | MDL NO. 19-md-2879<br><br>HON. JOHN P. BAILEY |

**PLAINTIFFS' MEMORANDUM ADDRESSING THE EFFECT OF THE CLASS WAIVER PROVISION CONTAINED IN THE STARWOOD PREFERRED GUEST PROGRAM ON CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 2

III.   PROCEDURAL BACKGROUND ..................................................................... 3

IV.   ARGUMENT ...................................................................................................... 7

     A.     Marriott waived enforcement of its Choice of Law and Venue Clause. ................. 7

          1.     Through its conduct, Marriott waived the Venue Clause............................ 8

          2.     Marriott cannot selectively enforce one aspect of the Venue Clause........ 15

          3.     Marriott's previous arguments do not change the above analysis. ........... 15

     B.     Marriott's class-action waiver would not have been enforceable even if timely invoked. ....................................................................................... 17

          1.     Parties in federal court cannot contract around the Federal Rules of Civil Procedure through pre-dispute adhesion contracts. ......................... 17

          2.     Marriott's Venue Clause is unconscionable. ............................................. 22

     C.     To the extent Marriott's Venue Clause is enforceable—and it is not—it does not apply to Plaintiffs' non-contract claims. ........................................ 23

V.    CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*American Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013)..............................................................................................20

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................................19, 20

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)................................................................................................18

*Cadigan v. Liberty Helicopters, Inc.*,
206 A.D.3d 523, 168 N.Y.S.3d 815 (N.Y. App. 2022) ........................................13

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
949 F.2d 51 (2d Cir. 1991)...................................................................................13

*In re County of Orange*,
784 F.3d 520 (9th Cir. 2015) ...............................................................................21

*Davis v. Oasis Legal Fin. Operating Co., LLC*,
936 F.3d 1174 (11th Cir. 2019) ...........................................................................20

*Dugan v. TGI Fridays, Inc.*,
231 N.J. 24, 171 A.3d 620 (2017).......................................................................21

*Eddlemon v. Bradley Univ.*,
65 F.4th 335 (7th Cir. 2023) ...............................................................................21

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018).........................................................................................20

*Frankel v. Citicorp Ins. Servs., Inc.*,
80 A.D.3d 280, 913 N.Y.S.2d 254 (N.Y. App. Div. 2010) ..................................22

*Gamble v. New England Auto Fin., Inc.*,
735 F. App'x 664 (11th Cir. 2018) ......................................................................24

*Gillman v. Chase Manhattan Bank, N.A.*,
534 N.E.2d 824, 73 N.Y.2d 1 (N.Y. 1988).........................................................22

*Hill v. Xerox Bus. Services, LLC*,
59 F.4th 457 (9th Cir. 2023) ...........................................................................13, 16

# TABLE OF AUTHORITIES

**Page**

*Hooper v. Advance Am.*,
 589 F.3d 917 (8th Cir. 2009) .................................................16

*Killion v. KeHE Distributors*, *LLC*,
 761 F.3d 574 (6th Cir. 2014) ...............................................20

*Klock v. Lehman Brothers Kuhn Loeb Inc.*,
 584 F. Supp. 210 (S.D.N.Y. 1984)........................................23

*Krape v. PDK Labs Inc.*,
 194 F.R.D. 82 (S.D.N.Y. 1999) ...........................................12

*Krock v. Lipsay*,
 97 F.3d 640 (2d Cir. 1996).....................................................23

*Kumaran v. National Futures Ass'n*,
 No. 1:20-cv-03668, 2023 WL 5293903 (S.D.N.Y. Aug. 17, 2023) ...........................................9

*Leasing Serv. Corp. v. Crane*,
 804 F.2d 828 (4th Cir. 1986) ...............................................21

*LeBlanc v. Halliburton Co.*,
 414 F. Supp. 3d 1360 (D.N.M. 2019) ...................................11

*Licitra v. Gateway, Inc.*,
 189 Misc.2d 721, 734 N.Y.S.2d 389 (N.Y. Civ. Ct. Oct. 18, 2001)........................................22

*Lindsay v. Carnival Corp.*,
 No. 20-cv-982, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ...........................................20

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
 363 F. Supp. 3d 1372 (J.P.M.L. 2019)................................3, 14

*Martin v. Marriott Int'l, Inc.*,
 No. CV 18-00494, 2019 WL 4201260 (D. Haw. July 12, 2019)........................................11

*Martrano v. Quizno's Franchise Co.*,
 No. 08-cv-0932, 2009 WL 1704469 (W.D. Pa. June 15, 2009) ........................................18, 19

*McBurnie v. Acceptance Now, LLC*,
 643 F. Supp. 3d 1041 (N.D. Cal. 2022) ..............................15, 16

*McCormick v. Resurrection Homes*,
 38 Misc.3d 847, 956 N.Y.S.2d 844 (Civ. Ct. 2012) ...............................................22

# TABLE OF AUTHORITIES

**Page**

*Morgan v. Sundance*,
    596 U.S. 411 (2022)..........................................................................................8, 13, 17

*Morlee Sales Corp. v. Manufacturers Tr. Co.*,
    172 N.E.2d 280, 9 N.Y.2d 16 (1961)..................................................................15

*Onekey, LLC v. Byron Place Assocs., LLC*,
    200 A.D.3d 896, 160 N.Y.S.3d 301 (2021) .........................................................23

*Philadelphia Indemnity Ins. Co. v. Markel Ins. Co.*,
    --- F.Supp.3d ---, No. 1:20-cv-00669, 2023 WL 113748 (D. Md. Jan. 5, 2023) ......................9

*Rolon v. U.S. Amada, Ltd.*,
    No. 95 Civ. 6231, 1997 WL 724798 (S.D.N.Y. Nov. 18, 1997) .............................13

*Scarcella v. Am. Online, Inc.*,
    11 Misc.3d 19, 811 N.Y.S. 2d 858 (N.Y. Sup. Ct. Dec. 28, 2005)..........................22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)..............................................................................17, 19, 21

*Sholopa v. Turk Hava Yollari A.O., Inc.*,
    595 F. Supp. 3d 257 (S.D.N.Y. Mar. 31, 2022)...................................................24

*Smith v. GC Services Limited Partnership*,
    907 F.3d 496 (7th Cir. 2018) ...............................................................................15

*Power Authority of New York ex rel. Solar Liberty Energy Systems, Inc. v.
    Advanced Energy Indus., Inc.*,
    No. 19-cv-1542, 2021 WL 4244280 (W.D.N.Y. Aug. 23, 2021) ................10, 11, 12

*Stern v. Marshall*,
    564 U.S. 462 (2011)..............................................................................................13

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)..............................................................................18, 19, 21

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
    248 F.3d 1109 (11th Cir. 2001) ...........................................................................24

*Traton News, LLC v. Traton Corp.*,
    528 Fed. App'x 525 (6th Cir. 2013) ....................................................................24

