**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

IN RE MARRIOTT INTERNATIONAL
CUSTOMER DATA SECURITY BREACH
LITIGATION

MDL No.: 19-md-2879

HON. JOHN PRESTON BAILEY

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' BRIEFS
ADDRESSING THE EFFECT OF THE CLASS WAIVER PROVISION CONTAINED IN
THE STARWOOD PREFERRED GUEST PROGRAM ON CLASS CERTIFICATION**

2878865.2

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ..................................................................................................... 1

        A.      Marriott waived its Venue Clause ........................................................ 1

                1.      Marriott cannot selectively enforce the class action waiver from the
                        Venue Clause. ............................................................................3

                2.      The SPG Terms do not excuse Marriott's waiver through affirmative
                        litigation conduct. .....................................................................4

                3.      Marriott cannot avoid waiver based on the case's structure as an
                        MDL................................................................................................5

                4.      Marriott's belated attempt to enforce the Venue Clause is not
                        supported by any case law. .......................................................7

        B.      Marriott's class action waiver is not enforceable. ...................................9

                1.      Plaintiffs properly and timely argued that the Venue Clause is
                        unenforceable. ...........................................................................9

                2.      Marriott cannot contract around the federal rules, including Rule 23. ........9

        C.      The Venue Clause does not apply to Accenture at all because Accenture was a
                non-signatory to the clause and because its conduct would not have been
                covered in any case. .............................................................................14

III.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleman v. Park West Galleries, Inc.*,
Case No. 2:09-cv-12896, ECF No. 11 (E.D. Mich. Oct. 29, 2009) ....................................6, 7

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................................................13, 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................................................................13

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*,
571 U.S. 49 (2013)..................................................................................................10, 11, 12

*Bailey v. Vulcan Materials Co.*,
2021 WL 5860743 (N.D. Ga. Nov. 16, 2021) .......................................................................18

*In re Checking Acct. Overdraft Litig.*,
672 F.3d 1224 (11th Cir. 2012) .........................................................................................6

*Cohen v. UBS Fin. Servs., Inc.*,
799 F.3d 174 (2d Cir. 2015)...............................................................................................13

*Colony Cap. Inc. v. Flaherty*,
2022 WL 2440993 (S.D.N.Y. July 5, 2022) ..........................................................................14

*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*,
790 F.3d 1112 (10th Cir. 2015) ........................................................................................8

*Denney v. Jenkens & Gilchrist*,
412 F. Supp. 2d 293 (S.D.N.Y. 2005)..............................................................................14, 15

*Doe v. Trump Corporation*,
6 F.4th 400 (2nd Circ. 2021)..........................................................................................15, 16

*Edd Potter Coal Co., v. Dir., Off. of Workers' Comp. Programs*,
39 F.4th 202 (4th Cir. 2022) .............................................................................................9

*Flores-Mendez v. Zoosk, Inc.*,
2022 WL 2967237 (N.D. Cal. July 27, 2022).......................................................................8

*Ginwright v. Exeter Fin. Corp.*,
280 F. Supp. 3d 674 (D. Md. 2017) ..................................................................................10

*GMS Industrial Supply, Inc. v. G & S Supply, LLC*,
   441 F. Supp. 3d 221 (E.D. Va. 2020) ....................................................................3

*Goldman v. KPMG*,
   LLC, 173 Cal App. 4th 209 (2009)................................................................15, 16

*In re H & R Block Refund Anticipation Loan Litig.*,
   59 F. Supp. 3d 903 (N.D. Ill. 2014) ..................................................................5, 6

*Hall v. Marriott Int'l, Inc.*,
   344 F.R.D. 247 (S.D. Cal. 2023) .......................................................................4, 8

*Hennessey v. Koh's Corp.*,
   571 F.Supp.3d 1060 (E.D. Mo. 2021)...................................................................3

*Hill v. Xerox Bus. Services, LLC*,
   59 F.4th 457 (9th Cir. 2023) ..................................................................................8

*In re Jamster Mktg. Litig.*,
   2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) .......................................................6

*Kahaly v. DirecTV, Inc.*,
   Case No. 11-56752, ECF No. 7 (9th Cir. Apr. 11, 2012) ......................................5

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013)................................................................................13

*KPMG LLP v. Kirschner*,
   182 A.D.3d 484, 122 N.Y.S.3d 18 (1st Dept. 2020)............................................16

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .............................................................................15

*Lockheed Martin Transp. Sec. Sols. V. MTA Cap. Constr. Co.*,
   2014 WL 12560686 (S.D.N.Y. Sept. 16, 2014).....................................................4

*In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) ..................................................................................9

*Morrison v. Buffalo Bd. of Educ.*,
   741 F. App'x 827 (2d Cir. 2018) ............................................................................4

*Naranjo v. Nick's Management, Inc.*,
   2023 WL 416313 (N.D. Tex. Jan 25, 2023) ........................................................17

*In re: Park West*,
   655 F. Supp. 2d at 1379 ...................................................................................7, 11

*Matter of Rural Media Group, Inc. v. Yraola*,
    137 A.D.3d 489, 26 N.Y.S.3d 531 (1st Dept. 2016)................................................14

*Scarcella v. Am. Online, Inc.*,
    11 Misc.3d 19 (N.Y. Sup. Ct. Dec. 28, 2005)........................................................13

*In re SFBC International, Inc., Securities and Derivative Litigation.*
    435 F. Supp. 2d 1355 (J.P.M.L. 2006)................................................................6, 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*,
    559 U.S. 393 (2010).................................................................................................12

