**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

IN RE:MARRIOTT INTERNATIONAL
CUSTOMER DATA SECURITY BREACH                    **MDL No. 19-md-2879**
LITIGATION

**MEMORANDUM ORDER AND OPINION**

Pending before this Court is Plaintiffs' Motion for Class Certification [Doc. 858],

which has generated rounds and rounds of briefing.  For the reasons hereinafter stated,

the Motion will be granted.

The facts of this case are well set out in the opinion of the United States Court of

Appeals for the Fourth Circuit in **In re Marriott International, Inc.**, 78 F.4th 677 (4th Cir.

2023):

> In November 2018, Marriott International, Inc., disclosed that it had
> been subject to a massive data breach: From July 2014 to September 2018,
> hackers had access to the guest reservation database of a hotel chain,
> Starwood Hotels & Resorts Worldwide, that Marriott had purchased
> mid-breach in September 2016.  Through the Starwood database, the
> hackers were able to view customers' personal information, including names,
> mailing addresses, birth dates, email addresses, phone numbers, and, in
> some cases, passport and payment card information.  The compromised
> information was associated with both regular guests and those who were

1

members of the Starwood Preferred Guest Program. In total, the breach affected roughly 133.7 million guest records within the United States.

Consumer plaintiffs across the country began filing lawsuits against Marriott.  The suits claimed, in collective effect, that Marriott failed to take reasonable steps to protect its customers' personal information against the foreseeable risk of a cyberattack, giving rise to tort liability.  They also alleged that Marriott had breached contractual and statutory duties the company owed to its customers.  Those actions were ultimately consolidated in multi-district litigation in the District of Maryland, where Marriott is headquartered.  The plaintiffs added as a defendant Accenture LLP, a third-party provider of IT services to Starwood and then Marriott during the relevant period.

In their operative complaint, the plaintiffs asserted various state-law contract and statutory consumer-protection claims against Marriott, along with state-law tort claims for negligence against both Marriott and Accenture. Marriott and the plaintiffs then identified ten "bellwether" claims to test the sufficiency of the pleadings; each was keyed to the law of a particular state, with the named plaintiffs from the selected state serving as the bellwether plaintiffs.  The plaintiffs and Accenture followed a similar process to identify test jurisdictions and named plaintiffs for the state-law negligence claims against that defendant.  Marriott and Accenture then moved to dismiss the representative plaintiffs' claims.

The district court denied the defendants' motions in relevant part, allowing the plaintiffs' claims to proceed.  *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott I)*, 440 F.Supp.3d 447 (D. Md. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott II)*, 2020 WL 6290670 (D. Md. Oct. 27, 2020).  Most important here, the district court held that the named plaintiffs had adequately alleged "injury in fact" for purposes of Article III standing, and in so doing, it identified the theories of harm that would go on to guide the class certification litigation. *Marriott I*, 440 F. Supp. 3d at 456–66; *Marriott II*, 2020 WL 620670, at *4–5 (incorporating reasoning of *Marriott I*).  Everyone agreed that plaintiffs who had experienced actual "fraudulent misuse of their personal information" had suffered a cognizable injury. *Marriott I*, 440 F.Supp.3d at 456 n.4, 460 n.6. But the district court also found, as relevant here, that the remaining plaintiffs had advanced three other forms of injury sufficient to establish standing: (1) that they had spent time and money mitigating a non-speculative threat of identity theft (the "mitigation" theory); (2) that the cyberattack had deprived them of the inherent market value of their personal identifying information (the "loss of market value" theory); and (3) that they had paid more for their hotel rooms than they would have had they known of Marriott's allegedly lax data-security practices (the "overpayment" theory). Id. at 460–66.

B.