# TABLE OF AUTHORITIES

**Page**

*Tsadilas v. Providian Nat'l Bank*,
   13 A.D.3d 190, 786 N.Y.S.2d 478 (N.Y. App. Div. 2004) ....................................................22

*White v. Samsung Electronics Am., Inc.*,
   61 F.4th 334 (3d Cir. 2023) ...............................................................................15

**Secondary Sources**

Stephen L. Sepinuck, *Drafting a Choice-of-Law Clause*, 10 Trans. L. 4 (2020) ...................23, 24

Elizabeth Thornburg, *Designer Trials*, 2006 J. of Disp. Resol. 1 (2006)......................................20

**Rules and Statutes**

28 U.S.C. § 1404........................................................................................................18, 19

Class Action Fairness Act, 28 U.S.C. § 1332(d) ...................................................................9, 12

Federal Arbitration Act, 9 U.S.C. §§ 1-19...............................................................................19

Fed. R. Civ. P. 12..........................................................................................................20

Fed. R. Civ. P. 23..................................................................................................*passim*

Fed. R. Civ. P. 26..........................................................................................................20

Fed. R. Civ. P. 30..........................................................................................................20

Fed. R. Civ. P. 38..........................................................................................................21

Fed. R. Civ. P. 56..........................................................................................................20

## I.  <u>INTRODUCTION</u>

One of Marriott's predecessor companies, Starwood Hotels, hired Accenture to handle internal IT operations. Accenture did that job poorly, and Marriott's due diligence when it purchased Starwood showed that. Indeed, when Marriott bought Starwood in 2016, Marriott was warned to invest heavily to mitigate Accenture's long-standing neglect of Starwood's systems. Marriott gambled that it would be sufficient to simply replace the decaying computer architecture down the road as it combined the Starwood system with its own. It lost that gamble. Criminals had already broken into Starwood's networks in 2014 and obtained entire databases of customer data while there. Those criminals exfiltrated that data from right under Marriott's nose in 2018. Put simply: Accenture let the criminals in, and Marriott let them out.

Many lawsuits around the country followed and Marriott immediately faced a choice: whether to attempt to enforce what Starwood had titled as a "Choice of Law and Venue" provision in the Starwood Loyalty Program's Terms and Conditions (the "Venue Clause"). If enforceable, it would spare Marriott of collective litigation, but it would also bind the company to potentially endless, seriatim proceedings in New York under New York's consumer friendly law, which, for example, includes significant statutory damages and attorneys' fees. Marriott chose not to take that risk. Instead, Marriott moved for an MDL so that a single court could evaluate all claims together (as opposed to the Venue Clause provision, which purportedly precludes grouping of claims), it asked to avoid New York courts in favor of the courts of its home district in Maryland (as opposed to the Venue Clause, which requires any litigation occur in New York), and it supported a bellwether process to test class claims under multiple state laws (as opposed to the Venue Clause, which specifies New York law, alone, would apply).

At the class certification stage of this case, however, Marriott apparently decided that it did not like where its choices had led it. It finally asked Judge Grimm to enforce a few words in its

Venue Clause—tellingly, not its entirety—that ostensibly precluded the Court from considering class treatment of claims. In other words, Marriott gambled that Judge Grimm would suddenly gift it a jackpot after years of litigation, discovery, court conferences, and creation of the bellwether claim vehicle. He declined to do so. While Judge Grimm did not specifically rule on the enforceability of the class waiver within the Venue Clause, he rejected denying class treatment because of it, observing Marriott had very likely waived it and withholding ruling for another time. ECF No. 1014 at 25 n. 26.

Judge Grimm's observation was correct. If the clause was ever enforceable, it isn't today: Marriott waived it by asking for this MDL in the first place, not to mention its conduct over the four years of collective litigation (recall: the clause ostensibly does not permit *any* consolidated litigation). And even if somehow the clause could still be enforceable now, Defendants cannot pick a few words from a two-sentence clause and attempt to ignore the rest of it. Plaintiffs note, moreover, that the clause was not enforceable in the first place, which may well explain why Marriott never sought to enforce it until the litigation started turning against it. Plaintiffs respectfully ask the Court to hold that  Marriott may not advance the Venue Clause as a defense.

## II.  <u>FACTUAL BACKGROUND</u>

This data breach was years in the making. From 2014 to September 2018, attackers infiltrated the Starwood's datacenter; had nearly unfettered access to entire databases of customer information; and obtained names, addresses, phone numbers, email addresses, and payment-card information of millions of hotel customers. ECF No. 1014 at 2.[1] And from many customers, the

---

[1]     While Judge Grimm's Memorandum Opinion was vacated by the Fourth Circuit, Plaintiffs cite to it as Marriott did not dispute that the Court's recitation of the facts of this case is correct.

criminals took even more personal information such as passport information, room preferences, and travel destinations. 1022-1 at 1.[2]

Marriott bought Starwood in 2016; *i.e.*, after Accenture let criminals enter the Starwood database, but before anyone had let them out. ECF No. 113 at 1. At the time, Marriott knew that it needed to make significant investments to fix various security deficiencies. *See, e.g.*, ECF No. 1022-1 at 8-9. In-house IT personnel both before and after the acquisition warned of the weak cybersecurity, including the ominous foreshadowing that failure to fix IT security deficiencies would leave Marriott "vulnerable to a weak defense in the court of law in case of a breach." ECF No. 1022-1 at 2, 8-9, 13.

The warnings unfortunately proved prescient. Following the breach, the United Kingdom Information Compliance Office ("ICO") fined Marriott millions of dollars and concluded that Marriott made four critical security errors that led to the breach when Marriott: (a) did not implement multifactor authentication; (b) overprivileged numerous accounts; (c) failed to monitor its systems properly; and (d) did not encrypt personal information. ECF No. 1022-1 at 10. Notably, these are the exact same things Marriott knew in 2016 that it would need to fix. *See, e.g., id.* at 8-17.

## III.   **PROCEDURAL BACKGROUND**

After announcing the breach in November of 2018, numerous plaintiffs filed suit in various courts, including in New York. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374-75 (J.P.M.L. 2019) ("*MDL* Order"). Marriott supported consolidation of all of the various lawsuits against it in a single MDL and asked that this single MDL take place near

---

[2]   *See* Marriott Announces Starwood Guest Reservation Database Security Incident (Nov. 30, 2018), https://news.marriott.com/news/2018/11/30/marriott-announces-starwood-guest-reservation-database-security-incident. Marriott refused to produce transactional data from the NDS system for all of its guests, except for the named Plaintiffs. ECF No. 751.

its headquarters in Maryland.[3]  It made this argument despite the fact that the Starwood Preferred Guest ("SPG") Rewards Program contained a "Choice of Law and Venue" clause stating that all litigation needed to be handled "individually" rather than in consolidated proceedings, in New York rather than Maryland, and solely under New York law rather than the laws of many states:

> 13.21 **Choice of Law and Venue.** Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action, and will be governed by, construed and enforced in accordance with the laws of the State of New York, United States, without regard to its conflicts of law rules. The exclusive jurisdiction for any claim or action arising out of or relating to these SPG Program Terms or the SPG Program may be filed only in the state or federal courts located in the State of New York, United States.