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,
    691 F.2d 1039 (2d Cir. 1982)...................................................................................13

*Sher v. RBC Cap. Markets, LLC*,
    539 B.R. 260 (D. Md. 2015) ..............................................................................4, 5

*Spotswood v. Hertz Corp.*,
    2019 WL 498822 (D. Md. Feb. 7, 2019) ...................................................................7

*In re Titanium Dioxide Antitrust Litig.*,
    962 F. Supp. 2d 840 (D. Md. 2013) .....................................................................8, 17

*Tutor Perini Corp. v. State of New York*,
    209 A.D.3d 692 (N.Y. App. 2022) ............................................................................3

*In re: Uber Tech., Inc., Passenger Sexual Assault Litig.*,
    2023 WL 6456588 (J.P.M.L. Oct. 4, 2024) ............................................................10

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
    300 F. Supp. 2d 1107 (D. Kan. 2003) ...............................................................17, 18

*Varsity Gold, Inc. v. Lunenfeld*,
    2008 WL 5243517 (D. Md. Dec. 12, 2008)..............................................................1

**Rules and Statutes**

28 U.S.C. § 1391..................................................................................................11, 12

28 U.S.C. § 1404...........................................................................................6, 7, 10, 11

28 U.S.C. § 1407...........................................................................................6, 7, 10, 11

Federal Arbitration Act, 9 U.S.C. §§ 1-19..............................................................5, 13

Fed. R. Civ. P. 3.............................................................................................................13

Fed. R. Civ. P. 12.........................................................................................................10

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**Other Authorities**

Cambridge Dictionary ....................................................................................................4

Ronen Avraham and William H.J. Hubbard, *The Spectrum Procedural Flexibility*,
    87 U. Chi. L. Rev. 883, 933 (2020) ...........................................................................9

## I.   <u>INTRODUCTION</u>

As part of its "terms and conditions" with Starwood Preferred Guests ("SPG Terms"), Starwood (Marriott's predecessor) drafted and included a two-sentence clause, which it captioned a "Choice of Law and Venue" provision ("Venue Clause"). In any case where it applies, this clause purports to require the parties to litigate individually in New York under New York law. But, from day one, Marriott did not want to litigate this case individually, in New York, or under New York law, so Marriott did not invoke the Venue Clause and led the parties and the Court down a path that included thousands of hours of attorney and Court time and millions of dollars in expenses in a complicated bellwether process involving the laws of multiple states. That Marriott now seemingly regrets its litigation choice is of no moment: Marriott deliberately chose to consume significant judicial and attorney resources and engaged in a massive and *collective* litigation effort under *many* states' laws in an apparent effort to spend its way to victory, all in its chosen and convenient home state forum in Maryland. If the clause was ever enforceable (it was not), it certainly cannot be enforced five years into active, collective litigation that has contradicted every aspect of the Venue Clause by Marriott's own choice. Plaintiffs respectfully ask this Court to reject Marriott's and Accenture's belated arguments to the contrary.

## II.   <u>ARGUMENT</u>

### A.   <u>Marriott waived its Venue Clause.</u>

Marriott's attempts to blame Plaintiffs for *its* own failure to enforce *its* own contract are specious. In particular, Marriott argues that it could not act until Plaintiffs moved to certify a breach of contract claim about the SPG Terms. This argument is wrong and self-defeating. Marriott's rights are not tied to how Plaintiffs chose to litigate their case. For example, courts regularly enforce forum selection clauses for contract-related tort claims, even though the plaintiff does not assert breach of the contract in which the clause is contained. *See, e.g.*, *Varsity Gold, Inc. v.*

*Lunenfeld*, 2008 WL 5243517, *2-3 (D. Md. Dec. 12, 2008) (collecting cases). The argument would not aid Marriott even if correct, however, because if Marriott could not enforce the clause until Plaintiffs specifically moved to certify a claim for breach of the SPG Terms, then Marriott also concedes the clause applies *at most* to the single claim for breach of those terms and not, for example, to Plaintiffs' consumer fraud claims.[1] As explained below and in Plaintiffs' opening brief, however, the clause applies to none of Plaintiffs' claims.

In any event, Marriott's brief belies the notion that this massive corporation somehow spent nearly five years wondering whether or not the SPG Terms were at issue—Marriott highlights four times (among many others cited by Plaintiffs[2]) when the SPG Terms were specifically identified. First, Marriott acknowledges that a bellwether plaintiff specifically alleged SPG status. Marriott's Brief ("MB") at 6-7. Second, Marriott notes that Plaintiffs identified 31 contractual documents— which *included* the SPG Terms—in their Third Supplemental Responses to Marriott's Interrogatories, asking which contracts were at issue. *Id*. at 7. Third, Marriott questioned Plaintiffs about the SPG Terms during their depositions. *Id*. And, fourth, although it never sought judicial intervention on this issue, Marriott responded to Plaintiffs' interrogatory that "by using Marriott's or Starwood's websites, *or by enrolling in Starwood's Preferred Guest Program* or Marriott's Reward Program, individual bellwether plaintiffs agreed to forgo participation in a class action." *Id*. at 7-8. Marriott cannot feign ignorance of its own contract.

---

[1] Even this argument fails, however, because Marriott litigated the claims of several named Plaintiffs together as part of the bellwether process it agreed upon with the Court instead of insisting on individual actions.