The plaintiffs moved to certify various classes, and in the decision now before us, the district court granted that motion in part. *See **In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott III)***, 341 F.R.D. 128 (D. Md. 2022).  On the plaintiffs' contract and consumer-protection claims against Marriott, the court certified three state-specific damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Id*. at 172–73. And on the plaintiffs' negligence claims against Marriott and Accenture, the court certified four state-specific "issue" classes under Rule 23(c)(4), limited to the elements of duty and breach, with individualized proceedings on injury, causation, and the amount of damages to follow. *Id*. at 173. Our ruling today turns primarily on the import of a class-action waiver signed by members of the damages classes against Marriott.  But that issue is intertwined with others in this complex proceeding, and the defendants' objections are wide-ranging, so we lay out much of the district court's comprehensive opinion below.

1.

The district court began by returning to the question of the class representatives' standing. *Id*. at 140–43.  The court relied mostly on its prior analysis from the motion to dismiss stage, reasoning that the same evidentiary burden applied through class certification and until summary judgment, at which point the defendants could raise further standing

challenges. *Id*. at 141.  The district court did, however, make one adjustment to the scope of the damages classes against Marriott in response to standing concerns.  Those classes, the court explained, relied in critical part on an alleged "overpayment" injury: The class members paid more for their hotel rooms than they were worth, given Marriott's data-security deficiencies.  But as defined by the plaintiffs, Marriott argued, the classes also included customers, like those traveling for work, who were reimbursed for their stays and thus did not themselves incur the hypothesized economic injury. *Id*. at 142.  The district court agreed, and thus limited the classes proceeding on the overpayment theory of injury – the contract and consumer-protection classes against Marriott – to "persons who bore the economic burden for hotel room[s]" and were not reimbursed for their stays. *Id*. at 142–43.

That raised a second concern for Marriott: that the classes, so defined, were insufficiently "ascertainable" because there was no administratively feasible way of determining who was and was not a class member. *See* **EQT Prod. Co. v. Adair**, 764 F.3d 347, 358 (4th Cir. 2014) (discussing Rule 23's "implicit threshold requirement" that members of a proposed class be "readily identifiable" (internal quotation marks omitted)). Here, the district court disagreed, finding no reason to think – at least at present – that identifying class members who had paid their own way would call for any "exceptionally complicated administrative review." **Marriott III**, 341 F.R.D. at 144.  But the court cautioned that it would continue to monitor

5

this process, redefining the classes or even decertifying them altogether if identifying members proved too unwieldy. *Id.* at 146.

2.

The court turned then to the issue implicating the class-action waivers at the heart of this appeal: Rule 23(a)'s "typicality" requirement, under which a class representative's claims and defenses must be typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3); ***Marriott III***, 341 F.R.D. at 149.  The problem here, as Marriott saw it, was that the class representatives, all members of the Starwood Preferred Guest Program ("SPG"), had a contractual relationship with Marriott that differed critically from that of other class members.  As SPG members, every class representative had signed a "Terms & Conditions" contract with a provision purporting to waive his or her right to pursue class litigation.  *See* J.A. 727 ("Any disputes arising out of or related to the SPG Program or the[ ] SPG Program Terms will be handled individually without any class action ....").  But as the plaintiffs had defined them, the consumer-protection and negligence classes against Marriott included non-SPG members, who had not signed such waivers.  And that, the district court concluded, did indeed "raise[ ] serious typicality concerns," because Marriott had indicated that it would rely on the waiver to argue that SPG members – like the class representatives, but unlike many class members – could not pursue class litigation at all. ***Marriott III***, 341 F.R.D. at 149.

6

To address that concern, the district court redefined all classes against Marriott to include only SPG members, bringing the class representatives into alignment with class membership. *Id*. The result, of course, was that now every proposed class member litigating against Marriott would be someone who had purportedly given up the right to engage in just such class litigation. But the district court did not further consider the import of the class waiver on its certification decision. Instead, in a footnote, it first observed that the plaintiffs had raised a "strong argument" that Marriott had waived its right to enforce the class-action waiver; though it was included as a "one-line, boilerplate affirmative defense" in Marriott's answer, Marriott had not otherwise pressed the issue as "part of the bellwether negotiation process" or in any separate motion. *Id*. at 149 n.26. And in any event, the court concluded, it could address the class-action waiver, along with other affirmative defenses, after discovery and at the merits stage of the litigation. *Id*.