ECF No. 1022-34 at 21, § 13.21.

The J.P.M.L. agreed with Marriott's request to send the case to its preferred venue in Maryland and consolidated proceedings before Judge Paul W. Grimm in the District of Maryland. *MDL* Order, 363 F. Supp. 3d at 1375.[4]

At status conferences in April and May 2019, the parties and the Court discussed how to manage the consolidated proceedings. The parties *jointly* suggested a bellwether approach using plaintiffs from several states and claims under those various states' laws. ECF No. 368. In its motion to dismiss, Marriott relegated to a footnote "that neither party was waiving any arguments it may have regarding *choice of law*." ECF No. 450-1 at 2, n.1 (emphasis added). Marriott did not cite to the Venue Clause, nor mention enforcement of the portion of the clause inhospitable to class actions. Nor did Marriott ever bring up a class waiver during the bellwether negotiations before

---

[3]     *See* J.P.M.L. Docket, MDL No. 2879, ECF No. 113 at 2 (J.P.M.L. Jan. 7, 2019).  Marriott also iterated that "[c]onsolidation of the related lawsuits and anticipated tag-along actions is necessary to prevent duplicative discovery and inconsistent pretrial rulings and will promote the just and efficient control of these numerous actions"—taking advantage of collective action, in contravention of its own Venue Clause.  *Id.*
[4]     Plaintiffs added Accenture as a defendant in the consolidated amended complaint after learning of its IT-security-provider role. ECF No. 346.

the District Court.[5] Marriott also did not move to sever the claims of SPG members bound by the SPG agreement, nor did it seek to dismiss or strike class allegations. In other words, Marriott made no attempt to raise or invoke the Venue Clause during these crucial pre-trial proceedings that ultimately shaped years of discovery and litigation practice during the time in which these arguments, if successful, would have greatly impacted the scope of the case.[6]

Judge Grimm conducted a full-day hearing with all parties' experts and his own independent technical advisor and heard full argument on class certification. In a lengthy and well-reasoned opinion, Judge Grimm ultimately certified for class treatment under Rule 23(b)(3) a class of customers who stayed on Starwood properties but were not reimbursed for their stays. ECF No. 1014 at 69-72. Judge Grimm also certified two issue classes under Rule 23(c)(4) against Accenture and Marriott, holding that whether each had a duty to Plaintiffs and breached that duty were classwide issues (neither Marriott nor Accenture contended otherwise). *Id.*

It was not a complete victory for Plaintiffs. Judge Grimm rejected Plaintiffs' "loss of value" theory, which would apply to all of those whose PII was taken. ECF No. 1014 at 33-34. In doing so, the court also considered a classwide damage model premised on Marriott's own valuation of

---

[5]      *See* ECF No. 169 (Apr. 5, 2019 Hr'g Tr.) at 61:11-66-9 (Marriott's counsel, bringing two issues to the Court's attention "early": standing and targeted, limited discovery—not the Venue Clause); ECF No. 279 (Case Management Order No. 3, ordering parties to select bellwether claims); ECF No. 240 (Apr. 29, 2019 Hr'g Tr.) at 65-66 (ordering the parties to "get[] some of these preliminary matters that have to be determined legally before we can go forward done as quickly as we possibly can so that we know where we stand"), 77-78 (in which counsel for Marriott states, "[c]learly, to the extent that discovery proceeds in this case, it should be coordinated with the consumers"); ECF No. 252 at 2 (in which Marriott requests a "collaborative bellwether process" which "should focus on injury," and not discussing the Venue Clause); ECF No. 368 at 2 (in which Marriott selected claims for the bellwether process arising out of Illinois, Maryland, Michigan, and Oregon laws, in addition to one New York law claim).

[6]      Judge Grimm noted the significant resources that were expended by the Court in this case on several occasions, including an instance in which he had to ask for additional funding for a law clerk after the case had been pending for over two years.  ECF No. 749 (Mr. 5, 2021 Hr'g Tr.) at 12.

the monetary value of customers' PII as required by the California Consumer Privacy Act that Marriott only disclosed to Plaintiffs *after* the close of discovery. ECF No. 1014 at 33. In particular, he found that it had not been developed enough on the record *at that time*:

> [O]ne can understand how this valuation might be used to demonstrate damages on a classwide basis. This approach, though, has not been adequately developed on the record at this time. Without an accepted damages model, the loss of market value theory cannot support class certification today—even as to liability.

*Id.* He thus denied, without prejudice, class certification as to damages on the loss of value theory. *See id.* Discovery on this issue is ongoing.

Marriott finally sought to invoke part of the Starwood Venue Clause for the first time in its class opposition. ECF No. 1019-1 at 36-38.  In particular, Marriott argued that one portion of the clause barred class certification, although Marriott did not even attempt to explain how that portion of the clause could apply without the rest of the clause *also* applying (*i.e.*, without the entire litigation having been conducted individually from day one, without the litigation being conducted in New York, and without the litigation being conducted under New York law, which it opposed). *See id*. Judge Grimm heard argument on Marriott's belated reliance on the Venue Clause. Giving Marriott the most charitable interpretation possible of its argument, Judge Grimm viewed the clause as another common issue typical to the overpayment class. ECF No. 1014 at 22-25. He did, however, indicate he found little merit in the argument:

> Plaintiffs raise a strong argument that Defendants have waived their right to enforce the class action waiver. See Pls.' Reply at 7-9. "[A]side from a one-line, boilerplate affirmative defense, Defendants litigated this case for more than 3 1 months before asserting that Plaintiffs are subject to a class waiver. Defendants did not raise it as part of the bellwether negotiation process, address it in dozens of meet-and-confer and scheduling conferences, or raise it as part of any. Motion practice [prior to Defs.' Opp'n]." Id. at 8. Nevertheless, the Court need not rule on this issue at this time. Given that the Court has amended the class definitions, all class members will have the same (or substantially similar) contractual relationship with Marriott. Rule 23 typicality, adequacy, and predominance issues are thus not present. Therefore, the Court may address the class action wavier defense—as it will all affirmative

defenses—at the merits stage of the litigation. At that time when all discovery is complete, the Court can consider the arguments both parties have made as to the applicability of contractual provisions, such as the class action waiver, as well as the arguments related to waiver of the waiver provision. Any ruling on those issues will apply to all class members.

*Id.* at 25, n. 26.