[2] For example, the Second Amended Consolidated Complaint specifically referenced the SPG Terms in the Breach of Contract claim. ECF No. 595-2, ¶ 322.

1.     <u>**Marriott cannot selectively enforce the class action waiver from the Venue Clause.**</u>

Marriott's attempts to selectively enforce a small portion of only one sentence of the Venue Clause should be rejected. Because the Venue Clause is "a single package of rules which governs the contours of disputes between the company and SPG members," the clause must "rise or fall together." ECF 1142 (opening brief) at 21. Marriott's sole New York case on this point is not to the contrary. *See Tutor Perini Corp. v. State of New York*, 209 A.D.3d 692, 697 (N.Y. App. 2022) (cited by Marriott, MB at 9). That case does not, as Marriott argues, state that a party can waive one part of a clause but still enforce the rest (much less one part of one sentence of a clause). It holds instead that the "waiver of *one provision of a contract* or one breach of a contract does not waive *other provisions* and other breaches of the contract." *Id*. (emphasis added). In other words, *Tutor* stands for the unremarkable proposition that the parties in this litigation may attempt to enforce *other* provisions in the SPG contract, even though they waived the Venue Clause. That is not the issue before this Court.

Marriott's other citations are not based on New York law, a choice that punctuates the degree to which Marriott has spent the last five years *avoiding* the Venue Clause to avail itself of the law of jurisdictions more favorable to it than New York when it suits Marriott's position. But even these cases would not help Marriott if they applied. The first is a Missouri case explaining that a defendant does not waive a standalone class waiver based on the failure to assert *different* contractual provisions addressing *different* rights. *See Hennessey v. Koh's Corp.*, 571 F.Supp.3d 1060, 1078 (E.D. Mo. 2021). The second is similar: it is a Virginia case striking some contractual provisions but upholding *different*, unrelated ones. *GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 228 (E.D. Va. 2020). Setting aside that neither of these cases purport to say anything about New York law, they would not help Marriott even if they did apply, as they

are factually distinct. To the contrary, the cases Plaintiffs cite in their opening brief are much more applicable. *See* ECF 1142 at 15.

2.    <u>The SPG Terms do not excuse Marriott's waiver through affirmative litigation conduct.</u>

Marriott next argues that it *cannot* waive the SPG terms. But that is not what the contract says or what the law permits. The contract states only that a "failure to insist upon strict compliance . . . will not be deemed a waiver of any rights[.]" ECF 1022-34 at 21(§ 13.19). But Marriott's waiver does not hinge on its failure to "insist" Plaintiffs comply strictly with the Venue Clause.[3] Marriott itself waived the Venue Clause because *Marriott* decided that collective litigation near its headquarters in Maryland under the law of many states would be more favorable to it than chancing the consumer-friendly laws of New York in repeated, *seriatim*, individual litigation. *See* ECF 1142 at 13-20.

In any event, even if there *were* an applicable no-waiver provision in the SPG Terms, it would not change the outcome under New York law. That is because in New York, "the mere existence of a no-waiver provision does not preclude waiver of a contract clause." *Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827, 830-31 (2d Cir. 2018) (cleaned up); *see also Lockheed Martin Transp. Sec. Sols. V. MTA Cap. Constr. Co.*, 2014 WL 12560686, at *23 (S.D.N.Y. Sept. 16, 2014) ("However, New York does permit 'parties to waive such a no-waiver provision by subsequent court of conduct.'" (citations omitted)). Marriott's reliance on a Maryland bankruptcy court decision (*Sher v. RBC Cap. Markets, LLC*, 539 B.R. 260, 269 (D. Md. 2015)) does not change the analysis for two reasons. First, *Sher* is not in accord with New York law. Second, the clause in

---

[3] *See* Insist, Cambridge Dictionary ("to say firmly or demand forcefully, especially when other disagree with or oppose what you say"); Insist, Merriam-Webster ("to be emphatic, firm, or resolute about something intended, demanded, or required").

that case was very different than the one here: two sophisticated financial entities agreed they could not waive any contractual provision other than "in writing and duly executed by both parties." *Id.* The SPG Terms here are a contract of adhesion and do not contain any provision requiring formal agreement to waive a contractual term.

### 3.   Marriott cannot avoid waiver based on the case's structure as an MDL.

Marriott next tries to argue that there are novel contract waiver rules for MDLs. But it does not cite a single case where contract waiver was considered (let alone rejected) based on consolidation under the MDL statute.

To begin, Marriott highlights four MDLs where *arbitration* was enforced. MB at 10. But, as discussed in Plaintiffs' opening brief, arbitration is a unique animal governed by specific statutory language that favors the enforcement of arbitration clauses (such as Federal Arbitration Act). ECF 1142 at 17-19. And, unlike Marriott here, each defendant in those cases moved to compel arbitration at the earliest possible time or shortly after their cases were transferred to the MDL.[4] In other words, none of the defendants sat on their contractual rights and argued to the contrary through years of litigation. It is no surprise then that waiver was *never even considered*