After addressing other threshold Rule 23(a) requirements not at issue on appeal, the court proceeded to certify several state-specific Rule 23(b)(3) damages classes against Marriott on the plaintiffs' contract and consumer-protection claims. Here, the focus was on Rule 23(b)(3)'s predominance requirement, *see* Fed. R. Civ. P. 23(b)(3), which in this context meant that damages must be "capable of measurement on a classwide basis." *Marriott III*, 341 F.R.D. at 161 (quoting *Comcast Corp. v.*

*Behrend*, 569 U.S. 27, 34 (2013)).  Though damages need not be calculated on a classwide basis, that is, the plaintiffs had to demonstrate that there was a "common, classwide method for determining individual damages." *Id*. (internal quotation marks omitted).   And as the court explained, it had approved just such a common method for calculating the plaintiffs' alleged overpayment injuries in a companion Daubert opinion issued the same day. *Id*. at 161–62 & n.48 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig. (Marriott IV)*, 602 F. Supp. 3d 767 (D. Md. 2022))."

*In re Marriott International, Inc.*, 78 F.4th at 680–683.

After the district court entered its certification order, Marriott and Accenture timely petitioned the Fourth Circuit for permission to appeal under Rule 23(f) of the Federal Rules of Civil Procedure.  The Fourth Circuit granted the petitions.

On appeal, the Fourth Circuit determined that the district court erred in not addressing the issue of whether the plaintiffs, by agreeing to the SPG Terms and Conditions, agreed to bar the certification of a class action.  Accordingly, the Fourth Circuit vacated the class certification and remanded this case for consideration of the issue.  The Court further found that, in the absence of a valid class certification against Marriott, the class certification against Accenture cannot stand.  Accordingly, the class certification with regard to Accenture was vacated and remanded as well.

Since the major issue on remand is the effect of the "class action waiver," it would appear prudent to first examine the provision.  On the last page of the Pre-August SPG

8

Program Terms, there is a "class waiver" provision found in the choice of law and the venue section, as follows:

> 13.21 Choice of Law and Venue. Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action, and will be governed by, construed and enforced in accordance with the laws of the State of New York, United States, without regard to its conflicts of law rules.  The exclusive jurisdiction for any claim or action arising out of or relating to these SPG Program Terms or the SPG Program may be filed only in the state or federal courts located in the State of New York, United States.

This Court makes the following observations with regard to the Choice of Law and Venue provision:

1. The entire provision contains only two sentences;

2. The heading of the provision makes no reference to individual handling of claims;

3. The provision is buried on the last page of the Terms;

4. While it has been described as a class action waiver, the provision is broader than that, mandating the handling of all claims on an individual basis;

5. The provision requires that New York law apply to any dispute;

6. The provision limits the jurisdiction to handle any claims to the state and federal courts of New York;

7. Rather than referencing the parties, this provision purports to control the court's management of the litigation, i.e. will be handled individually.

9

The plaintiff's contend that Marriott waived or forfeited the provision by its inaction and action.  A court may find that a party has waived a contractual provision when the party takes actions that are inconsistent with the provision.  Waiver of an argument precludes review, while mere forfeiture of an argument permits plain error review.  "Forfeiture 'is the failure to make the timely assertion of a right,' while 'waiver is the "intentional relinquishment or abandonment of a known right."' *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))." *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 498–99 (7th Cir. 2018).

"There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Hill v. Xerox Bus. Servs.*, LLC, 59 F.4th 457, 471 (9th Cir. 2023).

"Outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice.   Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.' *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).  To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022).