Plaintiffs' opposed Marriott's petition for immediate appellate review, noting it was premature, given discovery on the market value theory persisted. *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*, No. 22-184, Respondents' Answer in Opposition, ECF No. 15 at 8-9 (4th Cir. June 14, 2022). Nevertheless, the Fourth Circuit granted the petition. It identified as the "heart of the appeal" the Court's decision to redefine the class to those who were members of the Starwood Preferred Guest Program and had been bound by the Terms and Conditions that included the subclause eschewing class actions. ECF No. 1131-1 at 9. The Court of Appeals noted Judge Grimm did not resolve the "import of the class waiver on its certification decision." *Id.* at 10. It held that "the district court erred when it declined to consider, *before* certifying class actions against Marriott, the import of a purported class-action waiver signed by every putative class member. And that error, in turn, affected the certification of the negligence issue classes against Accenture, because the certification of the Marriott damages classes was the linchpin of the district court's Rule 23(b)(3) superiority analysis." *Id.* at 15. The Fourth Circuit did not reach or address the remainder of Judge Grimm's decision and vacating and remanding the decision to this Court for further proceedings.

IV.    **ARGUMENT**

    A.    **Marriott waived enforcement of its Choice of Law and Venue Clause.**

A subset of the putative class members in the Complaint were once members of the "Starwood Preferred Guests" program. Those class members were purportedly required to "agree" to certain contractual terms as part of this program. Those terms contained a single package of

litigation rules titled the "Choice of Law and Venue Clause." Marriott also knew the named representatives selected for the bellwether classes were all SPG members, so if anyone was ever subject to those rules, it included these named plaintiffs. But Marriott chose not to litigate by those rules throughout this entire litigation:

1) it sought to and was successful in proceeding against all of the representatives from the various cases together in a consolidated proceeding that it moved for (versus the Venue Clause, which mandates individual litigation);

2) it sought to and was successful in proceeding under the laws of many states through a carefully negotiated bellwether process (versus the Venue Clause, which permits New York law only); and

3) it sought to and was successful in proceeding on its "home turf" in Maryland for its own convenience and the convenience of its witnesses (versus the Venue Clause, which would have forced Marriott to litigate in New York).

Only now that the litigation is turning against its legal strategy has Marriott belatedly sought to selectively enforce only *one-half* of *one rule* in the Venue Clause: the supposed class action waiver. Plaintiffs ask the Court to reject these belated efforts.

### 1.      Through its conduct, Marriott waived the Venue Clause.

As discussed, the Venue Clause states that Marriott and SPG members must resolve disputes: (1) individually, (2) under New York law, and (3) in New York.  ECF No. 1022-34 at 21, § 13.21. But during this four-year litigation, Marriott believed itself best served by a different set of rules. So, it advocated for: (1) consolidated litigation (not individual litigation); (2) adjudication in Maryland (not New York); and (3) a decision under many states' laws (not just New York). By themselves, each action easily shows that Marriott voluntarily waived whatever ability it might have once had to enforce the Venue Clause because it "intentionally relinquished"

any contract rights under the Venue Clause. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (cleaned up).[7] But taken together, there can be no doubt that Marriott has waived whatever right it might have had to invoke the clause.

*Removal of actions to federal court based upon CAFA jurisdiction*: Marriott routinely took the position that federal courts had jurisdiction over actions related to the data breach on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), even opposing remand of some actions back to state court. *See, e.g.,* ECF No. 364 at 1 (chastising plaintiffs for having "tried, and failed, to create a removal-proof class"), 4 (noting the "efficiencies in the judicial system" created by jurisdiction under CAFA); ECF No. 316 at 2 (noting that Marriott removed an *individual* action to federal court "and immediately sought inclusion of this action in the related Multidistrict Litigation").  For example, one plaintiff sought remand of her Ohio state claims on the ground Marriott sought to "bury Plaintiff's state-only case in the District of Maryland." ECF No. 15 at 8. Marriott eschewed the Venue Clause, and pushed for collective treatment, noting "Starwood has a legitimate interest in *consolidating* this action with the many others that have been filed because of the data security incident." *Id.* (emphasis added). Additionally, in 2019 Marriott removed a case from Connecticut state court to Connecticut federal court despite the plaintiff arguing in her complaint that she was a Starwood loyalty member. *Frank v. Marriott* Int'l, Inc., 3:19-cv-326 (D. Conn.). Marriott cited CAFA as the basis for removal, and did not seek to send the case to state or federal court in New York. ECF 1, 3:19-cv-00326-2WWE. In sum,

---

[7]    *Kumaran v. National Futures Ass'n*, No. 1:20-cv-03668, 2023 WL 5293903, at *2 (S.D.N.Y. Aug. 17, 2023) ("Under New York contract law, waiver requires a clear manifestation of an intent to relinquish a known right.") (cleaned up)); *Philadelphia Indemnity Ins. Co. v. Markel Ins. Co.*, --- F.Supp.3d ---, No. 1:20-cv-00669, 2023 WL 113748, at *11 (D. Md. Jan. 5, 2023) (Under Maryland law, "[w]aiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.") (citations and quotations omitted)).

although Marriott's Venue Clause required *individual* litigation, Marriott sought consolidation with other cases as part of an MDL for efficiency purposes to serve its own interests.

**_J.P.M.L._:** Before the Panel, Marriott asked the Panel to transfer the removed state court actions along with dozens of class cases across the country to go to its backyard to "prevent duplicative discovery and inconsistent pretrial rulings":

> Consolidation of the related lawsuits and anticipated tag-along actions is necessary to prevent duplicative discovery and inconsistent pretrial rulings and will promote the just and efficient control of these numerous actions. The District of Maryland (Greenbelt) is the

J.P.M.L. Docket, MDL No. 2879, Marriott's Response in Support, ECF No. 113 at 2 (J.P.M.L. Jan. 7, 2019). Marriott argued that Maryland was its preferred venue for two reasons: (1) it was headquartered in the state; and (2) "relevant witnesses and documents likely will be found there." *Id.* at 2. Despite Marriott's Venue Clause mandating a New York forum, Marriott "repeatedly represented that venue [was] appropriate [in Maryland] and actively pursued substantive motions" there. *Power Authority of New York ex rel. Solar Liberty Energy Systems, Inc. v. Advanced Energy Indus., Inc.*, No. 19-cv-1542, 2021 WL 4244280, at *2 (W.D.N.Y. Aug. 23, 2021) (finding that party had waived a forum selection clause).

**_At Consolidation_:** After arriving before Judge Grimm, Marriott requested that the parties engage in a "collaborative bellwether process" and "focus on injury" to "advance an efficient resolution of this MDL"—not mentioning how resolving any purported class waiver early on would resolve the issues more efficiently.