---

[4] *See* Defendant-Appellant DirecTV's Opening Brief at 5-8, *Kahaly v. DirecTV, Inc.,* Case No. 11-56752, ECF No. 7 (9th Cir. Apr. 11, 2012) (noting that DirecTV filed a motion to compel arbitration promptly after a change in law allowed them to do so); Regions' Motion to Compel Arbitration and Dismiss the Complaint at 1, *Hough v. Regions Fin. Corp.*, Case No. 1:09-CV-2545-BBM, ECF No. 6 (N.D. Ga. Oct. 15, 2009) (moving to compel arbitration on October 15, 2009 where the complaint was filed on September 15, 2009); The H&R Block Defendants' Motion to Stay the Case and Compel Arbitration at 1, *In re H & R Block Refund Anticipation Litig.*, MDL No. 2373, ECF No. 22 (N.D. Ill. July 20, 2012) (moving to compel arbitration on July 20, 2012 after all cases were transferred to the MDL by May 15, 2012); T-Mobile MTD, at 1 (moving to compel arbitration on May 18, 2005 after case was removed from state court on April 18, 2005); T-Mobile USA, Inc.'s Notice of Motion and Motion to Compel Arbitration of Plaintiffs Chunn's, Giles's, Harmon's, and Hall's Claims at 2, *In re Jamster Mktg. Litig.*, MDL No. 1751, ECF No. 244 (S.D. Cal. Aug. 8, 2008) (moving to compel arbitration on August 8, 2008 after consolidated complaint in MDL filed on July 1, 2008).

in any of these cases. *See generally Lombardi*, 549 F. App'x 617 (9th Cir. 2013) (lacking any reference to waiver of arbitration clauses); *In re Checking Acct. Overdraft Litig.*, 672 F.3d 1224 (11th Cir. 2012) (same); *In re H & R Block Refund Anticipation Loan Litig.*, 59 F. Supp. 3d 903 (N.D. Ill. 2014) (same); *In re Jamster Mktg. Litig.*, 2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) (same). These cases therefore underscore Marriott's waiver through litigation conduct here.

Marriott next claims only a transferor court can decide venue after remand. MB at 10. But neither case it cites for that proposition involved contract waiver. In *SFBC*, the Judicial Panel on Multidistrict Litigation ("JPML") considered consolidation into an MDL in Florida versus transfer under 28 U.S.C. § 1404 to New Jersey. *In re SFBC International, Inc., Securities and Derivative Litigation*. 435 F. Supp. 2d 1355 (J.P.M.L. 2006). The defendants there argued transfer would reduce the risk of inconsistent judgments and would promote judicial efficiency. Opposition by Defendants SFBC International, Inc., Jeffrey McMullen, E. Cooper Shamblen, David Natan and Marc Lebel to the Pending Motion for Transfer Under 28 U.S.C. § 1407 at 6-7, *In re SFBC Int'l, Inc. Sec. & Derivative Litig.*, MDL No. 1777, ECF No. 6 (J.P.M.L Apr. 20, 2006). There was no forum selection clause, so the JPML's order did not turn on the application of one. *See id*.

Likewise, in *Park West*, the defendant filed motions to dismiss based on a forum selection clause before consolidation in the MDL. *See generally* Defendant Royal Caribbean Cruises Ltd.'s Motion to Dismiss, *Alleman v. Park West Galleries, Inc*., Case No. 2:09-cv-12896, ECF No. 11 (E.D. Mich. Oct. 29, 2009); Defendant Royal Caribbean Cruises Ltd.'s Motion to Dismiss, *Mullen v. Park West Galleries, Inc*., Case No. 2:09-cv-12947-MOB-MAR, ECF No. 15 (E.D. Mich. Oct. 29, 2009). The JPML then held that its denial of the defendant's motion to vacate its MDL conditional transfer order "in no way precludes Royal Caribbean from seeking enforcement of the forum selection clauses." *In re Park West Galleries, Inc., Marketing and Sales Practices*

*Litigation* did not consider contract waiver. 655 F. Supp. 2d 1378 (J.P.M.L. 2009). In other words, defendants would not have been prejudiced if they *timely* attempted to enforce their contract rights.

In any event, Marriott's Venue Clause also required individual dispute resolution and application of New York law. Both *SFBC* and *Park West* only considered the question of venue. *See SFBC*, 435 F. Supp. 2d at 1356 (considering only whether transfer under 28 U.S.C. § 1407 was proper and whether transfer under 28 U.S.C. § 1404 was a proper alternative); *Park West*, 655 F. Supp. 2d at 1379 (considering only whether transfer under 28 U.S.C. § 1407 was proper and whether Royal Caribbean's forum selection clause prohibited that transfer). By any measure, neither case would excuse waiver based on Marriott's conduct contrary to every other aspect of the litigation rules contained in the Venue Clause.

### 4. Marriott's belated attempt to enforce the Venue Clause is not supported by any case law.

Finally, Marriott relies on several groups of distinguishable cases to support its belated attempt to enforce the Venue Clause. MB at 23-24. None apply New York law, which Marriott still attempts to avoid.[5] But even if they did, they would be unavailing because those cases involve three circumstances where, unlike here: (1) the plaintiff did not argue waiver; (2) the class waiver was contained in a standalone provision as opposed to with other provisions; or (3) the named plaintiff was not subject to any class waiver. Each is taken in turn.

First, in *Spotswood*, the plaintiff never argued waiver at all. *See Spotswood v. Hertz Corp.*, 2019 WL 498822, at *5 (D. Md. Feb. 7, 2019). This case stands for the proposition that a court may not certify a class with some members who are subject to an arbitration agreement and other members who are not. *See id*. It is not relevant to the parties' current dispute.

---

[5] At the risk of belaboring the point, it is not difficult to see why Marriott elected to litigate under the law of many states: New York law is unfavorable to Marriott.