In this case, this Court finds that Marriott waived the Choice of Law and Venue provision:

1.      Marriott requested that all of the cases be consolidated into an MDL action.  An MDL is the antithesis of handling each claim on an individual basis;

2.      When Marriott sought the MDL, it asked for "transfer and consolidation to eliminate duplicative discovery, avoid conflicting rulings, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts";

3.      In seeking the MDL, Marriott added that "separately litigating each of the 59 related actions, plus additional tag-alongs, offer no benefit and will inevitably heighten the duplication, complexity, and burdens of these matters for all stakeholders";

4.      Marriott requested that the MDL be assigned to the District of Maryland, which is wholly inconsistent with the Choice of Law and Venue provision's requirement that any case be filed in New York;

5.      Despite the Choice of Law and Venue provision, Marriott stated that venue was proper in the District of Maryland;

6.      At status conferences in April and May, 2019, the parties jointly suggested a bellwether approach using plaintiffs from several states and claims under those various states' laws. For several of the states, Marriott nominated multiple representative plaintiffs. Again, this is wholly inconsistent with handling cases on an individual basis, in New York, applying only New York law.

In the bellwether process, Marriott noted that it was not waiving any arguments it may have regarding choice of law and that each party is recerving its rights as to the same. However, a reservation of rights is not an assertion of rights. *Hooper v. Advance America Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009).

In its decision, the Fourth Circuit indicated that by citing the Choice of Law and Venue provision in its answer and only raising it in opposition to class certification, Marriott adequately preserved its individual claims provision.  This Court respectfully disagrees.

11

The provision prohibits any collective handling of the claims, including by class action.  It is not merely a class action waiver.

It appears that Marriott having not fared as well as it had hoped in the bellwether process is now attempting to invoke one half of one third of the Choice of Law and Venue provision.  It has clearly waived 5/6 of the provision.  It now seeks to enforce the words "class action" completely out of context.  Marriott should not be permitted to cherry-pick the rules from a provision, having waived every other term therein.  "In this case, the arbitration agreement also included a waiver of the right to bring a class action suit.  If GC Services waived any right to arbitrate, the company necessarily waived any right to oppose class certification premised on the agreement.  *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 n.17 (7th Cir. 2018)."  *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018).  "Individually without class action" is a single phrase - it is a single rule.  And it has been waived.

As the Supreme Court noted in *Stern v. Marshall*:

We have recognized "the value of waiver and forfeiture rules" in "complex" cases, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487–488, n. 6 (2008), and this case is no exception. In such cases, as here, the consequences of "a litigant ... 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," *Puckett v. United States*, 556 U.S. 129, 134 (2009) (some internal quotation marks omitted)—can be particularly severe.  If Pierce believed that the Bankruptcy Court lacked the authority to decide his claim for defamation,

then he should have said so—and said so promptly. *See **United States v. Olano**,* 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited ... by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'" (quoting ***Yakus v. United States***, 321 U.S. 414, 444 (1944))).  Instead, Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate there.  We will not consider his claim to the contrary, now that he is sad.

***Stern v. Marshall***, 564 U.S. 462, 481–82 (2011).

This Court also has reservations as to the validity of the Choice of Law and Venue provision, even were it not waived.  In ***Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.***, 559 U.S. 393 (2010), the United States Supreme Court held that a New York statute precluding a class action to recover a penalty such as statutory interest was invalid because it conflicted with Rule 23 of the Federal Rules of Civil Procedure.

The Fourth Circuit, relying on ***Shady Grove***, held that a West Virginia state statute requiring a pre-filing expert report for a claim of medical malpractice conflicted with the Federal Rules of Civil Procedure and was invalid in Federal court.  ***Pledger v. Lynch***, 5 F.4th 511 (4th Cir. 2021).

In ***Johnson v.  West Virginia Univ. Bd. of Govs.***, 2022 WL 908496, at *13 (S.D. W.Va. March 29, 2022) (Johnston, C.J.), the Court held that "[t]he applicability of the ***Shady Grove*** analysis is not limited to cases involving federal question jurisdiction—which was the case in ***Pledger***—rather, cases involving diversity jurisdiction and supplemental