> **A collaborative bellwether process should focus on injury.**
>
> Given the central role of standing at the early stage of cybersecurity litigation, Marriott believes the bellwether process will advance an efficient resolution of this MDL if it focuses on the categories of injuries alleged by plaintiffs, in addition to their claims.[3] Rulings on whether representative injury allegations are sufficient to confer standing will help the vast majority of parties assess the strength of their claims. For example, only a handful of plaintiffs allege actual misuse of their information. So rulings on whether mere allegations of theft, or fear of future injury, are sufficient to confer standing will provide meaningful guidance to the parties.
>
> Marriott's proposal permits collaborative identification of the common categories of injuries and claims at issue in this MDL using the allegations contained in the myriad complaints. This will allow the Court and parties to test representative claims and injuries to assess the strength of Marriott's standing defenses and plaintiffs' claims. And, by permitting Marriott to select individuals to bring two of plaintiffs' claims, Marriott's proposal ensures the bellwether process would include injuries representative of the plaintiffs' collective allegations. Marriott's proposal also allows for the ability to object if plaintiffs selected individuals to bring claims who did not fit within the common categories.

ECF No. 252 at 2. Then, as part of the "collaborative process," Marriott did not invoke the Venue Clause and select only New York claims; instead, it asked the Court to accept its proposal of including Illinois, Maryland, Michigan, and Oregon laws as part of the bellwether process, too. ECF No. 368 at 2. This presented a stark break from its strategy in concurrent litigation where it moved to sever or dismiss based on the same Venue Clause. *See Martin v. Marriott Int'l, Inc.*, No. CV 18-00494, 2019 WL 4201260 (D. Haw. July 12, 2019) (motion to sever based on the same Venue Clause). Accordingly, to the extent Marriott had a right to enforce the provision, it knowingly abandoned it. *Cf. LeBlanc v. Halliburton Co.*, 414 F.Supp.3d 1360, 1366 (D.N.M. 2019) (finding waiver of an arbitration clause, among other reasons, when defendant sought to enforce the arbitration clause in a different forum).

***Motion to Dismiss***: Marriott's motion to dismiss "did not ask for dismissal or transfer based on the [Venue Clause] at all[.]" *Power Authority*, 2021 WL 4244280, at *3. Instead, it only

argued that Plaintiffs "had failed to state a viable claim[.]" *Id.*[8] And in opposing class certification, Marriott never argued venue was improper. So even if Marriott did not request this Maryland forum, it still waived the forum selection clause through its other conduct. *See id.* (waiver found after defendant filed several substantive documents); *see also Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999) (finding waiver where defendant, among other things, failed to object to transfer orders).

**_Answer_**: After Plaintiffs' claims survived the motion to dismiss, Marriott asserted in its answer that "venue is proper" in the United States District Court for the District of Maryland—not New York. ECF No. 604 ¶ 11. It also said that the Court had subject matter jurisdiction pursuant to CAFA. *Id.* ¶ 7. There can be no other basis for federal subject matter jurisdiction. The statute only extends federal jurisdiction over cases with minimal diversity where there is: (1) 100 or more putative class members; and (2) more than $5 million in controversy. 28 U.S.C. § 1332(d). Of course, cases filed by individual SPG members cannot meet either threshold if Marriott wanted to enforce the Venue Clause. A case cannot be both individual and have more than 100 class members. Nor could the amount in controversy exceed $5 million given the nature of the claims. Simply put, Marriott chose to remove SPG members' cases and told the court it had jurisdiction where none should exist if it intended to enforce the Venue Clause.

**_Class Certification_**: At class certification, Marriott did not *fully* invoke the Venue Clause. Marriott cited only to the subclause that precluded class treatment of claims. ECF No. 1019-1 at 36-37. Marriott also did not argue that New York law should govern over all claims (because it selected other claims under the bellwether process). This was likely strategic. Unlike many states,

---

[8]     Notably, the consolidated complaint even grounded claims in "the terms and conditions governing the SPG Program."  *See* ECF No. 352 ¶ 322.

New York law provides statutory damages and attorney's fees under its consumer protection statute.  N.Y.G.B.L. § 349. Marriott therefore avoided the possibility that those statutory damages could apply to the entire class. This conduct further shows that it abandoned the Venue Clause. *See Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law.") (interpreting New York law)); *see also Rolon v. U.S. Amada, Ltd.*, No. 95 Civ. 6231, 1997 WL 724798, at *2 (S.D.N.Y. Nov. 18, 1997) (ignoring choice of law provision based on the parties' conduct).

Marriott's belated attempts now to revive any portion of the Venue Clause are foreclosed by both the contract's terms and normal waiver law. *See Hill v. Xerox Bus. Services, LLC*, 59 F.4th 457, 473 (9th Cir. 2023) ("Our system generally does not permit a party to lie in the weeds without consequences."). Marriott "waived its forum selection clause defense by participating in this litigation and engaging in extensive discovery for three years." *Cadigan v. Liberty Helicopters, Inc.*, 206 A.D.3d 523, 523 (N.Y. App. 2022). Marriott got all the benefits of consolidating the cases in federal court.

Marriott wants to undo years of judicial work because it does not like the outcome of its litigation strategy. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011) (The consequences of a "litigant . . . 'sandbagging' the court—remaining silent about his objection and belatedly raising the error if the case does not conclude in his favor—can be particularly severe." (citations omitted)). In the meantime, Marriott's gamesmanship wasted valuable party and court resources. Although prejudice is usually immaterial to a court's consideration of waiver, allowing Marriott to successfully invoke one portion of the Venue Clause while seemingly ignoring the rest would be nothing short of prejudicial. *Cf. Morgan*, 596 U.S. at 416-17.

13

Marriott's decision to litigate this case in federal court as a class action meant that Plaintiffs:

- Produced 35,274 documents;

- Reviewed millions of pages of documents produced by Defendants and third parties;

- Conducted 21 depositions, including expert depositions;

- Defended 18 depositions spanning more than 84 hours;

- Retained and compensated multiple experts;

- Compensated the District Court-hired economist (like Defendants); and

- Worked extensively with a special master to handle dozens of discovery disputes (also compensated by the parties).

Judge Grimm, with input from the parties, spent years crafting a complex and appropriate approach to adjudicating the claims against Marriott. Collectively, Plaintiffs' Counsel spent millions of dollars in out-of-pocket expenses not to mention incurred tens of millions of dollars in lodestar litigating this class action. Yet, across more than 31 months of contentious litigation, Marriott "'did not raise [the Venue Clause] as part of the bellwether negotiation process, address it in dozens of meet-and-confer and scheduling conferences, or raise it as part of any[] motion practice [prior to Defs.' Opp'n].'" *Marriott*, 341 F.R.D. at 149 n. 26 (citation omitted). Judge Grimm thus believed that "Plaintiffs raise a strong argument that Defendants have waived their right to enforce the class action waiver." *Id*. This Court should further vindicate that belief and find the Venue Clause waived or inapplicable.