Second, Marriott cites a California case involving a standalone class waiver that did not involve other venue and choice of law provisions. *See Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *1 (N.D. Cal. July 27, 2022). But the Venue Clause in this case demanded individual dispute resolution in New York under New York law; *i.e.*, it demanded action at several stages before class certification. Moreover, in *Flores-Mendez*, the defendant did not actively seek to consolidate cases in one forum.

Third, Marriott relies on two cases where the named plaintiffs were not subject to a class action waiver. For example, in *In re Titanium Dioxide Antitrust Litig.*, the named plaintiff never entered an arbitration agreement with any defendants. 962 F.Supp.2d 840, 853 n.7 (D. Md. 2013). And in *Hall*, the court granted summary judgment on Marriott's affirmative defense of class action waiver because it "failed to create a triable issue on whether Lead Plaintiffs agreed to . . . the class action waiver." *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 268 (S.D. Cal. 2023). Here, Marriott argues that the named plaintiffs and absent class members are governed by the exact same Venue Clause, yet it litigated contrary to that clause throughout this litigation.[6] That is waiver as to the absent class members, not just the named plaintiffs. The Tenth Circuit has explained why: such an assertion by Marriott would have "fundamentally changed the course of the litigation, ensured a more expedient and efficient resolution of the trial, and prevented . . . gamesmanship." *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015); *accord, e.g.*, *Hill v. Xerox Bus. Services, LLC*, 59 F.4th 457 (9th Cir. 2023) (holding that a defendant can waive contractual rights as to unnamed class members before a class is certified). Here, Marriott's "gamesmanship" should not be rewarded.

---

[6] Marriott does not ever really argue that named plaintiffs and absent class members should be treated differently, another reason these cases do not apply here.

### B.   Marriott's class action waiver is not enforceable.

#### 1.   Plaintiffs properly and timely argued that the Venue Clause is unenforceable.

Marriott also argues that Plaintiffs somehow waived the argument that the Venue Clause was unenforceable because they first "mention[ed]" arguments that the class waiver was unenforceable "in rebuttal at oral argument." MB at 11. This is wrong on the facts and on the law. On the facts, Plaintiffs devoted *eleven pages* in their appellate brief to this specific issue. Plaintiffs-Appellees' Brief at 22-33, *In re Marriott Int'l, Inc*., No. 22-1744 (4th Cir. Nov. 15, 2022). That brief even referenced Plaintiffs' *previous* argument that, if the venue clause applied, it was unenforceable. *Id.* at 29 n.10.

But Marriott is also wrong on the law. In its remand to this Court, the Fourth Circuit specifically left "to the district court 'the first opportunity to perform the applicable analysis'" regarding, among other things, "objections to enforcement of that waiver under both state and federal law." *In re Marriott Int'l, Inc*., 78 F.4th 677, 688 (4th Cir. 2023). Marriott would have this Court ignore the Fourth Circuit's mandate, which it cannot do. In any event, even if the enforceability issue was new, "[w]hen a case is remanded to a district court, parties can generally raise a new issue unless (1) the issue was addressed by the lower court and not raised on appeal, or (2) raising the issue would contradict express or implicit rulings made by the appellate court." *Edd Potter Coal Co., v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 213 (4th Cir. 2022). Neither exception to this general rule exists here.

#### 2.   Marriott cannot contract around the federal rules, including Rule 23.

Rule 23 class actions "generate widely recognized benefits for the civil justice system. They generate economies of scale by conducting once what would otherwise be duplicative litigation on issues common to the claims of each class member." Ronen Avraham and

William H.J. Hubbard, *The Spectrum Procedural Flexibility*, 87 U. Chi. L. Rev. 883, 933 (2020); *see also Ginwright v. Exeter Fin. Corp*., 280 F. Supp. 3d 674 (D. Md. 2017) ("The use of a class actions is primarily justified on the grounds of efficiency, because it advances judicial economy to resolve common issues affecting all class members in a single action." (citing *Thorn v. Jefferson– Pilot Life Ins.,* 445 F.3d 311, 318 (4th Cir. 2006)). Parties cannot unilaterally contract around federal procedural rules that increase the efficiency of the court system unless such rules specifically allow for that; instead, courts must enforce those rules as written. *See, e.g.*, *In re: Uber Tech., Inc., Passenger Sexual Assault Litig.*, 2023 WL 6456588, at *2 (J.P.M.L. Oct. 4, 2023) (rejecting argument that Uber's "Terms of Use preclude the motion for centralization" and explaining that "The Panel is not bound by Uber's Terms of Use" but instead the standards prescribed in 28 U.S.C. § 1407).

Marriott first invokes the Supreme Court's conclusion that, for most forum selection clauses, "'the interest of justice' is served by holding parties to their bargain." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 66 (2013) (cited by Marriott, MB at 17). The conclusion that a forum selection clause is usually (though not always) consistent with the federal venue statute does not mean that an individual-litigation clause is always consistent with a federal rule authorizing aggregate litigation. And, a closer look at *Atlantic Marine* reveals that the Court's reasoning supports Plaintiffs' argument here.