jurisdiction are also within *Shady Grove's* purview.  *See* ***Doe #5 v. Raleigh General Hospital, LLC.***, 2021 WL 4496241, at *5 (S.D. W.Va. Sept. 30, 2021) [(Volk, J.)] ('Simply put, the conflict between the pre-suit notice and the Federal Rules of Civil Procedure does not dematerialize in diversity actions.  *Pledger* applies just the same.')."  Chief Judge Johnston added that "*Pledger's* holding is categorical: 'state-law certification requirements like West Virginia's [MPLA] are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court.'  *Pledger*, 5 F.4th at 514.  It was of no consequence that Pledger's claims were brought pursuant to the FTCA and invoked the court's federal question jurisdiction, as claims brought under the FTCA 'incorporate[ ] state-law rules of "substantive liability," [but] not procedure.'  *Id.* at 523 (citing ***FDIC v. Meyer***, 510 U.S. 471, 478 (1994)).  Similarly, here, it is of no consequence that Plaintiff's claims were brought pursuant to the MPLA, thereby invoking this Court's supplemental jurisdiction.  *Pledger's* holding, and the *Shady Grove* analysis set forth therein, are applicable in this case because it is in federal court, notwithstanding this Court's jurisdiction over Plaintiff's claims." *Johnson*, 2022 WL 908496, at *13.

Marriott cites a number of cases which have found class action waivers to be enforceable.  Many of these case dealt with class action waivers in the arbitration context. ***American Express Co. v. Italian Colors Restaurant***, 570 U.S. 228 (2013); ***Viking River Cruises, Inc. v. Moriana***, 596 U.S. ___, 142 S.Ct. 1906 (2022); ***In re Titanium Dioxide Antitrust Litigation***, 962 F.Supp.2d 840 (D. Md. 2013); ***County of Orange v. United States District Court***, 784 F.3d 520 (9th Cir. 2015).  Of course, where the parties agree to resolve their case in a non-judicial forum, the Federal Rules have limited applicability.

Marriott has, however, cited to some cases which have upheld class action waivers in a non-arbitral context.  In *Crews v. Titlemax of Delaware, Inc.*, 2023 WL 2652242 (M.D. Pa. March 27, 2023), the District Court upheld a stand alone class waiver, finding that *Shady Grove* did not address whether the parties, through contract, can waive their right to bring claims as part of a class.

Similarly, in *Deluca v. Royal Caribbean Cruises, LTD*, 244 F.Supp.3d 1342 (S.D. Fla. 2017), the District Court upheld the validity of a waiver where the first paragraph of the ticket contract contains bolded language specifically directing passengers to important terms and conditions. The notice states:

**IMPORTANT NOTICE TO GUESTS**

**YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTION 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.**

Paragraph 9(b) contained a class action relief waiver printed in all caps.

This Court finds the above cases to be unpersuasive.  In this case the Choice of Law and Venue provision does not state that SPG members will not bring or participate in class actions.  Rather, it seeks to limit this Court's own authority by stating that "[a]ny disputes . . . will be handled individually."  The parties cannot by agreement dictate that a district court must ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure.

15

In *Martrano v. Quizno's Franchise Co., L.L.C.*, 2009 WL 1704469 (W.D. Pa. June 15, 2009), Magistrate Judge Lenihan reviewed a defense request that the plaintiffs be barred from participating in a class action or consolidation based upon a contractual bar.

The Court analyzed the issue as follows:

> "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005), quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Although classification of a law as 'substantive' or 'procedural' for this purpose is "sometimes a challenging endeavor", *id.*, "[c]oncerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic: It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Gasperini*, 518 U.S. at 427 n. 7. Thus,

> > When a situation is covered by one of the Federal Rules ... the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

> *Hanna v. Plumer*, 380 U.S. 460, 471 (1965), *quoted in Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27(1988).

16

Consolidated and class-wide adjudication are clearly procedural devices governed by specific Federal Rules. *See* Fed.R.Civ.P. 23, 42. Accordingly, the question before the court is whether giving effect to a purported waiver of consolidated or class-wide adjudication would comport with the language and purpose of those Rules. For the reasons explained below, this Court concludes that it would not.