### 2.      Marriott cannot selectively enforce one aspect of the Venue Clause.

Marriott's Venue Clause creates a single package of rules which governs the contours of disputes between the company and SPG members. Marriott cannot cherry-pick the rules it wishes to enforce from a single provision. *Accord Smith v. GC Services Limited Partnership*, 907 F.3d 496, 499 (7th Cir. 2018) ("In this case, the arbitration agreement also included a waiver of the right to bring a class action suit. If GC Services waived any right to arbitrate, the company necessarily waived any right to oppose class certification premised on the agreement.").[9] As the contract itself makes clear, the Venue Clause rules rise or fall together. ECF No. 1022-34 at 21, § 13.22 ("remaining *provisions* will remain in force if any part is unenforceable"). And that makes sense, assuming both sides agree to a set of rules to follow before a dispute begins. The Court should reject any attempt by Marriott to decouple the term "individually" from "without class action" in the clause. *See Morlee Sales Corp. v. Manufacturers Tr. Co.*, 9 N.Y.2d 16, 19 (1961) ("The courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.") (internal quotations omitted). Because "individually without class action" is a single phrase, it is a single rule. And Marriott already waived any ability to enforce that rule by consolidating these cases.

### 3.      Marriott's previous arguments do not change the above analysis.

Marriott previously made several arguments to support its purported ability to belatedly invoke the Venue Clause. Assuming Marriott will raise them again, none have merit.

**Marriott has argued that it did not know which contracts were at issue.** Previously, Marriott argued that it did not know which contracts Plaintiffs would put at issue in the case. ECF No. 450-1 at 24, n. 15. But Marriott cannot pretend "it was unaware of its own [contract] with the

---

[9]      Black's Law Dictionary, p. 1345 (9th ed. 2009) (A provision is defined as: "1. A clause in a statute, contract, or other legal instrument.")

named Plaintiffs, which pre-dated the filing of the original complaint[.]" *McBurnie v. Acceptance Now, LLC*, 643 F. Supp. 3d 1041, 1045 (N.D. Cal. 2022); *see also White v. Samsung Electronics Am., Inc.*, 61 F.4th 334, 340 (3d Cir. 2023) ("[F]rom the outset of litigation, Samsung was on notice that plaintiffs' claims could be arbitrable, as each plaintiff had necessarily agreed to Terms and Conditions to utilize their SmartTV's Internet-enabled services."); *Hill*, 59 F.4th at 470 (defendant knew about its own contract rights with plaintiffs). Plaintiffs' operative complaint specifically cited to the SPG terms and conditions in its breach of contract claim. ECF No. at ¶ 322. Each of the named class members were SPG members.[10] Marriott therefore had an obligation to enforce the Venue Clause as soon as *any* SPG member filed suit.

> **Marriott has argued that it "reserved its rights" in a footnote.** Marriott previously argued that a footnote in a motion to dismiss was effective at reserving its rights:

> [15] Plaintiffs' generic pleading style makes it difficult to sort out what terms and conditions apply to their dealings with Starwood or Marriott, which could include arbitration provisions, class-action waivers, choice of law provisions, and limitations on liability.

ECF No. 450-1 at 24, n. 15. That is not sufficient in three respects. First, "[a] reservation of rights is not an assertion of rights." *Hooper v. Advance Am.*, 589 F.3d 917, 923 (8th Cir. 2009). Second, "sprinkling a few references to arbitration in some docket filings" will not count as invocation of rights. *McBurnie*, 643 F. Supp. 3d at 1045. Finally, if Marriott had properly invoked its rights under the Venue Clause, it would need to attempt to enforce the *entire* clause, not just a few words that happen to help Marriott today.

---

[10]      *See* ECF No. 1010 (Apr. 20, 2022 Hr'g Tr.) at 61:9-13 ("Every bellwether plaintiff is an SPG member.  That's their allegation.").

**Marriott has argued that the last one of its many dozens of affirmative defenses preserves its ability to invoke the Venue Clause.** In its Answer to the consolidated amended complaint, about a year and a half into the litigation, Marriott stated:

> **THIRTY-SECOND DEFENSE**
>
> Plaintiffs' claims are barred in this jurisdiction, in whole or in part, by their agreement to waive participation in a class action.

ECF No. 604 at 97. Marriott did not cite to the SPG terms, nor explain why this jurisdiction (Maryland) precludes class treatment when the Venue Clause does not even contemplate this jurisdiction. This belated and half-hearted reference to a vague class waiver cannot wipe away the years of litigation positions contrary to that clause. And nothing in this defense could possibly permit Marriott to invoke only a few words of its Venue Clause while ignoring its remainder.

**Marriott has invoked arbitration caselaw "favoring" enforcement of an arbitration clause.** In the past, Marriott has overwhelmingly relied on cases that are premised on a court's belief that the presence of an arbitration clause weighed heavily against waiver. Such cases were overruled by *Morgan v. Sundance*, 596 U.S. 411 (2022), but out of an abundance of caution Plaintiffs note that this case does not involve arbitration, so the arbitration caselaw is inapposite as discussed further *infra*.

**B.**   **Marriott's class-action waiver would not have been enforceable even if timely invoked.**

**1.**   **Parties in federal court cannot contract around the Federal Rules of Civil Procedure through pre-dispute adhesion contracts.**

Even if Marriott could now potentially invoke one portion of the Venue Clause after years of litigation in direct contravention of that clause, it is unenforceable for other reasons: namely,

17

Rule 23 does not allow the parties to contract around a Rule designed to ease the burden on the Court. The Supreme Court has held that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Marriott's assertion that this "categorical rule" embodied in Rule 23 can be overcome by a pre-dispute adhesion contract that is not accompanied by the preemptive power of an arbitration provision cannot be squared with precedent or the plain language of Rule 23.

The Supreme Court's decision in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), is instructive. There, the Court was faced with the question of whether a pre-dispute forum-selection clause should be enforced despite the change-of-venue procedure laid out in 28 U.S.C. § 1404(a). The Court ultimately held that a forum-selection clause "should receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31. Thus, "rather than being treated as a binding agreement . . . 'a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum,' which is a factor encompassed within the framework of § 1404." *Martrano v. Quizno's Franchise Co.*, No. 08-cv-0932, 2009 WL 1704469, at *20 (W.D. Pa. June 15, 2009) (cleaned up); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 58 (2013).

In stark contrast to § 1404, under which the parties' expressed preferences are given substantial weight as determined by Congress, Congress included no such language in Rule 23. *Martrano*, 2009 WL 1704469, at *21 (holding same). Rather, the *Court* (not the parties) must determine the optimal "method[] for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3).[11] These and other prerequisites to class certification sound in the inherent authority of the court to manage its own docket, as Rule 23 is "designed to further procedural fairness and efficiency." *Shady Grove*, 559 U.S. at 402. Any consideration of the preferences of the parties is conspicuously omitted from the elements of Rule 23. Just as there is little doubt that parties could not contractually agree that disputes *must* be resolved by class litigation, so too they cannot negotiate around Rule 23 to say that they can *never* be resolved as a class action.

Put another way, just as a forum-selection clause is given the "consideration for which Congress provided in § 1404(a)," *Stewart Organization*, 487 U.S. at 31, a class-action waiver must be given the weight that such waivers are accorded in Rule 23—that is, *no* weight. *Martrano*, 2009 WL 1704469, at *21. In addressing this issue, the court in *Martrano* noted that the standards of Rule 23 "make no mention of whether a class action is preferred by the parties." 2009 WL 1704469, at *21. There, the defendant sought to enforce a pre-dispute class-action waiver without an arbitration provision against its franchisees, despite Rule 23. Reasoning that the "furtherance of efficient judicial administration . . . leaves no room for enforceability of private agreements among litigants to forego the efficiencies potentially afforded by consolidated or class adjudication," the court held that "the parties' waivers are ineffective to override the court's discretion to certify a class under Rule 23." *Id.* In other words, the applicability of Rule 23 to a particular dispute is in within the court's control and ability to manage its own docket, not that of the parties.

---

[11]   Importantly, the Venue Clause does not state that SPG members will not *bring* or *participate* in class actions.  It seeks to limit *this Court's* own authority by stating that "[a]ny disputes. . . *will be handled* individually without any class action."  ECF No. 1022-34 at 21, § 13.21 (emphasis added).  Marriott cannot dictate how a court should "handle" its own docket.

Plaintiffs note that the cases affirming the enforcement of class-action waivers in the context of an *arbitration* agreement (which is not an issue in this case) provide no support for the idea that *standalone* class-action waivers—like Marriott's—are also enforceable. The Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), for instance, was explicitly premised on the "liberal federal policy favoring arbitration" embodied in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-19. The Court acknowledged that California law prohibited *standalone* class-action waivers without purporting to upset or overturn that rule. *Concepcion*, 563 U.S. at 341 (citing *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 17-18 (2001)). The Court's bottom-line holding was based on principles of FAA preemption, not contract. *Id.* at 352. Other arbitration cases are in accord. *See, e.g.*, *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *see also Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1183 (11th Cir. 2019) ("The class action waiver here is not contained in an arbitration agreement, so § 2 of the FAA does not stand in the way of enforcing Georgia's public policy."); *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014) ("Because no arbitration agreement is present … we find no countervailing federal policy that outweighs the policy articulated in the FLSA).[12]

If Marriott's piecemeal view of the Federal Rules were correct—and all the Federal Rules could readily be waived by pre-dispute contracts of adhesion—federal courts would be flooded with choose-your-own-adventure litigation in which courts are asked to apply gerrymandered versions of the Federal Rules that tip the scales in favor of a particular party. It is not difficult to

---

[12]     Likewise, a case Marriott has previously cited *Lindsay v. Carnival Corp.*, No. 20-cv-982, 2021 WL 2682566, at *1 (W.D. Wash. June 30, 2021), involved a class-action waiver that "SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE"—bringing that provision under the aegis of the FAA.

imagine the Rules that would be ripe targets for pre-dispute contractual waiver in addition to Rule 23. Consumer-facing companies seeking to limit their legal exposure could draft contracts of adhesion in which consumers waive the right to seek discovery under Rule 26; the right to take depositions under Rule 30; the right to oppose a motion to dismiss under Rule 12; and the right to seek or oppose summary judgment under Rule 56. *Cf.* Elizabeth Thornburg, *Designer Trials*, 2006 J. of Disp. Resol. 1, 181-82, 211 (2006) ("Decisions about procedure should not . . . be made irrevocably based on pre-dispute bargaining power, behind a veil of ignorance."). Such fundamental alterations to civil procedure make sense—if at all—only in the context of arbitration, where the parties themselves, and not the Federal Rules, set the terms. Where, as here, the parties elect not to send disputes to arbitration and instead allow suits in federal court, the parties *must* play by the ground rules of federal court embodied in the Federal Rules of Civil Procedure, including Rule 23. *See Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 46-47, 171 A.3d 620, 633 (2017) (the class action device furthers judicial economy, which requires the class action rule to be "liberally construed").[13]

---

[13]     The narrow instances in which courts *have* permitted the pre-dispute contractual waiver of Federal Rules and procedural rights outside the context of arbitration demonstrate that contractual waiver is the exception, not the rule (and is generally embodied in the text of the rule itself). For instance, waiver of the right to a trial by jury in civil cases is specifically contemplated by Rule 38, yet courts still place the burden on a party seeking to enforce a pre-dispute contractual jury trial waiver to demonstrate that the waiver was knowing, intentional, voluntary, and informed. *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986). And although the FAA permits pre-dispute jury trial waivers when they are embedded in arbitration provisions, the Act "addresses such waivers only in the context of arbitration clauses" and does not make jury-trial waivers enforceable outside that narrow context. *In re County of Orange*, 784 F.3d 520, 529 n.4 (9th Cir. 2015) (holding that pre-dispute jury trial waiver without arbitration provision was unenforceable under California law). Likewise, in the forum-selection context, parties' pre-dispute agreements as to forum are given "significant"—but not controlling—weight by a statutory scheme in which the parties' "preferences" are a recognized criterion. *Stewart Organization*, 487 U.S. at 29-30.

At bottom, Rule 23 contains no language permitting waiver or allowing consideration of the parties' pre-dispute agreements. It instead "unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Shady Grove*, 559 U.S. at 406; *see also Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023) (the requirements of Rule 23 are mandatory). Because Marriott's class-action waiver provision cannot be squared with Rule 23, it is unenforceable.

### 2.   Marriott's Venue Clause is unconscionable.

Even if Marriott's class-action waiver did not contravene Rule 23, it would still be unenforceable for another independent reason: Under New York law, the waiver is an unconscionable contract of adhesion that is both procedurally and substantively unfair. *See Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (defining procedural and substantive unconscionability).

The waiver is a procedurally unconscionable contract of adhesion because it was "drafted by a party with superior bargaining power and [wa]s offered to a party who does not have the option of negotiating the terms." *McCormick v. Resurrection Homes*, 956 N.Y.S.2d 844, 847 (Civ. Ct. 2012). Starwood drafted the terms and presented them in clickwrap without any ability for consumers to negotiate them. Moreover, there was no way for a party to opt-out of the waiver without adverse consequences. *See, e.g.*, *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191 (N.Y. App. Div. 2004). Such contracts are procedurally unconscionable. *McCormick*, 956 N.Y.S.2d at 847.

The "overly harsh" and "one-sided terms" of the class waiver likewise render that provision substantively unconscionable. *Frankel v. Citicorp Ins. Servs., Inc*., 80 A.D.3d 280, 289 (N.Y. App. Div. 2010). Substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable" to the drafting party, considering the

terms' commercial context, purpose, and effect. *Gillman*, 534 N.E.2d at 829. Here, if enforced, the class waiver would create an insurmountable barrier to individual relief for the victims of the data breach. Where, as here, a class-action waiver effectively precludes relief, New York courts find substantive unconscionability to be satisfied, rendering the provision unenforceable. *See, e.g.*, *Scarcella v. Am. Online, Inc.*, 11 Misc.3d 19, 20 (N.Y. Sup. Ct. Dec. 28, 2005); *Licitra v. Gateway, Inc.*, 189 Misc.2d 721, 727 (N.Y. Civ. Ct. Oct. 18, 2001).

**C.**      **To the extent Marriott's Venue Clause is enforceable—and it is not—it does not apply to Plaintiffs' non-contract claims.**

Even if the Venue Clause applied and were enforceable (it is not), it can apply *only* to Plaintiffs' contract claims—not Plaintiffs' consumer protection or negligence-based claims. By its terms, the relevant contract only applies to "disputes *arising out of or related* to the SPG Program." ECF No. 1022-34 § 13.21. (emphasis added). As a general principle of contract formation under New York law, as the parties dispute whether Plaintiffs' cybersecurity claims arise out of or relate to earning rewards for staying at hotel properties, any ambiguity in the agreement "should be construed against the defendant as drafter of the contract." *Onekey, LLC v. Byron Place Assocs., LLC*, 200 A.D.3d 896, 160 N.Y.S.3d 301, 304 (2021). Here, Plaintiffs' reading of the agreement to exclude cybersecurity claims—which are separate and apart from earning loyalty points—is the correct one. *See* Stephen L. Sepinuck, *Drafting a Choice-of-Law Clause*, 10 Trans. L. 4, 5 (2020) ("In most states, a choice-of-law clause that selects the law of a state to govern 'the contract' will apply only to contract claims; it will not cover tort claims or statutory claims.").

Plaintiffs' interpretation is supported by New York law. For example, in *Klock v. Lehman Brothers Kuhn Loeb Inc.*, the parties entered into a contract providing that the agreement "shall be governed by the laws of the State of New York." 584 F. Supp. 210, 215 (S.D.N.Y. 1984). The court in *Klock* rejected the plaintiff's argument that the parties' chosen law should govern the fraud

claim, reasoning that "[r]egardless of whether these clauses . . . can be said to govern the entire relationship between the parties, it has been held in New York that a contractual choice of law provision governs only a cause of action sounding in contract." *Id*.

In another case, *Krock v. Lipsay*, the parties entered into a transaction for the sale of a waterfront property. 97 F.3d 640, 643 (2d Cir. 1996). A mortgage document executed by the parties contained a choice of law clause providing that "[t]his mortgage shall be governed by and construed in accordance with the law of the Commonwealth of Massachusetts. . . ." *Id.* The Second Circuit Court of Appeals rejected the plaintiff's argument that the parties' choice of law provision applied to the tort-based fraudulent misrepresentation claim. *Id.* at 645. The court held that there was "no way [the parties' clause] could be read broadly enough to apply to fraudulent misrepresentation" because the clause did not reflect any intention to include non-contractual claims. *Id.* The court further explained that "[u]nder New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract." *Id.* at 646.

Plaintiffs' consumer fraud and tort claims arise out of and relate to Marriott's deficient *security practices*. *See Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 (S.D.N.Y. Mar. 31, 2022) ("Plaintiff doesn't complain about not being able to use the website, nor does she complain that the website caused her computer any harm; instead, she sues for breach of the General Conditions of Carriage."); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("TMI's alleged pressure could have been exerted on Telecom Italia even if TMI had no contractual relationship with WTC."). It is no surprise then that the consumer

fraud and tort counts "do not mention" the SPG Program.[14] *Traton News, LLC v. Traton Corp.*, 528 Fed. App'x 525, 530 (6th Cir. 2013); *see also Gamble v. New England Auto Fin., Inc.*, 735 F. App'x 664, 667 (11th Cir. 2018) (rejecting an attempt to "bootstrap" independent claims to contract claims). Neither of these types of claims implicates the Venue Clause (indeed, *by their very nature*, at least the Maryland Consumer Protection Act claim and California Unfair Competition Law claim *cannot* be interpreted under New York law). Accordingly, if the SPG Terms even did potentially apply here, they would apply only to Plaintiffs' breach of contract claims.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should find that the class waiver provision within the SPG terms and conditions is not enforceable and does not apply to any class claims Plaintiffs seek to certify.

Dated: October 13, 2023                         Respectfully submitted,


<u>/s/ Amy Keller</u>                              <u>/s/ James J. Pizzirusso</u>
Amy Keller (D. Md. Bar No. 20816)        James J. Pizzirusso (D. Md. Bar No. 20817)
**DiCELLO LEVITT LLP**                     **HAUSFELD LLP**
Ten North Dearborn Street, Eleventh Floor   888 16th St., NW, Suite 300
Chicago, Illinois 60602                     Washington, D.C. 20006
Tel. 312-214-7900                           Tel. 202-540-7200
akeller@dicellolevitt.com                   jpizzirusso@hausfeld.com

---

[14]     *See* ECF No. 413 at 97-100 (Negligence), 100-101 (Negligence Per Se), 112-116 (Maryland Consumer Protection Act), 133-137 (California Unfair Competition Law), 251-254 (New York General Business Law).  A redacted version of the Second Amended Consolidated Consumer Class Action Complaint is filed at ECF No. 537.

*/s/ Andrew N. Friedman*
Andrew N. Friedman (D. Md. Bar No. 14421)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202-408-4600
afriedman@cohenmilstein.com

*Consumer Plaintiffs' Co-lead Counsel*

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
siegel@stuevesiegel.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road, Bldg. 14, Suite 230
Atlanta, GA 30305
Tel: 404-320-9979
mgibson@thefinleyfirm.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY 10119
Tel: 212-946-9300
atadler@tadlerlaw.com

Jason Lichtman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212-355-9500
jlichtman@lchb.com

Daniel Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel: 949-720-1288
drobinson@robinsonfirm.com

Megan Jones
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: 415-633-1908
mjones@hausfeld.com

Timothy Maloney
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
tmaloney@jgllaw.com

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
glynch@carlsonlynch.com

*Consumer Plaintiffs' Steering Committee*

Veronica Nannis
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
vnannis@jgllaw.com

James Ulwick
**KRAMON & GRAHAM PA**
1 South Street, Suite 2600
Baltimore, MD 21202
Tel: 410-347-7426
julwick@kg-law.com

*Consumer Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I, Amy Keller, Co-Lead Counsel for the Consumer Plaintiffs, hereby certify that on October 13, 2023, I served the foregoing redacted document and supporting exhibits on counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

/s/ *Amy Keller*
Amy Keller