In *Atlantic Marine*, the defendant attempted to enforce a forum selection clause through two separate procedural routes: first, through a motion to dismiss under Rule 12(b)(2); and second, through a motion to transfer under 28 U.S.C. § 1404(a). *Atlantic Marine*, 571 U.S. at 53. The Court rejected the defendant's argument that the forum selection clause could be enforced to require dismissal under Rule 12(b)(2). The Court reasoned that "[w]hether venue is 'wrong' or 'improper'

depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and *those provisions say nothing about a forum-selection clause*." *Id.* at 55 (emphasis added). The Court noted that 28 U.S.C. § 1391 "makes clear that venue in 'all civil actions' must be determined in accordance with the criteria outlined in that section," and this "language *cannot reasonably be read to allow judicial consideration of other, extrastatutory limitations* on the forum in which a case may be brought," such as a private forum selection agreement between the parties. *Id.* at 56 (emphasis added). Thus, the Court held, "venue is proper so long as the requirements of § 1391(b) are met, *irrespective of any forum-selection clause*." *Id.* at 57 (emphasis added); *see also In re: Park West*, 655 F. Supp. 2d at 1379 ("When civil actions satisfy the criteria set forth in 28 U.S.C. § 1407(a), the statute authorizes the Panel to centralize those actions. . . . Contractual forum selection clauses thus do not limit the Panel's authority with respect to the selection of a transferee district.") (cleaned up).

The outcome on the motion to transfer in *Atlantic Marine* was different only because § 1404(a), in contrast to Rule 23, explicitly requires a court to consider the parties' preferences when evaluating a motion to transfer. Because the statute itself "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district," the Court in *Atlantic Marine* reasoned that the forum selection clause *could* be considered on a motion to transfer (rather than a 12(b)(2) motion to dismiss, where consideration was improper under the Federal Rules). 571 U.S. at 59-60. And the Court emphasized that the other "public" factors to be considered under § 1404(a) could require denial of a transfer motion notwithstanding a valid and enforceable forum selection clause. *Id.* at 64 ("[A] district court may consider arguments about public-interest factors.").

These dual holdings in *Atlantic Marine* delineate between enforceable and unenforceable pre-dispute agreements and echo the same point that Plaintiffs made in their opening brief. *See* ECF 1142 at 17-22. *Atlantic Marine* stands for the common-sense principle that pre-dispute agreements may *not* supersede federal law, but instead are enforced *only* where the language of the law or rule provides a mechanism for enforcement of such private agreements. The contrary rule advanced by Marriott—that any Federal Rule can be waived by a pre-dispute adhesion contract even if the language of the rule lacks such a mechanism—invites unprecedented procedural anarchy and contradicts established and binding case law. ECF 1142 at 20-21 (identifying other rules that parties could try to contract around).

There is no doubt on which side of the line Rule 23 falls. Like § 1391(b), Rule 23 contains no "mechanism" to enforce a pre-dispute agreement. To the contrary, "[b]y its terms . . . [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.,* 559 U.S. 393, 398 (2010). None of these criteria incorporates the parties' pre-dispute agreements as to class actions. Rather, Rule 23 dictates that a class action "may be maintained" if the Rule's elements are satisfied. Fed. R. Civ. P. 23(b). As with § 1391, Rule 23's "language cannot reasonably be read to allow judicial consideration of other, extrastatutory limitations." *Atlantic Marine*, 571 U.S. at 56.

Nor is it sufficient to say that any pre-dispute class-waiver in an adhesion contract is enforceable because it is merely a "promise to forgo certain procedural mechanisms." MB at 17 (citing *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 179 (2d Cir. 2015)). If that were so, any of the Federal Rules that consumer-facing companies find burdensome would be subject to waiver in contracts of adhesion, and courts would be asked to apply a patchwork of procedural rules tailor-made to benefit certain parties. *See* ECF 1142 at 20-21. Marriott's argument would just as easily

extend to all manner of fundamental procedural rules, and Marriott provides no limiting principle that would prevent a pre-dispute contract of adhesion from, for instance, requiring a consumer "to forgo" the "procedural mechanism" of filing a complaint at all. *See* Fed. R. Civ. P. 3. Nor does Marriott's argument address the point that it would be just as unenforceable to *require* that all disputes be resolved by a class action whether they satisfy Rule 23's criteria or not.

Finally, once again, Marriott relies on cases enforcing class waivers that are *paired with arbitration agreements*, which are governed by a completely different analysis. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234-45 (2013) (considering whether an arbitration clause could be disregarded for a federal statutory claim); *Cohen*, 799 F.3d at 179 (considering whether a FINRA rule prohibiting class waivers required voiding an individual-arbitration clause).[7] These cases stand only for the unassuming proposition that the procedural requirements of Rule 23 give way to a conflicting federal statute—the Federal Arbitration Act. *See, e.g.*, *Am. Exp.*, 570 U.S. at 233 & 238 n.5 (deciding the case based on "the FAA's command to enforce arbitration agreements, including "the rules under which that arbitration will be conducted") (citation omitted).[8]

---

[7] Marriott repeats this error in arguing that its class waiver is not unconscionable. *See, e.g.*, MB at 14-15 (citing *Lindsay v. Carnival Corp.*, 2021 WL 2682566, at *1 (W.D. Wash. June 30, 2021) (relying on Ninth Circuit authority enforcing arbitration clauses to enforce class waiver paired with arbitration clause)). While the FAA shields class-action waivers *paired with arbitration provisions* from unconscionability, there is no such protection for standalone class-action waivers, like Marriott's. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). Marriott's adhesive class-waiver provision, which effectively forecloses relief for class members, is procedurally and substantively unconscionable. *See Scarcella v. Am. Online, Inc.*, 11 Misc.3d 19, 20 (N.Y. Sup. Ct. Dec. 28, 2005). Likewise, applying the unconscionability doctrine to Marriott's materially uniform form contract, class-waiver provisions would not create an individualized issue. *See, e.g.*, *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440-41 (1st Cir. 2013) (lead opinion of equally divided en banc court) ("[U]niform contracts are interpreted uniformly across cases whenever it is reasonable to do so."); *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982) ("Boilerplate provisions are thus not the consequence of the relationship of particular borrowers and lenders.").

[8] In particular, the question presented in *American Express* was whether the federal antitrust laws included a "contrary congressional command" that overrode the FAA. *Id.* at 233. After finding no

**C.      The Venue Clause does not apply to Accenture at all because Accenture was a non-signatory to the clause and because its conduct would not have been covered in any case.**

Accenture is not a party to the SPG Terms and therefore cannot directly assert the Venue Clause, even if it applied (which it does not). Nevertheless, Accenture asserts that under the doctrine of equitable estoppel, it is somehow covered under the Venue Clause. Accenture's argument is similarly unavailing.

Equitable estoppel precludes a party from "simultaneously invoking the duties and obligations of" an agreement "while seeking to avoid" portions it does not like. *Colony Cap. Inc. v. Flaherty*, 2022 WL 2440993, at *8 (S.D.N.Y. July 5, 2022); *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) ("The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his] disadvantage [by requiring arbitration]." (cleaned up)). A non-signatory, like Accenture, can invoke the doctrine in rare circumstances, but it is a "heavy burden." *Matter of Rural Media Group, Inc. v. Yraola*, 137 A.D.3d 489, 490, 26 N.Y.S.3d 531 (1st Dept. 2016). Those circumstances are:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract; and

> (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and the allegations of

---

such command in those statutes, the Court rejected the idea that Rule 23 filled-in the gap by guaranteeing "class proceedings for the vindication of statutory rights." The Court answered 'no' because Rule 23 does not "guarantee" a class will be certified for an antitrust claim; instead, it "imposes stringent requirements for certification." *Id.* at 234. The Court never said that, absent the federal arbitration rule, a private contract could overcome Rule 23 if those "requirements" are met. The language Marriott cites from *American Express*—that Rule 23 does not "establish an entitlement to class proceedings" conveniently lops off the key words that make clear what the Court was—and was not—deciding: "for the vindication of statutory rights." *Id.* at 235.

interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citations omitted).

Successful invocation of estoppel to enforce another party's contract requires more than reference to an agreement in a suit against the non-signatory and more than related, but independent, misconduct. *See Doe v. Trump Corp.*, 6 F.4th 400, 412 (2nd Circ. 2021) ("[A]n estoppel theory requiring arbitration between a signatory and non-signatory is available where the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations."); *Goldman v. KPMG*, LLC, 173 Cal App. 4th 209, 225 (2009) ("[A]llegations of interdependent and concerted misconduct by signatories and nonsignatories will justify allowing a nonsignatory to enforce an arbitration clause only . . . when the claims against the nonsignatory are inextricably bound up with the terms and duties of the contract the plaintiff has signed with the other defendant."); *Denney v. Jenkens & Gilchrist*, 412 F.Supp.2d 293, 297–298 (S.D.N.Y.2005) ("[I]t is not the case that a claim against a co-conspirator of the party . . . will always be intertwined to a degree sufficient to work an estoppel. [The] Court must determine whether plaintiffs' claims against the . . . defendants are intimately founded in or intertwined with the underlying obligations of the . . . agreement.").

Here, Accenture cannot show either that Plaintiffs relied on the SPG Terms, containing the Venue Clause in their claims against Accenture, or that Plaintiffs' negligence claims against Accenture are inextricably bound up in the SPG Terms. The operative complaint alleges only negligence and negligence per se claims against Accenture. *See* ECF 595-2 ¶¶ 1341-56. The negligence claims are based on *Accenture's* deficient cybersecurity. The counts are not reliant on or inextricably bound with the contract between Marriott and consumers, which relates to the SPG

Program.[9] While the SPG terms are discussed in the complaint with respect to Marriott, they are not mentioned in any of the allegations as to Accenture. Equitable estoppel requires "*actual reliance* on the terms of the agreement to impose liability on the nonsignatory" and here there is none. *Goldman,* 173 Cal. App. 4th at 231 (emphasis added); *KPMG LLP v. Kirschner,* 182 A.D.3d 484, 485, 122 N.Y.S.3d 18, 20 (1st Dept. 2020) (rejecting equitable estoppel where the respondent pleaded solely common-law claims and did not invoke the engagement letter containing the arb clause).

Nor can Accenture show that its alleged negligence is "founded in or intimately connected with the obligations of the underlying agreement." As previously noted, the clear import of the Venue Clause is that it relates to earning loyalty points under the SPG Program and does not address Accenture's cybersecurity-related negligence claims at issue here. And as noted in Plaintiffs' opening brief (as well as Plaintiffs' briefing to the Fourth Circuit), even if the Venue Clause applied and was enforceable, it could only apply to Plaintiffs' *contrac*t claims against Marriott because the Clause applies only to "disputes *arising out of or related to* the SPG Program." ECF 1142 at 23-25. Accenture cannot invoke the Venue Clause and its class waiver subclause for non-contractual claims any more than Marriott can.

Accenture's case citations are also inapt. None stand for the proposition that a non-signatory can enforce a class waiver provision against a plaintiff for claims that are not founded in or intimately connected to the agreement containing that provision. For example, the plaintiffs in

---

[9] Not only do Plaintiffs' negligence claims against Accenture bear no relation to their contract with Marriott, but Plaintiffs have not alleged a "close" relationship between Accenture and Marriott "such that it can reasonably be inferred that the signatories had knowledge of, and consented to, the extension of their agreement to [arbitrate] to the non-signatories." *Trump Corp.*, 6 F.4th at 414. There was no relationship between Accenture and Marriott of which Plaintiffs had knowledge, Accenture does not own or control Marriott, and Accenture is not named in the agreement between Plaintiffs and Marriott. *Id*.

*In re Titanium Dioxide Antitrust Litig.* alleged "a theory of joint and several liability, naming the four original Defendants as co-conspirators," wherein the signatories and non-signatories "coordinated" their behavior. *In re Titanium Dioxide Antitrust Litig.,* 962 F.Supp.2d at 851. The court noted that in *conspiracy* cases (which this is not), equitable estoppel was more likely, given "allegations of coordinated behavior between a signatory and a nonsignatory defendant," and "the claims against both the signatory and nonsignatory must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." *Id.* at 851, citing *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012). Since the plaintiffs sued both the signatories and non-signatories, alleging that the prices they paid under the purchase agreements were illegally inflated, and since the price fixing claims were within the scope of the agreement, the court allowed the non-signatory co-conspirators to invoke the purchase agreement provisions. *Id.* at 852. Plaintiffs here allege both Marriott and Accenture were negligent, but not that they engaged in a conspiracy or concerted misconduct, and Accenture's negligence claims arise under common-law duties, not the SPG terms. For the same reason, Accenture cannot credibly rely on *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1139–40 (D. Kan. 2003) (finding plaintiffs in price fixing case that relied on their contracts for their claims are estopped from preventing arbitration of those claims by non-signatory coconspirators).

*Naranjo* is also inapposite. There, all of the plaintiffs' allegations were against defendants *collectively*. Plaintiffs made no individual allegations against the non-signatory, essentially conceding the claims against the nonsignatory were founded in and intertwined with that of the signatory defendant. *Naranjo v. Nick's Management, Inc.*, 2023 WL 416313, at *11 (N.D. Tex.

Jan 25, 2023).[10] Accenture also relies on *Bailey*, but that case involved claims against defendants that were divisions of each other, shared employees, and engaged in identical misconduct, and there was even "the possibility of profit sharing." *Bailey v. Vulcan Materials Co.*, 2021 WL 5860743, at *7 (N.D. Ga. Nov. 16, 2021). Accenture cites no analogous cases and cannot enforce the Venue Clause, even if Marriott somehow could (which it cannot).

## III.   CONCLUSION

Neither Marriott nor Accenture sought to invoke the class waiver subclause within the Venue Clause until they saw a potential benefit to doing so—and for good reason: they preferred collective litigation under multiple states' laws in Marriotts' home forum. Marriott thus waived its right to contest class certification on the basis of the SPG Terms, and Accenture never had that right as a matter of contract law. The Court should find the class waiver contained in the SPG Terms is not an available defense for Defendants.

Dated: November 3, 2023                                    Respectfully submitted,

/s/ Amy Keller                                                    /s/ James J. Pizzirusso
Amy Keller (D. Md. Bar No. 20816)                 James J. Pizzirusso (D. Md. Bar No. 20817)
**DiCELLO LEVITT LLP**                                  **HAUSFELD LLP**
Ten North Dearborn Street, Eleventh Floor      888 16th St., NW, Suite 300
Chicago, Illinois 60602                                     Washington, D.C. 20006
Tel. 312-214-7900                                            Tel. 202-540-7200
akeller@dicellolevitt.com                                 jpizzirusso@hausfeld.com

---

[10] Indeed, the case law cited by Accenture is clear that equitable estoppel applies only "when the party ordered to arbitrate has agreed to arbitrate disputes *arising out of a contract and is suing in reliance upon that contract*." *In re Universal Service Fund Telephone Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1139 (D. Kan. 2003) (emphasis added).

*/s/ Andrew N. Friedman*
Andrew N. Friedman (D. Md. Bar No. 14421)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW, Suite 500
Washington, D.C. 20005
Tel. 202-408-4600
afriedman@cohenmilstein.com

*Consumer Plaintiffs' Co-lead Counsel*

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
siegel@stuevesiegel.com

Ariana J. Tadler
**TADLER LAW LLP**
One Penn Plaza, 36th Floor
New York, NY 10119
Tel: 212-946-9300
atadler@tadlerlaw.com

Daniel Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel: 949-720-1288
drobinson@robinsonfirm.com

Timothy Maloney
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
tmaloney@jgllaw.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road, Bldg. 14, Suite 230
Atlanta, GA 30305
Tel: 404-320-9979
mgibson@thefinleyfirm.com

Jason Lichtman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212-355-9500
jlichtman@lchb.com

Megan Jones
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: 415-633-1908
mjones@hausfeld.com

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
glynch@carlsonlynch.com

*Consumer Plaintiffs' Steering Committee*

Veronica Nannis
**JOSEPH GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: 301-220-2200
vnannis@jgllaw.com

James Ulwick
**KRAMON & GRAHAM PA**
1 South Street, Suite 2600
Baltimore, MD 21202
Tel: 410-347-7426
julwick@kg-law.com

***Consumer Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

I, Amy Keller, Co-Lead Counsel for the Consumer Plaintiffs, hereby certify that on November 3, 2023, I served the foregoing document on counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

/s/ *Amy Keller*
Amy Keller