This Court has, after extensive review, located no case authorities addressing the proper role of contractual waivers by the parties in class action or consolidation determinations under Rules 23 or 42. Virtually all of the reported cases on contractual class action waivers involve mandatory arbitration clauses, a circumstance that renders them patently distinguishable from the present case. Simply stated, whether the parties may effectively agree, as a matter of State contract law, to constrain the procedures to be followed in a privately-contracted dispute resolution has little apparent bearing on whether such an agreement also constrains a federal court's application of its own rules, whose authority derives from a federal statute (and ultimately from the Constitution) rather than from a private contract.

The Court does find guidance, however, in cases considering the effect of contractual forum-selection agreements on federal venue. In **Stewart Organization**, the Supreme Court "rejected the ... contention that the effect ... of a forum selection clause should be a matter purely of contractual interpretation governed by state law", instead requiring the district

17

court to "determine whether to give the clause effect by transferring the case to ... the contractually specified forum" by applying on the standards laid out in the federal change of venue statute, 28 U.S.C. § 1404(a). ***Jumara v. State Farm Ins. Co.***, 55 F.3d 873, 878 (3d Cir. 1995). The Court accordingly concluded that [t]he forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." ***Stewart Organization***, 487 U.S. at 31.   Thus, rather than being treated as a binding agreement overriding otherwise applicable venue standards, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum", which is a factor encompassed within the framework of § 1404. ***Jumara***, 55 F.3d at 880.54

\*       \*       \*

More particularly, if the prerequisites of Rule 23(a) are satisfied, whether a class action may be maintained turns on whether injunctive or declaratory relief is warranted for the whole class by defendants' conduct on grounds that apply generally to the class, or whether common questions predominate over individual questions and a class action is superior to other methods of adjudication. *See* Fed.R.Civ.P. 23(b)(2),(3).  These controlling standards make no mention of whether a class action is preferred by the parties.  Likewise, as long as actions involve a common question of law or

fact, Rule 42(a) contemplates issuance of consolidation orders "to avoid unnecessary cost or delay"—a standard that also does not call for consideration of the parties' preferences.  Under both Rule 23 and Rule 42, the ultimate governing standard is furtherance of efficient judicial administration, which leaves no room for enforceability of private agreements among litigants to forego the efficiencies potentially afforded by consolidated or class adjudication.

This is not just an academic issue.  Defendants' invocation of the Agreement's class action / consolidation waiver could potentially force this and other courts to hold separate trials of dozens, or hundreds, or even thousands of cases involving extensively overlapping issues.  Such a result is flatly inconsistent with the governing Rules, which are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

Because this Court finds that as a matter of federal law the parties' waivers are ineffective to override the court's discretion to certify a class under Rule 23 or consolidate proceedings under Rule 42, it is unnecessary to address Plaintiffs' contention that such waivers are void due to unconscionability under State law.

*Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *20–21 (W.D. Pa. June 15, 2009) (footnotes omitted).

For the above reasons, this Court finds that Marriott waived any benefit from its Choice of Law and Venue provision.  In addition, this Court finds the adhesive provision[1], buried on the last page of the Terms cannot direct this Court to ignore the provisions of Rule 23 of the Federal Rules of Civil Procedure.

This Court also finds that inasmuch as this Court will re-certify the classes with respect to Marriott in this case, the class certification with regard to Accenture will be reinstated again.

Accordingly, this Court will reinstate the classes as certified by Judge Grimm in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022).

This Court notes that on November 27, 2023 [Doc. 1154] Marriott requested oral argument on the Choice of Law and Venue issues.  At the time that the undersigned received the Motion, the undersigned was approximately two-thirds of the way through preparing this Order.  Accordingly, Marriott's Unopposed Request for a Hearing to Address the Court's September 22, 2023, and November 7, 2023, Orders [**Doc. 1154**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

---

[1] This Court notes that in **Atlantic Marine Const. Co. v. U.S. District Court**, 571 U.S. 49, 66 (2013), the Court stated "A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place."  This was hardly the case herein.

**DATED**: November 29, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE